# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| In re: | Case No.: 6:25-bk-4156 (LVV) |
| **THE VILLAGES HEALTH SYSTEM, LLC,**[1] | **Chapter 11** |
| **Debtor.** | |

## DEBTOR'S MOTION UNDER 11 U.S.C. § 333 TO EXCUSE THE DEBTOR FROM APPOINTMENT OF A PATIENT CARE OMBUDSMAN

The Villages Health System, LLC ("TVH" or the "Debtor"), the debtor and debtor in possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), by and through its proposed undersigned counsel, hereby files this motion (the "Motion"),[2] pursuant to section 333 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 2007.2 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order determining that the appointment of a patient care ombudsman is unnecessary in this case. In support of the Motion, the Debtor respectfully states as follows:

### PRELIMINARY STATEMENT

1.     Section 333 of the Bankruptcy Code enables courts to decline to appoint a patient care ombudsman when "such ombudsman is not necessary for the protection of patients under the specific facts of the case." 11 U.S.C. § 333(a)(1). Under the specific facts of this case, the appointment of a patient care ombudsman is not necessary because (1) the Debtor has in the past

---

[1]     The address of the Debtor is 600 Sunbelt Road, The Villages, Florida 32159. The last four digits of the Debtor's federal tax identification number is 6436.

[2]     Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the First Day Declaration (defined below).

provided, and currently provides high quality care which will continue for the duration of this Chapter 11 case, (b) the Debtor will, subject to the *Debtor's Emergency Motion for Interim and Final Orders (I) Approving Postpetition Financing, (II) Authorizing the Use of Cash Collateral, (III) Approving Liens and Superpriority Administrative Expenses Status, (IV) Modifying Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* filed with the Court contemporaneously with this Motion and the orders entered resolving the motion, have sufficient liquidity to ensure that patient care is not negatively impacted, (c) the Debtor's providers are already licensed by, and subject to, oversight from the Florida Board of Medicine and the Florida Board of Nursing, as applicable. These facts establish that appropriate safeguards are in existence to ensure that patients will continue to receive appropriate care.  Accordingly, under the specific facts of this case, appointment of an ombudsman would be duplicative of existing safeguards, financially burdensome and unnecessary.

## JURISDICTION AND VENUE

2.      The United States Bankruptcy Court for the Middle District of Florida (the "Court") has jurisdiction over the Chapter 11 Case and this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Debtor consents to entry of a final order under Article III of the United States Constitution.

3.      Venue of the Chapter 11 Case and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested in this Motion are section 333 of the Bankruptcy Code and Bankruptcy Rule 2007.2.

4917-6146-0819.1
4925-5163-5539.1

## BACKGROUND

5.      On July 3, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. The Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in the Chapter 11 Case, and no statutory committees have been appointed or designated.

6.      TVH is a premier health care provider in North Central Florida that operates primary and specialty care centers. In addition to primary care, TVH's health care providers provide specialty care services in the fields of cardiology, neurology, rheumatology, podiatry, urology, gynecology, pain intervention and management, and behavioral and mental health.

7.      TVH was formed in 2012 as the result of a collaboration between The Villages and The University of South Florida, which developed a plan for offering high-quality health care by offering patients enhanced resources and time with medical providers by reducing the physician-to-patient ratio and, in so doing, increasing the availability of and interactions with primary care physicians and specialists.

8.      Throughout its history, TVH has been known for providing exemplary, patient-focused health care to residents of North Central Florida, The Villages,[3] and surrounding communities, and TVH's medical providers have been fixtures in their communities and trusted health care providers to their patients. TVH currently provides essential care to more than 55,000 patients – the majority of whom are participants in Medicare Advantage plans.

---

[3] The Villages is the premier 55-plus master planned community in the United States, consisting of more than 50,000 residences in eight unique town center neighborhoods, or "Villages", offering world-class amenities in Lake, Sumter, and Marion counties in Florida. The Villages community is built around enriching the lives of its residents by facilitating an active and fulfilling life, while providing convenient access to the day-to-day needs of its community members.

