# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| In re: | Case No.: 6:25-bk-04156-LVV |
| **THE VILLAGES HEALTH SYSTEM, LLC,**[1] | Chapter 11 |
| Debtor. | |

**NOTICE OF FILING REDLINE OF PROPOSED ORDER (A) APPROVING BIDDING PROCEDURES FOR SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (B) APPROVING STALKING HORSE BID PROTECTIONS, (C) SCHEDULING AUCTION FOR AND HEARING TO APPROVE THE SALE OF THE DEBTOR'S ASSETS, (D) APPROVING FORM AND MANNER OF NOTICE OF SALE, AUCTION, AND SALE ORDER HEARING, (E) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, (F) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (G) GRANTING RELATED RELIEF**

      **The Villages Health System, LLC** (the "Debtor"), by and through their undersigned counsel hereby files the attached redline of the proposed *Order (A) Approving Bidding Procedures for Sale of Substantially all of the Debtor's Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for and Hearing to Approve the Sale of the Debtor's Assets, (D) Approving Form and Manner of Notice of Sale, Auction, and Sale Order Hearing, (E) Approving Assumption and Assignment Procedures, (F) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (G) Granting Related Relief* (the "Order") (Doc. No. 29). The redline attached as **Exhibit A** shows changes that have been made to the Order.

Dated: July 23, 2025

**BAKER & HOSTETLER LLP**

*/s/ Andrew V. Layden*
**Elizabeth A. Green, Esq.**
FL Bar No.: 0600547
Email: egreen@bakerlaw.com
**Andrew V. Layden, Esq.**
FL Bar No.: 86070
E-mail: alayden@bakerlaw.com

---

[1] The address of the Debtor is 600 Sunbelt Road, The Villages, Florida 32159. The last four digits of the Debtor's federal tax identification number is 6436.

200 South Orange Avenue
Suite 2300
Orlando, Florida 32801-3432
Telephone: (407) 649-4000
Facsimile: (407) 841-0168

*Proposed Counsel for the Debtor and Debtor in Possession*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 23, 2025, I electronically filed the foregoing with the Clerk of Court by using the Court's CM/ECF system, which will provide a Notice of Electronic Filing and copy to all parties requesting such notice.

*/s/ Andrew V. Layden*
Andrew V. Layden

**EXHIBIT A**
**Redline of Proposed Bid Procedures Order**

4931-3013-5127.1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| In Re: | Case No.: 6:25-bk-04156 |
| **THE VILLAGES HEALTH SYSTEM, LLC,**[1] | Chapter 11 |
| Debtor. | |

**ORDER (A) APPROVING BIDDING PROCEDURES FOR SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (B) APPROVING STALKING HORSE BID PROTECTIONS, (C) SCHEDULING AUCTION FOR AND HEARING TO APPROVE THE SALE OF THE DEBTOR'S ASSETS, (D) APPROVING FORM AND MANNER OF NOTICE OF SALE, AUCTION, AND SALE ORDER HEARING, (E) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, (F) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (G) GRANTING RELATED RELIEF**

THIS CASE came before the Court for a hearing on ~~[month] [day]~~July 23, 2025, ~~2025,~~ at ~~_____~~10:00 a.m.~~/p.m.~~ (the "Bidding Procedures Hearing") upon the ~~for consideration of the Villages Health System, LLC's (the "Debtor")~~ *Amended* Motion for Entry of Orders (A) Approving Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Approving Bidding Procedures for the Sale of Substantially All

---

[1] The Debtor in this Chapter 11 Case is The Villages Health System, LLC and the last four digits of its federal tax identification number are 6436. The Debtor's address is 600 Sunbelt Road, The Villages, FL 32159.

*of the Debtor's Assets, (C) Approving Stalking Horse Bid Protections, (D) Scheduling Auction for and Hearing to Approve Sale of the Debtor's Assets, (E) Approving Form and Manner of Notice of Sale, Auction, and Sale Order Hearing, (F) Approving Assumption and Assignment Procedures, (G) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (H) Granting Related Relief* [Doc. No. 29~~X~~] (the "Motion") filed by Villages Health System, LLC (the "Debtor"),[2] and the Court, having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding under 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409, and the Court having considered the Motion, the arguments of counsel and the evidence presented at the Bidding Procedures Hearing and the entire record; and the Court having found that the Debtor provided due and sufficient notice of the Motion and Bidding Procedures Hearing and the relief sought in the Motion under the particular circumstances, and it appearing no other or further notice need be provided; and the Court having reviewed the Motion, the filings in support of the Motion, and all objections to the relief sought in the Motion; and the Court having found that the relief requested in the Motion is in the best interest of the Debtor, its estates, its creditors, and other parties in interest; and after due deliberation and good and sufficient cause appearing for the relief sought in the Motion, it is hereby

**FOUND AND DETERMINED** that:

  A.  The findings of fact and conclusions of law set forth in this Bidding Procedures Order constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this case pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusion of law, they are hereby adopted as such. Any

---

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Motion or the Stalking Horse APA, as applicable.

findings of fact or conclusions of law stated by the Court on the record at the Bidding Procedures Hearing are hereby incorporated, to the extent they are not inconsistent with this Order.

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The statutory and legal bases for the relief requested in the Motion are sections 105, 363, 364, 365, 503, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 4001, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

D.      A reasonable opportunity to object or be heard regarding the relief requested in the Motion (including, without limitation, with respect to the Bidding Procedures) has been afforded to all interested persons and entities, including, but not limited to, the Sale Notice Parties.

E.      Notice of the Motion and the Bidding Procedures Hearing was adequate and sufficient under the circumstances of the Chapter 11 Case, and such notice complied with sections 102(1), 105(a), 363, and 365 of the Bankruptcy Code, and Rules 2002, 6004, 6006, and 9014 of the Bankruptcy Rules.

F.      The legal and factual bases set forth in the Motion establish just cause for the relief granted herein. Entry of this Order is in the best interests of the Debtor and its estate, creditors, and all other parties-in-interest.

G.      The Debtor has demonstrated a compelling and sound business justification for the Court to enter this Order approving a sale process for the sale of the Purchased Assets on terms similar to those in the Stalking Horse APA attached to this Order as **Exhibit 6**, including the Bid

Protections for the Stalking Horse Bidder that include (a) a Termination Fee of $1,500,000.00 and (b) an Expense Reimbursement in the aggregate amount of up to $1,500,000.00.

H.     The Bid Protections are fair and reasonable and provide a benefit to the Debtor's estate and stakeholders. The Bid Protections, as set forth in the Stalking Horse APA, are: (i) an actual and necessary cost of preserving the Debtor's estates within the meaning of sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code; (ii) fair, reasonable and appropriate and designed to maximize the value for the benefit of the Debtor's estate; (iii) commensurate to the real and substantial benefits conferred upon the Debtor's estate by the Stalking Horse Bidder; (iv) reasonable and appropriate in light of the size and nature of the proposed sale contemplated by the Stalking Horse APA, the commitments that have been made by the Stalking Horse Bidder, and the efforts that have been and will be expended by the Stalking Horse Bidder; and (v) necessary to induce the Stalking Horse Bidder to continue to pursue such sale and continue to be bound by the Stalking Horse APA and a condition of the Stalking Horse Bidder's execution of the Stalking Horse APA.  The Stalking Horse APA, including the Bid Protections, represents the highest or otherwise best offer the Debtor has received to date as a result of its efforts to market the Purchased Assets for sale.  The approval of the relief requested is a necessary step toward completion of the sale process.  The Stalking Horse APA and the Bid Protections facilitate competitive bidding and facilitate the Debtor's efforts to obtain the highest or otherwise best bid for its assets through the Bid Procedures.

I.     The Debtor has demonstrated a compelling and sound business justification for the Court to grant the relief requested in the Motion, including, without limitation, to (a) approve the Stalking Horse Bidder and the Bidding Procedures (including the Bid Protections); (b) establish the Assumption and Assignment Procedures; (c) approve the form and manner of the Notices and

the Notice Procedures; (d) schedule a date for the (i) Auction and (ii) Sale Order Hearing; and (e) grant related relief as set forth herein. Such compelling and sound business justification, which was set forth in the Motion and on the record at the Bidding Procedures Hearing, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

J.      All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the Bidding Procedures Hearing or by stipulation filed with the Court are overruled except as otherwise set forth herein.

K.      The Stalking Horse Bidder is not an "insider" or "affiliate" of the Debtor, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stockholders exists between the Stalking Horse Bidder and the Debtor. The Stalking Horse Bidder and its counsel and advisors have acted in "good faith" within the meaning of section 363(m) of the Bankruptcy Code in connection with the Stalking Horse Bidder's negotiation of the Stalking Horse APA, subject to (i) compliance with the Bid Procedures and (ii) entry of the Sale Order.

L.      The Bidding Procedures, substantially in the form attached as **Exhibit 1** hereto, are fair, reasonable, and appropriate and represent the best method for maximizing the value of the Debtor's estate.

M.      The Auction and Sale Order Hearing Notice, substantially in the form attached as **Exhibit 2** hereto, is appropriate and reasonably calculated to provide notice of the sale of the Purchased Assets free and clear of all liens, claims, encumbrances, or interests, including, without limitation: (i) the date, time, and place of the Auction, if any; (ii) a summary of the Bidding Procedures; (iii) the deadline for filing objections to the sale of the Purchased Assets; (iv) the date, time, and place of the Sale Order Hearing to consider the sale of the Purchased Assets; (v) that the

sale of the Purchased Assets is free and clear of all Liens, Claims and other interests (other than the Assumed Liabilities), with all Liens, Claims and interests attaching with the same validity and priority to the Transaction proceeds; and (vi) the proposed assumption and assignment of the Assumed Contracts to any Successful Bidder, and no other or further notice of the Transaction shall be required.

N.      The Patient Notice, substantially in the form attached as **Exhibit 3** hereto, is appropriate and reasonably calculated to provide notice to certain patients of the Debtor's medical facilities regarding the proposed Transaction and their right to raise any objections thereto.

O.      The Contract Assumption and Assignment Notice, substantially in the form attached as **Exhibit 4** hereto, is reasonably calculated to provide all interested parties with timely and proper notice of the potential assumption and assignment of Executory Contracts in connection with the Transaction and the related Cure Costs, and no other or further notice is required.

P.      The Post-Auction Notice, substantially in the form attached as **Exhibit 5** hereto, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Successful Bidder(s) and Backup Bidder(s), and no other or further notice is required.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that:

1.      The relief requested in the Motion is **GRANTED AND APPROVED** as set forth in this Order.

2.      All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the Bidding Procedures Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby overruled on the merits or have been otherwise satisfied or adequately provided for pursuant to this Order.

