**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| In re: | Case No.: 6:25-bk-04156-LVV |
| **THE VILLAGES HEALTH SYSTEM, LLC,**[1] | Chapter 11 |
| Debtor. | |

**DEBTOR'S _EMERGENCY_ MOTION FOR ENTRY OF ORDER**
**(I) AUTHORIZING THE DEBTOR TO BORROW ADDITIONAL FUNDS**
**UNDER THE EXISTING DIP FACILITY, WITH CERTAIN MODIFICATIONS,**
**AND (II) GRANTING RELATED RELIEF**

_**Emergency Hearing Requested on August 18, 2025**_

**BASIS FOR EMERGENCY HEARING AND RELIEF**

In accordance with Rule 2081-1(g)(1)-(2) of the Local Rules of the United States Bankruptcy Court for the Middle District of Florida, Debtor respectfully requests that the Court conduct an emergency hearing on the Motion at the hearing in this case set for August 18, 2025 at 2:00 p.m. EST. As set forth herein, the Debtor's need for financing has increased as the result of certain payors withholding funds from the Debtor, and the DIP Lender has agreed to loan the Debtor additional funds to maintain ongoing operations and ensure the availability of essential medical care for its more than 55,000 patients. Immediate approval of the amended DIP Facility, which includes authorization for the use of cash collateral, is critical to ensure the Debtor meets its day-to-day obligations, including the payment of wages and benefits and acquisition of essential medical supplies.

The Villages Health System, LLC (the "Debtor"), the debtor and debtor in possession in the above-captioned bankruptcy case (the "Chapter 11 Case"), submits this motion (the "Motion") requesting entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) authorizing the Debtor to borrow additional funds under the existing DIP financing facility approved by the Court in its _Interim Order Granting Debtor's Emergency Motion for_

---

[1] The address of the Debtor is 600 Sunbelt Road, The Villages, Florida 32159. The last four digits of the Debtor's federal tax identification number is 6436.

*Interim and Final Orders (I) Approving Postpetition Financing, (II) Authorizing the Use of Cash Collateral, (III) Approving Liens and Superpriority Administrative Expense Status, (IV) Modifying Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* (Doc. No. 60) (the "Existing DIP Order" and "DIP Facility," respectively), with certain modifications, and (ii) granting related relief.

In support of the Motion, the Debtor submits the contemporaneously filed *Declaration of Neil Luria in Support of the Motion for Approval of Modified Debtor in Possession Financing* (the "Luria Declaration") and states as follows:

## PRELIMINARY STATEMENT

1.    Since the Petition Date (defined below), UnitedHealthcare Insurance Company and UnitedHealthcare of Florida, Inc. (together, "UnitedHealthcare") has unilaterally withheld certain payments historically paid to the Debtor under the parties' contracts (collectively, the "Surplus Payments"). The Debtor anticipates that UnitedHealthcare's withholding of Surplus Payments is currently in excess of $7.6 million on a post-petition basis and will cause an approximately $20 million receipts shortfall under the current DIP Budget - thereby rendering the original amount of the current DIP Facility insufficient to fund the Chapter 11 Case and facilitate an orderly administration of the bankruptcy estate. The Debtor is continuing to investigate if UnitedHealthcare's actions are appropriate and has attempted to negotiate a resolution to ensure the availability of the required funding. As of the filing of this Motion, however, Debtor does not anticipate the parties will reach an agreement to ensure the payment of the Surplus Payments.

2.    The Debtor has also engaged in negotiations with PMA Lender, LLC (the "DIP Lender") and reached an agreement for the extension of additional funds under the current DIP Facility, with certain modifications discussed herein (the "Amended DIP Facility"). Under the

2

Amended DIP Facility, the new money component of the DIP Facility is increased from $24 million to $45 million, which the Debtor believes will provide sufficient additional funding to absorb the budgetary shortfall due to the UnitedHealthcare funding cuts. Additionally, the DIP Lender has agreed to: (i) reduce the non-default interest rate of the additional funds under the Amended DIP Facility from 12% to 10%[2]; (ii) withdraw consideration of the DIP Lender's request for a $15,000,000 roll-up of pre-petition first lien debt (the "Pre-Petition Roll-up Loan"); and (iii) extend the Challenge Deadline from September 1 to October 9, 2025. Except as otherwise stated, all other material terms of the Amended DIP Facility remain the same as the existing DIP Facility; *provided* that the distribution and use of the Amended DIP Facility proceeds shall be subject to the amended DIP Budget, attached hereto as **Exhibit B** (the "Amended DIP Budget").

3.      The Debtor also received an offer for a competing DIP loan from a party other than the DIP Lender. After further negotiations with the DIP Lender and concessions by the DIP Lender, the Debtor has determined in its business judgment that the Amended DIP Facility represents the best currently available offer and is in the best interest of the bankruptcy estate, and the competing offer reflects terms that are materially less favorable to the Debtor than those represented by the Amended DIP Loan.

4.      By this Motion, the Debtor requests approval of the Amended DIP Loan on an interim basis pursuant to the Proposed Order, and requests that the Court schedule a final hearing at the already scheduled hearing on September 9, 2025, to consider approval of the Amended DIP Loan on a final basis.

---

[2] For the avoidance of doubt, the original $5M DIP Facility balance shall accrue interest at a non-default rate of 12% under the First Interim Order, and all principal over $5M shall accrue interest at a non-default rate of 10%.

## BACKGROUND

5.      On July 3, 2025 (the "Petition Date"), Debtor filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code—thereby commencing this Chapter 11 Case. The Debtor continues to operate its businesses and manage its affairs as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No creditor or equity committees, trustees, or examiners has been appointed in the Chapter 11 Case.  On August 8, 2025, Ms. Suzanne Richards was appointed as Patient Care Ombudsman and Consumer Privacy Ombudsman (Doc. Nos. 134, 135).

6.      A discussion of the Debtor and its business operations, the facts and circumstances supporting this Motion, and events precipitating the Debtor's bankruptcy filing are set forth in the *Declaration of Neil Luria in Support of Chapter 11 Petition and First Day Motions* [Doc. No. 3] (the "First Day Declaration").

7.      On July 3, 2025, the Debtor filed its *Emergency Motion for Interim and Final Orders (I) Approving Postpetition Financing, (II) Authorizing the Use of Cash Collateral, (III) Approving Liens and Superpriority Administrative Expense Status, (IV) Modifying Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* (Doc. No 4) (the "DIP Motion").

