**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re:

THE VILLAGES HEALTH SYSTEM, LLC,    Case No.: 6:25-bk-04156

Chapter 11

    Debtor.

_____/

**OBJECTION OF BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC. AND HEALTH**
**OPTIONS, INC. TO PROPOSED CURE AMOUNTS**

Blue Cross and Blue Shield of Florida, Inc. d/b/a Florida Blue ("BCBSFI") and its commercial HMO, Health Options, Inc. ("HOI") (collectively, "Florida Blue"), by undersigned counsel, hereby object to the Debtor's proposed cure amounts ("Proposed Cure Amounts") of certain executory contracts to which BCBSFI and HOI are counterparties (collectively, "Proposed Florida Blue Contracts"), as set forth in the Debtor's *Notice of Executory Contracts That May Be Assumed and Assigned in Connection with the Sale Transaction* (Doc. 110) ("Notice"), and in support thereof, state as follows:

## I.    INTRODUCTION

1.    On or about August 12, 2025, Florida Blue received the Notice by regular mail. The following Proposed Florida Blue Contracts were listed on Schedule 1 to the Notice as executory contracts subject to potential assumption by the Debtor and assignment to the Stalking Horse Bidder[1] or other Successful Bidder in connection with the Debtor's sale of all or substantially all of its assets, along with Proposed Cure Amounts:

| Executory Contract | Counterparty | Proposed Cure Amount |
|---|---|---|
| Administrative Services Agreement | BCBSFI | $0.00 |
| Physician Group Medical Services Agreement and Amendments | BCBSFI | $0.00 |

---

[1] Capitalized terms used but not defined herein shall have the meanings given to them in the Notice.

| | | |
|---|---|---|
| Value-Based Program Agreement and Amendments | BCBSFI | $0.00 |
| Amendment to Physician Group Medical Services Agreement | BCBSFI | $0.00 |
| Fourth Amendment to Agreement | BCBSFI and HOI | $0.00 |
| Physician Group Medical Services Agreement and Amendments | HOI | $0.00 |
| Amendment to Physician Group Medical Services Agreement | HOI | $0.00 |

2.      Florida Blue understands from counsel to the Debtor that the current expectation is the Debtor will <u>not</u> assume and assign the Proposed Florida Blue Contracts to the Stalking Horse Bidder or other Successful Bidder.  If that expectation were to change with respect to any or all of the Proposed Florida Blue Contracts, then Florida Blue does <u>not</u> object to their assumption and assignment; however, Florida Blue does object to the Proposed Cure Amounts.

## II.      <u>BACKGROUND</u>

3.      Florida Blue offers various health insurance plans for residents of The Villages, Florida, and it has a wide network of doctors and hospitals, as well as virtual care options.

4.      Florida Blue, through its subsidiaries, operates various health insurance plans, including multiple Medicare Advantage ("<u>MA</u>") plans.  Under the MA program, the Centers for Medicare and Medicaid Services ("<u>CMS</u>") contracts with private health insurers to provide beneficiaries with the coverage they otherwise would receive through traditional Medicare as well as additional benefits such as dental, hearing, and vision coverage.  *See* 42 U.S.C. § 1395w-22(a); *see also* 42 C.F.R. § 422.100.  Unlike traditional Medicare, CMS does not pay for each service provided under MA plans; rather, CMS pays the MA plans a set monthly payment, otherwise referred to as a capitated payment, regardless of the number of services the enrollee may use or that the plan provides.

*See* 42 CFR § 422.306-4.22.308.  This capitated payment adjusts "for age, gender, disability status, institutional status, and other factors CMS determines to be appropriate, including health status." *Id*. § 422.308(c)(1).  Moreover, the health status variable is based on demographic data as well as diagnostic data obtained from providers who identify, diagnose, and treat specific conditions for each beneficiary. *Id*. § 422.308(c)(2).

5.      Under this system, erroneous diagnostic coding wherein physicians submit inapplicable and/or non-existent diagnoses can result in CMS overpaying the MA plans.  The methodology typically results in nearly 90% of any overpayment being passed along from Florida Blue to the Debtor, which overpayment the Debtor must refund within 90 days of identification by the Debtor.

