IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| In re:<br><br>**THE VILLAGES HEALTH SYSTEM, LLC,**[1]<br><br>Debtor. | Case No.: 6:25-bk-04156-LVV<br><br>Chapter 11 |

**DECLARATION OF NEIL LURIA
IN SUPPORT OF DEBTOR'S MOTION FOR
ENTRY OF ORDERS (A) APPROVING SALE OF SUBSTANTIALLY ALL
OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES, AND INTERESTS, (B) APPROVING BIDDING
PROCEDURES FOR SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S
ASSETS, (C) APPROVING STALKING HORSE BID PROTECTIONS,
(D) SCHEDULING AUCTION FOR AND HEARING TO APPROVE THE SALE
OF THE DEBTOR'S ASSETS, (E) APPROVING FORM AND MANNER OF
NOTICE OF SALE, AUCTION, AND SALE ORDER HEARING, (F) APPROVING
ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND
<u>UNEXPIRED LEASES, AND (H) GRANTING RELATED RELIEF</u>**

I, Neil Luria, declare as follows:

1.      I am the Chief Restructuring Officer ("<u>CRO</u>") of The Villages Health System, LLC ("<u>TVH</u>" or "<u>Debtor</u>"), the debtor and debtor in possession in the above-captioned bankruptcy case (the "<u>Chapter 11 Case</u>").

2.      In my capacity as CRO of the Debtor, I am familiar with the Debtor's business, day-to-day operations, and financial affairs, as well as the marketing and pending sale of substantially all assets of the Debtor. Except as otherwise indicated, the facts set forth in this declaration are based upon (i) my personal knowledge, (ii) my review of relevant documents and records created and maintained by the Debtor in the ordinary course of business, (iii) information provided to me by employees and consultants working under my supervisions with personal

---

[1] The address of the Debtor is 600 Sunbelt Road, The Villages, Florida 32159. The last four digits of the Debtor's federal tax identification number is 6436.

knowledge of the veracity of such information, and/or (iv) my opinion based on experience, knowledge, and information concerning the Debtor's operations and financial condition. If called upon to testify, I could and would testify competently to the facts set forth in this declaration.

3.  I submit this declaration at the request of the Debtor in support of (i) the *Debtor's Amended Motion for Entry of Orders (A) Approving Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Approving Bidding Procedures for the Sale of Substantially All of the Debtor's Assets, (C) Approving Stalking Horse Bid Protections, (D) Scheduling Auction for and Hearing to Approve Sale of the Debtor's Assets, (E) Approving Form and Manner of Notice of Sale, Auction, and Sale Order Hearing, (F) Approving Assumption and Assignment Procedures, (G) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (H) Granting Related Relief* [Doc. No. 29] (the "Sale Motion"),[2] and more specifically, (ii) the proposed sale (the "Transaction") of the Debtor's assets (the "Purchased Assets") to CenterWell Senior Primary Care (Vitality), Inc. (the "Stalking Horse Bidder") upon the terms of the Asset Purchase Agreement ("APA") dated September 9, 2025.[3]

4.  On September 7, 2025, the Debtor conducted an auction in good faith in accordance with the terms of the Bid Procedures. The auction spanned more than twelve (12) consecutive hours and entailed more than ten (10) rounds of bidding, interspersed with extended consultation with the bidders in an effort to encourage continued engagement and, in so doing, maximize the value of the assets subject to the proposed transactions.  All discussions and negotiations during the Auction were conducted at arms-length, with each party being represented by counsel and

---

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Sale Motion.
[3] A copy of the APA has been filed at Doc. No. 212.

advisors of their choosing.  As provided in the Bid Procedures, Debtor's professionals consulted with the Consultation Parties, as necessary, throughout the Auction.

5. Ultimately, the Debtor qualified a modified version of the Stalking Horse APA (*i.e.*, the APA) from CenterWell Senior Primary Care (Vitality), Inc. ("CenterWell") as the highest and best bid, which constituted a significant improvement over the terms of the original Stalking Horse APA—both in terms of monetary and non-monetary provisions.  In short, the APA (i) increases the Cash Purchase Price from $50,000,000 to $68,000,000, (ii) increases the Deposit from 10% to $30% (or $20,400,000.00), (iii) clarifies and expands the scope of the corporate guarantee, which now permits the recovery of damages in excess of the Cash Purchase Price directly from Humana Inc. in the event CenterWell breaches or otherwise fails to close the transaction (except in the case of a permitted termination), (iv) assumes additional liabilities, including the general unsecured claims of trade creditors, which increases the net benefit to creditors of the estate, (v) reduces the time to closing from January 2026 to October 31, 2025, which enables a more expeditious and cost-effective administration of the bankruptcy estate, and (vi) eliminates numerous conditions to closing, including the 85% employee retention condition.

6. Following the qualification of the foregoing CenterWell bid, the other bidder at the auction, The Villages Buyer, LLC, an affiliate of Kinderhook Industries, LLC ("Kinderhook"), was provided an opportunity to overbid but elected to not increase its bid in response to the final CenterWell bid.  As a result, the Debtor declared the final CenterWell bid as the Successful Bid and closed the Auction.  The final bid submitted by Kinderhook during the Auction shall serve as the Back-Up Bid per the terms of the Bid Procedures.

7. Based on the foregoing, as well as the thorough marketing efforts of Evercore Capital, the extensive engagement of numerous interested parties and potential bidders in the sale

process, the adherence to the terms and intent of the Court-approved Bid Procedures, and the manner in which the Auction was conducted, among other considerations, I believe that the sale process undertaken by the Debtor and its professionals, both before and after the filing of this Chapter 11 Case, was fair, reasonable, and appropriate under the circumstances and, in all material respects, in accordance with the *Order (A) Approving Bidding Procedures for Sale of Substantially All of the Care Pavilion Debtors' Assets, Other Than Accounts, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for and Hearing to Approve the Sale of the Care Pavilion Debtors' Assets, (D) Approving Form and Manner of Notice of Sale, Auction, and Sale Order Hearing, (E) Approving Assumption and Assignment Procedures, (F) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (G) Granting Related Relief* [Doc. No. 110] (the "Bid Procedures Order").

8.　I believe, moreover, that the transaction memorialized in the APA was the highest and best bid presented during the Auction, that such bid constituted a Qualified Bid under the Bid Procedures Order, that such bid was negotiated at arms-length and presented in good faith, that such bid was not the result of collusion or other improper conduct, and, based on my business judgment, which is informed by my extensive experience in the relevant industries and as CRO of the Debtor, that the APA and transaction memorialized therein is the highest and best offer for the assets subject thereto and that its consummation serves the best interests of the bankruptcy estate and its creditors and other interested parties.

I declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information, and belief.

Dated: September 9, 2025　　　　　　　　　　　　　　　　　　/s/ *Neil Luria*
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Neil Luria