3

9.      TVH currently operates ten primary and specialty care clinics (collectively, the "Care Centers") known as (a) Brownwood Care Center, (b) Colony Care Center, (c) Creekside Care Center, (d) Eastport Care Center, (e) Lake Deaton Care Center, (f) Mulberry Grove Care Center, (g) Pinellas Care Center, (h) Santa Barbara Care Center, (i) Specialty Care at Spanish Springs, and (j) The Center for Advanced Healthcare at Brownwood.

10.     The Debtor is continuing to operate its clinics with the same high level of patient care that it has historically provided and does not anticipate any change in the level of care or services it provides to any of its patients.

11.     All current patients received notice of this Chapter 11 Case and have been informed that services will continue to be provided and all scheduled procedures and appointments are being honored.

12.     As of the Petition Date, the Debtor believes that it is in compliance with all applicable health regulations promulgated by the U.S. Drug Enforcement Administration ("DEA") and the Florida Agency for Healthcare Administration ("AHCA"). The Debtor remains subject to standard inspections by AHCA and the Debtor's providers prepare a quality care compliance chart review each month which is also generally verified by AHCA yearly. The Debtor has not been the subject of any formal investigation by AHCA, the DEA or any other governmental agency for the care it provides to its patients and has not received complaints concerning patient care.

13.     The Debtor's physicians, which include family practitioners, internal medicine practitioners, cardiologists, urologists, podiatrists, gynecologists, neurologists, rheumatologists and endocrinologists are all certified by the Florida Board of Medicine or eligible for board certification as a requirement of their continued employment with the Debtor. The physician assistants the Debtor employs are also certified by the Florida Board of Medicine and are certified

4

or eligible for certification by the National Commission on Certification of Physician Assistants. The advanced registered nurse practitioners employed by the Debtor are licensed by the Florida Board of Nursing and certified or eligible for certification by either the American Academy of Nurse Practitioner Certification Board or the American Nurses Credentialing Center. All of the Debtor's medical care providers, including its audiologists, are licensed by the State of Florida. Each of these professionals' conduct is governed by the applicable laws and regulations imposed by the State of Florida and they are subject to ongoing oversight. None of these professionals are subject to any current complaints before the Florida Board of Medicine or the Florida Board of Nursing.

14.     The Debtor's bankruptcy filing is totally unrelated to the level of patient care that the Debtor provides.

15.     Additional details concerning the Debtor and its business, and the facts and circumstances supporting the Debtor's filing of the voluntary petition for relief under chapter 11 of the Bankruptcy Code are set forth in greater detail in the *Declaration of Neil Luria,, Chief Restructuring Officer of the Debtor, in Support of Chapter 11 Petition and Various First Day Applications and Motions* (the "First Day Declaration"), filed contemporaneously herewith and is incorporated herein by reference. A discussion of the specific facts supporting the relief requested in this Motion is set forth in the *Declaration of James Flaherty, DO in Support of The Debtor's Motion Under 11 U.S.C. § 333 to Excuse the Debtor from Appointment of a Patient Care Ombudsman* (the "Flaherty Declaration") attached as **Exhibit A** hereto.

## RELIEF REQUESTED AND APPLICABLE LEGAL AUTHORITY

16.     The Debtor requests that the Court determine that the appointment of an ombudsman under section 333 of the Bankruptcy Code is unnecessary given the facts and

circumstances of this particular case. Section 330(a)(1) of the Bankruptcy Code provides in part that:

> If the debtor… is a health care business, the court shall order, not later than 30 days after the commencement of the case, the appointment of an ombudsman to monitor the quality of patient care and to represent the interests of the patients of the health care business unless the court finds that the appointment of such ombudsman is not necessary for the protection of patients under the specific facts of the case.

11 U.S.C. § 333(a)(1).

17.    Bankruptcy Rule 2007.2 similarly provides in part:

> the court shall order the appointment of a patient care ombudsman under § 333 of the Code, unless the court, on motion of … a party in interest filed no later than 21 days after the commencement of the case or within another time fixed by the court finds that the appointment of a patient care ombudsman is not necessary under the specific circumstances of the case for the protection of patients.

Bankruptcy Rule 2007.2(a). A court may initially decline to appoint an ombudsman and appoint one later in a case if circumstances warrant. Bankruptcy Rule 2007.2(b).