### (i)    Timeline of the Sale

3.    The Debtor is authorized to proceed with the sale of the Purchased Assets in accordance with the Bidding Procedures and is authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures in accordance with the following timeline:

| Proposed Date | Milestone |
|---|---|
| **Within 5 business days following entry of the Bidding Procedures Order** | Deadline to serve Sale Notice |
| **The earlier of (a) twenty-one (21) days before the Sale Order Hearing date or (b) five (5) Business Days following entry of the Bidding Procedures Order** | Deadline to serve initial Contract Assumption and Assignment Notice |
| **Objection to the Sale or Sale Order shall be filed and served no later than [ ● ]September 5, 2025 at 4:00 p.m. (prevailing Eastern Time) (collectively, the "Sale Objection Deadline").** | Sale Objection Deadline[3] |
| **[14 days from service of the initial Contract Assumption and Assignment Notice]** | Contract Objection Deadline |
| ~~August 20, 2025~~September 3, 2025 | Bid Deadline |
| ~~August 21, 2025~~September 4, 2025 | Deadline for Debtor to Designate Qualifying Bids |
| ~~August 22, 2025~~September 5, 2025 | Deadline for Debtor to Designate Baseline Bid |
| ~~August 25, 2025~~September 8, 2025 | Auction |
| **As soon as practicable (but no later than one (1) business day) after completion of the Auction** | File and serve Post-Auction Notice |
| ~~August 27, 2025~~September 10, 2025 | Deadline for Supplemental Objections[4] |
| ~~August 29, 2025~~September 12, 2025 | Sale Order Hearing |

4.    The failure to timely file an objection in accordance with this Order shall forever bar the assertion of any objection to the Motion, Bidding Procedures, and/or consummation of the

---

[3] The Sale Objection Deadline and Contract Objection Deadline apply to all objections to the sale of the Purchased Assets and the assumption and assignment of the Assumed Contracts (including adequate assurance of future performance by the Stalking Horse Bidder), with the exception of objections related to adequate assurance of future performance by a Successful Bidder other than the Stalking Horse Bidder.

[4] Supplemental Objections are objections solely related to (i) adequate assurance of future performance if Successful Bidder is not the Stalking Horse Bidder or (ii) the conduct of the auction.

Transaction, including the assumption and assignment of Assumed Contracts to a Successful Bidder, and shall be deemed to constitute any such party's consent to entry of an order approving the Transaction and consummation of the Transaction and all other transactions related thereto.

5.      The Debtor is authorized to modify the above timeline, subject to the approval of the Stalking Horse Bidder and any rights that the Stalking Horse Bidder may have under the Stalking Horse APA on account of such modification after consultation with (i) [  ● ]PMA Lender, LLC (the "DIP Lender") and (ii) any official committee of unsecured creditors (the "Committee," together with the DIP Lender, the "Consultation Parties").

### (ii)      The Bidding Procedures

6.      The Bidding Procedures are **APPROVED** in their entirety. The Debtor is authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures, in accordance therewith. The failure to specifically include or reference a particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such actions.

7.      The process and requirements associated with submitting a Bid and the designation of a Bid as a Qualified Bid are approved as fair, reasonable, appropriate, and designed to maximize recoveries for the benefit of the Debtor's estate, creditors, and other parties in interest. As further described in the Bidding Procedures, the Bid Deadline shall be August 20, 2025, at 5:00 p.m. (prevailing Eastern Time) September 3, 2025. Any disputes or objections to the designation of any Qualified Bid, the Successful Bid, or the Backup Bid (each as defined in the Bidding Procedures) shall be resolved by the Court at the Sale Order Hearing as set forth herein.

8.      The Debtor is authorized to conduct and preside over the Auction in accordance with the Bidding Procedures. The Auction, to the extent that an Auction is necessary under the

Bidding Procedures, shall take place at [insert time] 10:00 a.m. (prevailing Eastern Time) on August 25September 8, 2025, at the offices of: (a) Baker & Hostetler, LLP, SunTrust Center, 200 S Orange Ave #2300, Orlando, FL 32801, (b) via in person or a virtual platform, such as Zoom, or (c) such other location, in each case as the Debtor designates (or at any other time and location as the Debtor may hereafter designate on proper notice). The Auction will be conducted openly, and all Qualified Bidders, the Consultation Parties, and the U.S. Trustee will be permitted to attend.

### (iii)    **Stalking Horse Bidder and Bid Protections**

9.      The Stalking Horse Bidder and the Bid Protections are approved.

10.     The Termination Fee shall be $1,500,000.00 and any Expense Reimbursement shall not exceed $1,500,000.00 in the aggregate, consisting of the Stalking Horse Bidder's reasonable and documented out-of-pocket expenses (including expenses of outside counsel, accountants and financial advisers) incurred in connection with the Stalking Horse Bidder's evaluation, consideration and negotiation of a possible transaction with the Debtor and in connection with the transactions contemplated by the Stalking Horse APA. Bid Protections shall be payable in accordance with and subject to the terms and conditions of the Stalking Horse APA. The Stalking Horse Bidder's claim for the Termination Fee and Expense Reimbursement approved in this Order shall be as allowed as a superpriority administrative claim under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code.

11.     The Stalking Horse Bidder shall be required to serve as the Backup Bidder if it is not the Successful Bidder solely to the extent (and for the time period) required by the Stalking Horse APA.

### (iv)    **Notice Procedures**

12.     The Auction and Sale Notice, substantially in the form attached as **Exhibit 2** is **APPROVED**.

13.     As soon as practicable after entry of this Order, the Debtor shall serve the Auction and Sale Notice, and a copy of this Order, by first-class mail, postage prepaid on the following parties, provided, however, that to the extent email addresses are available for counsel for any of the following parties that have appeared in the Debtor's bankruptcy case, such counsel may be served by email (collectively, the "Sale Notice Parties"): (a) all of the Debtor's creditors; (b) all entities that have, to the best knowledge of the Debtor's management and advisors, expressed written interest in purchasing any of the Facilities or Purchased Assets within the past one (1) year; (c) all entities known to have asserted any Lien, Claim, or other interest in or upon any of the Facilities and/or Purchased Assets; (d) counsel to the DIP Lender; (e) the U.S. Trustee; (f) all parties that have requested notice pursuant to Bankruptcy Rule 2002; (g) all federal, state, and local regulatory or taxing authorities, including any applicable taxing bodies or recording offices which have a reasonably known interest in the relief granted herein; (h) the Internal Revenue Service; (i) any other governmental authority known or reasonably believed by the Debtor to have or assert a claim against any of the Debtor in the Chapter 11 Case, including the United States Department of Health and Human Services, Centers for Medicare and Medicaid Services; (j) the Office of the Attorney General and Office of the Secretary of State for the State of Florida; (k) the counterparties to the Executory Contracts; (l) all patients at any point in time dating back to two (2) years prior to the Petition Date or any of such persons' present legal representatives to the extent known by the Debtor; (m) all persons or entities that have asserted, or threatened to assert, any tort claims against any of the Debtor at any point in time dating back to two (2) years prior to the Petition Date.

14.     The Patient Notice, substantially in the form attached as **Exhibit 3** is **APPROVED**. In addition to the Auction and Sale Order Hearing Notice, the Debtor shall serve the Patient Notice on all patients at any point in time dating back to two (2) years prior to the Petition Date or any of such persons' present legal representatives to the extent known by the Debtor.

15.     Service of the Auction and Sale Order Hearing Notice and Patient Notice as described above shall be good and sufficient notice of the Transaction and the Assumption and Assignment Procedures with respect to known interested parties.

16.     The Debtor is directed to post the Auction and Sale Order Hearing Notice on its case information website at https://cases.stretto.com/thevillageshealth[insert website].

17.     The form of the Post-Auction Notice substantially in the form attached hereto as **Exhibit 5** is **APPROVED**. The Debtor shall file on the docket and serve the Post-Auction Notice on the Counterparties to the Assumed Contracts, the Sale Notice Parties, and all parties entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1 via ECF, by email, fax, or overnight delivery, as soon as practicable (but no later than one (1) business day) after completion of the Auction.

### (v)     Assumption and Assignment Procedures

A.     General Procedures Applicable to All Contracts.

18.     The Assumption and Assignment Procedures, as detailed in the Motion and incorporated herein, are hereby **APPROVED**.

19.     The Contract Assumption and Assignment Notice, substantially in the form attached hereto as **Exhibit 4** is hereby **APPROVED**.

20.     The Debtor shall file with the Court, post on its case information website at https://cases.stretto.com/thevillageshealth[insert website], and serve on each counterparty to an

Executory Contract, the initial Contract Assumption and Assignment Notice no later than the earlier of (a) twenty-one (21) days before the Sale Order Hearing date or (b) five (5) Business Days following entry of the Bidding Procedures Order. If no Cure Cost is listed for a particular Assumed Contract, the Debtor's asserted Cure Cost for such Executory Contract shall be deemed to be $0.00. The Debtor shall serve, via email to counsel for any party that has appeared in the Debtor's bankruptcy case, if available, or by first-class mail, (a) the Contract Assumption and Assignment Notice that contains the list of Executory Contracts, (b) information necessary and appropriate to provide notice of the relevant proposed assumption and assignment of Executory Contracts that may be Assumed Contracts and rights thereunder, (c) the Cure Cost, if any, and (d) the procedures for objecting thereto, on all Counterparties to the Executory Contracts and all parties on the Rule 2002 Notice List. Service of such Contract Assumption and Assignment Notice as set forth herein shall be deemed good and sufficient notice of, among other things, the potential assumption and assignment of the Executory Contracts, the applicable Cure Costs related thereto, and the procedures for objecting thereto, and no other or further notice is necessary.

21.     Any objection with respect to the Debtor's proposed assumption and assignment of any Executory Contract included in the Contract Assumption and Assignment Notice, including, without limitation, any objection to the Cure Cost (a "Contract Objection"), shall be filed ~~by [insert time] (prevailing Eastern Time) on [insert date]~~ [14 days from service of the initial Contract Assumption and Assignment Notice] (the "Contract Objection Deadline"), for any Counterparties to a Executory Contracts, provided that, with respect to any Contract Objection for any Executory Contract included on an Amended Contract Assumption and Assignment Notice (as defined below) that (i) was not previously included on the initial Contract Assumption and Assignment Notice or a previous Amended Contract Assumption and Assignment Notice or (ii) for which the proposed

Cure Cost was reduced from the proposed Cure Cost in the initial Contract Assumption and Assignment Notice or a previous Amended Contract Assumption and Assignment Notice (as applicable), such Contract Objections shall be filed on or prior to fourteen (14) days following service of such Amended Contract Assumption and Assignment Notice. Any Contract Objection must (a) be in writing; (b) comply with the applicable provisions of the Bankruptcy Rules and Bankruptcy Local Rules; (c) be filed with the Court by the Contract Objection Deadline, unless otherwise provided herein; and (d) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the counterparty believes is required to be paid under Bankruptcy Code sections 365(b)(1)(A) and (B) for the applicable Assumed Contract, along with the specific nature and dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise thereto.

22.     If, after the Contract Assumption and Assignment Notice and Contract Objection Deadline, additional executory contracts or unexpired leases of the Debtor is determined to be potential Assumed Contracts in connection with the Transaction, or the Debtor seek to modify the previously stated Cure Cost associated with any Executory Contract, as soon as practicable thereafter, the Debtor shall file with the Court and serve, by overnight delivery, on the applicable Counterparties, one or more Amended Contract Assumption and Assignment Notices, and such Counterparties shall file any objection to the Cure Cost not later than fourteen (14) days following service of such Amended Contract Assumption and Assignment Notice.