8.      The DIP Motion sought approval of the $39 million dollar DIP Facility, consisting of $24 million in new money loans and a proposed roll-up of $15 million in first priority senior secured pre-petition debt held by the DIP Lender. The Debtor's obligation to repay the DIP Facility was secured by, among other things, an allowed superpriority administrative expense claim and a first priority lien on substantially all of the Debtor's assets, including Avoidance Actions upon entry of a final order. Under the terms of the DIP Facility, $5 million of new money loans were available upon entry of an interim order approving the DIP Motion, with the remaining amounts

4

available upon entry of a final order approving the DIP Facility. The DIP Motion was supported by two declarations establishing that the Debtor had exposed the proposed DIP Facility to the market and that the DIP Facility was the best available financing available to the Debtor under the circumstances (Doc. Nos. 3, 19).

9.      On July 9, 2025, the Court conducted the first-day hearings in this case and entered the Existing DIP Order approving the DIP Facility on an interim basis and scheduling a final hearing. In accordance with the Existing DIP Order, the Debtor borrowed $5 million upon interim approval of the DIP Facility.  The principal balance under the DIP Loan currently totals $5 million.

10.     The Debtor has been marketing its assets for sale under the terms and conditions of the Court's July 28, 2025 *Order (A) Approving Bidding Procedures for Sale of Substantially all of the Debtor's Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for and Hearing to Approve the Sale of the Debtor's Assets, (D) Approving Form and Manner of Notice of Sale, Auction, and Sale Order Hearing, (E) Approving Assumption and Assignment Procedures, (F) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (G) Granting Related Relief* (Doc. No. 110) (the "Sale and Bid Procedures Order"). Among other things, the Sale and Bid Procedures Order establishes a bid deadline of September 3, 2025, an auction (if necessary) on September 7, 2025, and a hearing to consider approval of the sale on September 9, 2025.

11.     The Debtor's management and employees, along with the Debtor's professionals, including Baker & Hostetler LLP (as counsel), Evercore Group LLC (as investment banker), and SOLIC (as Chief Restructuring Officer and additional personnel), are engaged in substantial due diligence with multiple parties evaluating whether to bid on the Debtor's assets.

12.     The Debtor's professionals are also conducting a forensic analysis of the Debtor's

sources and uses of pre-petition funds, and have so far found no evidence of missing or unaccounted for funds. The Debtor's professionals have completed an initial analysis for the years 2022-2024, with the analysis of years 2020-2021 nearing completion, which preliminarily supports the following:

     a. For the year 2022, the Debtor's operating receipts were approximately $164.3 million and its operating disbursements were approximately $100.7 million, including approximately $10.7 million in rent paid to related entities for the Debtor's state of the art facilities, yielding a net operating cash flow of approximately $63.6 million. The Debtor's line of credit with its majority shareholder, which accrued interest at approximately 5.85%, was paid down on a net basis by approximately $63 million. Tax-related distributions to the owners of the Debtor (a "flow-through" entity for tax purposes) totaled $0.

     b. For the year 2023, the Debtor's operating receipts were approximately $188.2 million and its operating disbursements were approximately $118.5 million, including approximately $11.3 million in rent paid to related entities for the Debtor's state of the art facilities, yielding a net operating cash flow of approximately $69.8 million. The Debtor's line of credit with its majority shareholder, which accrued interest at approximately 5.85%, was paid down on a net basis by approximately $22.7 million. Tax-related distributions to the owners of the Debtor (a "flow-through" entity for tax purposes) totaled approximately $44.9 million.

     c. For the year 2024, the Debtor's operating receipts were approximately $186.6 million and its operating disbursements were approximately $133.4 million, including approximately $11.8 million in rent paid to related entities for the Debtor's state of the art facilities, yielding a net operating cash flow of approximately $53.1 million. The Debtor's line of credit with its majority shareholder, which accrued interest at approximately 5.85%, was paid down on a net basis by approximately $32.5 million. Tax-related distributions to the owners of the Debtor (a "flow-through" entity for tax purposes) totaled approximately $19.3 million.

The Debtor's CRO and additional personnel are continuing to review and analyze the Debtor's pre-petition sources and uses of funds and the Debtor intends to provide the conclusions of this analysis to all parties in interest.

     13.    Recently, UnitedHealthcare began withholding the Surplus Payments historically made to the Debtor.  These Surplus Payments total approximately $20 million for the period

covered by the DIP Budget. The Debtor is continuing to investigate if UnitedHealthcare's unilateral post-petition action of cutting off the Debtor's funding is appropriate, and reserves all of its rights in connection therewith. Additionally, the Debtor has attempted to negotiate a resolution to ensure the availability of the required funding. As of the filing of this Motion, however, the Debtor does not anticipate the parties will reach an agreement to ensure the payment of the Surplus Payments.

14.    The DIP Facility and original DIP Budget were predicated on the continued receipt of funds from the payors, subject to certain conservative adjustments, and did not fully anticipate post-petition unilateral actions by the payors to change the historical payments made to the Debtor. Without the Surplus Payments, the Debtor anticipates that it will be unable to continue operations in the ordinary course of business without additional funding.

15.    After the funding cut, the Debtor began expedited negotiations with the DIP Lender and UnitedHealthcare. The Debtor received and evaluated an offer to provide DIP funding from a party other than the DIP Lender. After conveying that offer to the DIP Lender, the Debtor also negotiated with the DIP Lender regarding additional borrowing under the existing DIP Loan and modifications to the DIP Lender terms. The terms ultimately offered by the DIP Lender were substantially more favorable to the Debtor than those offered by the other party. It is the Debtor's business judgment that the Amended DIP Facility represents the best currently available offer and is in the best interest of the bankruptcy estate.

**<u>RELIEF REQUESTED</u>**

16.    By this Motion, the Debtor requests entry of an order, substantially in the form of the Proposed Order, authorizing the Debtor to borrow additional funds governed by the existing DIP Term Sheet and DIP Order, subject to the modifications set forth herein, including that (a) the

4901-2125-5774.11

maximum aggregate principal amount of new money loans shall be increased from $24 million to $46 million, (b) the Interest Rate of the additional funds under the Amended DIP Facility is reduced from 12% to 10%. (c) the request for a $15,000,000.00 Prepetition Roll-Up Loan be withdrawn, and (d) the Challenge Date be extended from September 1 to October 9, 2025. The Debtor also requests that the Court schedule a final hearing at the already scheduled hearing on September 9, 2025, to consider approval of the Amended DIP Loan on a final basis, and grant any other relief that is appropriate under the circumstances.