6.      On or about December 30, 2024, the Debtor's CEO disclosed to its residents and business partners "a problem with some of [its] Medicare billing practices."  This "problem" turned out to be a four years' long scheme to add diagnostic codes to patient files that resulted in overpayments by Florida Blue to the Debtor of approximately $25 million.  More specifically, following the Debtor's initial disclosure of overpayments, a Florida Blue investigation revealed that in payment year 2024, the Debtor had falsely added the following diagnoses into patient files: Diagnostic Code 48 for "Coagulation Defects and Other Specified Hematological Disorders," and Diagnostic Code 22 related to "specified Heart Arrhythmias."

7.      From this data, Florida Blue has determined that, in payment year 2024 alone, the Debtor's misconduct resulted in thousands of diagnostic codes that should not have been included in patient files and a corresponding overpayment of approximately $8 million.  The Debtor has admitted that this miscoding also extended into payment years 2023, 2022, and 2021, as well continuing in payment year 2025.  While the Debtor agreed to provide the data necessary for Florida Blue to calculate the amount of overpayment for those years, it filed bankruptcy before doing so.  Nevertheless, the scale of the Debtor's miscoding in those years was likely similar in scope and value

to the miscoding in payment year 2024.  Consequently, Florida Blue has calculated that the Debtor's miscoding has resulted in Florida Blue's overpayment of approximately $25 million over four years (not including partial payment year 2025), which the Debtor has the obligation to repay if the Proposed Florida Blue Contracts are to be assumed and assigned as part of the sale transaction.

8.    The Debtor's failure to reimburse the overpayments constitutes a default under the Proposed Florida Blue Contracts.

### III.    OBJECTIONS

**A.    The Notice Does Not Adequately Identify the Contracts to be Assumed and Assigned.**

9.    It is well settled that a debtor seeking to assume an executory contract must do so *cum onere*, accepting both its benefits and burdens.  *See In re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) (quoting *In re Italian Cook Oil Corp.*, 190 F.2d 994, 997 (3d Cir. 1951)).  The requirement that an executory contract assumption be *cum onere* applies equally to assignments, as assumption of an executory contract "is a necessary prerequisite to its assignment under § 365."  *In re Sunterra Corp.*, 361 F.3d 257, 266 (4th Cir. 2004) (citing 11 U.S.C. § 365(f)(2)).

10.    Bankruptcy Rule 6006(f) requires, among other things, that any request to assume an executory contract lists the names of the parties and identify the corresponding contract.  The Notice includes separate entries relating to each of the BCBSFI PGMSA and HOI PGMSA.  The Debtor must clarify why parts of the same contract are listed separately, whether there is an intended distinction between each entry, and explain that distinction.

11.    The Notice lists parts of the same agreement in multiple entries for BCBSFI: (i) Physician Group Medical Services Agreement and Amendments – BCBSFI; (ii) Amendment to Physician Group Medical Services Agreement -- BCBSFI; and (iii) Fourth Amendment to Agreement – BCBSFI and HOI.  There are similar problems with the entries for HOI: (i) Physician Group Medical Services Agreement and Amendment; and (ii) Amendment to Physician Group Medical Services

Agreement.  The Debtor can only assume and assign these executory contracts in their entirety, including all amendments.  Consequently, the Debtor must clarify why there are separate references to the same agreement, as well as its intention before attempting to assume and assign these contracts.

12.     BCBSFI and the Debtor entered into a Physician Group Medical Services Agreement effective as of May 1, 2013 ("BCBSFI PGMSA").  Under the BCBSFI PGMSA, among other things, the Debtor agrees to participate in BCBSFI's network to provide health benefits choices and services to residents at The Villages, as well as to accept reimbursement at specific fixed or capitated rates for such services.  As of the commencement of this chapter 11 case, BCBSFI and the Debtor have amended the BCBSFI PGMSA five times (collectively, the "BCBSFI Amendments").  The BCBSFI Amendments are essential to the contractual relationship between BCBSFI and the Debtor, as they implement, among other things, revisions to the fee and payment schedules and provide updates to health benefits plans.  Therefore, should the Debtor seek to assume and assign the BCBSFI PGMSA to the Stalking Horse Bidder or other Successful Bidder, it can only do so in its entirety, including all amendments.