18.    Courts have considerable discretion in determining whether to appoint an ombudsman. *In re Smiley Dental Arlington, PLLC*, 503 B.R. 680, 688 (Bankr. N.D. Tex. 2013) (ruling that appointment of an ombudsman was not warranted when the debtor's bankruptcy was caused by cash flow problems and not patient care). To determine whether the appointment of an ombudsman is appropriate, courts consider the totality of the circumstances surrounding the debtor's operations and bankruptcy. *In re Alternate Family Care*, 377 B.R. 754, 758 (Bankr. S.D. Fla. 2007). Courts have developed a non-exclusive, multi factor test to determine whether an ombudsman should be appointed, and evaluate the following:

> (1) the cause of the bankruptcy; (2) the presence and role of licensing or supervising entities; (3) debtor's past history of patient care; (4) the ability of the patients to protect their rights; (5) the level

of dependency of the patients on the facility; (6) the likelihood of tension between the interests of the patients and the debtor; (7) the potential injury to the patients if the debtor drastically reduced its level of patient care; (8) the presence and sufficiency of internal safeguards to ensure appropriate level of care; (9) the impact of the cost of an ombudsman on the likelihood of a successful reorganization.

*Id.*; *see also In re Smiley Dental Arlington, PLLC*, 503 B.R. at 688; *In re Pediatrics at Whitlock, P.C.*, 507 B.R. 10, 11-13 (Bankr. N.D. Ga. 2014) (declining to appoint an ombudsman in part because the debtor's bankruptcy filing was not driven by patient care problems, the patients' interests were consistent with those of the debtor, patients were able to protect their own interests and the cost of an ombudsman outweighed the benefits); *In re Valley Health System*, 381 B.R. 756, 762 (Bankr. C.D. Cal. 2008) (refusing to appoint an ombudsman in part when the debtor "adopted extensive and redundant internal procedures to ensure the highest level of patient care…"). Some courts consider additional, related factors including (1) the level of care provided by the debtor's facility, (2) whether the debtor has the financial ability to maintain a strong level of care, (3) whether the debtor "has an internal ombudsman program in operation" and (4) whether the debtor is monitored by regulators or professional associations such that appointing an ombudsman would be duplicative. *In re Smiley Dental Arlington, PLLC*, 503 B.R. at 689.

19.     Based on the application of the above factors to the Debtor, the Court should rule that appointment of a patient care ombudsman is not warranted because (a) the bankruptcy filing does not arise from or relate to patient care, (b) the Debtor's clinics are licensed and supervised by regulatory entities, (c) the Debtor has an extensive history of outstanding quality patient care, (d) the Debtor does not operate a facility that provides long term care, (e) there is no likelihood that there will be tensions between the interests of the Debtors, who seek to continue to operate the Care Centers until an orderly sale of its assets occurs, and the patients, (f) the Debtor does not

intend to reduce patient care, and (g) the doctors work in teams which constitute a form of oversight (*c.f. In re Smiley Dental Arlington, PLLC*, 503 B.R. at 689) and the Debtor maintains additional internal safeguards that ensure high quality levels of care. Each of these factors are addressed more fully below.

**I.      This Case Was Filed Due to Financial Challenges and to Facilitate a Sale of Assets.**

20.      The Debtor did not file its bankruptcy petition because of patient care issues, such as a malpractice claim or threatened malpractice claim.  Rather, as set forth in more detail in the First Day Declaration, the Debtor filed this case to address financial challenges caused in part by an issue with the Debtor's prior Hierarchical Condition Categories ("HCC") coding practice and to effectuate a sale of substantially all of its assets. Thus, this factor weighs in favor of finding that the appointment of a patient care ombudsman is not warranted because patient care is not at issue.

**II.      The Debtor is Subject to Significant Oversight by Multiple Government Agencies.**

21.      The Debtor's operations and professionals are subject to regular oversight by multiple government agencies including AHCA, the DEA, the Florida Board of Medicine and the Florida Board of Nursing as noted above.  Accordingly, there is no need for further oversight and this factor also weighs in favor of finding against the need to appoint a patient care ombudsman.