23.     The inclusion of an Executory Contract on the Contract Assumption and Assignment Notice, or any Amended Contract Assumption and Assignment Notice, will not (a) obligate the Debtor to assume any Executory Contract listed thereon nor obligate the Successful

Bidder to take assignment of such Executory Contract or (b) constitute any admission or agreement of the Debtor that such Executory Contract is an executory contract.

24.     Any objection to the Stalking Horse Bidder's adequate assurance of future performance must be filed no later than the Sale Objection Deadline and all such objections must specify what the objecting party believes is required to provide such adequate assurance.

25.     If no Contract Objection is timely received with respect to an Assumed Contract: (a) the counterparty to such Assumed Contract shall be deemed to have consented to the assumption by the Debtor and assignment to the Successful Bidder of the Assumed Contract, and be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the applicable Successful Bidder); (b) any and all defaults under the Assumed Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to Bankruptcy Code section 365(b)(1)(A) and (B) upon payment of the Cure Cost set forth in the Contract Assumption and Assignment Notice, or any Amended Contract Assumption and Assignment Notice; and (c) the counterparty shall be forever barred from asserting any other claims related to such Assumed Contract against the Debtor and its estate or the Successful Bidder, or the property of any of them, that existed prior to the entry of the order resolving the Contract Objections and the Sale Order.

26.     To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Order Hearing, the Debtor may, subject to the Stalking Horse Bidder's or other Successful Bidder's (as applicable) approval, (i) assume the applicable Assumed Contract and assign it to the Successful Bidder prior to the resolution of the Cure Dispute; provided that the Debtor (a) pays to the applicable counterparty the undisputed

portion of the Cure Cost within five (5) business days after the Closing of the Transaction and (b) reserves cash in an amount sufficient to pay the disputed portion of the Cure Cost reasonably asserted by the applicable counterparty (or such lesser amount as may be fixed or estimated by the Court or otherwise agreed to by the counterparty and the Debtor), or (ii) adjourn its request to assume and assign the contract or lease pending resolution of the Cure Dispute; provided further that, to the extent the Adjourned Cure Dispute is resolved or determined unfavorably to the Debtor, the Debtor (with the consent of the Successful Bidder(s)) may withdraw the proposed assumption and assignment of the applicable contract or lease after such determination by filing a notice of withdrawal. The Debtor shall file notice of its intention to reserve for a Cure Cost or to adjourn its request for assumption and assignment. An Adjourned Cure Dispute may be resolved after the Closing Date of the Transaction in the Debtor's discretion with the consent of the Successful Bidder(s).

B.      Additional Requirements Concerning Affiliate Contracts.

26.27.   The Stalking Horse Bidder and/or the Debtor will disclose on the docket for the Chapter 11 Case all Affiliate Contracts (as defined in the Stalking Horse APA) designated for potential assignment as a Transferred Contract to the Stalking Horse Bidder (and associated Cure Costs) in connection with its bid on or before the Bid Deadline; *provided*, that (i) with respect to any Affiliate Contracts that have not been disclosed to the Stalking Horse Bidder in accordance with Section 2.06 of the Stalking Horse APA as of the date of this order, such Affiliate Contracts (if designated for potential assignment to the Stalking Horse Bidder) shall only be required to be disclosed on the docket in accordance with this paragraph 27 by the later of (A) the Bid Deadline and (B) fourteen (14) days from disclosure of such Affiliate Contracts to the Stalking Horse Bidder in accordance with Section 2.06(a) of the Stalking Horse APA, and (ii) nothing herein shall

preclude the Stalking Horse Bidder from excluding any Affiliate Contract from the Transferred Contracts at any time (including, for the avoidance of doubt, after the applicable deadline set forth in this paragraph 27).

### (vi)    Sale Order Hearing

27.28.  A Sale Order Hearing to (a) approve a sale of the Debtor's assets to a Successful Bidder(s), (b) approve designation of a Backup Bid(s) and Backup Bidder(s), if applicable, in accordance with the Bidding Procedures, and (c) authorize the assumption and assignment of the Assumed Contracts shall be held at (i) [insert time] (prevailing Eastern Time) on August 29September 12, 2025, and may be adjourned or rescheduled on notice by the Debtor and, if the Stalking Horse Bidder is the Successful Bidder, only upon consent of the Stalking Horse Bidder. At the Sale Order Hearing, the Debtor will seek Court approval of the Successful Bid(s) and Backup Bid(s), if applicable. The Sale Order Hearing shall be a hearing on matters relating to the Transaction and there will be no further bidding at such hearing. In the event that a Successful Bidder cannot or refuses to consummate the Transaction, the Debtor may, in accordance with the Bidding Procedures, designate the Backup Bid to be the new Successful Bid and the Backup Bidder to be the new Successful Bidder, and the Debtor shall be authorized, but not required, to consummate the Transaction with the Backup Bidder without further order of the Court.

28.29.  Any and all objections, if any, to any proposed Transaction and proposed adequate assurance with respect to the Stalking Horse Bidder must be filed no later than [insert time] (prevailing Eastern Time) on [insert date]September 5, 2025. In the event the Successful Bidder is not the Stalking Horse Bidder, any objections regarding proposed adequate assurance must be filed no later than [insert time] (prevailing Eastern Time) on [insert date]September 10, 2025. For

avoidance of doubt, any objections to a Successful Bidder's proposed form of adequate assurance of future performance of any Assumed Contract will be resolved at the Sale Order Hearing.

~~29.~~30.  All valid liens or other interests against the Purchased Assets being sold will attach against the sale proceeds in the order of their existing priority. The net sale proceeds of the sale are subject to carve-outs for any Bid Protections afforded to the Stalking Horse Bidder. Additionally, the net sale proceeds (for the avoidance of doubt, after payment of any Bid Protections) shall be applied first to the outstanding balance of the DIP Loans (as that term is defined in the DIP Financing Motion and First Day Declaration) and the balance shall be held by the Debtor pending further order of this Court.

### (vii)    **Miscellaneous**

~~30.~~31.  Except as otherwise provided herein, any objection made pursuant to any of the provisions set forth in the Motion must: (a) be in writing, (b) comply with the applicable provisions of the Bankruptcy Rules and Bankruptcy Local Rules, (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor, and (d) be filed with this Court via ECF.

~~31.~~32.  Any substantial contribution claims by any Potential Bidder are deemed waived, to the extent based on such Potential Bidder's submission of a bid in accordance with the Bidding Procedures.

~~32.~~33.  The Debtor is authorized and empowered to take such action as may be necessary to implement and effect the terms and requirements established under this Order.

~~33.~~34.  The Debtor is authorized to make any non-material revisions to the exhibits and notices attached hereto without further Court approval.

34.35.  This Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

35.36.  Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 9014, or otherwise, this Court, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

36.37.  This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order, including, but not limited to, any matter, claim, or dispute arising from or relating to the Bidding Procedures, the Stalking Horse APA, and the implementation of this Order.

###

*Attorney Elizabeth A. Green is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and to file a proof of service within three days of entry of this order.*

## **EXHIBIT 1**

Bidding Procedures

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| **In re:** | **CHAPTER 11** |
| **THE VILLAGES HEALTH SYSTEM, LLC,**[1] | **CASE NO.: 6:25-bk-04156** |
| Debtor. | |

## BID PROCEDURES

In the exercise of its good faith reasonable business judgment, the above-captioned debtor and debtor in possession (the "**Debtor**") has executed an Asset Purchase Agreement (including all exhibits, schedules, and addenda thereto, the "**Stalking Horse APA**") with Centerwell Senior Primary Care (Vitality), Inc. (the "**Stalking Horse Bidder**"), pursuant to which the Stalking Horse Bidder proposes to (i) purchase, acquire, and take assignment and delivery of the Purchased Assets (as defined in the Stalking Horse APA) and (ii) assume certain Assumed Liabilities (as defined in the Stalking Horse APA), each as specifically enumerated in the Stalking Horse APA and subject to the terms and conditions set forth therein.

On [ ● ], 2025, the United States Bankruptcy Court for the Middle District of Florida (the "**Bankruptcy Court**") entered an order [Docket No. [ ● ]] (the "**Bid Procedures Order**") approving, among other things, these bid procedures (the "**Bid Procedures**").

These Bid Procedures set forth the process by which the Debtor is authorized to conduct the auction (the "**Auction**") for the sale (the "**Transaction**") of the Purchased Assets.[2] Subject to the entry of the Sale Order, the Transaction may be implemented pursuant to the terms and conditions of the Stalking Horse APA, as the same may be amended pursuant to the terms thereof, subject to the receipt of higher or otherwise better Bids (as defined below) in accordance with these Bid Procedures. Pursuant to the Bid Procedures, the Debtor, in consultation with the Consultation Parties (defined below), will determine the highest or otherwise best offer for the sale of the Purchased Assets and, if applicable, other of the Debtor's assets. The Debtor, with approval of the Stalking Horse Bidder, and in consultation with the Consultation Parties (defined below) may modify these Bid Procedures.

**A.    Important Dates**

| Proposed Date | Milestone |
|---|---|

---

[1]   The address of the Debtor is 600 Sunbelt Road, The Villages, Florida 32159. The last four digits of the Debtor's federal tax identification number is 6436.

[2]   Capitalized terms used but not defined herein shall have the meanings given to them in the Motion or the Stalking Horse APA, as applicable.

1

| Within 5 business days following entry of the Bidding Procedures Order | Deadline to serve Sale Notice |
|---|---|
| The earlier of (a) twenty-one (21) days before the Sale Order Hearing date or (b) five (5) Business Days following entry of the Bidding Procedures Order | Deadline to serve initial Contract Assumption and Assignment Notice |
| Objection to the Transaction or Sale Order shall be filed and served no later than ~~August 22~~September 5, 2025 at 4:00 p.m. (prevailing Eastern Time) (collectively, the "Sale Objection Deadline"). | Sale Objection Deadline[3] |
| [14 days from service of the initial Contract Assumption and Assignment Notice] | Contract Objection Deadline |
| ~~August 20, 2025~~September 3, 2025 | Bid Deadline |
| ~~August 21, 2025~~September 4, 2025 | Deadline for Debtor to Designate Qualifying Bids |
| ~~August 22, 2025~~September 5, 2025 | Deadline for Debtor to Designate Baseline Bid |
| ~~August 25, 2025~~September 8, 2025 | Auction |
| As soon as practicable (but no later than one (1) business day) after completion of the Auction | File and serve Post-Auction Notice |
| ~~August 27, 2025~~September 10, 2025 | Deadline for Supplemental Objections[4] |
| ~~August 29, 2025~~September 12, 2025 | Sale Order Hearing |

---

[3]   The Sale Objection Deadline and Contract Objection Deadline apply to all objections to the sale of the Purchased Assets and the assumption and assignment of the Assumed Contracts (including adequate assurance of future performance by the Stalking Horse Bidder), with the exception of objections related to adequate assurance of future performance by a Successful Bidder other than the Stalking Horse Bidder.