### BASIS FOR RELIEF REQUESTED

17.     The Debtor, along with its advisors, have determined that the most prudent course of action in light of UnitedHealthcare's cuts to the Debtor's funding is to secure access to additional post-petition financing and the use of Cash Collateral to preserve the Debtor's ability to fulfil its duties as a debtor in possession and ensure that the Debtor can continue providing high-quality patient care to all of its patients during the sale process. The Amended DIP Facility also ensures the Debtor's employees and professionals can remain focused on the myriad of issues relating to the sale process to maximize the value of the Debtor's assets.

**A.     Approval of the Amended DIP Facility is Necessary and Appropriate under Sections 364(c) and (d) of the Bankruptcy Code.**

18.     Through good faith negotiations with the DIP Lender and other parties, the Debtor has obtained a commitment from the DIP Lender that will ensure adequate liquidity for the Debtor and provide stability for the Debtor's operations during the sale process. Additionally, the Debtor was able to negotiate for additional benefits for the estate, including (i) a reduction in the interest rate of the additional funds under the Amended DIP Facility from 12% to 10%; (ii) a withdrawal of the DIP Lender's request for a $15,000,000 Prepetition Roll-Up Loan, (iii) an extension of the Challenge Period. Finally, the DIP Lender has agreed to loan the funds necessary to bridge the

4901-2125-5774.11

Debtor's budgeted cash needs pending a final hearing on September 9, 2025 based on an interim order.

19.     A chart comparing the terms of the DIP Facility to the terms of the Amended DIP Facility are attached hereto as **Exhibit C.**

20.     Under sections 364(c) and (d)(1) of the Bankruptcy Code, the Court may approve and authorize a debtor to obtain postpetition financing on a super-priority administrative basis and/or secured by pre- and postpetition assets of the debtor and its estate. 11 U.S.C. §§ 364(c), (d)(1).

21.     For good reason, bankruptcy courts defer to a debtor's business judgment on certain business decisions, including the decision to borrow money, unless such decision is arbitrary and capricious. *See In re YL West 87th Holdings I LLC,* 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010) ("Courts have generally deferred to a debtor's business judgment in granting section 364 financing."); *Trans World Airlines, Inc. v. Travellers Int'l AG (In re Trans World Airlines, Inc.)*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that the interim loan, receivables facility and asset-based facility were approve because they "reflect[ed] sound and prudent business judgment on the part of TWA…[were] reasonable under the circumstances and in the best interests of TWA and its creditors"); *In re Filene's Basement, LLC*, 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) ("Transactions under § 363 must be based upon the sound business judgment of the debtor or trustee.") In fact, "[m]ore exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Codes provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1311 (5th Cir. 1985).

22.     The Debtor's determination to enter into a modified agreement with the DIP Lender

to obtain additional financing represents an appropriate exercise of the Debtor's sound business judgment and should be approved. The critical funding to be provided under the Amended DIP Facility will allow the Debtor to ensure high-quality patient care and provide adequate liquidity to fulfil its obligations as a debtor-in-possession. The Amended DIP Facility is the result of good faith negotiations with the DIP Lender, pursuant to which the Debtor was able to negotiate for additional benefits for the estate, including an increased principal amount, a reduced Interest Rate, an extended Challenge Period, and a waiver of the request for a roll-up of the pre-petition debt.

23.     To avoid immediate and irreparable harm, Debtor requires a significant infusion of cash to fund operational expenses and preserve assets, and more importantly, to ensure adequate healthcare for its patients. Sustaining operations is essential to preserving the value of estate assets pending a sale, which inures to the benefit of all creditors and interest holders. The Amended DIP Facility terms are fair, reasonable and adequate, given the circumstances of the Debtor and DIP Lender. *See Bland v. Farmworker Creditors*, 308 B.R. 109, 113-14 (S.D. Ga. 2003). While the DIP Lender is related to the Debtor, the objective terms of the Amended DIP Facility and surrounding circumstances demonstrate that the Amended DIP Facility provides financing on extremely beneficial terms for the Debtor—terms even more favorable in many ways than the original DIP Facility.

24.     The Debtor believes that the Amended DIP Facility represents the best financing option available under the circumstances. Accordingly, Debtor submits that the decision to incur the DIP Obligations under the Amended DIP Facility is the result of a reasonable exercise of Debtor's business judgment and should be approved.

**B.     <u>Expedited Relief is Required to Avoid Immediate and Irreparable Harm</u>**

25.     Bankruptcy Rules 4001(b)(2) and 4001(c)(2) provide that a final hearing on a

motion to use cash collateral or obtain credit, respectively, may not be commenced earlier than

fourteen (14) days after the service of such motion.  Upon request, however, the Court may conduct

a preliminary expedited hearing on the motion and authorize the use of cash collateral and the

obtaining of credit on an interim basis "to the extent necessary to avoid immediate and irreparable

harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b)(2), (c)(2).

26.     As described herein and in the supporting declaration, Debtor faces immediate and

irreparable harm absent immediate relief due to the significant disruption to its business operations

and resulting harm to the business as a going concern—not to mention the potential harm to the

envisioned sale transaction and the Debtor's ability to continue providing high-quality healthcare

to its patients.

27.     Due to the importance of immediate access to funding, courts routinely approve

interim relief in similar circumstances. *See, e.g., In re Red Lobster Management LLC, et al.*, Case

No. 24-02486-GER (Bankruptcy M.D. Fla. May 19, 2024); *In re Delphi Behavioral Health Group,*

*LLC, et al.*, Case No. 23-20945-PDR (Bankr. S.D. Fla. Mar. 7, 2023); *In re Vital Pharmaceuticals,*

*Inc., et al.*, Case No 22-17842 (PDR) (Bankr. S.D. Fla. Jan. 12, 2023); *In re Tamarac 10200, LLC*

*and Unipharma, LLC*, Case No. 20-bk-23346-PDR (Bankr. S.D. Fla. Dec. 30, 2020); *In re It'Sugar*

*FL U LLC et al.*, Case No. 20-20259-RAM (Bankr. S.D. Fla. Oct. 1, 2020); *In re Midtown Campus*

*Properties, LLC*, Case No. 20-1573-RAM (Bankr. S.D. Fla. May 26, 2020); *In re Cinemex USA*

*Real Estate Holdings, Inc., et al.*, Case No. 20-14695-LMI (Bankr. S.D. Fla. May 18, 2020); *In re*

*ProHCM Holdings, Inc.*, Case No. 18-23156-AJC (Bankr. S.D. Fla. Nov. 1, 2018); *In re Miami*

*International Medical Center, LLC*, Case No. 18-12741-LMI (Bankr. S.D. Fla. Mar. 15, 2018); *In*

*re Magnum Construction Management, LLC*, Case No. 19-12821-AJC (Bankr. S.D. Fla. Mar. 8,

2019); *In re Adinath Corp, et al.*, Case No. 15-16885-LMI (Bankr. S.D. Fla. Apr. 17, 2015).