13.     HOI and the Debtor also entered into a Physician Group Medical Services Agreement effective as of May 1, 2013 ("HOI PGMSA"), with provisions similar to those in the BCBSFI PGMSA.  As of the commencement of this chapter 11 case, HOI and the Debtor have amended the HOI PGMSA six times (collectively, the "HOI Amendments").  The HOI Amendments are essential to the contractual relationship between HOI and the Debtor, as they implement, among other things, revisions to the fee and payment schedules and provide updates to health benefits plans.  As with the BCBSFI PGMSA, if the Debtor seeks to assume and assign the HOI PGMSA to the Stalking Horse Bidder or other Successful Bidder, it can only do so in its entirety, including all amendments.

**B.        The Debtor's Proposed Cure Amounts are Incorrect.**

14.        Prior to assumption and assignment of an executory contract, section 365(b)(1) of the Bankruptcy Code requires that the debtor cure all existing defaults and provide adequate assurance of future performance by the assignee.  11 U.S.C. §365(b)(1).

15.        BCBSFI and HOI, therefore, are entitled to have all defaults cured as a condition of any assumption and assignment of the Proposed Florida Blue Contracts.  *See* 11 U.S.C. § 365(b)(1)(A). The Debtor currently is in default under the Proposed Florida Blue Contracts by its failure to reimburse BCBSFI and HOI for overpayments of approximately $25 million during payment years 2020 through 2024 (not including the partial payment year of 2025).  BCBSFI and HOI object to the Notice to the extent it does not reflect the correct cure amounts for the Proposed Florida Blue Contracts as of the date of assumption ("Correct Cure Amounts").  Subject to further review of the Debtor's payment records, Florida Blue believes the Correct Cure Amounts total approximately $25 million.

16.        Therefore, if the Debtor seeks to assume and assign the Proposed Florida Blue Contracts to the Stalking Horse or other assignee, it must first cure all outstanding defaults, including payment of the Correct Cure Amounts through the time of assumption and assignment.

**IV.        <u>RESERVATION OF RIGHTS</u>**

17.        BCBSFI and HOI reserve their right to object to any proposed order assuming and assigning the Proposed Florida Blue Contracts to the Stalking Horse, or other proposed assignee, including, without limitation, the Correct Cure Amounts, identification of the exact proposed assignee, strict compliance with the adequate assurance of future performance requirements of Section 365 of the Bankruptcy Code, and their having sufficient notice and opportunity to be heard regarding any proposed assumption and assignment.

DCACTIVE-81336991.1

18.     BCBSFI and HOI also reserve their right to supplement this Objection and make such other and further objections as they deem necessary or appropriate, including with respect to any amended proposed cure amount and any proposed order on assumption and assignment.

Dated: August 21, 2025                    Respectfully submitted,

                                          **CROWELL & MORING LLP**

                                          */s/ Michael W. Lieberman*
                                          Michael W. Lieberman
                                          Florida Bar No. 1049421
                                          MLieberman@crowell.com
                                          Crowell & Moring LLP
                                          1001 Pennsylvania Ave., NW
                                          Washington, DC 20004
                                          Telephone: (202) 624-2776
                                          *Counsel for Blue Cross Blue Shield of Florida Inc.*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on August 21, 2025, a true and correct copy of the foregoing *Objection* was filed electronically with the Court's CM/ECF Filing to all parties who have requested or consented to electronic service in this case, including to the following parties as directed by the Notice:

                    Baker & Hostetler LLP
                    200 South Orange Avenue, Suite 2300
                    Orlando, FL 32801
                    Attn:   Elizabeth Green (egreen@bakerlaw.com)
                            Andrea Layden (alayden@bakerlaw.com)
                    *Counsel to Debtor*

                    Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A.
                    101 East Kennedy Boulevard, Suite 2700
                    Tampa, FL 33602
                    Attn:   Lara R. Fernandez (lfernandez@ternam.com)
                            Rhys P. Leonard (rleonard@trenam.com)
                    *Counsel to PMA Lender, LLC*

                    U.S. Trustee for the Middle District of Florida
                    400 W. Washington Street, Suite 1100
                    Orlando, FL 32801
                    Attn:   Wanda D. Murray (wanda.murray@usdoj.gov)

DCACTIVE-81336991.1

Latham & Watkins LLP
330 N. Wabash Avenue, Suite 2800
Chicago, IL 60611
Attn:   Caroline Reckler (caroline.reckler@lw.com)
*Counsel to Stalking Horse*

Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
Attn:   Andrew Sorkin (andrew.sorkin@lw.com)
*Counsel to Stalking Horse*

*/s/ Michael W. Lieberman*
Michael W. Lieberman

DCACTIVE-81336991.1