**III.      The Debtor Has a Stellar and Well Documented History of Providing High Quality Care.**

22.      The Debtor has an outstanding history of providing excellent patient care. It is not subject to any complaints to regulatory agencies regarding patient quality care issues, has not been the subject of any licensing issues and is not the subject of any current or threatened litigation regarding patient care matters. These facts demonstrate that this factor overwhelmingly weighs in favor of finding that it is unnecessary to appoint a patient care ombudsman.

8

IV.     **The Debtor's Patients Are Able to Protect Their Rights.**

23.     The Debtor's patients will be able to protect their rights notwithstanding the Debtor's bankruptcy case because the patients' main relationship is with their physicians (who are not debtors), the patients, or their guardians are able to advocate for themselves, the Debtor intends to honor all patient appointments and procedures and will continue to maintain all patient records in accordance with applicable law and regulations.  Accordingly, this factor also weighs against requiring the appointment of an ombudsman.

V.      **The Level of Dependency of the Patients on the Facility.**

24.     This factor also weighs against the appointment of a patient care ombudsman because the Debtor operates outpatient facilities. Therefore, any dependence on the clinics is relatively minimal.

VI.     **There is No Likelihood of Tension Between the Interests of the Debtor and its Patients.**

25.     There is intended to be no minimal tension between the Debtor and its patients as a result of the filing of this Chapter 11 Case. The Debtor intends to continue operating and to provide uninterrupted services to the patients. Patients will continue to have access to their records, and current patients have been provided with notice of the filing of the bankruptcy case. This factor also weighs against the appointment of a patient care ombudsman.

VII.    **The Debtor Does Not Intend to Reduce Staff or the Level of Care.**

26.     The Debtor has no plans to reduce its staff, nor does it intend to decrease the level of care it provides to its patients due to the bankruptcy filing. Instead, the Debtor is seeking an order approving its proposed entry into debtor in possession financing with PMA Lender, LLC which, if approved, will provide the Debtor with a sufficient level of funding to ensure that its

4917-6146-0819.1
4925-5163-5539.1

operations remain uninterrupted. This factor also weighs in favor of determining that the appointment of a patient care ombudsman is not required.

## VIII.    The Debtor Has Implemented Several Internal Safeguards to Ensure Quality Patient Care.

27.    The Debtor has multiple internal procedures in place to safeguard patient care, and as noted above, must comply, and has complied, with all applicable state and federal regulations pertaining to patient care. The Debtor has a robust oversight system which involves weekly meetings with providers, policies that require completion of certain documentation relating to patient encounters within seven (7) days, and a structured system where each of the Care Centers has a Medical Director paired with a Clinical Center Manager and that team coordinates operations of that Care Center's clinicians and support staff. Each of the Medical Directors reports to the Chief Medical Officer (the "CMO"). Additionally, there are biweekly Medical Director meetings to ensure that operations are consistent across the Care Centers. Information regarding performance and compliance are shared at these meetings. The Debtor has also developed dashboard reports that are shared with Managers regarding performance and adherence to the established guidelines. There is also a robust utilization program that monitors and provides feedback down to the provider level. The Debtor also has a quality program that is implemented by an RN and her staff that reports directly to the CMO.

28.    As a result of these safeguards, the Debtor has not received any patient care infraction notifications from any regulatory body, is not the subject of any malpractice action or threatened action, and has stellar patient reviews. Accordingly, in light of the stringent procedures in place and the very high quality of the Debtor's patient care, and because as a practical matter it would be difficult for an ombudsman to provide a benefit when there are 55,000 outpatients across

ten (10) Care Centers, the Debtor submits that this factor also weighs against the appointment of a patient care ombudsman.