[4]   Supplemental Objections are objections solely related to (i) adequate assurance of future performance if Successful Bidder is not the Stalking Horse Bidder or (ii) the conduct of the auction

**B.      Marketing Process**

**1.      Contact Parties**

The Debtor is conducting a marketing process.  In connection with the marketing process, the Debtor's proposed investment banker, Evercore Group, L.L.C. ("Evercore"), has developed a list of "Contact Parties" who will receive a copy of an "**Information Package**," which is comprised of: (i) marketing materials; (ii) a copy of these proposed Bid Procedures (and once entered by the Court, the Bid Procedures Order); and (iii) a copy of the Stalking Horse APA.  The list of Contact Parties encompasses parties whom the Debtor believes may be interested in pursuing a Transaction and whom the Debtor reasonably believes may have the financial resources to consummate such a transaction.

**2.      Access to Diligence Materials**

To receive due diligence information, including full access to the Debtor's electronic data room (the "**Data Room**") and additional non-public information regarding the Debtor (collectively, the "**Diligence Materials**"), any party interested in submitting a bid, other than the Stalking Horse Bidder (each a "**Potential Bidder**"), must deliver the following documents (collectively, the "**Preliminary Bid Documents**") by email to (i) proposed counsel to the Debtor: Baker & Hostetler LLP, 200 South Orange Avenue #2300, Orlando FL 32801, Attn: Elizabeth Green (egreen@bakerlaw.com), Andrew Layden (alayden@bakerlaw.com); and (ii) (a) counsel for ~~The Villages of Lake Sumter, Inc.~~PMA Lender, LLC (the "**DIP Lender**"): Trenam Law, 101 East Kennedy Boulevard, Suite 2700, Tampa, FL 33602 and (b) any official committee of unsecured creditors (the "**Committee**," together with the DIP Lender, the "**Consultation Parties**") (collectively, the "**Bid Recipients**"):

(i)      to the extent not already executed, an executed and signed confidentiality agreement on customary terms that are reasonably acceptable to the Debtor (an "**Acceptable Confidentiality Agreement**"); and

(ii)     evidence by the Potential Bidder of its financial capacity to close a proposed Transaction for the Purchased Assets or other of the Debtor's assets, the adequacy of which will be determined by the Debtor (with the assistance of its advisors) in consultation with the Consultation Parties.

The Debtor may decline to provide any Diligence Materials to Potential Bidders who, in the Debtor's business judgment, have not established, or who have raised doubt, that such Potential Bidder intends in good faith or has the capacity to consummate a Transaction for the Purchased Assets or any of the Debtor's assets.

For any Potential Bidder who is a competitor of the Debtor or is affiliated with any competitor of the Debtor, the Debtor reserves the right to withhold any Diligence Materials that the Debtor determines are business-sensitive or otherwise not appropriate for disclosure to such Potential Bidder at such time.

3

No due diligence will continue after the Bid Deadline (defined below).  The Debtor shall provide the Stalking Horse Bidder with access to all material due diligence materials, management presentations, on-site inspections, and other information provided to any Potential Bidder or Qualified Bidder that were not previously made available to the Stalking Horse Bidder concurrently with the provision of such information or materials to such Potential Bidder or Qualified Bidder (defined below), as applicable.

Each Potential Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtor or its advisors regarding such Potential Bidder and its contemplated Transaction.

3.      **Auction Qualification Process**

To be eligible to participate in the Auction, each offer, solicitation, or proposal (each, a "**Bid**"), and each party submitting such a Bid (each, a "**Bidder**"), must be determined by the Debtor, in consultation with the Consultation Parties, to satisfy each of the following conditions:

(i)     Bid Deadline.  Except as set forth herein, the Debtor must receive a Bid in writing (email being sufficient), on or before ~~August 20~~**September 3, 2025, at 4:00 p.m. (prevailing Eastern Time)** (as may be amended in consultation with the Consultation Parties, the "**Bid Deadline**").  Bids must be sent to the Bid Recipients by the Bid Deadline to be considered.

(ii)    Consultation Parties.  For the avoidance of doubt, if a Consultation Party (or its affiliates, as applicable) is a Potential Bidder, then such party shall no longer be a Consultation Party unless and until the earlier of such Consultation Party's (i) representation in writing to the Debtor that it is no longer a Potential Bidder and does not intend to pursue a Bid in the future and (ii) failure to be designated as the Successful or Back-Up Bidder (each as defined below) following the completion of the Auction (if any); *provided* that if such party is a member of the Committee, then the Committee's counsel and the remaining members of the Committee other than the Potential Bidder shall continue to be Consultation Parties, but shall not provide any information they receive as Consultation Parties to the Potential Bidder.  Neither the Debtor nor its representatives shall be obligated to furnish any information of any kind whatsoever relating to the Debtor's assets to any party that is not a Potential Bidder or a Consultation Party.

(iii)   Form and Contents.  All Bids shall be in the form of an irrevocable offer letter from a person or persons that the Debtor, in its reasonable discretion taking into account its fiduciary duties, deems financially able to consummate the Transaction, which letter states and includes:

(A)     Marked Agreement.  Each Bid must state that the Bidder irrevocably offers to purchase some or all of the Purchased Assets upon the terms and conditions set forth in a duly executed non-contingent and attached complete asset purchase agreement, which shall be in substantially the same form as the Stalking Horse APA, prepared and executed by the Bidder (an

4

electronic version in Word format and blacklined against the Stalking Horse APA), together with its exhibits and schedules, including terms relating to Purchase Price (as defined below) and the time of closing (the "**Proposed Agreement**");

(B)     Assets.  Each Bid must clearly specify the Debtor's assets that are included in the Bid (it being understood that while Bids for a portion or subset of the Purchased Assets may be permitted, in determining whether the Bid is a Qualified Bid, the Debtor may consider whether the combined consideration for the Debtor's assets (taking into account such Bid and other Bids) exceeds the Purchase Price of the Stalking Horse APA and/or other aspects of the Bid);

(C)     Purchase Price.  Each Bid must clearly set forth the terms of any proposed Transaction, including and identifying separately any cash and non-cash components of the proposed Transaction consideration, and identify the liabilities to be assumed by the Bidder as part of the Transaction (the "**Purchase Price**");

(D)     Overbid.  Each Bid (i) must propose a Purchase Price equal to or greater than the sum of (a) the value of the Stalking Horse Bid, as determined by the Debtor in consultation with the Consultation Parties, *plus* (b) the amount of the Termination Fee[5] in the amount of $1,500,000.00 and the maximum amount of the Expense Reimbursement[6] in the amount of $1,500,000.00 for a total of $3,000,000.00 and (c~b~) an initial overbid of at least $2~5~,000,000 (the "**Minimum Initial Topping Bid**"); (ii) must be on terms that are not materially more burdensome than the terms of the Stalking Horse Bid; and (iii) must obligate the Bidder to pay, to the extent provided in the Stalking Horse APA, all liabilities and expenses that the Stalking Horse Bidder under the Stalking Horse APA has agreed to pay, including any Assumed Liabilities (as defined in the Stalking Horse APA);

(E)     Capacity to Consummate Transaction; Committed Financing.  Each Bid shall be accompanied by evidence of (i) the Bidder's capacity to consummate the Transaction set forth in its Bid with cash on hand or (ii) sufficient, non-contingent financing and/or equity funding commitments to satisfy the Bidder's Purchase Price and other obligations

---

[5]     "**Termination Fee**" means, as described in and subject to Section 12.11 of the Stalking Horse APA, the break-up fee payable to the Stalking Horse Bidder equal to $1,500,000.00.

[6]     "**Expense Reimbursement**" means, as described in and subject to Section 12.11 of the Stalking Horse APA, the amount of the Stalking Horse Bidder's reasonable documented out-of-pocket expenses (including expenses of outside counsel, accountants and financial advisers) incurred in connection with the Stalking Horse Bidder's evaluation, consideration and negotiation of a possible transaction with the Debtor and in connection with the transactions contemplated hereby, up to a maximum amount of $1,500,000.00.

under its Bid.  Such funding commitments or other financing acceptable to the Debtor must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals;

(F)     <u>Operational Capabilities</u>.  Each Bid shall be accompanied by evidence of the Bidder's ability to maintain Debtor's business as a going concern, including, without limitation, (i) the financial wherewithal to fund operations of the Debtor's business, (ii) experience operating similar businesses, (iii) possession of any authorizations or licenses to operate Debtor's businesses, (iv) implementation of an effective compliance and monitoring program for the business;

(G)     <u>Contingencies; No Financing or Diligence Outs</u>.  A Bid shall not be conditioned on a Bidder obtaining financing or any internal approval, or on the outcome or review of due diligence, which must be completed before the Bid Deadline, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions;

(H)     <u>Due Diligence Representation and Warranty</u>.  Each Bid must represent and warrant that the Potential Bidder has had an opportunity to conduct any and all due diligence regarding the Debtor's Business and the Purchased Assets prior to submitting its Bid and a statement that the Potential Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the Purchased Assets in making its Bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Debtor's business or the Purchased Assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Proposed Agreement, if ultimately accepted and executed by the Debtor;

(I)     <u>Identity</u>.  Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Bidder if such Bidder is an entity formed for the purpose of consummating the proposed Transaction contemplated by such Bid), and the complete terms of any such participation.  Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid.  Each Bid must also include contact information for the specific person(s) and counsel the Debtor's advisors should contact regarding such Bid;

(J)     <u>Authorization</u>.  Each Bid must contain evidence that the Bidder has obtained authorization or approval from its board of directors, or a comparable governing body, acceptable to the Debtor with respect to the submission of

6

its Bid and the consummation of the Transactions contemplated in such Bid; *provided*, however, if the Bidder is an entity specially formed for the purpose of effectuating the Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtor of the approval of the Transaction by the equity holder(s) of such Bidder;

(K)     <u>Regulatory or Third-Party Approval</u>.   Each Bid must set forth any regulatory or third-party approval required for the Bidder to consummate the Transaction, and the time period within which the Bidder expects to receive such regulatory and third-party approvals, if any;

(L)     <u>Expenses; Disclaimer to Reimbursement for Fees/Expenses</u>.   Each Bid (other than the Stalking Horse Bid) must disclaim any right to receive a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation.   For the avoidance of doubt, except as may be exclusively applicable to the Stalking Horse Bidder, no Potential Bidder will be permitted to request, or be granted by the Debtor, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, substantial contribution, or any other similar form of compensation, and by submitting a Bid any Potential Bidder is waiving any assertion or request for reimbursement on any basis, including under Section 503(b) of the Bankruptcy Code;

(M)     <u>Consummation</u>.   Each Bid must include a statement or evidence reflecting (i) that the Bidder is prepared to consummate the Transaction upon entry of an order of the Bankruptcy Court approving the Transaction to the Successful Bidder (the "**Sale Order**"), (ii) that the Bidder has made or will make as soon as reasonably practicable all necessary filings, if any, with respect to any regulatory, antitrust and other laws and pay the fees associated therewith; and (iii) the Bidder's plan and ability to obtain all requisite governmental, regulatory, or other third-party approvals, and the proposed timing for the Bidder to undertake the actions required to obtain such approvals, if any;

(N)     <u>Irrevocability</u>.   Each Bid must include a statement that, in the event the Debtor selects the Bidder to serve as the Successful Bidder or the Back-Up Bidder (as defined below), such Qualified Bidder's offer is irrevocable until two (2) business days after the closing of the Transaction;

(O)     <u>Assumed Contracts and Leases</u>.   Each Bid must identify any and all executory contracts of the Debtor and non-Debtor affiliates that the Qualified Bidder wishes to be assumed and assigned to it pursuant to a Transaction.   A Bid must specify that such Bidder will be responsible for any cure costs associated with such assumption on the same or better terms as the Stalking Horse Bid, and include a good faith estimate of such cure costs (which estimate shall be provided by the Debtor).   Further, a Bid must

provide evidence of adequate assurance of future performance under such executory contracts to be assumed and assigned in such a Transaction;

(P)     <u>Employees</u>.  Each Bid must specify the treatment of the employees of the Debtor;

(Q)     <u>Consent to Jurisdiction</u>.  Each Bidder must submit to the exclusive jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to Debtor's qualification of Bids, the Auction, the construction and enforcement of these Bid Procedures, the Transaction documents, and the closing of the Transaction, as applicable; and

(R)     <u>Other Information</u>.  Each Bid must contain such other information as may be reasonably requested by the Debtor.