28.     To implement the foregoing successfully, Debtor requests that the Court waive the fourteen (14) day stay of an order authorizing the use, sale, or lease of property or modifying the automatic stay under Bankruptcy Rules 4001(a)(3) and 6004(h) and find the DIP Orders, as applicable, immediately effective and enforceable upon entry.

## **RESERVATION OF RIGHTS**

29.     Nothing contained in this Motion or any order granting the relief requested in this Motion, herein, and no action taken pursuant to such relief requested or granted, is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against Debtor or any other party  under the Bankruptcy Code or other applicable non-bankruptcy law; (b) an impairment or waiver of any right to dispute any claim against, or interest in, Debtor, its property, or its Estate on any grounds; (c) a promise or requirement to pay any claim; (d) an assumption, adoption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code; (e) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise entitled to preferential treatment of the sort discussed herein; (f) an implication, admission, or finding as to (i) the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on the property of Debtor or its Estate or (ii) a waiver or limitation on any party's ability to challenge, recharacterize as equity, void, claw back, or seek other relief with respect to any particular payments authorized hereunder; (g) an impairment or waiver of any claims or causes of action which may exist against any entity; or (h) a waiver of Debtor's or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

## **NOTICE**

30.     Notice of this Motion has been provided by email, facsimile or first-class mail to:

(a) the Office of the United States Trustee for the Middle District of Florida; (b) the Debtor; (c) all secured creditors; (d) the Office of the Attorney General of the State of Florida; (e) the twenty (20) largest unsecured creditors for the Debtor; (f) the Debtor's identified, interested taxing authorities, including the Internal Revenue Service; (g) the Debtor's identified, interested government and regulating entities; (h) other interested parties as identified by the Debtor; and (i) any known counsel for (a)-(h). The method of service for each party will be described more fully in the certificate of service prepared by Stretto. The Debtor respectfully submit that, based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, no further notice is required.

**WHEREFORE**, Debtor respectfully requests that the Court enter an order granting the Motion and approving the Amended DIP Facility in substantially the form attached hereto as Exhibit A.

[Signature Page to Follow]

13

Dated: August 14, 2025

**BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
FL Bar No.: 0600547
Email: egreen@bakerlaw.com
**Jimmy D. Parrish, Esq.**
FL Bar No.: 0526401
E-mail: jparrish@bakerlaw.com
**Andrew V. Layden, Esq.**
FL Bar No.: 86070
E-mail: alayden@bakerlaw.com
200 South Orange Avenue
Suite 2300
Orlando, Florida 32801-3432
Telephone: (407) 649-4000
Facsimile: (407) 841-0168

*Proposed Counsel for the Debtor and Debtor in Possession*

## EXHIBIT A

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| In re: | **Case No.: 6:25-bk-04156-LVV** |
| **THE VILLAGES HEALTH SYSTEM, LLC,[1]** | **Chapter 11** |
| **Debtor.** | |

**INTERIM ORDER GRANTING DEBTOR'S *EMERGENCY* MOTION FOR ENTRY OF
ORDER (I) AUTHORIZING THE DEBTOR TO BORROW ADDITIONAL FUNDS
UNDER THE EXISTING DIP FACILITY, WITH CERTAIN MODIFICATIONS,
AND (II) GRANTING RELATED RELIEF**

THIS CASE came before the Court on August 18, 2025, at 2:00 p.m. (EST) (the "Hearing")

to consider the Debtor's *Emergency Motion for Entry of Order (I) Authorizing the Debtor to*

*Borrow Additional Funds Under the Existing DIP Facility, with Certain Modifications, and (II)*

*Granting Related Relief* [Doc. No. __] ("Amended DIP Motion").[2] The Court has considered (i)

the Amended DIP Motion and supporting declaration, original DIP loan motion (Doc. No. 4), the

*Interim Order Granting Debtor's Emergency Motion for Interim and Final Orders (I) Approving*

---

[1] The address of the Debtor is 600 Sunbelt Road, The Villages, Florida 32159. The last four digits of the Debtor's federal tax identification number is 6436.

[2] Unless otherwise defined herein, all terms defined in the Amended DIP Motion shall have the same meaning in this Order, and if not defined in the Amended DIP Motion, the same meanings ascribed to them in the DIP Motion or First Interim Order.

*Postpetition Financing, (II) Authorizing the Use of Cash Collateral, (III) Approving Liens and Superpriority Administrative Expense Status, (IV) Modifying Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* (Doc. No. 60) ("First Interim Order"), and all related filings, and (ii) the arguments of counsel and evidence admitted during the Hearing, finds that that notice of the Amended DIP Motion was appropriate and no further or other notice is appropriate, and that there is sufficient cause to grant the Amended DIP Motion as set forth herein. Accordingly, it is

IT IS ORDERED:

1.      The Amended DIP Motion is granted on an interim basis.

2.      The Debtor is authorized to use Cash Collateral under the terms of the amended DIP Budget ("Amended Budget") attached hereto as **Exhibit A** with secured creditors as of the Petition Date having replacement liens to the same extent, priority, and validity as of the Petition Date.

3.      The Debtor is hereby authorized to obtain from the DIP Lender pursuant to the Amended DIP Facility and repay to the DIP Lender new money advances in accordance with the DIP Agreement, the First Interim Order, this Order, the DIP Documents, and the Amended Budget, all as amended herein.

4.      The terms of this Court's First Interim Order shall apply and be binding as to the Amended DIP Loan, except for the following provisions:

(a)     Amount Borrowed.  The maximum aggregate principal amount of new money loans shall be increased from $24 million to $46 million.

(b)     Roll-up. The request for the Prepetition Roll-up is withdrawn.

(c)     Interest Rate. The non-default Interest Rate on the Amended DIP Loan balance over $5,000,000 shall accrue at 10% per year based upon days actual elapsed, using a 360-day annual period. For the avoidance of doubt, the non-default Interest Rate on

2

balances under $5,000,000 shall accrue at 12% per year under the First Interim Order.