### IX.     The Appointment of an Ombudsman Would Have No Impact on the Likelihood of a Successful Reorganization and Would be Duplicative of Existing Oversight of the Debtor

29.     The Debtor does not anticipate a lengthy bankruptcy process in part because it filed for bankruptcy in order to sell substantially all of its assets as a going concern in an orderly and efficient manner and has already taken steps to proceed with the sale process by filing the *Motion for Entry of Orders (A) Approving Sale of Substantially All of the Debtor's Assets, Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Approving Bidding Procedures for the Sale of Substantially All of the Debtor's Assets (C) Approving Stalking Horse Bid Protections, (D) Scheduling Auction for and Hearing to Approve Sale of the Debtor's Assets, (E) Approving Form and Manner of Notice of Sale, Auction, and Sale Order Hearing, (F) Approving Assumption and Assignment Procedures, (G) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (H) Granting Related Relief* contemporaneously with the filing of this Motion. The Debtor also anticipates filing a plan on or before the statutory deadline and will proceed toward confirmation of that plan as expeditiously as possible. Accordingly, an appointment of an ombudsman would be limited in time. Additionally, the significant expense which would be incurred through the appointment of an ombudsman and the payment of the ombudsman's fees and those of his or her professionals would deplete estate resources, including funds which the Debtor proposes to use for ongoing operations and patient care. An ombudsman would also be duplicative of the ongoing government oversight. "To this end the cost of an ombudsman would be a waste of scarce financial resources and would merely add another layer of bureaucracy to an already heavily regulated and supervised company." *In re Alternate Family*

*Care*, 377 B.R. at 761. Therefore, this factor weighs in favor of finding the appointment of an ombudsman is unnecessary.

30.     Courts have frequently declined to appoint an ombudsman when the appointment was not called for after application of the factors promulgated above.  *See e.g.*, *In re Alternate Family Care*, 377 B.R. at 761; *In re Valley Health System*, 381 B.R. at 762; *In re North Shore Hematology-Oncology Associates, P.C.*, 400 B.R. 7, 13 (Bankr. E.D.N.Y. 2008) (declining to appoint an ombudsman in large part because the debtor did not provide in-patient services). Moreover, waiver of the appointment of an ombudsman may be particularly appropriate when a debtor's bankruptcy filing was not due to the quality of patient care. *See e.g.*, *In re Smiley Dental Arlington, PLLC*, 503 B.R. at 689.

31.     Under the facts of this particular case, it is appropriate for the Court to determine that the appointment of an ombudsman is not necessary. If the circumstances change, parties in interest have the ability to seek the entry of an order appointing an ombudsman at a later date pursuant to section 333 of the Bankruptcy Code and Bankruptcy Rule 2007.2(b).  With this safeguard, along with the protections the Debtor provides to patients to ensure high quality care, the Debtor respectfully requests that the Court grant the Motion.

## NOTICE

32.     Notice of this Motion has been provided by email, facsimile or overnight mail to: (a) the Office of the United States Trustee for the Middle District of Florida; (b) all secured creditors; (c) the Office of the Attorney General of the State of Florida; (d) the twenty (20) largest unsecured creditors for the Debtor; (e) the Debtor's identified, interested taxing authorities, including the Internal Revenue Service; (f) the Debtor's identified, interested government and regulating entities; (g) other interested parties as identified by the Debtor; and (h) any known

12

counsel for (a)-(h). The method of service for each party will be described more fully in the certificate of service prepared by the Debtor's proposed claims and noticing agent. The Debtor respectfully submits that, based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, no further notice is required.

## **CONCLUSION**

WHEREFORE, the Debtor respectfully requests that this Court exercise its discretion to not appoint a patient care ombudsman pursuant to Bankruptcy Code § 333(a)(1) and instead enter an order substantially in the form attached hereto as **Exhibit B** granting this Motion, and for such other and further relief as may be just and proper.

Dated: July 5, 2025

**BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
FL Bar No.: 0600547
Email: egreen@bakerlaw.com
**Jimmy D. Parrish, Esq.**
FL Bar No.: 0526401
E-mail: jparrish@bakerlaw.com
**Andrew V. Layden, Esq.**
FL Bar No.: 86070
E-mail: alayden@bakerlaw.com
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, Florida 32801-3432
Telephone: (407) 540-7920
Facsimile: (407) 841-0168

*Proposed Counsel for the Debtor and Debtor in Possession*

## EXHIBIT A

**Declaration of James Flaherty**

4917-6146-0819.1
4925-5163-5539.1

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| In Re: | Case No.: |
| **THE VILLAGES HEALTH SYSTEM, LLC,**[1] | **Chapter 11** |
| Debtor. | |

**DECLARATION OF JAMES FLAHERTY, DO IN SUPPORT OF THE DEBTOR'S MOTION UNDER 11 U.S.C. § 333 TO EXCUSE THE DEBTOR FROM APPOINTMENT OF A PATIENT CARE OMBUDSMAN**

I, James Flaherty, hereby declare under penalty of perjury:

1.      I am the Chief Medical Officer ("CMO") of The Villages Health System, LLC ("TVH" or the "Debtor"), the debtor and debtor in possession in the above-captioned bankruptcy case.