(iv)     <u>Combination of Bids</u>.  Each Bid shall be based on the Stalking Horse Bid and must exceed, either on its own terms or, in the case of a Bid for a portion or subset of the Debtor's assets, in combination with another Qualified Bid(s) (which combination shall be done by the Debtor, in consultation with the Consultation Parties), the Stalking Horse Bid in relation to the Purchased Assets.  For the avoidance of doubt, joint Bids submitted by multiple Bidders will not be considered.

(v)     <u>Back-Up Bidder</u>.  Each Bidder must acknowledge that by submitting a Bid, the Bidder agrees to be a Back-Up Bidder in accordance with the terms of these Bid Procedures, should the Bid be so selected.

(vi)     <u>As Is, Where Is</u>.  The sale of the Debtor's assets shall be on an "as is, where is" and "with all defects" basis and without representations or warranties of any kind, nature, or description by the Debtor, its agents or estate, except to the extent set forth in the Stalking Horse APA.

(vii)     <u>Good Faith Deposit</u>.  Each Qualified Bid must be accompanied by a cash deposit in the amount of 10% of the total Purchase Price to be held in an escrow account to be identified and established by the Debtor (the "**Deposit**").

(viii)     <u>Binding Effect</u>. By submitting its Bid, each Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of the Bid Procedures and to refrain from submitting a Qualified Bid or seeking to reopen the Auction after conclusion of the Auction.

A Bid received before the Bid Deadline will be considered a "**Qualified Bid**" and each Bidder that submits a Qualified Bid will be considered a "**Qualified Bidder**" if the Debtor determines in consultation with the Consultation Parties that such Bid meets the requirements above for a Bid as set forth in these Bid Procedures.

The Debtor will notify each Qualified Bidder whether such party is a Qualified Bidder no later than one (1) day after the Bid Deadline(the "**Designation of Qualified Bid Deadline**") and

shall provide each Qualified Bidder, including the Stalking Horse Bidder, with a copy of the Baseline Bid no later than 4:00 p.m. (prevailing Eastern Time) on the day before the Auction commences.

Upon determination that any Bid is not a Qualified Bid, the Debtor shall notify such Bidder of such determination forthwith, but in any event not later than the Designation of Qualified Bid Deadline, and shall provide such Bidder with the basis for such determination. In the event that such Bid is determined not to be a Qualified Bid, the Debtor may allow the Bidder until the commencement of the Auction to modify its Bid to increase the Purchase Price or otherwise improve the terms of the Bid in order to comply with the requirements for Qualified Bids as set forth herein.

Between the date that the Debtor notifies a Bidder that it is a Qualified Bidder and the Auction date, the Debtor may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the prior written consent of the Debtor, in consultation with the Consultation Parties, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase its Purchase Price, or otherwise improve the terms of the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bid Procedures. The Stalking Horse Bidder shall be deemed a Qualified Bidder at all times, and the Stalking Horse APA shall be a Qualified Bid.

Prior to 4:00 p.m. (prevailing Eastern Time) on the day before the Auction (the "**Baseline Bid Deadline**"), the Debtor and its advisors will evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtor's reasonable business judgment, the highest or otherwise best bid (the "**Baseline Bid**" and the Bidder making such Baseline Bid, the "**Baseline Bidder**"), and shall notify the Stalking Horse Bidder and all Qualifying Bidders of the Baseline Bid no later than the Baseline Bid Deadline.

### 4.    Credit Bid

Any Qualified Bidder who has a valid, undisputed, and perfected lien on any of the Debtor's assets (a "**Secured Creditor**") as of the Bid Deadline shall have the right to credit bid all or a portion of such Secured Creditor's allowed secured claims pursuant to section 363(k) of the Bankruptcy Code; *provided that* a credit bid shall not constitute a Qualified Bid if the bid does not include a cash component sufficient to pay in full, in cash, the Expense Reimbursement and Termination Fee (collectively, the "Bid Protections" and all claims for which there are valid, perfected, and unavoidable liens on any of the Debtor's assets included in such bid that are senior in priority to those of the party seeking to credit bid (unless such senior lien holder consents to alternative treatment). All rights to credit bid shall be subject to the terms of the Interim DIP Order. For the avoidance of doubt, a Secured Creditor shall be required to provide cash consideration in respect of any assets to be acquired but that do not constitute collateral securing such Secured Creditor's claim(s), if any, and for which it does not have a valid, undisputed and perfected liens as of the Bid Deadline.

### C.    Auction

If one or more Qualified Bids are received by the Bid Deadline (other than the Stalking Horse Bid), the Debtor will conduct the Auction to determine the highest or otherwise best Qualified Bid or combination of Qualified Bids.  In determining which Qualified Bid constitutes the highest or otherwise best Qualified Bid or combination of Qualified Bids, the Debtor's determination may take into account any factors the Debtor reasonably deems relevant to the value of the Qualified Bid to the estate, including, *inter alia,* the following non-exhaustive factors:  (i) the amount and nature of the consideration; (ii) the proposed assumption of any liabilities, if any, and the excluded assets and/or executory contracts, if any; (iii) the ability of the Qualified Bidder to close the proposed Transaction and the conditions to closing, and the timing thereof; (iv) whether the Bid is a bulk bid or a partial bid for only some of the Debtor's assets; (v) the proposed closing date and the likelihood, extent and impact of any potential delays in closing; (vi) any purchase price adjustments; (vii) the impact of the proposed Transaction on any actual or potential litigation or on claims asserted against the Debtor's estate; (viii) the net after-tax consideration to be received by the Debtor's estate; (ix) the tax consequences of such Qualified Bid; (x) the regulatory approvals required to consummate the proposed Transaction; and (xi) the consent of the parties in interest and/or the cost and expense to the Debtor of resolving sale issues before Closing (collectively, the "**Bid Assessment Criteria**").

If no Qualified Bids other than the Stalking Horse Bid are received prior to the Bid Deadline, then the Auction will not occur, the Stalking Horse Bid may be deemed the Successful Bid (as defined below), and, subject to the termination rights under the Stalking Horse APA, the Debtor will pursue entry of an order by the Bankruptcy Court authorizing the Transaction to the Stalking Horse Bidder as soon as practicable.

### 1.    Procedures for Auction

The Auction, if necessary, will commence on ~~August 25~~September 8**, 2025 at 10:00 a.m. (prevailing Eastern Time)** at (a) Baker & Hostetler, LLP, SunTrust Center, 200 S Orange Ave #2300, Orlando, FL 32801, (b) via in person or a virtual platform, such as Zoom, or (c) such other location, in each case as the Debtor designates (or at any other time and location as the Debtor may hereafter designate on proper notice).  Only the Stalking Horse Bidder and other Qualified Bidders will be entitled to make any Bids at the Auction.  The Stalking Horse Bidder and other Qualified Bidders participating at the Auction shall appear themselves or through a duly authorized representative who is present in person at the Auction.  Only the Debtor, the Stalking Horse Bidder, any participating Qualified Bidders, and the Consultation Parties may attend the Auction.

### 2.    The Debtor Shall Conduct the Auction

The Debtor and its professionals shall direct and preside over the Auction and the Auction shall be transcribed or videotaped.  The Debtor shall make such transcription or videotape available to the Stalking Horse Bidder and any other Qualified Bidders as soon as practicable following the conclusion of the Auction. Prior to the Baseline Bid Deadline, the Debtor, in consultation with the Consultation Parties, shall determine, in accordance with the requirements herein, the Baseline Bid, and shall promptly notify the Stalking Horse Bidder and all Qualified Bidders with Qualified Bids of such Baseline Bid.

10

Round-skipping, as described herein, is explicitly prohibited. To remain eligible to participate in the Auction, in each round of bidding, (i) each Qualified Bidder must submit a Bid before the end of such round of bidding that is a higher or otherwise better offer than the immediately preceding Bid submitted by a Qualified Bidder in such round of bidding and (ii) to the extent a Qualified Bidder fails to bid in such round of bidding or to submit a Bid in such round of bidding that is a higher or otherwise better offer than the immediately preceding Bid submitted by a Qualified Bidder in such round of bidding, as determined by the Debtor in its reasonable business judgment, such Qualified Bidder shall be disqualified from continuing to participate in the Auction without the consent of the Debtor.

All Bids made during the Auction shall be made and received on the record. The Debtor shall maintain a transcript of all bids made and announced at the Auction, including the Baseline Bid and all Overbids.

**3.      Terms of Overbids**

An "**Overbid**" is any Bid made at the Auction subsequent to the Debtor's announcement of the Baseline Bid. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

**a.      Minimum Overbid Increment**

Any Overbid after the Baseline Bid shall be made in increments of at least $25,000,000 in cash, cash equivalents, or such other consideration that the Debtor, in consultation with the Consultation Parties, deem equivalent (the "**Minimum Overbid Increment**"). For the avoidance of doubt, in calculating the amount of any Overbid made by the Stalking Horse Bidder, the Stalking Horse Bidder shall be entitled to a credit in the amount of the Bid Protections.

**b.      Overbid Procedures**

Bidding at the auction will begin with the Baseline Bid, and each participating Qualified Bidder will have the opportunity to submit an Overbid in each round of bidding (each, an "**Overbid Round Deadline**").

After each Overbid Round Deadline, the Debtor shall determine whether an Overbid is higher or otherwise better than the Baseline Bid in the initial Overbid round or, in subsequent rounds, the Overbid previously designated by the Debtor as the prevailing highest or otherwise best Bid (the "**Prevailing Highest Bid**"). The Debtor shall announce and describe to all Qualified Bidders present at the Auction the material terms of any new Overbid designated by the Debtor as the Prevailing Highest Bid, as well as the value attributable by the Debtor to such Prevailing Highest Bid.