(d)    Challenge Period. The Challenge Period is hereby extended to October 9, 2025.

(e)    Milestones.

      (i)    Final DIP Order. The Milestone for the Court to enter a final order approving the Amended DIP Loan shall be September 10, 2025.

      (ii)    Auction. The Milestone for the Debtor to complete any auction in connection with the sale shall be September 7, 2025.

      (iii)    Sale Order. The Milestone for the Court to have entered an order approving a sale of substantially all of the Debtor's assets shall be September 10, 2025.

5.    To the extent there is a conflict between the First Interim Order and this Order, this Order controls.

6.    The Court shall hold a hearing to consider approval of the DIP Facility on a final basis (the "Final Hearing") on September 9, 2025, at 1:00 p.m. prevailing Eastern Time, before this Court. Debtor shall promptly serve copies of this Order (which shall constitute adequate notice of the Final Hearing) on the Notice Parties (as defined in the First Interim Order).

# # #

*Attorney Elizabeth A. Green is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of this order.*

4937-6328-4830.5

## Exhibit A

**Amended DIP Budget**

THE VILLAGE HEALTH SYSTEM ("TVH")
Revised DIP Budget

PRELIMINARY DRAFT
Subject to change based on continued review

### REVISED TVH DIP BUDGET

| Weekly Cash Flow Summary | Payroll | | Payroll | | Payroll | | Payroll | | Payroll | | Payroll | | Payroll | Total Forecast | Total Forecast | Total Forecast | Total Forecast | Total Forecast |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Actual (A) / Forecast (F) | A | A | A | A | A | F | F | F | F | F | F | F | F | October | November | December | 13-Week | Current-EOY |
| Week # | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | | | | 13-Week | Current-EOY |
| Week Beginning | 7/7/25 | 7/14/25 | 7/21/25 | 7/28/25 | 8/4/25 | 8/11/25 | 8/18/25 | 8/25/25 | 9/1/25 | 9/8/25 | 9/15/25 | 9/22/25 | 9/29/25 | 10/6/25 | 11/3/25 | 12/1/25 | 7/7/25 | 7/7/25 |
| Week Ending | 7/11/25 | 7/18/25 | 7/25/25 | 8/1/25 | 8/8/25 | 8/15/25 | 8/22/25 | 8/29/25 | 9/5/25 | 9/12/25 | 9/19/25 | 9/26/25 | 10/3/25 | 10/31/25 | 11/28/25 | 1/2/26 | 10/3/25 | 1/2/26 |
| **RECEIPTS** | | | | | | | | | | | | | | | | | | |
| Total Receipts | $1,489,110 | $2,639,381 | $567,595 | $580,346 | $1,572,115 | $495,840 | $2,812,800 | $526,106 | $517,000 | $1,230,000 | $2,835,790 | $480,000 | $563,106 | $1,900,000 | $1,667,364 | $0 | $16,309,190 | $19,876,554 |
| **OPERATING DISBURSEMENTS** | | | | | | | | | | | | | | | | | | |
| Payroll Wages, Tax, Bonus, Benefits | ($3,171,189) | ($242,593) | ($2,764,792) | ($278,963) | ($2,973,041) | ($206,500) | ($3,724,550) | ($171,500) | ($3,116,295) | ($218,500) | ($2,856,355) | ($171,500) | ($3,135,855) | ($3,230,696) | $0 | $0 | ($23,031,633) | ($26,262,329) |
| Rent | $0 | $0 | $0 | $0 | ($1,137,787) | $0 | $0 | $0 | ($1,135,000) | $0 | $0 | $0 | ($1,135,000) | $0 | $0 | $0 | ($3,407,787) | ($3,407,787) |
| Utilities | $0 | $0 | ($9,150) | $0 | $0 | ($8,000) | ($13,500) | $0 | ($8,000) | $0 | ($13,500) | $0 | ($8,000) | ($41,100) | $0 | $0 | ($76,150) | ($117,250) |
| Insurance | $0 | $0 | ($136,757) | $0 | $0 | ($75,000) | ($163,010) | $0 | ($75,000) | $0 | ($13,010) | $0 | $0 | $0 | $0 | $0 | ($3,653,698) | ($3,653,698) |
| All Other Expenses | ($184) | ($233,574) | ($235,356) | ($473,759) | ($495,170) | ($865,741) | ($595,600) | ($1,459,876) | ($822,220) | ($426,391) | ($626,600) | ($1,208,042) | ($1,231,940) | ($2,432,201) | ($525,000) | ($475,000) | ($8,674,453) | ($12,106,654) |