2.      I am over the age of eighteen (18) and am competent to make this declaration (the "Declaration") and to testify to the facts set forth herein.

3.      Except as otherwise indicated, all statements in this Declaration are based on: (a) my personal knowledge of the Debtor's clinical operations and my opinion based on my experience; and/or (b) my review of relevant documents or information provided to me by other members of the Debtor's staff.  If called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

---

[1]     The address of the Debtor is 600 Sunbelt Road, The Villages, Florida 32159. The last four digits of the Debtor's federal tax identification number is 6436.

4.      I submit this Declaration in support of the Debtor's Motion Under 11 U.S.C. § 333 to Excuse the Debtor from Appointment of a Patient Care Ombudsman (the "Motion").

5.      I am a practicing urogynecologist and am board certified by the American Board of Obstetrics and Gynecology. I am also subspecialty board certified in female pelvic medicine and reconstructive surgery. I received a Bachelor of Arts degree from the University of Maine in 1974, a Medical degree from Kansas City College of Osteopathic Medicine in 1978 and completed residency at Letterman Army Medical Center. I have been a licensed physician for more than forty-five (45) years.

6.      I have been employed by the Debtor since 2014. I am familiar with every aspect of the Debtor's clinical operations, including, but not limited to, the Debtor's licensing and oversight requirements from the U.S. Drug Enforcement Administration ("DEA") and the Florida Agency for Healthcare Administration ("AHCA"), as well as the licensing and certification requirements for each of the practitioners who is employed by the Debtor. I am also generally familiar with the Debtor's records relating to its daily clinical operations.

7.      The Debtor is continuing to operate its care centers (the "Care Centers") as a debtor in possession with the same high-quality care that it has offered in the past, and I do not anticipate that there will be any interruptions in the services provided to the Debtor's patients.

8.      Patients are able to access their medical records and are also able to make new appointments at the Care Centers.

9.      The Debtor's decision to file for bankruptcy was not driven by considerations related to the quality of patient care provided at the Care Centers.

10.     I understand that the Debtor is seeking approval of the *Debtor's Emergency Motion for Interim and Final Orders (I) Approving Postpetition Financing, (II) Authorizing the Use of*

*Cash Collateral, (III) Approving Liens and Superpriority Administrative Expenses Status, (IV) Modifying Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related* Relief, which is being filed contemporaneously with this Motion, and which, if granted, would ensure that the Debtor has sufficient liquidity to maintain its current level of patient care.

11.     The Debtor employs physicians, nurses, and other medical professionals, all of whom are licensed by the appropriate Florida licensing board. Each of the medical professionals employed by the Debtor graduated from an accredited school or program and passed a licensing or certification examination as a condition to receiving their licenses. These professionals are also subject to regular, mandatory continuing education as a condition of retaining their licenses.

12.     The Debtor's physicians, which include family practitioners, internal medicine practitioners, cardiologists, urologists, podiatrists, gynecologists, neurologists, rheumatologists and endocrinologists are all certified by the Florida Board of Medicine or eligible for board certification as a requirement of their continued employment with the Debtor.

13.     The physician assistants the Debtor employs are also certified by the Florida Board of Medicine and are certified or eligible for certification by the National Commission on Certification of Physician Assistants.

14.     The advanced registered nurse practitioners employed by the Debtor are licensed by the Florida Board of Nursing and certified or eligible for certification by either the American Academy of Nurse Practitioner Certification Board or the American Nurses Credentialing Center.

15.     Each of the physicians, physician assistants, nurse practitioners and audiologists employed by the Debtor is governed by the applicable laws and regulations imposed by the State of Florida and they are subject to ongoing oversight. None of these professionals are subject to any current complaints before the Florida Board of Medicine or the Florida Board of Nursing.