**c.      Remaining Terms Are the Same as for Qualified Bids**

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above; *provided, however*, the Bid Deadline shall not apply and no additional Deposit shall be required beyond the Deposit previously submitted by a Qualified Bidder. Any Overbid must include, in addition to the amount and form of consideration of the Overbid, a description of

11

all changes (if any) requested by the Qualified Bidder to the applicable previously submitted Proposed Agreement, in connection therewith (including any changes to the designated assumed contracts and assumed liabilities). Any Overbid must remain open and binding on the Bidder until and unless the Debtor names a Successful Bid and Back-Up Bid.

To the extent not previously provided (which shall be determined by the Debtor in consultation with the Consultation Parties) a Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor) demonstrating such Bidder's ability to close the Transaction proposed by such Overbid; *provided, however*, this shall not apply to an Overbid by the Stalking Horse Bidder.

### d.    No Collusion; Good-Faith *Bona Fide* Offer

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction (i) it has not engaged in any collusion with respect to the Transaction, bidding (including it has no agreement with any other Bidder or Qualified Bidder to control the price or other terms of any Bid) or any other Transaction and (ii) its Qualified Bid is a good-faith *bona fide* offer and it intends to consummate the proposed Transaction if selected as the Successful Bidder or Back-Up Bidder (if the Successful Bidder fails to consummate the proposed Transaction).

### e.    Back-Up Bidder

Notwithstanding anything in the Bid Procedures to the contrary, if an Auction is conducted, the party(ies) with the second highest or otherwise second best Qualified Bid (or combination of Qualified Bids) at the Auction, as determined by the Debtor, in the exercise of its business judgment and in consultation with the Consultation Parties, shall be designated by the Debtor as backup bidder (the "**Back-Up Bidder**"). The Back-Up Bidder shall be required to keep its initial Qualified Bid (or if the Back-Up Bidder submitted one or more Overbids at the Auction, its final Overbid) (the "**Back-Up Bid**") open and irrevocable until two (2) business days after the closing of the sale of the Purchased Assets (the "**Outside Back-Up Date**"); *provided*, that if the Stalking Horse Bid is selected as the Back-Up Bid, it must remain irrevocable only for so long as is required under the Stalking Horse APA. Following entry of the Sale Order, if the Successful Bidder fails to consummate an approved Transaction because of a breach or failure to perform on the part of such Successful Bidder, the Debtor may designate the Back-Up Bidder to be the new Successful Bidder, and the Debtor will be authorized, but not required, to consummate the Transaction with the Back-Up Bidder without further order of the Bankruptcy Court. In such case, except, solely for the Stalking Horse Bidder, to the extent otherwise provided in the Stalking Horse APA, the defaulting Successful Bidder's Deposit, if any, shall be forfeited to the Debtor's estate, and the Debtor specifically reserves the right to seek all available damages from the defaulting Successful Bidder. Except to the extent otherwise provided in the Stalking Horse APA with respect to the Stalking Horse Bidder, the Deposit, if any, of the Back-Up Bidder shall be held by the Debtor until two (2) business days after the closing of the Transaction with the Successful Bidder; *provided, however*, in the event the Successful Bidder does not consummate the Transaction as described above and the Debtor provides notice to the Back-Up Bidder that it is the new Successful Bidder, the Back-Up Bidder's Deposit shall be held until the closing of the Transaction with the Back-Up Bidder. In the event the Back-Up Bidder fails to consummate an approved Transaction because

12

of a breach or failure to perform on the part of the Back-Up Bidder, the Back-Up Bidder's Deposit shall be forfeited to the Debtor's estate, and the Debtor specifically reserves the right to seek all available damages from the defaulting Back-Up Bidder.  Notwithstanding anything to the contrary herein, for the avoidance of doubt, the Deposit submitted by the Stalking Horse Bidder pursuant to the Stalking Horse APA shall be treated, returned to the Stalking Horse Bidder, or forfeited to the Debtor's estate solely in accordance with the terms of the Stalking Horse APA.

4.      **Consent to Jurisdiction as Condition to Bidding**

All Qualified Bidders, shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Stalking Horse APA, the Auction, or the construction and enforcement of any Transaction documents.

5.      **Adjournment of the Auction**

The Debtor reserves the right, in its reasonable business judgment, to adjourn the Auction one (1) or more times to, among other things, (i) facilitate discussions between the Debtor and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtor with such additional evidence as the Debtor, in its reasonable business judgment, may require, demonstrating that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt or equity funding commitments to consummate the proposed Transaction at the Prevailing Highest Bid.

6.      **Closing the Auction**

The Auction shall continue until there is only one (1) Qualified Bid or combination of Qualified Bids that the Debtor determine in its reasonable business judgment, after consultation with its financial and legal advisors and the Consultation Parties, is the highest or otherwise best Qualified Bid at the Auction (the "**Successful Bid**" and the Bidder submitting such Successful Bid, the "**Successful Bidder**").  In making this decision, the Debtor, in consultation with its financial and legal advisors and the Consultation Parties, shall consider the Bid Assessment Criteria.  The Auction shall not close unless and until all Bidders who have submitted Qualified Bids have been given a reasonable opportunity, in the Debtor's discretion, to submit an Overbid at the Auction to the then-existing Prevailing Highest Bid and the Successful Bidder has submitted fully executed Transaction documents memorializing the terms of the Successful Bid.

Promptly following the Debtor's selection of the Successful Bid and the conclusion of the Auction, the Debtor shall announce the Successful Bid and Successful Bidder.  The Debtor will file a notice identifying the Successful Bidder and Back-Up Bidder (the "**Post-Auction Notice**") as soon as reasonably practicable after closing the Auction, if any, and in any event not more than one (1) Business Day following the close of the Auction.

Bids submitted after the closing of the Auction shall not be considered.

**D.    Sale Hearing**

A hearing (the "**Sale Hearing**") shall be held on ~~August 29~~September 12, **2025, at [ ● ] [a./p.]m. (prevailing Eastern Time)**, at which hearing the Debtor will seek approval of the Transaction with the Successful Bidder.

**E.    Return of Good Faith Deposits**

The Deposit of the Successful Bidder, if applicable, shall be applied to the Purchase Price of such Transaction at closing.  The Deposits from each Qualified Bidder shall be held in one or more accounts on terms acceptable to the Debtor in its sole discretion and shall be returned (other than with respect to the Successful Bidder and the Back-Up Bidder) on or before the date that is two (2) business days after the Auction is completed.  Except as otherwise provided in the Stalking Horse APA with respect to the Stalking Horse Bidder, the Back-Up Bidder's Deposit shall be held by the Debtor and shall be returned on or before the date that is two (2) business days after the closing of the Transaction with the Successful Bidder.  In the event the Successful Bidder fails to close the Transaction and the Debtor opts to close on the Transaction set forth in the Back-Up Bid, the Back-Up Bidder's Deposit shall be applied to the Purchase Price of such Transaction at closing. In the event of a breach or failure to consummate a Transaction by the Successful Bidder or the Back-Up Bidder, as applicable, the defaulting Successful Bidder's Deposit or Back-Up Bidder's Deposit, as applicable, shall be forfeited to the Debtor, and the Debtor specifically reserves the right to seek all available remedies against the defaulting Successful Bidder or Back-Up Bidder, as applicable.

**F.    Reservation of Rights/Fiduciary Duties**

Nothing in these Bidding Procedures shall require the Debtor to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent that the Debtor determines, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or their fiduciary duties under applicable law. The Stalking Horse Bidder reserves all rights under the Stalking Horse APA with respect to any action taken by the Debtor with respect to these Bidding Procedures, or otherwise.

14

## **EXHIBIT 2**

Auction and Sale Order Hearing Notice

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| In Re: | Case No.: 6:25-bk-04156 |
| **THE VILLAGES HEALTH SYSTEM, LLC,**[1] | Chapter 11 |
| Debtor. | |

**NOTICE OF PROPOSED SALE OF SUBSTANTIALLY ALL
OF THE DEBTOR'S ASSETS, BIDDING
PROCEDURES, AUCTION, AND SALE ORDER HEARING**

    **PLEASE TAKE NOTICE** that the Debtor, by and through its undersigned counsel, sought approval from the United States Bankruptcy Court for the Middle District of Florida (the "Court") to effectuate the sale of substantially all of the Debtor's assets in the Debtor's *Motion for Entry of Orders (A) Approving Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Approving Bidding Procedures for the Sale of Substantially All of the Debtor's Assets, (C) Approving Stalking Horse Bid Protections, (D) Scheduling Auction for and Hearing to Approve Sale of the Debtor's Assets, (E) Approving Form and Manner of Notice of Sale, Auction, and Sale Order Hearing, (F) Approving Assumption and Assignment Procedures, (G) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (H) Granting Related Relief* [Doc. No. X] (the "Motion").

    **PLEASE TAKE FURTHER NOTICE** that on [insert date], the Court entered the *Order (A) Approving Bidding Procedures for Sale of Substantially all of the Debtor's Assets Free and Clear of all Liens, Claims, Encumbrances, and Interests, (B) Approving Stalking Horse Bid Protection, (C) Scheduling Auction for and Hearing to Approve Sale of Substantially all of the Debtor's Assets, (D) Approving Form and Manner of Notice of Sale, Auction, and Sale Order Hearing, (E) Approving Assumption and Assignment Procedures, (F) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (G) Granting Related Relief* [Doc. No. X] (the "Bidding Procedures Order").[2] The Bidding Procedures Order approved the bidding procedures (the "Bidding Procedures") attached as **Exhibit 1** to the Bidding Procedures Order. The Bidding Procedures set the key dates and times, bid qualification requirements, and the competitive bidding process related to the sale of the Purchased Assets and assumption and assignment of the Executory Contracts and unexpired leases.

    **PLEASE TAKE FURTHER NOTICE** that copies of the Bidding Procedures Order, all related exhibits, including the Bidding Procedures, and any other filings related to the foregoing

---

[1] The Debtor in this Chapter 11 Case is The Villages Health System, LLC and the last four digits of its federal tax identification number are 6436. The Debtor's address is 600 Sunbelt Road, The Villages, FL 32159.

[2] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion or Bidding Procedures Order, as applicable.

are available for free on the website of Debtor's notice agent, Stretto, Inc., at https://cases.stretto.com/thevillageshealth~~[insert website]~~.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Motion, the Debtor seeks to sell substantially all of its assets (the "Purchased Assets") to the Stalking Horse Bidder or any other Successful Bidder free and clear of all liens, claims, encumbrances, and other interests (including claims based on theories of successor liability or similar doctrines) pursuant to 11 U.S.C. § 363(f).

**PLEASE TAKE FURTHER NOTICE** that the deadline by which all Qualified Bids for the Purchased Assets must be actually received by the parties specified in the Bidding Procedures is ~~[insert date and time] (prevailing Eastern Time)~~September 3, 2025.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures Order, if one or more Qualified Bids (in addition to the Stalking Horse Bid) are received by the Bid Deadline, an auction (the "Auction") to sell the Purchased Assets will take place at ~~[insert time]~~10:00 a.m. (prevailing Eastern Time) on ~~[insert date]~~September 8, 2025 at the offices of: (a) Baker & Hostetler LLP, 200 South Orange Avenue #2300, Orlando FL 32801, (b) via in person or a virtual platform, such as Zoom or GoToMeeting, or (c) such other location, in each case as the Debtor designates and shall be timely communicated to all persons entitled to attend the Auction. The Debtor may cancel the Auction pursuant to the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that, if the Debtor does not timely receive more than one Qualified Bid, the Debtor will not conduct the Auction and, instead, will (a) file a notice with the Court identifying the Stalking Horse APA as the Successful Bid for the Purchased Assets and (b) promptly seek the Court's approval of the sale of the Purchased Assets to the Stalking Horse Bidder free and clear of all liens, claims, encumbrances, and other interests (including claims based on theories of successor liability or similar doctrines) pursuant to 11 U.S.C.§ 363(f).