| **Total Operating Expenses** | ($3,171,373) | ($476,167) | ($3,146,055) | ($752,723) | ($4,605,997) | ($1,080,241) | ($4,408,660) | ($1,794,386) | ($5,081,515) | ($727,891) | ($3,496,455) | ($1,400,552) | ($8,701,716) | ($5,703,997) | ($525,000) | ($475,000) | ($38,843,720) | ($45,547,718) |
| **Net Cash Flow before Non-Op. Disb.** | ($1,682,263) | $2,163,214 | ($2,578,459) | ($172,376) | ($3,033,883) | ($584,401) | ($1,595,850) | ($1,268,280) | ($4,564,515) | $502,109 | ($660,665) | ($920,552) | ($8,138,610) | ($3,803,997) | $1,142,364 | ($475,000) | ($22,534,531) | ($25,671,164) |
| **Non-Operating Disbursements** | | | | | | | | | | | | | | | | | | |
| Total Bankruptcy Fees [A] | $0 | $0 | $0 | $0 | $0 | $0 | ($4,230,000) | ($3,081,667) | ($416,667) | ($366,667) | ($275,000) | ($2,825,000) | ($6,412,500) | ($2,850,000) | ($2,340,000) | ($2,038,592) | ($17,607,500) | ($24,836,092) |
| Capex | $0 | $0 | $0 | $0 | $0 | $0 | ($154,821) | $0 | $0 | $0 | ($154,821) | $0 | $0 | $0 | $0 | $0 | ($309,643) | ($309,643) |
| **Total Non-Operating Disb.** | $0 | $0 | $0 | $0 | $0 | $0 | ($4,384,821) | ($3,081,667) | ($416,667) | ($366,667) | ($429,821) | ($2,825,000) | ($6,412,500) | ($2,850,000) | ($2,340,000) | ($2,038,592) | ($17,917,143) | ($25,145,735) |
| **Net Cash Flow** | ($1,682,263) | $2,163,214 | ($2,578,459) | ($172,376) | ($3,033,883) | ($584,401) | ($5,980,672) | ($4,349,947) | ($4,981,182) | $135,442 | ($1,090,486) | ($3,745,552) | ($14,551,110) | ($6,653,997) | ($1,197,636) | ($2,513,592) | ($40,451,673) | ($50,816,899) |
| **CASH BALANCE** | | | | | | | | | | | | | | | | | | |
| Beginning Book Balance | $6,451,673 | $4,769,410 | $6,932,625 | $4,354,166 | $9,181,789 | $6,147,907 | $5,563,506 | $5,000,000 | $5,000,000 | $5,000,000 | $5,135,442 | $5,000,000 | $5,000,000 | $11,000,000 | $4,346,003 | $3,148,367 | $6,451,673 | $6,451,673 |
| Net Cash Flow | ($1,682,263) | $2,163,214 | ($2,578,459) | ($172,376) | ($3,033,883) | ($584,401) | ($5,980,672) | ($4,349,947) | ($4,981,182) | $135,442 | ($1,090,486) | ($3,745,552) | ($14,551,110) | ($6,653,997) | ($1,197,636) | ($2,513,592) | ($40,451,673) | ($50,816,899) |
| Ending Book Bal. before DIP Draw | $4,769,410 | $6,932,625 | $4,354,166 | $4,181,789 | $6,147,907 | $5,563,506 | ($417,166) | $650,053 | $18,818 | $5,135,442 | $4,044,956 | $1,254,448 | ($9,551,110) | $4,346,003 | $3,148,367 | $634,775 | ($34,000,000) | ($44,365,226) |
| DIP Borrowings | $0 | $0 | $0 | $5,000,000 | $0 | $0 | $5,417,166 | $4,349,947 | $4,981,182 | $0 | $955,044 | $3,745,552 | $20,551,110 | $0 | $0 | $0 | $45,000,000 | $45,000,000 |
| DIP (Repayment) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Ending Book Bal. after DIP Draw | $4,769,410 | $6,932,625 | $4,354,166 | $9,181,789 | $6,147,907 | $5,563,506 | $5,000,000 | $5,000,000 | $5,000,000 | $5,135,442 | $5,000,000 | $5,000,000 | $11,000,000 | $4,346,003 | $3,148,367 | $634,775 | $11,000,000 | $634,775 |
| **LOAN BALANCE** | | | | | | | | | | | | | | | | | | |
| Beginning Loan Balance | $0 | $0 | $0 | $0 | $5,000,000 | $5,000,000 | $5,000,000 | $10,417,166 | $14,767,113 | $19,748,295 | $19,748,295 | $20,703,339 | $24,448,891 | $45,000,000 | $45,000,000 | $45,000,000 | $0 | $0 |
| DIP Borrowings | $0 | $0 | $0 | $5,000,000 | $0 | $0 | $5,417,166 | $4,349,947 | $4,981,182 | $0 | $955,044 | $3,745,552 | $20,551,110 | $0 | $0 | $0 | $45,000,000 | $45,000,000 |
| Ending Loan Balance | $0 | $0 | $0 | $5,000,000 | $5,000,000 | $5,000,000 | $10,417,166 | $14,767,113 | $19,748,295 | $19,748,295 | $20,703,339 | $24,448,891 | $45,000,000 | $45,000,000 | $45,000,000 | $45,000,000 | $45,000,000 | $45,000,000 |