16.     I believe that the Debtor is in compliance with all applicable health regulations promulgated by the DEA and AHCA. The Debtor remains subject to standard inspections by AHCA and the Debtor's providers prepare a quality care compliance chart review each month which is also generally verified by AHCA yearly. The Debtor has not been the subject of any formal investigation by AHCA, the DEA or any other governmental agency for the care it provides to its patients and has not received complaints concerning patient care.

17.     In addition to oversight by the applicable governmental regulatory agencies, the Debtor also has multiple internal procedures to safeguard patient care. The Debtor has a robust oversight system which involves weekly meetings with providers, policies that require completion of certain documentation relating to patient encounters within seven (7) days, and a structured system where each of the Care Centers has a Medical Director paired with a Clinical Center Manager and that team coordinates operations of that Care Center's clinicians and support staff. Each of the Medical Directors reports to me. Additionally, there are biweekly Medical Director meetings to ensure that operations are consistent across the Care Centers. Information regarding performance and compliance are shared at these meetings. The Debtor has also developed dashboard reports that are shared with Managers regarding performance and adherence to the established guidelines. There is a robust utilization program that monitors and provides feedback down to the provider level. The Debtor also has a quality program that is implemented by an RN and her staff that reports directly to me.

18.     Under the circumstances, I do not believe that there is any need in this case for the appointment of a patient care ombudsman because the patients have, and will continue to receive, excellent care.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

Dated: July 7 , 2025

_____
James Flaherty, Chief Medical Officer

# **EXHIBIT B**

## **Proposed Order**

4917-6146-0819.1
4925-5163-5539.1

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| In re: | Case No.: **6:25-bk-4156 (LVV)** |
| **THE VILLAGES HEALTH SYSTEM, LLC,**[1] | **Chapter 11** |
| Debtor. | |

**[PROPOSED] ORDER GRANTING THE DEBTOR'S MOTION UNDER 11 U.S.C. § 333 TO EXCUSE THE DEBTOR FROM APPOINTMENT OF A PATIENT CARE OMBUDSMAN**

Upon the Debtor's *Motion Under 11 U.S.C. § 333 to Excuse the Debtor from Appointment of a Patient Care Ombudsman*  (the "Motion"),[2] and the Court having jurisdiction over this matter pursuant to 28 U.C.S. §§ 157 and 1334 and the *Order of Reference of Cases Arising Under Title 11 United States Code, and Designating Bankruptcy Judges to Conduct Jury Trials and Act as*

---

[1]    The address of the Debtor is 600 Sunbelt Road, The Villages, Florida 32159. The last four digits of the Debtor's federal tax identification number is 6436.

[2]    Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Motion.

*Settlement Judges* from the United States District Court for the Middle District of Florida dated October 29, 2024; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that venue of this proceeding and this Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that it is able to enter a final order consistent with Article III of the United States Constitution; and that the Debtor provided due and proper notice of the Motion and opportunity to object and be heard thereon and that no other or further notice or hearing is required; and the Court having reviewed the Motion and all other matters of record; and this Court having heard the statements in support of the relief requested in the Motion at a hearing before this Court on July ___, 2025; and this Court having determined that the legal and factual bases set forth in the Motion establish good cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtor; its estate, its creditors and other parties-in-interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is **GRANTED** as set forth herein;

2. The appointment of a patient care ombudsman pursuant to section 333 of the Bankruptcy Code is not necessary in this Chapter 11 Case to protect the patients under the current circumstances;

3. The requirement set forth in section 333 of the Bankruptcy Code that the Court appoint a patient care ombudsman is hereby excused, without prejudice to the rights of the United States Trustee and parties-in-interest under Bankruptcy Rule 2007.2(b) to file a motion seeking the appointment of a patient care ombudsman at a future date if the circumstances change; and

4901-0275-1827.1

4.      This Court shall retain jurisdiction to hear and determine any and all matters arising

from or related to this Order.

###

*Attorney Elizabeth A. Green, Esq. is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF and to file a proof of service within three days of entry of this Order.*

4901-0275-1827.1