**PLEASE TAKE FURTHER NOTICE** that a hearing will be held to approve the sale of the Purchased Assets to the Successful Bidder (the "Sale Order Hearing") before the United States Bankruptcy Court for the Middle District of Florida, Courtroom X, 400 W. Washington Street, Suite 5100, Orlando, FL 32801 on ~~[insert time and date] (prevailing Eastern Time)~~September 12, 2025, or at such time thereafter as counsel may be heard or at such other time as the Court may determine. The Sale Order Hearing may be adjourned from time to time without further notice to creditors or parties in interest by filing a notice on the Court's docket for the Chapter 11 Case or the making of an announcement at the Sale Order Hearing.

**PLEASE TAKE FURTHER NOTICE** that objections to the Sale, including to the sale of the Purchased Assets free and clear of all liens, claims, encumbrances and other interests (including claims based on theories of successor liability or similar doctrines), if any, (i) must be in writing, (ii) conform to the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (iii) state with particularity the legal and factual basis for the objection, (iv) be filed with the Court no later than ~~[insert time and date] (prevailing Eastern Time)~~September 5, 2025 at 4:00 p.m. (prevailing Eastern Time) by the Court and (v) served upon the Debtor, the DIP Lender, the Stalking Horse Bidder, and the Committee.

**FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER, OR ANY OTHER ORDER OF THE COURT IN THE CHAPTER 11 CASE MAY RESULT IN THE REJECTION OF YOUR BID FOR THE PURCHASED ASSETS.**

**PLEASE TAKE FURTHER NOTICE THAT ANY PARTY OR ENTITY WHO FAILS TO TIMELY FILE AND SERVE AN OBJECTION TO THE SALE BEFORE THE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE DEEMED TO HAVE CONSENTED TO THE SALE(S) AND FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE(S), INCLUDING WITH RESPECT TO THE TRANSFER OF THE PURCHASED ASSETS TO THE SUCCESSFUL BIDDER FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS (INCLUDING CLAIMS BASED ON THEORIES OF SUCCESSOR LIABILITY OR SIMILAR DOCTRINES) THAT SUCH PARTY OR ENTITY MAY HAVE AGAINST THE DEBTOR OR THE PURCHASED ASSETS.**

Dated: [●], 2025

<div style="margin-left:40%">

Respectfully submitted:

**BAKER & HOSTETLER LLP**

Elizabeth A. Green, Esq.
FL Bar No.: 0600547
Email: egreen@bakerlaw.com
Andrew V. Layden, Esq.
FL Bar No.: 86070
E-mail: alayden@bakerlaw.com
200 South Orange Avenue
Suite 2300
Orlando, Florida 32801-3432
Telephone: (407) 649-4000
Facsimile: (407) 841-0168

*Proposed Counsel for the Debtor and Debtor in Possession*

</div>

## **EXHIBIT 3**

Patient Notice

**INSERT LETTERHEAD**

[ADDRESS]

TO WHOM IT MAY CONCERN:

You are receiving this letter and enclosed legal notice because you, a loved one, or someone you represent, was or is a patient at one of the medical facilities (the "Facilities") operated by the Villages Health System, LLC.

As discussed in the attached legal notice, the operator of the Facilities has filed a voluntary bankruptcy petition to preserve its assets and pursue a going concern sale of the Facilities. The Facilities are staying open and continuing operations through this process. Anyone who is a current patient at one of the Facilities will continue to receive the same care and services they did before the bankruptcy.

The proposed sale(s) of the Facilities to an approved buyer(s) will be free and clear of all liens, claims, encumbrances, or interests that you or someone you represent may have against the Facilities, the owners, or operators of the Facilities. Furthermore, the operator of the Facilities proposes to assign to the approved buyer(s) all of its contracts with current patients subject to the terms of the attached notice. The approved buyer(s) will continue to provide services after the closing of an approved sale to current patients at the Facilities under any contract assumed by such buyer(s).

If you have any objection to the proposed sale of the Facilities, or the assumption and assignment of your contract to a new owner and operator, you must raise such objections pursuant to the procedures set forth in the attached legal notice by September 5, 2025 at 4:00 p.m. (prevailing Eastern Time) [insert date and time] (ET) or you will be deemed to have consented to the sale of the Facilities free and clear of all liens, claims, encumbrances, or interests (including claims based on theories of successor liability or similar doctrines) that you or someone you represent may have. If you have no objection, then you do not need to take any action. You may wish to consult with an attorney regarding these matters.

Again, the purpose of the bankruptcy cases and the proposed transaction(s) is to ensure that the Facilities continue to provide quality care and services to all residents and patients. If you have any questions regarding these matters, you may send an email to [insert email] or call 855.469.1264 (Toll-Free) and 714.586.5713 (International).

_____
Chief Restructuring Officer

## **EXHIBIT 4**

Contract Assumption and Assignment Notice

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| In Re: | Case No.: 6:25-bk-04156 |
| **THE VILLAGES HEALTH SYSTEM, LLC,**[1] | Chapter 11 |
| Debtor. | |

**NOTICE OF EXECUTORY CONTRACTS THAT MAY BE ASSUMED**
**AND ASSIGNED IN CONNECTION WITH THE SALE TRANSACTION**

---

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR
AFFILIATES MAY BE A COUNTERPARTY TO ONE OR MORE EXECUTORY
CONTRACTS AND/OR UNEXPIRED LEASES WITH THE DEBTOR.**[2]

**PARTIES RECEIVING THIS NOTICE SHOULD (I) READ THIS NOTICE
CAREFULLY AS YOUR RIGHTS MAY BE AFFECTED BY THE TRANSACTION
DESCRIBED HEREIN AND (II) LOCATE THEIR NAME AND CONTRACT(S)
AND/OR LEASE(S) ON SCHEDULE I HERETO**

---

**PLEASE TAKE NOTICE** that the Debtor, by and through its undersigned counsel, sought approval from the United States Bankruptcy Court for the Middle District of Florida (the "Court") to effectuate the sale of substantially all of the Debtor's assets in the Debtor's *Motion for Entry of Orders (A) Approving Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Approving Bidding Procedures for the Sale of Substantially All of the Debtor's Assets, (C) Approving Stalking Horse Bid Protections, (D) Scheduling Auction for and Hearing to Approve Sale of the Debtor's Assets, (E) Approving Form and Manner of Notice of Sale, Auction, and Sale Order Hearing, (F) Approving Assumption and Assignment Procedures, (G) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (H) Granting Related Relief* [Doc. No. X] (the "Motion"), including, among other things, establishing certain procedures relating to the Debtor's assumption and assignment of executory contracts and unexpired leases in connection therewith (collectively, the "Assumed Contracts").

**PLEASE TAKE FURTHER NOTICE** that on [insert date], 2025, the United States Bankruptcy Court for the Middle District of Florida (the "Court") entered its *Order (A) Approving Bidding Procedures for Sale of Substantially all of the Debtor's Assets Free and Clear of all Liens,*

---

[1] The Debtor in this Chapter 11 Case is The Villages Health System, LLC and the last four digits of its federal tax identification number are 6436. The Debtor's address is 600 Sunbelt Road, The Villages, FL 32159.

[2] This Notice is being sent to counterparties to potential executory contracts and unexpired leases.  This Notice is not an admission by the Debtor that such contract or lease is executory or unexpired.

*Claims, Encumbrances, and Interests, (B) Approving Stalking Horse Bid Protection, (C) Scheduling Auction for and Hearing to Approve Sale of Substantially all of the Debtor's Assets, (D) Approving Form and Manner of Notice of Sale, Auction, and Sale Order Hearing, (E) Approving Assumption and Assignment Procedures, (F) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (G) Granting Related Relief* [Doc. No. X] (the "Bidding Procedures Order").[3] The Bidding Procedures Order approved the bidding procedures (the "Bidding Procedures") attached as Exhibit 1 to the Bidding Procedures Order. The Bidding Procedures set the key dates and times related to the sale of the Purchased Assets and assumption and assignment of the executory contracts and unexpired leases.

**PLEASE TAKE FURTHER NOTICE** that copies of the Bidding Procedures Order, all related exhibits, including the Bidding Procedures, and any other filings related to the foregoing are available for free on the website of Debtor's notice agent, Stretto, Inc., at https://cases.stretto.com/thevillageshealth~~[insert website]~~.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Motion, the Debtor seeks to sell substantially all of its assets (the "Purchased Assets") to the Stalking Horse Bidder or any other Successful Bidder free and clear of all liens, claims, encumbrances, and other interests (including claims based on theories of successor liability or similar doctrines) pursuant to 11 U.S.C. § 363(f).

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures Order, if one or more Qualified Bids (in addition to the Stalking Horse Bid) are received by the Bid Deadline, an auction (the "Auction") to sell the Purchased Assets will take place at ~~[insert time]~~10:00 a.m. (prevailing Eastern Time) on ~~[insert date]~~September 8, 2025 at the offices of: (a) Baker & Hostetler LLP, 200 South Orange Avenue #2300, Orlando FL 32801, (b) via in person or a virtual platform, such as Zoom or GoToMeeting, or (c) such other location, in each case as the Debtor designates and shall be timely communicated to all persons entitled to attend the Auction. The Debtor may cancel the Auction pursuant to the Bidding Procedures.

PLEASE TAKE FURTHER NOTICE that, in accordance with the proposed Bid Procedures Order, the Debtor may, but is not required to, assume and assign the executory contract(s) and/or unexpired lease(s) to which you may be a counterparty to the Stalking Horse Bidder or such other party that is deemed the Successful Bidder at the conclusion of the Auction. As soon as reasonably practicable after closing the Auction, if any, and in any event not more than twenty-four (24) hours after closing the Auction, the Debtors shall file and serve a notice identifying the Successful Bidder and Back-Up Bidder, if any (the "Post-Auction Notice"). The Post-Auction Notice will also be available online for free on the website of Debtor's notice agent, Stretto, Inc., at https://cases.stretto.com/thevillageshealth~~[insert website]~~.

**PLEASE TAKE FURTHER NOTICE** that, if the Debtor does not timely receive more than one Qualified Bid, the Debtor will not conduct the Auction and, instead, will (a) file a notice with the Court identifying the Stalking Horse APA as the Successful Bid for the Purchased Assets and (b) promptly seek the Court's approval of the sale of the Purchased Assets to the Stalking

---

[3] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion or Bidding Procedures Order, as applicable.

Horse Bidder free and clear of all liens, claims, encumbrances, and other interests to the fullest extent permitted under 11 U.S.C.§ 363(f) and other applicable law.