[A] Bankruptcy Professional Fees relate to the services provided by Debtor Bankruptcy Counsel, Debtor Financial Advisor & Investment Banker, Regulatory & Corporate Counsel, Compliance Consultants, Ombudsman, U.S. Trustee, and others.  Such amounts are preliminary and subject to change

# **EXHIBIT B**

**Amended DIP Budget**

THE VILLAGE HEALTH SYSTEM ("TVH")
Revised DIP Budget

**PRELIMINARY DRAFT**
*Subject to change based on continued review*

## REVISED TVH DIP BUDGET

| Weekly Cash Flow Summary | Payroll | | Payroll | | Payroll | | Payroll | | Payroll | | Payroll | | Payroll | Total Forecast October | Total Forecast November | Total Forecast December | Total Forecast 13-Week | Total Forecast Current-EOY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Actual (A) / Forecast (F) | A | A | A | A | A | F | F | F | F | F | F | F | F | F | F | F | F | F |
| Week # | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | | | | | |
| Week Beginning | 7/7/25 | 7/14/25 | 7/21/25 | 7/28/25 | 8/4/25 | 8/11/25 | 8/18/25 | 8/25/25 | 9/1/25 | 9/8/25 | 9/15/25 | 9/22/25 | 9/29/25 | 10/6/25 | 11/3/25 | 12/1/25 | 7/7/25 | 7/7/25 |
| Week Ending | 7/11/25 | 7/18/25 | 7/25/25 | 8/1/25 | 8/8/25 | 8/15/25 | 8/22/25 | 8/29/25 | 9/5/25 | 9/12/25 | 9/19/25 | 9/26/25 | 10/3/25 | 10/31/25 | 11/28/25 | 1/2/26 | 10/3/25 | 7/1/26 |
| **RECEIPTS** | | | | | | | | | | | | | | | | | | |
| Total Receipts | $1,489,110 | $2,639,381 | $567,595 | $580,346 | $1,572,115 | $495,840 | $2,812,800 | $526,106 | $517,000 | $1,230,000 | $2,835,790 | $480,000 | $563,106 | $1,900,000 | $1,667,364 | $0 | $16,309,190 | $19,876,554 |
| **OPERATING DISBURSEMENTS** | | | | | | | | | | | | | | | | | | |
| Payroll Wages, Tax, Bonus, Benefits | ($3,171,189) | ($242,593) | ($2,764,792) | ($278,963) | ($2,973,041) | ($206,500) | ($3,724,550) | ($171,500) | ($3,116,295) | ($218,500) | ($2,856,355) | ($171,500) | ($3,135,855) | ($3,230,696) | $0 | $0 | ($23,031,633) | ($26,262,329) |
| Rent | $0 | $0 | $0 | $0 | ($1,137,787) | $0 | $0 | $0 | ($1,135,000) | $0 | $0 | $0 | ($1,135,000) | ($3,407,787) | $0 | $0 | ($3,407,787) | ($3,407,787) |
| Utilities | $0 | $0 | ($9,150) | $0 | $0 | ($8,000) | ($13,500) | $0 | ($8,000) | ($8,000) | ($13,500) | ($8,000) | ($8,000) | ($41,100) | $0 | $0 | ($76,150) | ($117,250) |
| Insurance | $0 | $0 | ($136,757) | $0 | $0 | ($75,000) | ($163,010) | $0 | ($75,000) | $0 | $0 | ($13,010) | ($13,010) | $0 | $0 | $0 | ($3,653,698) | ($3,653,698) |
| All Other Expenses | ($184) | ($233,574) | ($235,356) | ($473,759) | ($495,170) | ($865,741) | ($595,600) | ($1,459,876) | ($822,220) | ($426,391) | ($626,600) | ($1,208,042) | ($1,231,940) | ($2,432,201) | ($525,000) | ($475,000) | ($8,674,453) | ($12,106,654) |
| **Total Operating Expenses** | ($3,171,373) | ($476,167) | ($3,146,055) | ($752,723) | ($4,605,997) | ($1,080,241) | ($4,408,650) | ($1,794,386) | ($5,081,515) | ($727,891) | ($3,496,455) | ($1,400,552) | ($8,701,716) | ($5,703,997) | ($525,000) | ($475,000) | ($38,843,720) | ($45,547,718) |
| **Net Cash Flow before Non-Op. Disb.** | ($1,682,263) | $2,163,214 | ($2,578,459) | ($172,376) | ($3,033,883) | ($584,401) | ($1,595,850) | ($1,268,280) | ($4,564,515) | $502,109 | ($660,665) | ($920,552) | ($8,138,610) | ($3,803,997) | $1,142,364 | ($475,000) | ($22,534,531) | ($25,671,164) |
| **Non-Operating Disbursements** | | | | | | | | | | | | | | | | | | |
| Total Bankruptcy Fees [A] | $0 | $0 | $0 | $0 | $0 | $0 | ($4,230,000) | ($3,081,667) | ($416,667) | ($366,667) | ($275,000) | ($2,825,000) | ($6,412,500) | ($2,850,000) | ($2,340,000) | ($2,038,592) | ($17,607,500) | ($24,836,092) |
| Capex | $0 | $0 | $0 | $0 | $0 | $0 | ($154,821) | $0 | $0 | $0 | ($154,821) | $0 | $0 | $0 | $0 | $0 | ($309,643) | ($309,643) |
| **Total Non-Operating Disb.** | $0 | $0 | $0 | $0 | $0 | $0 | ($4,384,821) | ($3,081,667) | ($416,667) | ($366,667) | ($429,821) | ($2,825,000) | ($6,412,500) | ($2,850,000) | ($2,340,000) | ($2,038,592) | ($17,917,143) | ($25,145,735) |
| **Net Cash Flow** | ($1,682,263) | $2,163,214 | ($2,578,459) | ($172,376) | ($3,033,883) | ($584,401) | ($5,980,672) | ($4,349,947) | ($4,981,182) | $135,442 | ($1,090,486) | ($3,745,552) | ($14,551,110) | ($6,653,997) | ($1,197,636) | ($2,513,592) | ($40,451,673) | ($50,816,899) |
| **CASH BALANCE** | | | | | | | | | | | | | | | | | | |
| Beginning Book Balance | $6,451,673 | $4,769,410 | $6,932,625 | $4,354,166 | $9,181,789 | $6,147,907 | $5,563,506 | $5,000,000 | $5,000,000 | $5,000,000 | $5,135,442 | $5,000,000 | $5,000,000 | $11,000,000 | $4,346,003 | $3,148,367 | $6,451,673 | $6,451,673 |
| Net Cash Flow | ($1,682,263) | $2,163,214 | ($2,578,459) | ($172,376) | ($3,033,883) | ($584,401) | ($5,980,672) | ($4,349,947) | ($4,981,182) | $135,442 | ($1,090,486) | ($3,745,552) | ($14,551,110) | ($6,653,997) | ($1,197,636) | ($2,513,592) | ($40,451,673) | ($50,816,899) |
| Ending Book Bal. before DIP Draw | $4,769,410 | $6,932,625 | $4,354,166 | $4,181,789 | $6,147,907 | $5,563,506 | ($417,166) | $650,053 | $18,818 | $5,135,442 | $4,044,956 | $1,254,448 | ($9,551,110) | $4,346,003 | $3,148,367 | $634,775 | ($34,000,000) | ($44,365,226) |
| DIP Borrowings | $0 | $0 | $0 | $5,000,000 | $0 | $0 | $5,417,166 | $4,349,947 | $4,981,182 | $0 | $955,044 | $3,745,552 | $20,551,110 | $0 | $0 | $0 | $45,000,000 | $45,000,000 |
| DIP (Repayment) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Ending Book Bal. after DIP Draw | $4,769,410 | $6,932,625 | $4,354,166 | $9,181,789 | $6,147,907 | $5,563,506 | $5,000,000 | $5,000,000 | $5,000,000 | $5,135,442 | $5,000,000 | $5,000,000 | $11,000,000 | $4,346,003 | $3,148,367 | $634,775 | $11,000,000 | $634,775 |
| **LOAN BALANCE** | | | | | | | | | | | | | | | | | | |
| Beginning Loan Balance | $0 | $0 | $0 | $0 | $5,000,000 | $5,000,000 | $5,000,000 | $10,417,166 | $14,767,113 | $19,748,295 | $19,748,295 | $20,703,339 | $24,448,891 | $45,000,000 | $45,000,000 | $45,000,000 | $0 | $0 |
| DIP Borrowings | $0 | $0 | $0 | $5,000,000 | $0 | $0 | $5,417,166 | $4,349,947 | $4,981,182 | $0 | $955,044 | $3,745,552 | $20,551,110 | $0 | $0 | $0 | $45,000,000 | $45,000,000 |
| Ending Loan Balance | $0 | $0 | $0 | $5,000,000 | $5,000,000 | $5,000,000 | $10,417,166 | $14,767,113 | $19,748,295 | $19,748,295 | $20,703,339 | $24,448,891 | $45,000,000 | $45,000,000 | $45,000,000 | $45,000,000 | $45,000,000 | $45,000,000 |

[A] Bankruptcy Professional Fees relate to the services provided by Debtor Bankruptcy Counsel, Debtor Financial Advisor & Investment Banker, Regulatory & Corporate Counsel, Compliance Consultants, Ombudsman, U.S. Trustee, and others.  Such amounts are preliminary and subject to change