**PLEASE TAKE FURTHER NOTICE** that a hearing will be held to approve the sale of the Purchased Assets to the Successful Bidder (the "Sale Order Hearing") before the United States Bankruptcy Court for the Middle District of Florida, on [insert date and time]September 12, 2025, or at such time thereafter as counsel may be heard or at such other time as the Court may determine. The Sale Order Hearing may be adjourned from time to time without further notice to creditors or parties in interest by filing a notice on the Court's docket for this Chapter 11 Case or the making of an announcement at the Sale Order Hearing.

**PLEASE TAKE FURTHER NOTICE** that objections to the Sale, if any, (i) must be in writing, (ii) conform to the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (iii) state with particularity the legal and factual basis for the objection, and (iv) be filed with the Court no later than September 5, 2025 at 4:00 p.m. (prevailing Eastern Time) [insert date and time] (prevailing Eastern Time) by the Court.

**PLEASE TAKE FURTHER NOTICE** that the Debtor has conducted a review of its books and records and has determined the cure amount for unpaid monetary obligations with respect to each contract or lease, which amount is set forth in the right-hand column on **Schedule 1** (the "Cure Amount"). If you object to (i) the potential assumption and assignment of any Assumed Contract to the Stalking Horse Bidder, including the ability of the Stalking Horse Bidder to provide adequate assurance of future performance, and/or (ii) the proposed cure amount to be paid in connection with the assumption and assignment of any Assigned Contract, **you must file an objection with the Bankruptcy Court no later than [ ● ], 2025 at 4:00 p.m. (prevailing Eastern Time)** (the "Contract Objection Deadline") and serve such objection on the following parties: (i) proposed counsel to the Debtors: Baker & Hostetler LLP, 200 South Orange Avenue #2300, Orlando FL 32801, Attn: Elizabeth Green (egreen@bakerlaw.com), Andrew Layden (alayden@bakerlaw.com); (ii) counsel for the DIP Lender [ ● ]; (iii) counsel to any statutory committee appointed in these cases; and (iv) the United States Trustee for the Middle District of Florida, [ ● ] (the "Objection Notice Parties") and counsel to the Stalking Horse Bidder, (x) 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, Attn: Caroline Reckler, Esq. (email: caroline.reckler@lw.com) and (y) 1271 Avenue of the Americas, New York, NY 10020, Attn: Andrew Sorkin, Esq. (email: andrew.sorkin@lw.com) (the "Stalking Horse Notice Parties").

**PLEASE TAKE FURTHER NOTICE** that if a Successful Bidder that is not the Stalking Horse Bidder prevails at the Auction, then the deadline to object (a "Supplemental Objection") solely to (i) the identity of a Successful Bidder and/or (ii) the ability of the Successful Bidder to provide adequate assurance of future performance under the Assumed Contract will be [ ● ]September 10, 2025, 2025 at 4:00 p.m. (prevailing Eastern Time) **or such other date and time subsequent to the Auction as may be established by the Bankruptcy Court in the Bid Procedures Order or otherwise** (the "Supplemental Objection Deadline"). Any Supplemental Objection must be served on the Objection Notice Parties and Stalking Horse Notice Parties so it is actually received by the Supplemental Objection Deadline and filed with the Clerk of the Bankruptcy Court for the Middle District of Florida, [ ● ]. Any party that fails to timely file a Supplemental Objection will be forever barred from objecting to the identity of the Successful

Bidder or to the assignment of that party's executory contract or unexpired lease to the Successful Bidder.

**PLEASE TAKE FURTHER NOTICE** that if no objection to the Cure Amount or the assignment of your Executory Contract(s) to the Successful Bidder is filed by the Contract Assumption and Assignment Notice Deadline or Supplemental Objection Deadline, as applicable, **you will be (i) forever barred from objecting to the Cure Amount or provision of adequate assurance of future performance and from asserting any additional cure or other amounts with respect to your contract(s) or lease(s), and the Debtor and the Stalking Horse Bidder or the Successful Bidder (as applicable) shall be entitled to rely solely upon the Cure Amount, (ii) deemed to have consented to the assumption or assumption and assignment, and (iii) forever barred and estopped from asserting or claiming defaults exist, that conditions to assignment must be satisfied under such contract(s) and/or lease(s) or that there is any objection or defense to the assumption and assignment of such contract(s) and/or lease(s). For the avoidance of doubt, the Debtor is not required to assume and assign any of the Executory Contract(s) listed in <u>Schedule I</u>.**

**FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER, OR ANY OTHER ORDER OF THE COURT IN THE CHAPTER 11 CASE MAY RESULT IN THE REJECTION OF YOUR BID FOR THE PURCHASED ASSETS.**

**PLEASE TAKE FURTHER NOTICE THAT ANY PARTY OR ENTITY WHO FAILS TO TIMELY FILE AND SERVE AN OBJECTION TO THE SALE BEFORE THE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE DEEMED TO HAVE CONSENTED TO THE SALE(S) AND FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE(S), INCLUDING WITH RESPECT TO THE TRANSFER OF THE PURCHASED ASSETS TO THE SUCCESSFUL BIDDER FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS THAT SUCH PARTY OR ENTITY MAY HAVE AGAINST THE DEBTOR OR THE PURCHASED ASSETS.**

Dated: [●], 2025

Respectfully submitted:

**BAKER & HOSTETLER LLP**

Elizabeth A. Green, Esq.
FL Bar No.: 0600547
Email: egreen@bakerlaw.com
Andrew V. Layden, Esq.
FL Bar No.: 86070
E-mail: alayden@bakerlaw.com
200 South Orange Avenue
Suite 2300

Orlando, Florida 32801-3432
Telephone: (407) 649-4000
Facsimile: (407) 841-0168

*Proposed Counsel for the Debtor and
Debtor in Possession*

## **SCHEDULE 1**

Potential Assumed Contracts

[TO BE FILED]

**EXHIBIT 5**

Post-Auction Notice

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| In Re: | Case No.: 6:25-bk-04156 |
| **THE VILLAGES HEALTH SYSTEM, LLC,**[1] | Chapter 11 |
| Debtor. | |

**NOTICE OF SUCCESSFUL BID AND BACKUP BID**

**PLEASE TAKE NOTICE** that, pursuant to the *Order (A) Approving Bidding Procedures for Sale of Substantially all of the Debtor's Assets Free and Clear of all Liens, Claims, Encumbrances, and Interests, (B) Approving Stalking Horse Bid Protection, (C) Scheduling Auction for and Hearing to Approve Sale of Substantially all of the Debtor's Assets, (D) Approving Form and Manner of Notice of Sale, Auction, and Sale Order Hearing, (E) Approving Assumption and Assignment Procedures, (F) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (G) Granting Related Relief* [Doc. No. X] (the "Bidding Procedures Order"), the United States Bankruptcy Court for the Middle District of Florida approved, among other things, the implementation of the Bidding Procedures attached to the Bidding Procedures Order as **Exhibit 1** in connection with the disposition of the Purchased Assets.[2]

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures Order, the deadline for submitting a Qualified Bid for the Purchased Assets was [insert date and time] (prevailing Eastern time)September 3, 2025 (the "Bid Deadline") and in the event that the Debtor timely received one or more Qualified Bids, in addition to the Qualified Bid submitted by the Stalking Horse Bidder, the Debtor would conduct the Auction on [insert date and time]September 8, 2025 at 10:00 a.m. (prevailing Eastern Time).

**PLEASE TAKE FURTHER NOTICE** that on September 8, 2025[insert date], the Debtor conducted the Auction in accordance with the Bidding Procedures. At the Auction, the Debtor determined that the highest and/or best offer was submitted by [●] (the "Successful Bidder" and the Successful Bidder's winning bid, the "Successful Bid") and the second highest and/or best offer was submitted by [●] (the "Backup Bidder," and the Backup Bidder's bid, the "Backup Bid"). Attached hereto as **Exhibit A** is a copy of the final, fully-executed contract for the sale and operations transfer (collectively, the "Transaction Documents", and the transaction contemplated thereby the "Transaction") between the Debtor and the Successful Bidder, containing the terms of the Successful Bid.

---

[1] The Debtor in this Chapter 11 Case is The Villages Health System, LLC and the last four digits of its federal tax identification number are 6436. The Debtor's address is 600 Sunbelt Road, The Villages, FL 32159.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms as set forth in the Bidding Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that, as contemplated by the Bidding Procedures Order, the Debtor will seek final approval of the Transaction to the Successful Bidder pursuant to the Transaction Documents, during the **Sale Order Hearing on** ~~[insert time and date]~~**September 12, 2025** before the United States Bankruptcy Court for the Middle District of Florida, in Courtroom X, 400 W. Washington Street, Suite 5100, Orlando, FL 32801. The Sale Order Hearing may be adjourned or rescheduled as ordered by the Bankruptcy Court, or by the Debtor in consultation with the Successful Bidder but without further notice to creditors and parties in interest other than by announcement by Debtor of the adjourned date at the Sale Order Hearing.

**PLEASE TAKE FURTHER NOTICE** that if the Transaction is not consummated with the Successful Bidder pursuant to the Successful Bid, the Debtor may designate the Backup Bidder as the new Successful Bidder and such Backup Bidder's Backup Bid as the new Successful Bid, and the Debtor will be authorized to consummate the Transaction with the Backup Bidder without further order of the Court.

**PLEASE TAKE FURTHER NOTICE** that the deadline to object to the approval of the Transaction and the sale of the Purchase Assets to the Successful Bidder free and clear is ~~[insert date and time] (prevailing Eastern time)~~September 5, 2025, and any objection must comply with the Bidding Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion, the Bidding Procedures Order, the Bidding Procedures, the Transaction Documents, and all other documents filed with the Court may be obtained on the website of the Debtor's notice agent, Stretto, Inc. website: https://cases.stretto.com/thevillageshealth~~[insert website]~~.

**PLEASE TAKE FURTHER NOTICE THAT ANY PARTY OR ENTITY WHO FAILS TO TIMELY FILE AND SERVE AN OBJECTION TO THE SALE BEFORE THE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE DEEMED TO HAVE CONSENTED TO THE SALE(S) AND FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE(S), INCLUDING WITH RESPECT TO THE TRANSFER OF THE PURCHASED ASSETS TO THE SUCCESSFUL BIDDER FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS THAT SUCH PARTY OR ENTITY MAY HAVE AGAINST THE DEBTOR OR THE PURCHASED ASSETS.**

Dated: [●], 2025

                                        Respectfully submitted:


                                        **BAKER & HOSTETLER LLP**

                                        Elizabeth A. Green, Esq.
                                        FL Bar No.: 0600547
                                        Email: egreen@bakerlaw.com
                                        Andrew V. Layden, Esq.
                                        FL Bar No.: 86070

E-mail: alayden@bakerlaw.com
200 South Orange Avenue
Suite 2300
Orlando, Florida 32801-3432
Telephone: (407) 540-7920
Facsimile: (407) 841-0168

*Proposed Counsel for the Debtor and
Debtor in Possession*

# **EXHIBIT 6**

Stalking Horse APA