## EXHIBIT C

**Comparison of Differences Between DIP Facility and Amended DIP Facility**

4901-2125-5774.11

| Bankruptcy Rule | Summary of Material Terms |
|---|---|
| **Parties to the DIP Agreement**<br><br>Bankruptcy Rule 4001(c)(1)(B) | N/A |
| **Term**<br><br>Bankruptcy Rules 4001(b)(1)(B)(iii), 4001(c)(1)(B) | N/A |
| **Commitment**<br><br>Bankruptcy Rule 4001(c)(1)(B) | Extensions of credit under the DIP Facility shall not exceed the principal amount of ~~$39,000,000~~ $46,000,000, which amount is comprised of:<br><br>1. ~~$24,000,000~~ $46,000,000 of new money that Debtor requires to fund ongoing operations and administrative expenses of the Chapter 11 Case.<br><br>2. ~~$15,000,000 owing under the Prepetition Secured Loan via the Prepetition Roll-Up.~~<br><br>New money advances under the DIP Facility shall be available on the following schedule: (i) upon entry of the Interim Order, $5,000,000; and (ii) upon entry of the Final Order, the remaining ~~$19,000,000~~ $41,000,000. In the event the Court enters an order continuing the hearing on the Motion or hearing on final approval of the DIP Facility, as amended, the Debtor shall be authorized to draw on the DIP Facility an amount required to fund the Amended DIP Budget pending the final hearing on the DIP Facility. |
| **Conditions of Borrowing**<br><br>Bankruptcy Rule 4001(c)(1)(B) | N/A |
| **Interest Rates**<br><br>Bankruptcy Rule 4001(c)(1)(B) | **Interest Rate**: Interest shall accrue on principal above $5,000,000 at a rate of ~~twelve~~ ten percent (~~12~~ 10%) *per annum* based upon days actual elapsed, using a 360-day annual period, from the closing date to the Maturity Date of the DIP Facility. ***Interest shall accrue <u>solely</u> on new money loaned under the DIP Facility***. |
| **Use of DIP Facility and Cash Collateral**<br><br>Bankruptcy Rule 4001(b)(1)(B)(ii) | Subject only to the Amended DIP Documents, Amended DIP Budget, and applicable orders of this Court ~~As set forth more fully in the DIP Agreement and Approved Budget~~, Debtor may use proceeds of the Amended DIP Facility and Cash Collateral in any manner permitted by applicable law~~, subject to the terms and restrictions of the then-applicable Approved Budget and applicable orders of the Court~~. |
| **Limitations on Use of DIP Facility and Cash Collateral** | Same terms as the original DIP Facility; *provided*, that the Amended DIP Budget governs. |
| **Entities with Interests in Cash Collateral**<br><br>Bankruptcy Rule 4001(b)(1)(B)(i) | N/A |

4901-2125-5774.11

| | |
|---|---|
| **Fees**<br><br>**Bankruptcy Rule 4001(c)(1)(B)** | N/A |
| **Budget**<br><br>**Bankruptcy Rule 4001(c)(1)(B)** | The use of cash and proceeds from the DIP Facility is subject to the ~~Amended DIP Approved~~ Budget. |
| **Reporting Information**<br><br>**Bankruptcy Rule 4001(c)(1)(B)** | N/A |
| **Budget Variance Covenant**<br><br>**Bankruptcy Rule 4001(c)(1)(B)** | N/A |
| **Chapter 11 Milestones**<br><br>**Bankruptcy Rule 4001(c)(1)(B)** | The DIP Facility is contingent upon Debtor meeting the following milestones (collectively, the "Milestones") in the Chapter 11 Case:<br><br>1. no later than July 3, 2025, Debtor shall have commenced the Chapter 11 Case;<br><br>2. no later than July 3, 2025, Debtor shall have filed a motion to approve bidding and sale procedures for a sale of substantially all assets of Debtor and the Estate;<br><br>3. no later than July 11, 2025, the Court shall have entered the Interim Order;<br><br>4. no later than July ~~24~~ 28, 2025, the Court shall have entered an order approving bidding and sale procedures for a sale of substantially all assets of Debtor and the Estate;<br><br>5. no later than ~~August 15~~ September 10, 2025, the Court shall have entered the Final Order;<br><br>6. no later than September ~~1~~ 7, 2025, Debtor shall have held and completed any auction in connection with the proposed sale;<br><br>7. no later than September ~~1~~ 10, 2025, the Court shall have entered an order approving a sale of substantially all assets of Debtor and the Estate;<br><br>8. no later than October 3, 2025, Debtor shall have closed the sale transaction;<br><br>9. no later than October 31, 2025, Debtor shall have filed (a) a proposed chapter 11 plan and disclosure statement and (b) motion for approval of the disclosure statement and solicitation procedures;<br><br>10. no later than November 28, 2025, the Court shall have entered an order approving the disclosure statement and solicitation procedures for the chapter 11 plan;<br><br>11. no later than December 31, 2025, voting on the chapter 11 plan shall have concluded; and<br><br>12. no later than January 30, 2026, the Court shall have entered an order confirming a chapter 11 plan. |

| | |
|---|---|
| | *Provided* that the Milestones and Debtor's obligation to comply therewith (i) may be waived by the DIP Lender, in whole or in part, at any time and (ii) shall be moot and expire upon full satisfaction of the DIP Obligations. |
| **Liens and Priorities**<br><br>Bankruptcy Rule 4001(c)(1)(B)(i) | N/A |
| **Carve Out**<br><br>Bankruptcy Rule 4001(c)(1)(B), Guidelines § II(B)(6) | N/A |
| **Challenge Period**<br><br>Bankruptcy Rule 4001(c)(1)(B) | The "Challenge Period" shall commence on the Petition Date and end on October 9, 2025, and (y) the date established by the Court for the submission of qualified bids in connection with the sale of all or substantially all assets of the Estate…" |
| **Adequate Protection**<br><br>Bankruptcy Rule 4001(b)(1)(B)(iv), 4001(c)(1)(B)(ii) | N/A |
| **Events of Default**<br><br>Bankruptcy Rule 4001(c)(1)(B) | N/A |
| **Waiver/Modification of Nonbankruptcy Law Related to Perfection and Enforcement of Liens**<br><br>Bankruptcy Rule 4001(c)(1)(B)(vii) | N/A |
| **Indemnification**<br><br>Bankruptcy Rule 4001(c)(1)(B)(ix) | N/A |
| **Limitations of Section 506(c) of the Bankruptcy Code** | N/A |
| **Liens on Claims/ Causes of Action** | N/A |
| **Liens on Unencumbered Real Property** | N/A |

4901-2125-5774.11