**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| In re: | **Case No.: 6:25-bk-04156-LVV** |
| **THE VILLAGES HEALTH SYSTEM, LLC,**[1] | **Chapter 11** |
| Debtor. | |

**NOTICE OF FILING <u>PROPOSED</u> ORDER**
**(A) APPROVING SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS**
**FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS,**
**(B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY**
**<u>CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF</u>**

**PLEASE TAKE NOTICE** that The Villages Health System, LLC (the "<u>Debtor</u>"), by and through its undersigned counsel, files a proposed *Order (A) Approving Sale of Substantially all of the Debtor's Assets Free and Clear of all Liens, Claims, Encumbrances, and Interests, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* (the "<u>Proposed Order</u>") attached as **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that the Debtor has included a redline document indicating the changes between the proposed order filed on September 2, 2025 [Doc. No. 203] and the Proposed Order attached hereto as **Exhibit B**.

Dated: September 9, 2025

**BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
FL Bar No.: 0600547
Email: egreen@bakerlaw.com
**Jimmy D. Parrish, Esq.**
FL Bar No.: 0526401
E-mail: jparrish@bakerlaw.com
**Andrew V. Layden, Esq.**
FL Bar No.: 86070
E-mail: alayden@bakerlaw.com
200 South Orange Avenue
Suite 2300
Orlando, Florida 32801-3432

---

[1] The address of the Debtor is 600 Sunbelt Road, The Villages, Florida 32159. The last four digits of the Debtor's federal tax identification number is 6436.

Telephone: (407) 649-4000
Facsimile: (407) 841-0168

*Counsel for the Debtor and Debtor in Possession*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 9, 2025, I electronically filed the foregoing with the Clerk of Court by using the Court's CM/ECF system, which will provide a Notice of Electronic Filing and copy to all parties requesting such notice.

*/s/ Elizabeth A. Green*
Elizabeth A. Green

134562.000004\4918-2917-9751.3

## EXHIBIT A

## Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| In re: | Case No.: 25-04156 (LVV) |
| **THE VILLAGES HEALTH SYSTEM, LLC,**[1] | Chapter 11 |
| **Debtor.** | |

**ORDER (A) APPROVING SALE OF SUBSTANTIALLY
ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR
OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS,
(B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF**

Upon the motion [Docket No. 29] (the "Motion")[2] filed by the Villages Health System, LLC (the "Debtor" or "Seller")  for entry of an order (this "Sale Order"), (i) authorizing and approving the sale of substantially all of the assets of the Debtor (as such assets may be more particularly defined in the governing Stalking Horse APA, the "Purchased Assets"), free and clear of all liens, interests, claims, and encumbrances (other than Assumed Liabilities) to the fullest extent permitted by section 363(f) of the Bankruptcy Code (the "Sale Transaction"), (ii) authorizing and approving the assumption and assignment of the Assumed Contracts (as defined herein) to the fullest extent permitted under section 365 of the Bankruptcy Code, and (iii) granting related relief; and this Court having considered any and all objections to the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this

---

[1] The address of the Debtor is 600 Sunbelt Road, The Village, Florida 32159. The last four digits of the Debtor's federal tax identification number is 6436.

[2] Capitalized terms used but not defined herein shall have the meanings provided in the Motion or the Stalking Horse APA, as applicable.

Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, their creditors, and other parties in interest; and this Court having found that the Debtor's notice of the Motion and opportunity for hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed and considered the Motion, all relief related thereto, the objections thereto, including the objections of Highspring LLC (f/k/a Vaco LLC) ("Highspring") [Docket. No. 197], Blue Cross and Blue Shield of Florida, Inc. d/b/a Florida Blue ("BCBSFI") and its commercial HMO, Health Options, Inc. ("HOI") (collectively, "Florida Blue") [Docket. No. 177], VaxCare, LLC ("VaxCare") [Docket. No. 175], Jim Besong ("Besong") [Docket. No. 172], and UnitedHealthcare Insurance Company and UnitedHealthcare of Florida, Inc., together with their affiliates (collectively, "UnitedHealthcare") [Docket. No. 168], and the statements of counsel and the evidence presented in support of the relief requested by the Debtor in the Motion at the Sale Hearing, including, among other things, the declarations of Neil Luria and A.J. Berens [Doc. Nos. 215 and 216]; and this Court having determined that the legal and factual bases set forth in the Motion and at the hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AND DETERMINES AS FOLLOWS**:

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute

2

conclusions of law, they are adopted as such. To the extent any of the following conclusions of

law constitute findings of fact, they are adopted as such.

B.       On July 3, 2025, the Seller entered into that certain Asset Purchase Agreement (as

further modified and amended, the "Stalking Horse Bid" or the "Stalking Horse APA") for the

Purchased Assets with CenterWell Senior Primary Care (FL), Inc. (the "Buyer" or "Stalking Horse

Bidder").[3]  The Stalking Horse Bid was subject to higher and better offers made in accordance

with the Bid Procedures Order (defined below).

C.       By order dated July 28, 2025 [Docket No. 110] (the "Bid Procedures Order"), the

Court, among other things, approved (i) the Bid Procedures; (ii) the procedures for notice of the

proposed sale of the Purchased Assets free and clear of all claims and encumbrances (other than

Assumed Liabilities); (iii) procedures for the assumption and assignment of executory contracts

and unexpired leases to be assumed and assigned as part of the Purchased Assets (the "Assumed

Contracts"); and (iv) the Bid Protections (as defined in the Bid Procedures Order), among other

relief, all as more particularly set forth in the Bid Procedures Order.

D.       The Bid Procedures were substantively and procedurally fair to all parties and all

potential bidders, were the result of arm's-length negotiations, and afforded notice and a full, fair,

and reasonable opportunity for any interested party to make a higher or otherwise best offer to the

Purchased Assets.  The Debtor conducted the sale process without collusion and in accordance

with the Bid Procedures.

---

[3] As used herein, in the Bid Procedures, or in any order of this Court, the terms "Successful Bid" and "Successful Bidder" shall be interpreted as referring to the "Stalking Horse Bid" or "Stalking Horse APA," as to the former, and the "Buyer" or "Stalking Horse Bidder," as to the latter.  As used herein, except as used for historical context, "Stalking Horse Bid" and "Stalking Horse APA" shall refer to the document(s) appended hereto as Exhibit 1.

E.      The Debtor solicited offers and noticed the Auction in accordance with the provisions of the Bid Procedures Order. The Auction was duly noticed, and the Debtor afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer than the Stalking Horse Bid to purchase the Purchased Assets. The Debtor received one timely Qualified Bid in addition to the Stalking Horse Bid before the Bid Deadline from The Villages Buyer, LLC, an affiliate of Kinderhook Industries, LLC ("Kinderhook"). Accordingly, the Debtor held an Auction on September 7, 2025. Following the Auction, the Stalking Horse Bidder was properly designated as the Successful Bidder and the Stalking Horse Bidder entered into a modified and amended Stalking Horse APA, which memorializes the Successful Bid for the Purchased Assets enumerated therein, in each case, in accordance with the Bid Procedures Order. A true and correct copy of the Stalking Horse APA memorializing the Successful Bid is attached to this Order as **Exhibit 1**. The Buyer and its professionals have complied in all material respects with the Bid Procedures Order, the Bid Procedures, the Assumption and Assignment Procedures, and all other applicable orders of this Court in negotiating and entering into the Stalking Horse APA, and the Sale Transaction and the Stalking Horse APA likewise comply with the Bid Procedures Order and all other applicable orders of this Court.

F.      Proper, timely, adequate, and sufficient notice of the Motion, the Buyer, the Stalking Horse APA, the Sale Transaction proposed in the Motion, including the assumption and assignment of the Assumed Contracts and any cure amounts related thereto, and of the terms of this Sale Order has been provided in accordance with sections 102(1) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 6006, Local Rule 6004-1, and other applicable law. As demonstrated by the certificates of service and affidavits of publication filed on the docket, the Debtor has provided sufficient and appropriate notice under the circumstances, and no other or

4

further notice of the Motion, the Sale Agreements, the Sale Hearing, or the related deadlines is required.

G.      A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities.

H.      Consistent with its fiduciary duties, the Debtor has demonstrated both (i) good, sufficient, and sound business purposes and justification, and (ii) compelling circumstances for the sale of the Purchased Assets to the Buyer pursuant to section 363 of the Bankruptcy Code. Such justification and compelling circumstances include, but are not limited to, the fact that (x) the Buyer's offer under the Stalking Horse APA constitutes the highest and best offer available for the Purchased Assets; (y) the Debtor provided all Qualified Bidders at the Auction a reasonable opportunity to submit an Overbid to the Stalking Horse APA before the close of the Auction; and (z) consummation of the Sale Transaction with the Buyer presents the best opportunity to realize the highest value for the Purchased Assets and avoid potential decline and devaluation thereof, relieves the Debtor's bankruptcy estate of significant liabilities and provides a viable path for continued operations of the Facilities in the communities they serve.

I.      The consideration provided at Closing by the Buyer is fair and reasonable, represents the highest and/or best offer for the Purchased Assets, is in the best interests of the Debtor, its creditors and its estate, and constitutes a valid and sound exercise of the Debtor's business judgment.

J.      The terms set forth in this Sale Order and the Stalking Horse APA, are fair and reasonable and constitute reasonably equivalent value and full, adequate, and fair consideration for the Purchased Assets under the Bankruptcy Code, or any other applicable laws of the United States, any state, territory, or possession.

K.     As demonstrated by the testimony and other evidence proffered or adduced at the Sale Hearing, as applicable, and the representations of counsel made on the record at the Sale Hearing, as applicable, (a) the Debtor and its professionals adequately marketed the Purchased Assets and conducted the sale process in compliance with the Bid Procedures Order in good faith and in a fair and open manner; (b) the sale process and the Bid Procedures were non-collusive, duly noticed, and provided a full, fair, and reasonable opportunity for any interested party to conduct due diligence and make an offer to purchase the Purchased Assets and submit higher or better offers for the Purchased Assets than the Successful Bid; (c) the consideration provided by the Buyer is fair and reasonable consideration for the Purchased Assets and constitutes reasonably equivalent value under the Bankruptcy Code, the Uniform Voidable Transactions Act, and any other applicable laws of the United States, any state, territory, possession, or the District of Columbia or any other applicable law; (e) the Sale Transaction will provide a greater recovery to the Debtor's creditors than would be provided by any other presently available alternative transaction with respect to the Purchased Assets; (f) taking into consideration all relevant factors and circumstances, no other entity has offered to purchase the Purchased Assets for greater economic value to the Debtor or its estate than the Buyer; and (g) the Debtor determined that the Stalking Horse APA constitutes the highest or otherwise best offer for the Purchased Assets, maximizes value for the Debtor's estate, and constitutes a valid and sound exercise of the Debtor's business judgment.  There is no legal or equitable reason to delay Closing, as contemplated by the Stalking Horse APA.

L.     The sale process engaged in by the Debtor and the Buyer was conducted in accordance with the Bid Procedures and the Bid Procedures Order.  The Stalking Horse APA was negotiated, proposed, and entered into by the Debtor and the Buyer in good faith, without collusion

134562.000004\4920-5390-5255.2

of any kind, and from arm's-length bargaining positions, and is substantively and procedurally fair to all parties in interest.  The Debtor and the Buyer and their respective advisors have complied, in good faith, in all material respects with the Bid Procedures Order and the Bid Procedures.  The Debtor and its management, employees, agents, advisors, and representatives, and the Buyer and its employees, agents, advisors and representatives, actively participated in the bidding process, and each acted in good faith and without collusion or fraud of any kind.  The Buyer subjected its bid to competitive bidding in accordance with the Bid Procedures and was designated the Successful Bidder for the Purchased Assets in accordance with the Bid Procedures and the Bid Procedures Order.  All payments to be made by the Buyer to the Debtor or any insider of the Debtor in connection with the Sale Transaction, and other agreements or arrangements entered into by the Buyer in connection with the Sale Transaction have been disclosed.  The form and total consideration to be realized by the Debtor under the Stalking Horse APA constitutes fair value, fair, full, and adequate consideration, reasonably equivalent value, and reasonable market value for the Purchased Assets.  Neither the Debtor nor the Buyer has engaged in any conduct that would cause or permit the Stalking Horse APA or the Sale Transaction to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code, and accordingly neither the Debtor nor the Buyer has violated section 363(n) of the Bankruptcy Code by any action or inaction.

M.      The Buyer is a purchaser in "good faith," as that term is used in section 363(m) of the Bankruptcy Code, with respect to the Purchased Assets and the Sale Transaction, and, as such, is entitled to all of the rights, privileges, immunities, and protections afforded thereby, including in the event this Sale Order or any portion thereof is reversed or modified on appeal, and the Buyer has proceeded in good faith in all respects in connection with the Sale Transaction specific and this chapter 11 case generally. Neither the Debtor nor the Buyer has engaged in any conduct that

134562.000004\4920-5390-5255.2

would prevent the application of section 363(m) of the Bankruptcy Code. The Debtor was free to deal with any other party interested in buying or selling some or all of the Purchased Assets on behalf of the Debtor's estate. The protections afforded by section 363(m) of the Bankruptcy Code are integral to the Sale Transaction and the Buyer would not consummate the Sale Transactions without such protections. The Stalking Horse APA and this Sale Order were negotiated, proposed, and entered into by the Debtor and the Buyer in good faith, from arm's-length bargaining positions, and without collusion. The Buyer is not connected to or related to the Debtor or those in control of the Debtor in any manner that could reasonably affect the marketing, bidding, negotiating, or ultimate sale of the Purchased Assets on the terms set forth herein. The sale process conducted was non-collusive, fair, and reasonable, and it was conducted openly and in good faith. The Buyer is entitled to the protections of section 363(m) of the Bankruptcy Code with respect to the Purchased Assets and the Sale Transaction.

N.      The sale of the Purchased Assets to the Buyer is a sale in good faith within the meaning of Bankruptcy Code section 363(m). The Buyer, the Debtor, and their respective representatives and affiliates, have not engaged in any conduct that would cause or permit the sale of the Purchased Assets, the Sale Transaction, or this Sale Order to be avoided. Neither the Buyer nor any of its affiliates, officer, directors, managers, shareholders, members or any of their respective successors or assigns is an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.  No common identity of directors, managers, controlling shareholders, or members exists between the Debtor and the Buyer.  All payments to be made by the Buyer to the Debtor or any insider of the Debtor in connection with the Sale Transaction, and all agreements or arrangements entered into by the Buyer in connection with the Sale Transaction

134562.000004\4920-5390-5255.2

have been fully disclosed, and the negotiation and execution of the Stalking Horse APA and the other related documents were at arms' length and in good faith.

O.     The consideration provided by the Buyer for the Purchased Assets pursuant to the Stalking Horse APA (i) is fair and reasonable, (ii) is the highest and best offer for the Purchased Assets, (iii) will provide a greater recovery for the Debtor's creditors and estate than would be provided by any other available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, and each state, territory, possession, and the District of Columbia, or any other applicable law.

P.     The Stalking Horse APA was not entered into, and neither the Debtor nor the Buyer has entered into the Stalking Horse APA or proposes to consummate the Sale Transaction, for the purpose of (i) escaping liability for any of the Debtor's debts or (ii) hindering, delaying or defrauding the Debtor's present or future creditors, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable law substantially similar to the foregoing.

Q.     The Buyer would not have entered into the Stalking Horse APA and would not consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, if (a) the sale of the Purchased Assets to the Buyer were not, pursuant to section 363(f) of the Bankruptcy Code and any other applicable law and except for Assumed Liabilities, free and clear of (i) all liens, whether consensual or statutory, replacement liens, adequate protection liens or other liens granted under sections 361, 363, or 364 of the Bankruptcy Code, mortgages, deeds of trust, hypothecations, pledges, security interests, charges, contractual commitments, options and transfer restrictions,

9

including rights of first refusal or first offer, defect or objection liens, easements, encroachments or servitudes, in each case, that constitutes an "interest" for purposes of section 363(f) of the Bankruptcy Code (collectively, the "Liens"), (ii) any and all "claims," as defined in section 101(5) of the Bankruptcy Code and jurisprudence interpreting the Bankruptcy Code, including (1) any and all claims or causes of action based on or arising under any labor, employment or pension laws, labor or employment agreements, including any employee claims related to worker's compensation, occupational disease, or unemployment or temporary disability, including, without limitation, claims that might otherwise arise under or pursuant to (A) ERISA (as defined below), (B) the Fair Labor Standards Act, (C) Title VII of the Civil Rights Act of 1964, (D) the Federal Rehabilitation Act of 1973, (E) the National Labor Relations Act, (F) the Age Discrimination and Employment Act of 1967, as amended, (G) the Americans with Disabilities Act of 1990, (H) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code and of any similar state law, (I) state anti-discrimination, harassment, or retaliation laws, (J) state unemployment or workers' compensation laws or any other similar state laws, (K) the Family and Medical Leave Act and paid leave laws or other leave of absence laws, (L) any other state or federal benefits or claims relating to any employment with the Debtor or any of its predecessors, or (M) the WARN Act (29 U.S.C. §§ 2101 et seq.), or in each case in (A) through (M) any equivalent applicable laws outside the United States, (2) any rights under any multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of the Employee Retirement Income Security Act of 1974 (as amended, "ERISA")), pension, health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including any pension plans of the Debtor or any multiemployer plan to which the Debtor has at

134562.000004\4920-5390-5255.2

any time contributed to or had any liability or potential liability, (3) any and all claims or causes of action based upon or relating to any putative successor or transferee liability, (4) any and all claims or causes of action based upon or relating to any bulk sales or similar law, (5) any and all claims or causes of action based upon or relating to any tax statutes or ordinances, including the Internal Revenue Code of 1986, as amended (the "IRC"), and any taxes arising under or out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing, including any ad valorem taxes assessed by any applicable taxing authority, and (6) any other rights or causes of action (whether in law or in equity), warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims or liabilities relating to any act or omission of the Debtor or any other person prior to the Closing, consent rights, options, contract rights, covenants and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of the above-captioned case, and whether imposed by agreement, understanding, law, equity or otherwise (collectively, the "Claims"), (iii) any losses, obligations, liabilities, settlement payments, damages, awards, judgments, reimbursements, fines, penalties, assessments and interest arising out of, resulting from, or in connection with (1) the self-disclosure to the U.S. Department of Health and Human Services ("HHS") Office of Inspector General ("OIG") and U.S. Department of Justice ("DOJ") made on December 27, 2024, (2) the Debtor's billing, coding and clinical documentation practices, or (3) any related action, charge, order, audit, investigation, formal inquiry, complaint, suit, litigation, arbitration, qui tam action, written notice of violation or noncompliance, or other Claim or proceeding, whether administrative, civil, criminal or otherwise; (iv) any losses, obligations, liabilities, settlement payments, damages,

11

awards, judgments, reimbursements, refunds, fines, penalties, assessments and interest, whether now existing or hereafter arising, imposed by, or owed to, the DOJ, OIG or any other Governmental Authority, any Medicare Advantage plan, any federal healthcare program, or any other health plan, third-party payor, patient or person (such liabilities described in clauses (iii) and (iv), the "Healthcare Program Claims"); and (v) any and all claims, causes of actions, encumbrances, payments, charges, judgments, assessments, losses, monetary damages, penalties, fines, fees, interest obligations, deficiencies, debts, obligations, costs and expenses, judgments, orders and decrees of any court or foreign domestic governmental entity (including foreign, state, and local taxes), and other liabilities (whether absolute, accrued, contingent, fixed or otherwise, or whether known or unknown, or due or to become due or otherwise), including any amounts paid in settlement, interest, court costs, costs of investigators, attorneys' fees, legal or other expenses incurred in connection therewith (collectively, the "Interests"); or (b) if the Buyer would, or in the future could, be liable for or subject to any such Liens, Claims, or Interests (other than Assumed Liabilities).

R.      A sale of the Purchased Assets other than one free and clear of all Liens, Claims, and Interests (other than Assumed Liabilities) would have yielded substantially less value for the Debtor's estate, with less certainty, than the Sale Transaction as contemplated by the Stalking Horse APA. Therefore, the Sale Transaction contemplated by the Stalking Horse APA free and clear of all Liens, Claims, and Interests (other than Assumed Liabilities) is in the best interests of the Debtor, its estate, its creditors, and all other parties in interest.

S.      The Debtor may transfer the Purchased Assets free and clear of all Claims and Encumbrances (other than Assumed Liabilities) because, one or more of the standards set forth in Bankruptcy Code sections 363(f)(1)–(5) have been satisfied. Each creditor or other person or entity

asserting a Claim or Encumbrance (as defined below) in the Purchased Assets (i) has, subject to the terms and conditions of this Sale Order, consented to the Sale Transaction or is deemed to have consented to the Sale Transaction, (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Claim or Encumbrance, or (iii) otherwise falls within the provisions of Bankruptcy Code section 363(f). Those holders of Claims or Encumbrances who did not object (or who ultimately withdrew their objections, if any) to the Motion are deemed to have consented to the Motion and the Sale Transaction pursuant to section 363(f)(2).

T.      As a condition to purchasing the Purchased Assets pursuant to the Stalking Horse APA, the Buyer requires that the Purchased Assets be transferred free and clear of all Claims and Encumbrances (other than Assumed Liabilities) and free from any successor liability claims, including, for the avoidance of doubt, any Healthcare Program Claims.

U.      The Buyer would not have entered into the Stalking Horse APA, or any subsequent version thereof, and will not consummate the Sale Transaction, thus adversely affecting the Debtor's estate, if the transfer of the Purchased Assets is not free and clear of all Claims and Encumbrances (other than Assumed Liabilities), including, for the avoidance of doubt, any Healthcare Program Claims or if the Buyer were or could be liable for any Claims or Encumbrances against the Debtor or the Purchased Assets (other than Assumed Liabilities).

V.      Neither the Buyer nor any of its affiliates are a mere continuation or substantial continuation of the Debtor or its estate, there is no continuity or common identity between the Buyer, the Debtor, or any of their respective affiliates, and there is no continuity of enterprise between the Buyer, the Debtor, or any of their respective affiliates.  Neither the Buyer nor any of its affiliates are holding themselves out to the public as a continuation of the Debtor.  Neither the Buyer nor any of its affiliates are a successor to the Debtor or its estate and none of the transactions

13

contemplated by the Stalking Horse APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assigned Contracts amounts to a consolidation, merger, or *de facto* merger of the Buyer or any of its affiliates with or into any Debtor.  Except as otherwise set forth in the Stalking Horse APA, neither the Buyer nor any of its affiliates are a successor employer as defined in the IRC or by the U.S. National Labor Relations Board or under other any other applicable law.

W.      Without limiting the generality of the foregoing, and other than as may be set forth in the Stalking Horse APA, none of the Buyer, its affiliates, the present or contemplated officers, directors, managers, shareholders, or members of the Buyer and its affiliates, or the Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Liens, Claims, or Interests relating to any U.S. federal, state or local tax liabilities, that the Debtor may incur in connection with consummation of the transactions contemplated by the Stalking Horse APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assigned Contracts, or that the Debtor has otherwise incurred prior to the consummation of the transactions contemplated by the Stalking Horse APA.

X.      Except as otherwise set forth in the Stalking Horse APA, none of the Buyer, any of its affiliates, and any of their respective officers, directors, members, partners, principals, employees, independent contractors, and shareholders (or equivalent), and any of their respective representatives, agents, predecessors, successors, or assigns shall have any liability for any Lien, Claim, including, for the avoidance of doubt, any Healthcare Program Claim, or Interest that arose or occurred prior to the Closing, or otherwise may be asserted against the Debtor or is related to the Purchased Assets prior to the Closing.  None of the Buyer, any of its affiliates, and any of their

respective officers, directors, members, partners, principals, employees, independent contractors, and shareholders (or equivalent), and any of their respective representatives, attorneys, advisors, agents, predecessors, successors, or assigns are or shall be deemed, as a result of the consummation of the Sale Transaction, to (i) be legal successors to the Debtor or its estate by reason of any theory of law or equity, (ii) have, de facto or otherwise, merged with or into the Debtor, (iii) be a successor employer as defined in the IRC or by the U.S. National Labor Relations Board or under applicable law, or (iv) be an alter ego or a mere continuation or substantial continuation or successor of the Debtor in any respect.  Neither the Buyer nor any of its affiliates shall assume or in any way be responsible for any liability or obligation of the Debtor or its estate, including, for the avoidance of doubt, any Healthcare Program Claim, other than the Assumed Liabilities, to the extent provided in the Stalking Horse APA.

Y.      Any Assumed Contracts that the Buyer have or will designate for assumption and assignment, and which are in default at the time of the Closing, may be cured as provided in the Notice of Executory Contracts and Unexpired Leases that may be Assumed and Assigned in Connection with the Sale Transaction (the "Cure Notice") [Doc. No. 186], Stalking Horse APA, and this Sale Order, or as otherwise agreed to by the Buyer and the non-debtor counterparties to such contracts.

Z.      The assumption and assignment of the Assumed Contracts pursuant to the Contract Assumption and Assignment Notice, the terms of this Sale Order, and the Stalking Horse APA is integral to the transactions contemplated by the Stalking Horse APA. Such assumption and assignment is in the best interests of the Debtor, its estate, its creditors, and all other parties in interest, and represents a reasonable exercise of the Debtor's sound and prudent business judgment.

134562.000004\4920-5390-5255.2

AA.     Pursuant to section 365 of the Bankruptcy Code, the Debtor has demonstrated that assuming all Assumed Contracts and assigning such Assumed Contracts to the Buyer is appropriate.  To the extent a Cure Amount is owed to the counterparty of any Assumed Contract, the applicable Cure Amount will be paid on or before Closing of the Sale Transaction approved pursuant to this Sale Order in accordance with the Stalking Horse APA, or as otherwise expressly agreed to between the Debtor and the Buyer, as applicable, and such counterparty.  The Buyer has, in accordance with the Assumption and Assignment Procedures, provided adequate assurance of future performance to any non-Debtor contract counterparty to the extent required by section 365 of the Bankruptcy Code.  The Cure Amounts set forth on Exhibit 2 attached hereto (or any supplemental notice served in accordance with the Assumption and Assignment Procedures or an order of this Court) are the sole amounts necessary to cure any and all defaults under the applicable Assigned Contracts under sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code and, upon payment of the Cure Amounts, the Debtor shall have no further liability under the Assigned Contracts whatsoever.

BB.     The Assumed Contracts being assigned to the Buyer are an integral part of the Sale Transaction and, accordingly, their assumption and assignment is reasonable and an enhancement to the value of the Debtor's estate.  To the extent any Assumed Contract is not an executory contract within the meaning of section 365 of the Bankruptcy Code, it is appropriate that such Assumed Contract be transferred to the Buyer in accordance with the terms of the Stalking Horse APA and, other than with respect to Assumed Liabilities, the Buyer shall have no liability or obligation for any (a) defaults or breaches under such contract that relate to acts or omissions that occurred in the period, or otherwise arose, prior to the Closing Date; and (b) claims, counterclaims, offsets, or defenses (whether contractual or otherwise, including, to the extent permitted by

16

applicable law, any right of recoupment) with respect to such Assumed Contract, that relate to any acts or omissions that arose or occurred prior to the Closing Date.

CC.     The Debtor has full corporate power and authority to sell and deliver the Purchased Assets and execute and perform under, the Stalking Horse APA and any other documents necessary or appropriate to consummate the Sale Transaction, as approved herein. All actions contemplated by the Stalking Horse APA have been duly and validly authorized by all necessary action of the Debtor. No further consents or approvals are required for the Debtor to consummate the Sale Transaction, except as otherwise provided in the Stalking Horse APA.

DD.     The sale of the Purchased Assets to the Buyer under the Stalking Horse APA will be a valid, legal, and effective transfer of the Purchased Assets and will vest the respective Buyer with all right, title, and interests of the Debtor in and to the same, free and clear of all Claims and Encumbrances (other than Assumed Liabilities).

EE.     The sale of the Purchased Assets, including, without limitation, the assignment of the Assumed Contracts, pursuant to the Stalking Horse APA outside a chapter 11 plan, neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of the Debtor's subsequent chapter 11 plan.  Neither the Stalking Horse APA nor the Sale Transaction constitutes a *sub rosa* chapter 11 plan as they do not and do not propose to: (i) impair or restructure any existing debt of, or equity interests in, the Debtor; (ii) impair or circumvent any party's voting rights with respect to any current or future chapter 11 plan proposed by the Debtor; (iii) circumvent any chapter 11 plan process safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or (iv) classify claims or equity interests, compromise controversies, or extend debt maturities.

17

FF.     To the maximum extent permitted by the Bankruptcy Code, each and every provision of the documents governing the Purchased Assets or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any of the Purchased Assets, if any, has been or will be satisfied or is otherwise unenforceable under section 365 of the Bankruptcy Code.

GG.    To maximize the value of the Purchased Assets, it is essential that the transactions contemplated by the Stalking Horse APA occur within the time constraints set forth therein.  Time is of the essence in consummating the transactions contemplated by the Stalking Horse APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts.  Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004 and 6006.

HH.    The Debtor has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions contemplated by the Stalking Horse APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts prior to, and outside of, a chapter 11 plan because, among other things, the Debtor's estate will suffer irreparable harm if the relief provided herein is not granted on an expedited basis.

II.     The releases provided herein are fair and reasonable, are in the best interests of the Debtor, its estate, its creditors and all other parties in interest, and are being provided in return for fair consideration.

JJ.     After consideration of the circumstances described in the Motion and the evidence admitted at the Sale Hearingthe Court has determined that the proposed Sale Transaction and

transfer of the Purchased Assets to the Buyer pursuant to the Stalking Horse APA are in the best interests of the Debtor's estate and should be approved on the terms set forth herein.

KK.    All findings of fact and conclusions of law announced by this Court at the Sale Hearing in relation to the Motion are incorporated herein by reference as though fully set forth in this Sale Order.

**IT IS HEREBY ORDERED THAT**:

1.    The Motion is granted and the Sale Transaction, including without limitation, the sale of the Purchased Assets to the Buyer pursuant to the Stalking Horse APA, is **APPROVED** in all respects as set forth herein.

2.    Any objections to the Motion or the Proposed Order, which have not been voluntarily withdrawn, waived, or resolved, and all reservations of rights included in such objections which have not been otherwise preserved, are hereby **OVERRULED** on the merits. Any objections to the entry of this Sale Order or to the relief granted herein that were not timely filed are hereby forever barred.

3.    The Stalking Horse APA is hereby **APPROVED**, and the Debtor and its professionals are authorized, empowered, and directed to perform their obligations under the Stalking Horse APA and to take such actions as are necessary or appropriate to effectuate the terms of the Stalking Horse APA and this Sale Order. The failure specifically to include any particular provision of the Stalking Horse APA in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the transfer of the Purchased Assets and all other Transactions set forth in the Stalking Horse APA be authorized and approved in their entirety. In the event of any inconsistency between the terms of any prior pleading related

to the Motion, the Stalking Horse APA, the Transaction Documents, and this Sale Order, the terms of this Sale Order shall control.

4.     The Villages Buyer, LLC is hereby **APPROVED** as the Back-Up Bidder per the terms of its last Bid, which, for the avoidance of doubt, is memorialized in that certain amended asset purchase agreement that was read into the record during the Auction and is appended to the Auction transcript, and such Bid shall constitute the "Back-Up Bid" under the Bid Procedures.  If Kinderhook is declared the Successful Bidder and the Back-Up Bid the Successful Bid, the Debtor shall file a copy of the Back-Up Bid on the docket with the understanding that certain dates and deadlines contained therein may need to be amended to account for the passage of time.  Per the Bid Procedures and Bid Procedures Order, the Debtor may proceed with closing the transaction memorialized in the Back-Up Bid and pursuant to the terms thereof without further order of this Court.

5.     Notice of the Motion, the hearing on the Bid Procedures, the Bid Procedures, the Assumption and Assignment Procedures, the Auction, the Sale Transaction, and the Sale Hearing, all deadlines related thereto, and the relief granted in this Sale Order, were and/or are each fair, sufficient, proper, adequate, appropriate, and equitable under the circumstances and complied in all respects with sections 102(1), 363, and 365 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Bid Procedures Order, the Bid Procedures, the Assumption and Assignment Procedures, and the procedural due process rules of the United States Constitution, and as such no order or further notice is or shall be required.

6.     Upon the closing of the Sale Transaction (the "<u>Closing</u>"), the transfer of the Purchased Assets pursuant to this Sale Order and the Stalking Horse APA: (i) shall be a legal, valid, and effective transfer of the relevant Purchased Assets from the Debtor to the Buyer;

(ii) shall vest in the Buyer all rights, titles, and interests of the Debtor to the Purchased Assets and good and marketable title thereto; (iii) shall constitute a transfer for reasonably equivalent value and full, adequate, and fair consideration under the Bankruptcy Code and all other law applicable to such transfer; and (iv) shall be on an "as is, where is" basis without any representations or warranties, except as provided in the Stalking Horse APA.

7.      Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, upon the Closing, the Sale Transaction and the transfer of the Purchased Assets to the Buyer shall be free and clear of, but not limited to, the following (other than Assumed Liabilities): (i) any mortgage, lien (as such term is defined in 11 U.S.C. § 101(37), including any mechanic's, materialman's, statutory, and any other consensual or non-consensual lien), security interest, charge, hypothecation, deed of trust, pledge, right of use, first offer or refusal, easement, servitude, restrictive covenant, lease, sublease, covenant, right of way, option, restriction (including, without limitation, any restriction on transfer or on the use, voting, receipt of income or other rights or exercise of any attributes of ownership), conditional sale or other title retention agreements, interest (including as that term is used in Bankruptcy Code section 363(f)), encroachment, or other encumbrance of any kind arising from or related in any way to the Debtor or the Purchased Assets (all of the foregoing collectively referred to as "Encumbrances"), and (ii) any Claims. Without limitation, the sale of the Purchased Assets to the Buyer shall be free and clear of all Claims and Encumbrances (other than Assumed Liabilities) regardless of whether any such Claim or Encumbrance is in law or in equity, known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, direct or indirect, and whether arising by agreement, understanding, law, equity or

otherwise, and whether occurring or arising before, on or after the filing of the Debtor's bankruptcy petition, or occurring or arising prior to the Closing Date.

8.    Effective upon the Closing, this Sale Order (i) is and shall be effective as a determination that all Liens, Claims, and Interests of any kind or nature whatsoever (other than Assumed Liabilities) existing as to the Purchased Assets prior to the Closing have been unconditionally released, discharged, and terminated (with such Liens, Claims, and Interests attaching solely to the proceeds of the Sale Transaction with the same nature, validity, priority, extent, perfection, and force and effect that such Liens, Claims, and Interests encumbered the Purchased Assets immediately prior to the Closing) and that the conveyances described herein have been effectuated, (ii) is and shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Purchased Assets conveyed to the Buyer, and (iii) is and shall be effective as a determination that all recorded Liens, Claims, and Interests (other than Assumed Liabilities) against the Purchased Assets shall be deemed stricken from such entities' records, official and otherwise.

9.    If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing a Lien, Claim, or Interest in all or any portion of the Purchased Assets being sold pursuant to the Sale Transaction and the Stalking Horse APA shall not have delivered to the Debtor prior to the Closing, in proper form for filing

and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens, Claims, and/or Interests (other than Assumed Liabilities), which such person or entity has with respect to all or any portion of the Purchased Assets being sold pursuant to the Sale Transaction and the Stalking Horse APA, then (i) the Debtor and/or the Buyer are hereby authorized to execute and file such statements, instruments, releases, and/or other similar documents on behalf of such person or entity with respect to all or any portion of the Purchased Assets being sold pursuant to the Sale Transaction and the Stalking Horse APA, and (ii) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which shall constitute conclusive evidence of the release of all Liens, Claims, and Interests (other than Assumed Liabilities) of any kind or nature whatsoever in the Purchased Assets being sold pursuant to the Sale Transaction and the Stalking Horse APA.  Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Stalking Horse APA, including, without limitation, recordation of this Sale Order.

10.    All persons or entities that are currently, or as of the Closing may be, in possession of some or all of the Purchased Assets are hereby directed to surrender possession of such Purchased Assets to the Buyer at the Closing.

11.    Following the Closing, any and each holder of any Lien, Claim or Interest in the Purchased Assets shall be and are hereby forever prohibited and barred from taking any action that would interfere with the Buyer's title to, or use and enjoyment of, the Purchased Assets sold pursuant to the Sale Transaction and the Stalking Horse APA based on, or related to, any such Lien, Claim, or Interest or based on any actions that the Debtor may take in the chapter 11 case. .

12.     Without limiting the foregoing, upon the Closing, none of the Buyer, any of its affiliates, and any of their respective officers, directors, members, partners, principals, employees, independent contractors, and shareholders (or equivalent), and any of their respective representatives, agents, predecessors, successors, or assigns shall have any liability for any Lien, Claim, including, for the avoidance of doubt, any Healthcare Program Claims, or Interest that arose or occurred prior to the Closing, or otherwise may be asserted against the Debtor or is related to the Purchased Assets prior to the Closing.  None of the Buyer, any of its affiliates, and any of their respective officers, directors, members, partners, principals, employees, independent contractors, and shareholders (or equivalent), and any of their respective representatives, attorneys, advisors, agents, predecessors, successors, or assigns are or shall be deemed, as a result of the consummation of the Sale Transaction, to (i) be legal successors to the Debtor or its estate by reason of any theory of law or equity, (ii) have, *de facto* or otherwise, merged with or into the Debtor, (iii) be a successor employer as defined in the IRC or by the U.S. National Labor Relations Board or under applicable law, or (iv) be an alter ego or a mere continuation or substantial continuation or successor of the Debtor in any respect.  Neither the Buyer nor any of its affiliates shall assume or in any way be responsible for any liability or obligation of any of the Debtor or its estate, including, for the avoidance of doubt, any Healthcare Program Claims, other than the Assumed Liabilities, to the extent provided in the Stalking Horse APA.

13.     For the avoidance of doubt, the Buyer shall not be liable for any Claims, Liens or Interests (other than Assumed Liabilities) against the Debtor, or its predecessors or affiliates, and the Buyer shall have no successor or vicarious liability of any kind or character, whether known or unknown, as of the Closing, including, without limitation, (i) any monetary assessments imposed against any of the Facilities, the Debtor, or its predecessors and affiliates, by or on behalf

of any Governmental Authority, (ii) any Healthcare Program Claims, (iii) any taxes of any kind, whether now existing or hereafter arising, or whether fixed or contingent, owed by the Debtor, or the Debtor's predecessors or affiliates, (iv) any other liabilities of the Debtor, or its predecessors or affiliates, to the State of Florida, Florida Agency for Health Care Administration, Centers for Medicare & Medicaid Services, Florida Department of Health, HHS, DOJ, OIG, or any other Governmental Authority, and (v) any other liabilities owed by the Debtor, or its predecessors or affiliates.

14.     With respect to Assumed Liabilities, nothing contained in this Sale Order or the Stalking Horse APA shall be interpreted as providing that the Buyer is liable for any Assumed Liability that is not (j) directly related to the operations or assets of the relevant facility that the Buyer shall operate following Closing, or (ii) expressly assumed pursuant to any document at Closing.

15.     As of the Closing, all persons and entities holding Claims or Encumbrances and their respective successors and assigns, are hereby forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Claims against the Buyer, including, for the avoidance of doubt, any Healthcare Program Claims, or Encumbrances of any kind and nature against the Buyer, the Purchased Assets, or any other assets or properties of the Buyer, or commencing or continuing any action against the Buyer that does not comply or is inconsistent with this Sale Order. Without limiting the foregoing, no persons or entities may condition the issuance to the Buyer of new licenses, new certifications, new provider agreements or other payor program agreements on the assumption or payment by the Buyer of any such Claims or Encumbrances, including without limitation, any liability, penalty or obligation that arose under or relate to any Debtor provider agreements. As of the Closing, the Court hereby reserves exclusive

jurisdiction over this Sale Order and the injunctions provided herein, including, without limitation, in this paragraph.

16.    Subject to paragraph [33] of this Order, but notwithstanding any other provision, the Sale Order does not enjoin any person, entity, or governmental unit, including the United States and its agencies, from asserting, prosecuting, or pursuing any action, whether administrative, civil, or criminal, including but not limited to Healthcare Program Claims, against the Buyer that arises from (1) conduct unrelated to its acquisition of the Purchased Assets under § 363(f) of the Bankruptcy Code or (2) any obligation the Buyer may have related to the Purchased Assets independent of its acquisition of the Purchased Assets from the Debtor under § 363(f) of the Bankruptcy Code; and nothing in this Sale Order should be interpreted to imply or otherwise mean that any Medicare Advantage Organization ("MAO") or its related entities may avoid deleting or correcting erroneous diagnosis codes from CMS data systems that the MAO received from the Debtor and any associated financial obligations.  Nor should this Sale Order be construed to provide any sort of waiver, release, or discharge, of any claims of any nature the United States may have against a MAO or its related entities arising from their own obligations to correct erroneous or false submissions to any federal healthcare program or in any way limits the MAO's or related entities' obligation to investigate the validity of diagnoses in any audit universe created by TVH.

17.    The Court **APPROVES** the assumption and assignment of the Assumed Contracts as set forth herein pursuant to section 365 of the Bankruptcy Code.  All requirements of sections 365(b) and 365(f) of the Bankruptcy Code have been satisfied for the assumption by the Debtor, and the assignment by the Debtor to the Buyer, of each Assumed Contract. All counterparties of the Assumed Contracts that did not timely file an objection to the Cure Notice are deemed to

consent to the assumption and assignment by the Debtor of their Assumed Contract to the Buyer and to have waived any defaults or breaches thereunder, and the Buyer shall enjoy all of the rights and benefits under each such Assumed Contract as of the Closing without the necessity of obtaining such counterparty's consent to the assumption or assignment thereof.

18.     Notwithstanding anything to the contrary in the trust agreements, all assets and all trusts and all assets held in such trusts on behalf of or otherwise relating to any Assumed Plan, including, for the avoidance of doubt the Physicians and Executive DC Plan and the Executive Deferred Compensation Plan, and the rabbi trust(s) related thereto, are assigned to the Buyer.

19.     In accordance with the terms of the Stalking Horse APA, the Buyer may, at its discretion, add or remove any executory contract or unexpired lease from the list of Assumed Contracts that shall be assumed and assigned to the respective Buyer at Closing. Following the Closing, the Debtor shall file the final list of Assumed Contracts that have been assumed and assigned to the respective Buyer at Closing. Other than the Assumed Contracts designated in such final list of Assumed Contracts filed on the docket, no other executory contract or unexpired lease shall be deemed assumed by the Debtor and assigned to the Buyer.

20.     The cure amounts designated in the Cure Notice are deemed the amounts necessary to "cure" all "defaults" (within the meaning of Bankruptcy Code section 365(b)) under the Assumed Contracts. Any objections to the cure amounts, to the extent not otherwise resolved, are hereby **OVERRULED**. The Court finds that with respect to all Assumed Contracts, the payment of the cure amounts, as provided herein, is reasonable and appropriate and is deemed to fully satisfy the Debtor's obligations under Bankruptcy Code sections 365(b) and 365(f).

134562.000004\4920-5390-5255.2

21.     Pursuant to the Stalking Horse APA, the Debtor will pay the cure amounts under any Assumed Contracts at Closing (subject to the obligations of Buyer under the Stalking Horse APA), or as otherwise agreed by the Buyer and the counterparty to any Assumed Contract.

22.     The Buyer has demonstrated adequate assurance of future performance of each Assumed Contract within the meaning of section 365 of the Bankruptcy Code. The Buyer's payment of cure amounts in accordance with the terms of the Stalking Horse APA, and the Buyer's promise to perform the obligations under the Assumed Contracts after the Closing Date, constitute adequate assurance of future performance.

23.     Upon assignment of the Assumed Contracts to the Buyer in accordance with the terms of the Stalking Horse APA and this Sale Order, the Assumed Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, and the Debtor shall have no further liability or obligation under such Assumed Contracts. Without limiting the foregoing, each and every provision of the Assumed Contracts or applicable non-bankruptcy law that purport to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning, assignment of any Assumed Contract has been or will be satisfied or is otherwise unenforceable under Bankruptcy Code section 365. Upon the reasonable request of the Buyer, all counterparties to the Assumed Contracts shall cooperate and expeditiously execute and deliver, and shall not charge the Debtor or Buyer for, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Sale Transaction.

24.     Other than with respect to Assumed Liabilities, the Buyer shall have no liability or obligation for any (i) defaults or breaches under any Assumed Contract that relate to acts or omissions that occurred in the period, or otherwise arose, prior to the Closing Date, or (ii) claims,

counterclaims, offsets, or defenses (whether contractual or otherwise, including, any right of recoupment) with respect to any Assumed Contract that relate to any acts or omissions that arose or occurred prior to the Closing Date.

25.    The failure of the Debtor or the Buyer to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of the Debtor's or the Buyer's respective rights to enforce every term and condition of such Assumed Contract.

26.    If any person or entity that has filed financing statements, mortgages, deeds of trust, mechanic's liens, *lis pendens*, or other documents or agreements evidencing interests with respect to the Debtor and/or the Purchased Assets shall not have delivered to the Debtor or Buyer prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of Claims and Encumbrances which the person or entity has with respect to the Debtor, the Purchased Assets, or otherwise (except Assumed Liabilities) then (i) the Buyer and/or the Debtor are hereby authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Purchased Assets and (ii) the Buyer and/or the Debtor is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of (but not a necessary condition to) the release of all such Claims and Encumbrances in, against, or with respect to the Debtor and/or the Purchased Assets. This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, and local governmental agency, department, or office. Notwithstanding the foregoing, the provisions of this Sale Order and the transfer of the Purchased Assets to the Buyer free and clear of all Claims and Encumbrances (other

29

than Assumed Liabilities) shall be and are self-executing without the necessity of any recording or filing of any document.

27.    All entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Purchased Assets conveyed to the Buyer may rely on this Sale Order as confirmation from this Court that the Debtor has all right, title, and authority and approval to transfer legal title to the Purchased Assets to the Buyer, free and clear of all Claims and Encumbrances (other than Assumed Liabilities).

28.    No person or entity shall take or cause to be taken any action that would interfere with the Sale Transaction, including without limitation the transfer of the Purchased Assets to the Buyer, in accordance with the terms of this Sale Order and the Stalking Horse APA.

29.    Any persons or entities that are presently, or as of the Closing may be, in possession of any portion of the Purchased Assets to be transferred pursuant to this Sale Order are hereby directed to surrender possession of such Purchased Assets to the Buyer on the date of the Closing.

30.    The Sale Transaction contemplated by this Sale Order and the Stalking Horse APA have been bargained for and undertaken by the Debtor and Buyer at arm's length, without collusion, and in good faith within the meaning of section 363(m) of the Bankruptcy Code. The Debtor and the Buyer have not engaged in any conduct that would cause or permit this Sale Order or the Sale Transaction to be avoided.

31.    Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Sale Order are hereafter reversed, modified, or vacated by a subsequent order of this Court or any other court, such reversal, modification, or *vacatur* shall not affect the validity and enforceability of any obligation or right granted pursuant to the terms of this Sale Order. Notwithstanding any reversal, modification, or vacatur of this Sale Order, any actions taken by the Buyer or the Debtor pursuant to the terms of this Sale Order prior to the effective date of any such reversal, modification, or *vacatur* shall be governed in all respects by the original provisions of this Sale Order and the Stalking Horse APA, as the case may be.

32.    None of the Debtor, the Buyer, any designees of the Buyer, or their respective representatives and affiliates have engaged in any conduct that would cause or permit the Sale Transaction and/or the Stalking Horse APA to be avoided or costs and damages to be imposed against the Buyer, their affiliates, their representatives, or designees of the Buyer pursuant to section 363(n) of the Bankruptcy Code.

33.    Effective as of the Closing, the Debtor, for itself and each of its controlled affiliates and any former, current or future estates, heirs, executors, administrators, trustees, successors and assigns of any of the foregoing (each, a "Company Releasor"), irrevocably, knowingly and voluntarily releases, discharges and forever waives and relinquishes all claims, demands, obligations, liabilities, defenses, affirmative defenses, setoffs, counterclaims, actions and causes of action of whatever kind or nature, whether known or unknown, which any Company Releasor has, may have, or might have or may assert now or in the future, against Buyer, its affiliates or any of its or their respective former or current directors, officers, employees, general or limited partners, managers, members, direct or indirect equityholders, controlling persons, affiliates, attorneys, assignees, agents, advisors, or representatives, or representatives or affiliates of any of

the foregoing, or any former, current or future estates, heirs, executors, administrators, trustees, successors or assigns of any of the foregoing (each, a "Company Releasee") arising out of, based upon or resulting from any contract, transaction, event, circumstance, action, failure to act or occurrence of any sort or type, whether known or unknown, and which occurred, existed or was taken or permitted at or before the Closing to the extent relating to the Debtor's business or the Purchased Assets, including, without limitation the negotiation, investigation, preparation, execution, or delivery of the Stalking Horse APA and the entry into and consummation of the transaction; *provided*, that nothing contained in this paragraph shall release, waive, discharge, relinquish or otherwise affect the rights or obligations of any person or entity under the Stalking Horse APA, any other Transaction Document or any other agreement delivered or required to be delivered pursuant to the Stalking Horse APA for any claims of fraud, intentional misconduct or gross negligence. The Debtor shall, and shall cause its controlled affiliates to, refrain from, directly or indirectly, asserting any claim or demand, or commencing, instituting or causing to be commenced any legal proceeding of any kind against a Company Releasee based upon any matter released pursuant to this paragraph.

34.     Notwithstanding any other provision, the Sale Order does not waive, release, or discharge any estate claims and causes of action of any nature against the Debtor's current or former officers, directors, owners, affiliates, and related persons.

35.     No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Stalking Horse APA, the transfer of the Purchased Assets pursuant thereto, or this Sale Order.

36.     The Debtor shall be and is hereby authorized, empowered, and directed to take such actions, including the execution and delivery of any and all instruments and documents, as may be

required to effectuate the terms of the Stalking Horse APA and this Sale Order. The Stalking Horse APA and any agreements, documents, or other instruments related to this Sale Order or the transactions contemplated herein may be modified, amended, or supplemented by the parties thereto, in a writing signed by all parties, and in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on Debtor's estate.

37.     The Debtor is authorized to pay, without further order of the Court, whether before, at, or after Closing, any expenses or costs required to be paid to perform its obligations in accordance with the Stalking Horse APA.

38.     Each and every federal, state, and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Sale Transaction. No governmental unit may revoke or suspend any lawful right, license, trademark, or other permission relating to the Sale Transaction or use of the Purchased Assets sold, transferred, or conveyed to the Buyer on account of the filing or pendency of this chapter 11 case or the consummation of the Sale Transaction. For the avoidance of doubt, the Sale Transaction authorized herein shall be of full force and effect, regardless of whether the Debtor or any of its affiliates lack good standing in any jurisdiction in which such entity is formed or is authorized to transact business.

39.     The provisions of this Sale Order and any actions taken pursuant hereto shall survive any conversion or dismissal of the chapter 11 case and the entry of any other order which may be entered in the chapter 11 case, including any order: (i) confirming any plan of reorganization; (ii) converting the case from chapter 11 to chapter 7; (iii) appointing a trustee or examiner; or (iv) dismissing the chapter 11 case or any successor case. The terms and provisions

33

of this Sale Order, as well as the rights granted under the Stalking Horse APA, shall continue in full force and effect and shall be binding upon the Debtor and its successors, assigns, any reorganized Debtor, trustee, plan trustee, plan administrator (or similar representative), or chapter 7 trustee applicable to the Debtor and its estate, or any person or entity acting on behalf of the Debtor, notwithstanding any such conversion, dismissal, or entry of any order.

40.     All of the transfers and other performance set forth in this Sale Order and the Stalking Horse APA, together with the performance under all of the agreements identified herein to be executed and performed at Closing, are part of a single transaction such that the same is not subject to being avoided, rejected, or otherwise terminated or modified by a division or separate treatment of the various agreements or component transactions. Accordingly, the provisions of this Sale Order and the Stalking Horse APA are non-severable and mutually dependent.

41.     The Court shall retain exclusive jurisdiction to enforce the provisions of this Sale Order and to resolve any dispute concerning this Sale Order, the Stalking Horse APA, and/or the rights and duties of the parties hereunder or thereunder, or any issues relating to the Sale Transaction and this Sale Order, including, but not limited to, interpretation of the terms, conditions, and provisions hereof, and the status, nature, and extent of the Purchased Assets, and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the Purchased Assets free and clear of Claims and Encumbrances (other than Assumed Liabilities) as set forth herein.

42.     For the avoidance of doubt, notwithstanding anything contained in this Order or the Transaction Documents to the contrary, the Buyer shall not acquire any interest in any Excluded Assets, as that term is defined in the Stalking Horse APA; *provided further* that the definition of Avoidance Actions in the Stalking Horse APA shall include and be deemed to include any state

34

law analogues to any claims or causes of action arising under Sections 542 through 553 of the Bankruptcy Code.  Further, any and all claims, causes of action, or rights of recovery, belonging to the Debtor or its estate against any current or former director, officer, manager, member, insider, shareholder or employee of the Debtor or any of the Debtor's controlled affiliates, including, without limitation, claims for breach of fiduciary duty, mismanagement, negligence, gross negligence, misconduct, fraud, corporate waste, or any similar cause of action under applicable law ("D&O Claims") and all insurance policies and all rights to proceeds thereunder, including, without limitation, any director or officer insurance policies relating to any matter, event, or circumstance occurring on or prior to the Closing Dateshall constitute Excluded Assets.  Nothing in this Order or the Transaction Documents shall release any party (other than the Company Releasees, pursuant to paragraph 33) for any liability for any Claims that constitute Excluded Assets, including without limitation Avoidance Actions or D&O Claims.

43.    The Buyer shall provide any liquidating trustee access to the Debtor's books and records so the liquidating trustee may wind down and fully administer the bankruptcy estate.

44.    Notwithstanding anything to the contrary in this Sale Order, neither the Buyer nor the Debtor shall have an obligation to close the Sale Transaction until all conditions precedent in the Stalking Horse APA or other Sale Transaction documents have been satisfied or waived in accordance with the terms of the Stalking Horse APA.

45.    Notwithstanding any provision of the Bankruptcy Code or Federal Rules of Bankruptcy Procedure to the contrary, this Sale Order shall be effective and enforceable immediately upon entry, and any stays thereof, including without limitation pursuant to Fed. R. Bankr. P. 6004(h) and 6006(d), are hereby abrogated.  Time is of the essence in closing the transactions referenced herein, and the Debtor and the Buyer intend to close the transactions as soon as practicable.  This Sale Order is a final order and the period in which an appeal must be

filed shall commence upon the entry of this Sale Order.  Any party objecting to this Sale Order

must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being

foreclosed as moot.

###

Attorney Elizabeth A. Green is directed to serve a copy of this order on interested parties who do
not receive service by CM/ECF and to file a proof of service within three days of entry of this
order.

134562.000004\4920-5390-5255.2

**EXHIBIT 1**

**Stalking Horse APA**

**Exhibit 2**

**Cure Amounts**

# **EXHIBIT B**

## **Redline**

134562.000004\4918-2917-9751.3

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| In re: | Case No.: 25-04156 (LVV) |
| THE VILLAGES HEALTH SYSTEM, LLC,[1] | Chapter 11 |
| Debtor. | |

**ORDER (A) APPROVING SALE OF SUBSTANTIALLY ~~ALL~~ ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF**

Upon the motion [Docket No. 29] (the "Motion")[2] filed by the Villages Health System, LLC (the "Debtor" or "Seller")  for entry of an order (this "Sale Order"), (i) authorizing and approving the sale of substantially all of the assets of the Debtor (as such assets may be more particularly defined in the governing Stalking Horse APA, the "Purchased Assets"), free and clear of all liens, interests, claims, and encumbrances (other than Assumed Liabilities) to the fullest extent permitted by section 363(f) of the Bankruptcy Code (the "Sale Transaction"), (ii) authorizing and approving the assumption and assignment of the Assumed Contracts (as defined herein) to the fullest extent permitted under section 365 of the Bankruptcy Code, and (iii) granting related relief; and this Court having considered any and all objections to the

---

[1] The address of the Debtor is 600 Sunbelt Road, The Village, Florida 32159. The last four digits of the Debtor's federal tax identification number is 6436.

[2] Capitalized terms used but not defined herein shall have the meanings provided in the Motion or the Stalking Horse APA, as applicable.

Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, their creditors,  and other parties in interest; and this Court having found that the Debtor's notice of the Motion and opportunity for hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed and considered the Motion, all relief related thereto, the objections thereto, including the objections of Highspring LLC (f/k/a Vaco LLC) ("Highspring") [Docket. No. 197], Blue Cross and Blue Shield of Florida, Inc. d/b/a Florida Blue ("BCBSFl") and its commercial HMO, Health Options, Inc. ("HOI") (collectively, "Florida Blue") [Docket. No. 177], VaxCare, LLC ("VaxCare") [Docket. No. 175], Jim Besong ("Besong") [Docket. No. 172], and UnitedHealthcare Insurance Company and UnitedHealthcare of Florida, Inc., together with their affiliates (collectively, "UnitedHealthcare") [Docket. No. 168], and the statements of counsel and the evidence presented in support of the relief requested by the Debtor in the Motion at the Sale Hearing, including, among other things, the ~~First Day Declaration~~declarations of Neil Luria and A.J. Berens [Doc. Nos. 215 and 216]; and this Court having determined that the legal and factual bases set forth in the Motion and at the hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

THE COURT HEREBY FINDS AND DETERMINES ~~as follows~~**AS FOLLOWS**:

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this

134562.000004\~~4907-6809-5077.1~~4937-4525-8087.1

proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      On July 3, 2025, the Seller entered into that certain Asset Purchase Agreement (as further modified and amended, the "Stalking Horse Bid" or the "Stalking Horse APA") for the Purchased Assets with CenterWell Senior Primary Care (FL), Inc. (the "Buyer" or "Stalking Horse Bidder"). A true and correct copy of the Stalking Horse APA is attached to this Order as Exhibit 1. [3] The Stalking Horse Bid was subject to higher and better offers made in accordance with the Bid Procedures Order (defined below).

C.      By order dated July 28, 2025 [Docket No. 110] (the "Bid Procedures Order"), the Court, among other things, approved (i) the Bid Procedures; (ii) the procedures for notice of the proposed sale of the Purchased Assets free and clear of all claims and encumbrances (other than Assumed Liabilities); (iii) procedures for the assumption and assignment of executory contracts and unexpired leases to be assumed and assigned as part of the Purchased Assets (the "Assumed Contracts"); and (iv) the Bid Protections (as defined in the Bid Procedures Order), among other relief, all as more particularly set forth in the Bid Procedures Order.

D.      The Bid Procedures were substantively and procedurally fair to all parties and all potential bidders, were the result of arm's-length negotiations, and afforded notice and a full, fair, and reasonable opportunity for any interested party to make a higher or otherwise best offer

---

[3] As used herein, in the Bid Procedures, or in any order of this Court, the terms "Successful Bid" and "Successful Bidder" shall be interpreted as referring to the "Stalking Horse Bid" or "Stalking Horse APA," as to the former, and the "Buyer" or "Stalking Horse Bidder," as to the latter.  As used herein, except as used for historical context, "Stalking Horse Bid" and "Stalking Horse APA" shall refer to the document(s) appended hereto as Exhibit 1.

134562.000004\4907-6809-5077.14937-4525-8087.1

to the Purchased Assets.  The Debtor conducted the sale process without collusion and in accordance with the Bid Procedures.

E.      The Debtor solicited offers and noticed the Auction in accordance with the provisions of the Bid Procedures Order. The Auction was duly noticed, and the Debtor afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer than the Stalking Horse Bid to purchase the Purchased Assets. [The Debtor received ~~no~~one timely Qualified ~~Bids other than~~Bid in addition to the Stalking Horse Bid~~, and accordingly, cancelled the Auction pursuant to the *Notice of Cancellation of Auction and Designation of Stalking Horse Bid as the Successful Bid* [Docket No. X] in accordance with the Bid Procedures Order.] The Stalking Horse Bidder is properly deemed the~~ before the Bid Deadline from The Villages Buyer, LLC, an affiliate of Kinderhook Industries, LLC ("Kinderhook"). Accordingly, the Debtor held an Auction on September 7, 2025. Following the Auction, the Stalking Horse Bidder was properly designated as the Successful Bidder and the Stalking Horse ~~APA is designated~~Bidder entered into a modified and amended Stalking Horse APA, which memorializes the Successful Bid for the Purchased Assets enumerated therein, in each case, in accordance with the Bid Procedures Order.  A true and correct copy of the Stalking Horse APA memorializing the Successful Bid is attached to this Order as **Exhibit 1**. The Buyer and its professionals have complied in all material respects with the Bid Procedures Order, the Bid Procedures, the Assumption and Assignment Procedures, and all other applicable orders of this Court in negotiating and entering into the Stalking Horse APA, and the Sale Transaction and the Stalking Horse APA likewise comply with the Bid Procedures Order and all other applicable orders of this Court.

4

F.      Proper, timely, adequate, and sufficient notice of the Motion, the Buyer, the Stalking Horse APA, the Sale Transaction proposed in the Motion, including the assumption and assignment of the Assumed Contracts and any cure amounts related thereto, and of the terms of this Sale Order has been provided in accordance with sections 102(1) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 6006, Local Rule 6004-1, and other applicable law. As demonstrated by the certificates of service and affidavits of publication filed on the docket [Docket Nos. X], the Debtor has provided sufficient and appropriate notice under the circumstances, and no other or further notice of the Motion, the Sale Agreements, the Sale Hearing, or the related deadlines is required.

G.      A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities.

H.      Consistent with its fiduciary duties, the Debtor has demonstrated both (i) good, sufficient, and sound business purposes and justification, and (ii) compelling circumstances for the sale of the Purchased Assets to the Buyer pursuant to section 363 of the Bankruptcy Code. Such justification and compelling circumstances include, but are not limited to, the fact that (x) the Buyer's offer under the Stalking Horse APA constitutes the highest and best offer available for the Purchased Assets; (y) [there were no Qualified Bids by the Bid Deadline the Debtor provided all Qualified Bidders at the Auction a reasonable opportunity to submit an Overbid to the Stalking Horse APA before the close of the Auction]; and (z) consummation of the Sale Transaction with the Buyer presents the best opportunity to realize the highest value for the Purchased Assets and avoid potential decline and devaluation thereof, relieves the Debtor's bankruptcy estate of significant liabilities and provides a viable path for continued operations of the Facilities in the communities they serve.

5

I.      The consideration provided at Closing by the Buyer is fair and reasonable, represents the highest and/or best offer for the Purchased Assets, is in the best interests of the Debtor, its creditors and its estate, and constitutes a valid and sound exercise of the Debtor's business judgment.

J.      The terms set forth in this Sale Order and the Stalking Horse APA, are fair and reasonable and constitute reasonably equivalent value and full, adequate, and fair consideration for the Purchased Assets under the Bankruptcy Code, or any other applicable laws of the United States, any state, territory, or possession.

K.      As demonstrated by the testimony and other evidence proffered or adduced at the Sale Hearing, as applicable, and the representations of counsel made on the record at the Sale Hearing, as applicable, (a) the Debtor and its professionals adequately marketed the Purchased Assets and conducted the sale process in compliance with the Bid Procedures Order in good faith and in a fair and open manner; (b) the sale process and the Bid Procedures were non-collusive, duly noticed, and provided a full, fair, and reasonable opportunity for any interested party to conduct due diligence and make an offer to purchase the Purchased Assets and submit higher or better offers for the Purchased Assets than the Successful Bid; (c) the consideration provided by the Buyer is fair and reasonable consideration for the Purchased Assets and constitutes reasonably equivalent value under the Bankruptcy Code, the Uniform Voidable Transactions Act, and any other applicable laws of the United States, any state, territory, possession, or the District of Columbia or any other applicable law; (e) the Sale Transaction will provide a greater recovery to the Debtor's creditors than would be provided by any other presently available alternative transaction with respect to the Purchased Assets; (f) taking into consideration all relevant factors and circumstances, no other entity has offered to purchase the Purchased Assets

134562.000004\4907-6809-5077.14937-4525-8087.1

for greater economic value to the Debtor or its estate than the Buyer; and (g) the Debtor determined that the Stalking Horse APA constitutes the highest or otherwise best offer for the Purchased Assets, maximizes value for the Debtor's estate, and constitutes a valid and sound exercise of the Debtor's business judgment.  There is no legal or equitable reason to delay Closing, as contemplated by the Stalking Horse APA.

L.      The sale process engaged in by the Debtor and the Buyer was conducted in accordance with the Bid Procedures and the Bid Procedures Order.  The Stalking Horse APA was negotiated, proposed, and entered into by the Debtor and the Buyer in good faith, without collusion of any kind, and from arm's-length bargaining positions, and is substantively and procedurally fair to all parties in interest.  The Debtor and the Buyer and their respective advisors have complied, in good faith, in all material respects with the Bid Procedures Order and the Bid Procedures.  The Debtor and its management, employees, agents, advisors, and representatives, and the Buyer and its employees, agents, advisors and representatives, actively participated in the bidding process, and each acted in good faith and without collusion or fraud of any kind.  The Buyer subjected its bid to competitive bidding in accordance with the Bid Procedures and was designated the Successful Bidder for the Purchased Assets in accordance with the Bid Procedures and the Bid Procedures Order.  All payments to be made by the Buyer to the Debtor or any insider of the Debtor in connection with the Sale Transaction, and other agreements or arrangements entered into by the Buyer in connection with the Sale Transaction have been disclosed.  The form and total consideration to be realized by the Debtor under the Stalking Horse APA constitutes fair value, fair, full, and adequate consideration, reasonably equivalent value, and reasonable market value for the Purchased Assets.  Neither the Debtor nor the Buyer has engaged in any conduct that would cause or permit the Stalking Horse APA or the Sale

7

Transaction to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code, and accordingly neither the Debtor nor the Buyer has violated section 363(n) of the Bankruptcy Code by any action or inaction.

M.      The Buyer is a purchaser in "good faith," as that term is used in section 363(m) of the Bankruptcy Code, with respect to the Purchased Assets and the Sale Transaction, and, as such, is entitled to all of the rights, privileges, immunities, and protections afforded thereby, including in the event this Sale Order or any portion thereof is reversed or modified on appeal, and the Buyer has proceeded in good faith in all respects in connection with the Sale Transaction specific and this chapter 11 case generally. Neither the Debtor nor the Buyer has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code. The Debtor was free to deal with any other party interested in buying or selling some or all of the Purchased Assets on behalf of the Debtor's estate. The protections afforded by section 363(m) of the Bankruptcy Code are integral to the Sale Transaction and the Buyer would not consummate the Sale Transactions without such protections. The Stalking Horse APA and this Sale Order were negotiated, proposed, and entered into by the Debtor and the Buyer in good faith, from arm's-length bargaining positions, and without collusion. The Buyer is not connected to or related to the Debtor or those in control of the Debtor in any manner that could reasonably affect the marketing, bidding, negotiating, or ultimate sale of the Purchased Assets on the terms set forth herein. The sale process conducted was non-collusive, fair, and reasonable, and it was conducted openly and in good faith. The Buyer is entitled to the protections of section 363(m) of the Bankruptcy Code with respect to the Purchased Assets and the Sale Transaction.

N.      The sale of the Purchased Assets to the Buyer is a sale in good faith within the meaning of Bankruptcy Code section 363(m). The Buyer, the Debtor, and their respective

8

representatives and affiliates, have not engaged in any conduct that would cause or permit the sale of the Purchased Assets, the Sale Transaction, or this Sale Order to be avoided. Neither the Buyer nor any of its affiliates, officer, directors, managers, shareholders, members or any of their respective successors or assigns is an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.  No common identity of directors, managers, controlling shareholders, or members exists between the Debtor and the Buyer.  All payments to be made by the Buyer to the Debtor or any insider of the Debtor in connection with the Sale Transaction, and all agreements or arrangements entered into by the Buyer in connection with the Sale Transaction have been fully disclosed, and the negotiation and execution of the Stalking Horse APA and the other related documents were at arms' length and in good faith.

O.    The consideration provided by the Buyer for the Purchased Assets pursuant to the Stalking Horse APA (ai) is fair and reasonable, (bii) is the highest and best offer for the Purchased Assets, (ciii) will provide a greater recovery for the Debtor's creditors and estate than would be provided by any other available alternative, and (div) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, and each state, territory, possession, and the District of Columbia, or any other applicable law.

P.    The Stalking Horse APA was not entered into, and neither the Debtor nor the Buyer has entered into the Stalking Horse APA or proposes to consummate the Sale Transaction, for the purpose of (ai) escaping liability for any of the Debtor's debts or (bii) hindering, delaying or defrauding the Debtor's present or future creditors, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable law substantially similar to the foregoing.

9

Q.     The Buyer would not have entered into the Stalking Horse APA and would not consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, if (a) if the sale of the Purchased Assets to the Buyer were not, pursuant to section 363(f) of the Bankruptcy Code and any other applicable law and except for Assumed Liabilities, free and clear of (i) all liens, whether consensual or statutory, replacement liens, adequate protection liens or other liens granted under sections 361, 363, or 364 of the Bankruptcy Code, mortgages, deeds of trust, hypothecations, pledges, security interests, charges, contractual commitments, options and transfer restrictions, including rights of first refusal or first offer, defect or objection liens, easements, encroachments or servitudes, in each case, that constitutes an "interest" for purposes of section 363(f) of the Bankruptcy Code (collectively, the "Liens"), (ii) any and all "claims," as defined in section 101(5) of the Bankruptcy Code and jurisprudence interpreting the Bankruptcy Code, including (1) any and all claims or causes of action based on or arising under any labor, employment or pension laws, labor or employment agreements, including any employee claims related to worker's compensation, occupational disease, or unemployment or temporary disability, including, without limitation, claims that might otherwise arise under or pursuant to (A) ERISA (as defined below), (B) the Fair Labor Standards Act, (C) Title VII of the Civil Rights Act of 1964, (D) the Federal Rehabilitation Act of 1973, (E) the National Labor Relations Act, (F) the Age Discrimination and Employment Act of 1967, as amended, (G) the Americans with Disabilities Act of 1990, (H) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code and of any similar state law, (I) state anti-discrimination, harassment, or retaliation laws, (J) state unemployment or workers' compensation laws or any

10

other similar state laws, (K) the Family and Medical Leave Act and paid leave laws or other leave of absence laws, (L) any other state or federal benefits or claims relating to any employment with the Debtor or any of its predecessors, or (M) the WARN Act (29 U.S.C. §§ 2101 et seq.), or in each case in (A) through (M) any equivalent applicable laws outside the United States, (2) any rights under any multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of the Employee Retirement Income Security Act of 1974 (as amended, "ERISA")), pension, health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including any pension plans of the Debtor or any multiemployer plan to which the Debtor has at any time contributed to or had any liability or potential liability, (3) any and all claims or causes of action based upon or relating to any putative successor or transferee liability, (4) any and all claims or causes of action based upon or relating to any bulk sales or similar law, (5) any and all claims or causes of action based upon or relating to any tax statutes or ordinances, including the Internal Revenue Code of 1986, as amended (the "IRC"), and any taxes arising under or out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing, including any ad valorem taxes assessed by any applicable taxing authority, and (6) any other rights or causes of action (whether in law or in equity), warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims or liabilities relating to any act or omission of the Debtor or any other person prior to the Closing, consent rights, options, contract rights, covenants and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of the above-captioned case, and whether imposed by agreement, understanding, law, equity or

11

otherwise (collectively, the "Claims"), (iii) any losses, obligations, liabilities, settlement payments, damages, awards, judgments, reimbursements, fines, penalties, assessments and interest arising out of, resulting from, or in connection with (1) the self-disclosure to the U.S. Department of Health and Human Services ("HHS") Office of Inspector General ("OIG") and U.S. Department of Justice ("DOJ") made on December 27, 2024, (2) the Debtor's billing, coding and clinical documentation practices, or (3) any related action, charge, order, audit, investigation, formal inquiry, complaint, suit, litigation, arbitration, qui tam action, written notice of violation or noncompliance, or other Claim or proceeding, whether administrative, civil, criminal or otherwise; (iv) any losses, obligations, liabilities, settlement payments, damages, awards, judgments, reimbursements, refunds, fines, penalties, assessments and interest, whether now existing or hereafter arising, imposed by, or owed to, the DOJ, OIG or any other Governmental Authority, any Medicare Advantage plan, any federal healthcare program, or any other health plan, third-party payor, patient or person (such liabilities described in clauses (iii) and (iv), the "Healthcare Program Claims"); and (v) any and all claims, causes of actions, encumbrances, payments, charges, judgments, assessments, losses, monetary damages, penalties, fines, fees, interest obligations, deficiencies, debts, obligations, costs and expenses, judgments, orders and decrees of any court or foreign domestic governmental entity (including foreign, state, and local taxes), and other liabilities (whether absolute, accrued, contingent, fixed or otherwise, or whether known or unknown, or due or to become due or otherwise), including any amounts paid in settlement, interest, court costs, costs of investigators, attorneys' fees, legal or other expenses incurred in connection therewith (collectively, the "Interests"); or (b) if the Buyer would, or in the future could, be liable for or subject to any such Liens, Claims, or Interests (other than Assumed Liabilities).

R.     A sale of the Purchased Assets other than one free and clear of all Liens, Claims, and Interests (other than Assumed Liabilities) would have yielded substantially less value for the Debtor's estate, with less certainty, than the Sale Transaction as contemplated by the Stalking Horse APA.  Therefore, the Sale Transaction contemplated by the Stalking Horse APA free and clear of all Liens, Claims, and Interests (other than Assumed Liabilities) is in the best interests of the Debtor, its estate, its creditors, and all other parties in interest.

S.     The Debtor may transfer the Purchased Assets free and clear of all Claims and Encumbrances (other than Assumed Liabilities) because, one or more of the standards set forth in Bankruptcy Code sections 363(f)(1)–(5) have been satisfied. Each creditor or other person or entity asserting a Claim or Encumbrance (as defined below) in the Purchased Assets (i) has, subject to the terms and conditions of this Sale Order, consented to the Sale Transaction or is deemed to have consented to the Sale Transaction, (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Claim or Encumbrance, or (iii) otherwise falls within the provisions of Bankruptcy Code section 363(f). Those holders of Claims or Encumbrances who did not object (or who ultimately withdrew their objections, if any) to the Motion are deemed to have consented to the Motion and the Sale Transaction pursuant to section 363(f)(2).

T.     As a condition to purchasing the Purchased Assets pursuant to the Stalking Horse APA, the Buyer requires that the Purchased Assets be transferred free and clear of all Claims and Encumbrances (other than Assumed Liabilities) and free from any successor liability claims, including, for the avoidance of doubt, any Healthcare Program Claims.

U.     The Buyer would not have entered into the Stalking Horse APA, or any subsequent version thereof, and will not consummate the Sale Transaction, thus adversely

13

affecting the Debtor's estate, if the transfer of the Purchased Assets is not free and clear of all Claims and Encumbrances (other than Assumed Liabilities), including, for the avoidance of doubt, any Healthcare Program Claims or if the Buyer were or could be liable for any Claims or Encumbrances against the Debtor or the Purchased Assets (other than Assumed Liabilities).

V.    Neither the Buyer nor any of its affiliates are a mere continuation or substantial continuation of the Debtor or its estate, there is no continuity or common identity between the Buyer, the Debtor, or any of their respective affiliates, and there is no continuity of enterprise between the Buyer, the Debtor, or any of their respective affiliates. Neither the Buyer nor any of its affiliates are holding themselves out to the public as a continuation of the Debtor. Neither the Buyer nor any of its affiliates are a successor to the Debtor or its estate and none of the transactions contemplated by the Stalking Horse APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assigned Contracts amounts to a consolidation, merger, or *de facto* merger of the Buyer or any of its affiliates with or into any Debtor. Except as otherwise set forth in the Stalking Horse APA, neither the Buyer nor any of its affiliates are a successor employer as defined in the IRC or by the U.S. National Labor Relations Board or under other any other applicable law.

W.    Without limiting the generality of the foregoing, and other than as may be set forth in the Stalking Horse APA, none of the Buyer, its affiliates, the present or contemplated officers, directors, managers, shareholders, or members of the Buyer and its affiliates, or the Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Liens, Claims, or Interests relating to any U.S. federal, state or local tax liabilities, that the Debtor may incur in connection with consummation of the transactions contemplated by the

Stalking Horse APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assigned Contracts, or that the Debtor has otherwise incurred prior to the consummation of the transactions contemplated by the Stalking Horse APA.

X.      Except as otherwise set forth in the Stalking Horse APA, none of the Buyer, any of its affiliates, and any of their respective officers, directors, members, partners, principals, employees, independent contractors, and shareholders (or equivalent), and any of their respective representatives, agents, predecessors, successors, or assigns shall have any liability for any Lien, Claim, including, for the avoidance of doubt, any Healthcare Program Claim, or Interest that arose or occurred prior to the Closing, or otherwise may be asserted against the Debtor or is related to the Purchased Assets prior to the Closing.  None of the Buyer, any of its affiliates, and any of their respective officers, directors, members, partners, principals, employees, independent contractors, and shareholders (or equivalent), and any of their respective representatives, attorneys, advisors, agents, predecessors, successors, or assigns are or shall be deemed, as a result of the consummation of the Sale Transaction, to (i) be legal successors to the Debtor or its estate by reason of any theory of law or equity, (ii) have, de facto or otherwise, merged with or into the Debtor, (iii) be a successor employer as defined in the IRC or by the U.S. National Labor Relations Board or under applicable law, or (iv) be an alter ego or a mere continuation or substantial continuation or successor of the Debtor in any respect.  Neither the Buyer nor any of its affiliates shall assume or in any way be responsible for any liability or obligation of the Debtor or its estate, including, for the avoidance of doubt, any Healthcare Program Claim, other than the Assumed Liabilities, to the extent provided in the Stalking Horse APA.

Y.      Any Assumed Contracts that the Buyer have or will designate for assumption and assignment, and which are in default at the time of the Closing, may be cured as provided in the

15

Notice of Executory Contracts and Unexpired Leases that may be Assumed and Assigned in Connection with the Sale Transaction (the "Cure Notice") [Doc. No. 186], Stalking Horse APA, and this Sale Order, or as otherwise agreed to by the Buyer and the non-debtor counterparties to such contracts.

Z.      The assumption and assignment of the Assumed Contracts pursuant to the Contract Assumption and Assignment Notice, the terms of this Sale Order, and the Stalking Horse APA is integral to the transactions contemplated by the Stalking Horse APA. Such assumption and assignment is in the best interests of the Debtor, its estate, its creditors, and all other parties in interest, and represents a reasonable exercise of the Debtor's sound and prudent business judgment.

AA.      Pursuant to section 365 of the Bankruptcy Code, the Debtor has demonstrated that assuming all Assumed Contracts and assigning such Assumed Contracts to the Buyer is appropriate.  To the extent a Cure Amount is owed to the counterparty of any Assumed Contract, the applicable Cure Amount will be paid on or before Closing of the Sale Transaction approved pursuant to this Sale Order in accordance with the Stalking Horse APA, or as otherwise expressly agreed to between the Debtor and the Buyer, as applicable, and such counterparty.  The Buyer has, in accordance with the Assumption and Assignment Procedures, provided adequate assurance of future performance to any non-Debtor contract counterparty to the extent required by section 365 of the Bankruptcy Code.  The Cure Amounts set forth on Exhibit 2 attached hereto (or any supplemental notice served in accordance with the Assumption and Assignment Procedures or an order of this Court) are the sole amounts necessary to cure any and all defaults under the applicable Assigned Contracts under sections 365(b)(1)(A) and 365(f)(2)(A) of the

Bankruptcy Code and, upon payment of the Cure Amounts, the Debtor shall have no further liability under the Assigned Contracts whatsoever.

BB.    The Assumed Contracts being assigned to the Buyer are an integral part of the Sale Transaction and, accordingly, their assumption and assignment is reasonable and an enhancement to the value of the Debtor's estate.  To the extent any Assumed Contract is not an executory contract within the meaning of section 365 of the Bankruptcy Code, it is appropriate that such Assumed Contract be transferred to the Buyer in accordance with the terms of the Stalking Horse APA and, other than with respect to Assumed Liabilities, the Buyer shall have no liability or obligation for any (a) defaults or breaches under such contract that relate to acts or omissions that occurred in the period, or otherwise arose, prior to the Closing Date; and (b) claims, counterclaims, offsets, or defenses (whether contractual or otherwise, including, to the extent permitted by applicable law, any right of recoupment) with respect to such Assumed Contract, that relate to any acts or omissions that arose or occurred prior to the Closing Date.

CC.    The Debtor has full corporate power and authority to sell and deliver the Purchased Assets and execute and perform under, the Stalking Horse APA and any other documents necessary or appropriate to consummate the Sale Transaction, as approved herein. All actions contemplated by the Stalking Horse APA have been duly and validly authorized by all necessary action of the Debtor. No further consents or approvals are required for the Debtor to consummate the Sale Transaction, except as otherwise provided in the Stalking Horse APA.

DD.    The sale of the Purchased Assets to the Buyer under the Stalking Horse APA will be a valid, legal, and effective transfer of the Purchased Assets and will vest the respective Buyer with all right, title, and interests of the Debtor in and to the same, free and clear of all Claims and Encumbrances (other than Assumed Liabilities).

17

EE.    The sale of the Purchased Assets, including, without limitation, the assignment of the Assumed Contracts, pursuant to the Stalking Horse APA outside a chapter 11 plan, neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of the Debtor's subsequent chapter 11 plan.  Neither the Stalking Horse APA nor the Sale Transaction constitutes a *sub rosa* chapter 11 plan as they do not and do not propose to: (i) impair or restructure any existing debt of, or equity interests in, the Debtor; (ii) impair or circumvent any party's voting rights with respect to any current or future chapter 11 plan proposed by the Debtor; (iii) circumvent any chapter 11 plan process safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or (iv) classify claims or equity interests, compromise controversies, or extend debt maturities.

FF.    To the maximum extent permitted by the Bankruptcy Code, each and every provision of the documents governing the Purchased Assets or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any of the Purchased Assets, if any, has been or will be satisfied or is otherwise unenforceable under section 365 of the Bankruptcy Code.

GG.    To maximize the value of the Purchased Assets, it is essential that the transactions contemplated by the Stalking Horse APA occur within the time constraints set forth therein. Time is of the essence in consummating the transactions contemplated by the Stalking Horse APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts.  Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004 and 6006.

HH.    The Debtor has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of

the transactions contemplated by the Stalking Horse APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts prior to, and outside of, a chapter 11 plan because, among other things, the Debtor's estate will suffer irreparable harm if the relief provided herein is not granted on an expedited basis.

II.      The releases provided herein are fair and reasonable, are in the best interests of the Debtor, its estate, its creditors and all other parties in interest, and are being provided in return for fair consideration.

JJ.      After consideration of the circumstances described in the Motion and the evidence admitted at the Sale Hearing, including: [insert evidence from Sale Hearing, including Declarations, exhibits, etc.], theHearingthe Court has determined that the proposed Sale Transaction and transfer of the Purchased Assets to the Buyer pursuant to the Stalking Horse APA are in the best interests of the Debtor's estate and should be approved on the terms set forth herein.

KK.      All findings of fact and conclusions of law announced by this Court at the Sale Hearing in relation to the Motion are incorporated herein by reference as though fully set forth in this Sale Order.

**IT IS HEREBY ORDERED** as followsTHAT:

1.      The Motion is granted and the Sale Transaction, including without limitation, the sale of the Purchased Assets to the Buyer pursuant to the Stalking Horse APA, is **APPROVED** in all respects and as set forth herein.

2.      Any objections to the Motion or the Proposed Order, which have not been voluntarily withdrawn, waived, or resolved, and all reservations of rights included in such objections which have not been otherwise preserved, are hereby **OVERRULED** on the merits.

19

Any objections to the entry of this Sale Order or to the relief granted herein that were not timely filed are hereby forever barred.

3.      The Stalking Horse APA is hereby **APPROVED**, and the Debtor and its professionals are authorized, empowered, and directed to perform their obligations under the Stalking Horse APA and to take such actions as are necessary or appropriate to effectuate the terms of the Stalking Horse APA and this Sale Order. The failure specifically to include any particular provision of the Stalking Horse APA in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the transfer of the Purchased Assets and all other Transactions set forth in the Stalking Horse APA be authorized and approved in their entirety. In the event of any inconsistency between the terms of any prior pleading related to the Motion, the Stalking Horse APA, the Transaction Documents, and this Sale Order, the terms of this Sale Order shall control.

4.      The Villages Buyer, LLC is hereby **APPROVED** as the Back-Up Bidder per the terms of its last Bid, which, for the avoidance of doubt, is memorialized in that certain amended asset purchase agreement that was read into the record during the Auction and is appended to the Auction transcript, and such Bid shall constitute the "Back-Up Bid" under the Bid Procedures. If Kinderhook is declared the Successful Bidder and the Back-Up Bid the Successful Bid, the Debtor shall file a copy of the Back-Up Bid on the docket with the understanding that certain dates and deadlines contained therein may need to be amended to account for the passage of time. Per the Bid Procedures and Bid Procedures Order, the Debtor may proceed with closing the transaction memorialized in the Back-Up Bid and pursuant to the terms thereof without further order of this Court.

134562.000004\4907-6809-5077.14937-4525-8087.1

5.    4. Notice of the Motion, the hearing on the Bid Procedures, the Bid Procedures, the Assumption and Assignment Procedures, the Auction [(and the cancellation thereof)], the Sale Transaction, and the Sale Hearing, all deadlines related thereto, and the relief granted in this Sale Order, was were and/or are each fair, sufficient, proper, adequate, appropriate, and equitable under the circumstances and complied in all respects with sections 102(1), 363, and 365 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Bid Procedures Order, the Bid Procedures, the Assumption and Assignment Procedures, and the procedural due process rules of the United States Constitution, and as such no order or further notice is or shall be required.

6.    5. Upon the closing of the Sale Transaction (the "Closing"), the transfer of the Purchased Assets pursuant to this Sale Order and the Stalking Horse APA: (i) shall be a legal, valid, and effective transfer of the relevant Purchased Assets from the Debtor to the Buyer; (ii) shall vest in the Buyer all rights, titles, and interests of the Debtor to the Purchased Assets and good and marketable title thereto; (iii) shall constitute a transfer for reasonably equivalent value and full, adequate, and fair consideration under the Bankruptcy Code and all other law applicable to such transfer; and (iv) shall be on an "as is, where is" basis without any representations or warranties, except as provided in the Stalking Horse APA.

7.    6. Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, upon the Closing, the Sale Transaction and the transfer of the Purchased Assets to the Buyer shall be free and clear of, but not limited to, the following (other than Assumed Liabilities): (i) any mortgage, lien (as such term is defined in 11 U.S.C. § 101(37), including any mechanic's, materialman's, statutory, and any other consensual or non-consensual lien), security interest, charge, hypothecation, deed of trust, pledge, right of use, first offer or refusal, easement, servitude, restrictive covenant, lease, sublease, covenant, right of way, option, restriction (including,

without limitation, any restriction on transfer or on the use, voting, receipt of income or other rights or exercise of any attributes of ownership), conditional sale or other title retention agreements, interest (including as that term is used in Bankruptcy Code section 363(f)), encroachment, or other encumbrance of any kind arising from or related in any way to the Debtor or the Purchased Assets (all of the foregoing collectively referred to as "Encumbrances"), and (ii) any Claims. Without limitation, the sale of the Purchased Assets to the Buyer shall be free and clear of all Claims and Encumbrances (other than Assumed Liabilities) regardless of whether any such Claim or Encumbrance is in law or in equity, known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, direct or indirect, and whether arising by agreement, understanding, law, equity or otherwise, and whether occurring or arising before, on or after the filing of the Debtor's bankruptcy petition, or occurring or arising prior to the Closing Date.

8. ~~7.~~ Effective upon the Closing, this Sale Order (i) is and shall be effective as a determination that all Liens, Claims, and Interests of any kind or nature whatsoever (other than Assumed Liabilities) existing as to the Purchased Assets prior to the Closing have been unconditionally released, discharged, and terminated (with such Liens, Claims, and Interests attaching solely to the proceeds of the Sale Transaction with the same nature, validity, priority, extent, perfection, and force and effect that such Liens, Claims, and Interests encumbered the Purchased Assets immediately prior to the Closing) and that the conveyances described herein have been effectuated, (ii) is and shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies,

recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Purchased Assets conveyed to the Buyer, and (iii) is and shall be effective as a determination that all recorded Liens, Claims, and Interests (other than Assumed Liabilities) against the Purchased Assets shall be deemed stricken from such entities' records, official and otherwise.

9.    8.    If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing a Lien, Claim, or Interest in all or any portion of the Purchased Assets being sold pursuant to the Sale Transaction and the Stalking Horse APA shall not have delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens, Claims, and/or Interests (other than Assumed Liabilities), which such person or entity has with respect to all or any portion of the Purchased Assets being sold pursuant to the Sale Transaction and the Stalking Horse APA, then (i) the Debtor and/or the Buyer are hereby authorized to execute and file such statements, instruments, releases, and/or other similar documents on behalf of such person or entity with respect to all or any portion of the Purchased Assets being sold pursuant to the Sale Transaction and the Stalking Horse APA, and (ii) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which shall constitute conclusive evidence of the release of all Liens, Claims, and Interests (other than Assumed Liabilities) of any kind or nature whatsoever in the Purchased Assets being sold pursuant to the Sale Transaction and the Stalking Horse APA.  Each and every

federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Stalking Horse APA, including, without limitation, recordation of this Sale Order.

10.   ~~9.~~ All persons or entities that are currently, or as of the Closing may be, in possession of some or all of the Purchased Assets are hereby directed to surrender possession of such Purchased Assets to the Buyer at the Closing.

11.   ~~10.~~ Following the Closing, ~~no~~any and each holder of any Lien, Claim or Interest in the Purchased Assets shall be and are hereby forever prohibited and barred from taking any action that would interfere with the Buyer's title to, or use and enjoyment of, the Purchased Assets ~~being~~ sold pursuant to the Sale Transaction and the Stalking Horse APA based on, or related to, any such Lien, Claim, or Interest~~,~~ or based on any actions that the Debtor may take in the chapter 11 case.

12.   ~~11.~~ Without limiting the foregoing, upon the Closing, none of the Buyer, any of its affiliates, and any of their respective officers, directors, members, partners, principals, employees, independent contractors, and shareholders (or equivalent), and any of their respective representatives, agents, predecessors, successors, or assigns shall have any liability for any Lien, Claim, including, for the avoidance of doubt, any Healthcare Program Claims, or Interest that arose or occurred prior to the Closing, or otherwise may be asserted against the Debtor or is related to the Purchased Assets prior to the Closing.  None of the Buyer, any of its affiliates, and any of their respective officers, directors, members, partners, principals, employees, independent contractors, and shareholders (or equivalent), and any of their respective representatives, attorneys, advisors, agents, predecessors, successors, or assigns are or shall be deemed, as a

result of the consummation of the Sale Transaction, to (i) be legal successors to the Debtor or its estate by reason of any theory of law or equity, (ii) have, *de facto* or otherwise, merged with or into the Debtor, (iii) be a successor employer as defined in the IRC or by the U.S. National Labor Relations Board or under applicable law, or (iv) be an alter ego or a mere continuation or substantial continuation or successor of the Debtor in any respect.  Neither the Buyer nor any of its affiliates shall assume or in any way be responsible for any liability or obligation of any of the Debtor or its estate, including, for the avoidance of doubt, any Healthcare Program Claims, other than the Assumed Liabilities, to the extent provided in the Stalking Horse APA.

13.    12. For the avoidance of doubt, the Buyer shall not be liable for any Claims, Liens or Interests (other than Assumed Liabilities) against the Debtor, or its predecessors or affiliates, and the Buyer shall have no successor or vicarious liability of any kind or character, whether known or unknown, as of the Closing, including, without limitation, (i) any monetary assessments imposed against any of the Facilities, the Debtor, or its predecessors and affiliates, by or on behalf of any Governmental Authority, (ii) any Healthcare Program Claims, (iii) any taxes of any kind, whether now existing or hereafter arising, or whether fixed or contingent, owed by the Debtor, or its the Debtor's predecessors or affiliates, (iv) any other liabilities of the Debtor, or its predecessors or affiliates, to the State of Florida, Florida Agency for Health Care Administration, Centers for Medicare & Medicaid Services, Florida Department of Health, HHS, DOJ, OIG, or any other Governmental Authority, and (v) any other liabilities owed by the Debtor, or its predecessors or affiliates.

14.    13. With respect to Assumed Liabilities, nothing within contained in this Sale Order or the Stalking Horse APA shall be interpreted as providing that the Buyer are is liable for any Assumed Liability that is not (ii) directly related to the operations or assets of the relevant

facility that the Buyer shall operate ~~or Buyer shall own~~ following Closing, or (ii) expressly assumed pursuant to any document at Closing.

15.    ~~14.~~ As of the Closing, all persons and entities holding Claims or Encumbrances and their respective successors and assigns, are hereby forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Claims against the Buyer, including, for the avoidance of doubt, any Healthcare Program Claims, or Encumbrances of any kind and nature against the Buyer, the Purchased Assets, or any other assets or properties of the Buyer, or commencing or continuing any action against the Buyer that does not comply or is inconsistent with this Sale Order. Without limiting the foregoing, no persons or entities may condition the issuance to the Buyer of new licenses, new certifications, new provider agreements or other payor program agreements on the assumption or payment by the Buyer of any such Claims or Encumbrances, including without limitation, any liability, penalty or obligation that arose under or relate to any Debtor provider agreements. As of the Closing, the Court hereby reserves exclusive jurisdiction over this Sale Order and the injunctions provided herein, including, without limitation, in this paragraph.

16.    Subject to paragraph [33] of this Order, but notwithstanding any other provision, the Sale Order does not enjoin any person, entity, or governmental unit, including the United States and its agencies, from asserting, prosecuting, or pursuing any action, whether administrative, civil, or criminal, including but not limited to Healthcare Program Claims, against the Buyer that arises from (1) conduct unrelated to its acquisition of the Purchased Assets under § 363(f) of the Bankruptcy Code or (2) any obligation the Buyer may have related to the Purchased Assets independent of its acquisition of the Purchased Assets from the Debtor under § 363(f) of the Bankruptcy Code; and nothing in this Sale Order should be interpreted to imply or

otherwise mean that any Medicare Advantage Organization ("MAO") or its related entities may avoid deleting or correcting erroneous diagnosis codes from CMS data systems that the MAO received from the Debtor and any associated financial obligations.  Nor should this Sale Order be construed to provide any sort of waiver, release, or discharge, of any claims of any nature the United States may have against a MAO or its related entities arising from their own obligations to correct erroneous or false submissions to any federal healthcare program or in any way limits the MAO's or related entities' obligation to investigate the validity of diagnoses in any audit universe created by TVH.

17.    ~~15.~~ The Court **APPROVES** the assumption and assignment of the Assumed Contracts as set forth herein pursuant to section 365 of the Bankruptcy Code. All requirements of sections 365(b) and 365(f) of the Bankruptcy Code have been satisfied for the assumption by the Debtor, and the assignment by the Debtor to the Buyer, of each Assumed Contract. All counterparties of the Assumed Contracts that did not timely file an objection to the Cure Notice are deemed to consent to the assumption and assignment by the Debtor of their Assumed Contract to the Buyer and to have waived any defaults or breaches thereunder, and the Buyer shall enjoy all of the rights and benefits under each such Assumed Contract as of the Closing without the necessity of obtaining such counterparty's consent to the assumption or assignment thereof.

18.    Notwithstanding anything to the contrary in the trust agreements, all assets and all trusts and all assets held in such trusts on behalf of or otherwise relating to any Assumed Plan, including, for the avoidance of doubt the Physicians and Executive DC Plan and the Executive Deferred Compensation Plan, and the rabbi trust(s) related thereto, are assigned to the Buyer.

19.    ~~16.~~ In accordance with the terms of the Stalking Horse APA, the Buyer may, at its discretion, add or remove any executory contract or unexpired lease from the list of Assumed Contracts that shall be assumed and assigned to the respective Buyer at Closing. Following the Closing, the Debtor shall file the final list of Assumed Contracts that have been assumed and assigned to the respective Buyer at Closing. Other than the Assumed Contracts designated in such final list of Assumed Contracts filed on the docket, no other executory contract or unexpired lease shall be deemed assumed by the Debtor and assigned to the Buyer.

20.    ~~17.~~ The cure amounts designated in the Cure Notice are deemed the amounts necessary to "cure" all "defaults" (within the meaning of Bankruptcy Code section 365(b)) under the Assumed Contracts. Any objections to the cure amounts, to the extent not otherwise resolved, are hereby **OVERRULED**. The Court finds that with respect to all Assumed Contracts, the payment of the cure amounts, as provided herein, is reasonable and appropriate and is deemed to fully satisfy the Debtor's obligations under Bankruptcy Code sections 365(b) and 365(f).

21.    ~~18.~~ Pursuant to the Stalking Horse APA, the Debtor will pay the cure amounts under any Assumed Contracts at Closing (subject to the obligations of Buyer under the Stalking Horse APA), or as otherwise agreed by the Buyer and the counterparty to any Assumed Contract.

22.    ~~19.~~ The Buyer has demonstrated adequate assurance of future performance of each Assumed Contract within the meaning of section 365 of the Bankruptcy Code. The Buyer's payment of cure amounts in accordance with the terms of the Stalking Horse APA, and the Buyer's promise to perform the obligations under the Assumed Contracts after the Closing Date, constitute adequate assurance of future performance.

23.    20. Upon assignment of the Assumed Contracts to the Buyer in accordance with the terms of the Stalking Horse APA and this Sale Order, the Assumed Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, and the Debtor shall have no further liability or obligation under such Assumed Contracts. Without limiting the foregoing, each and every provision of the Assumed Contracts or applicable non-bankruptcy law that purport to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning, assignment of any Assumed Contract has been or will be satisfied or is otherwise unenforceable under Bankruptcy Code section 365. Upon the reasonable request of the Buyer, all counterparties to the Assumed Contracts shall cooperate and expeditiously execute and deliver, and shall not charge the Debtor or Buyer for, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Sale Transaction.

24.    21. Other than with respect to Assumed Liabilities, the Buyer shall have no liability or obligation for any (i) defaults or breaches under any Assumed Contract that relate to acts or omissions that occurred in the period, or otherwise arose, prior to the Closing Date, or (ii) claims, counterclaims, offsets, or defenses (whether contractual or otherwise, including, any right of recoupment) with respect to any Assumed Contract that relate to any acts or omissions that arose or occurred prior to the Closing Date.

25.    22. The failure of the Debtor or the Buyer to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of the Debtor's or the Buyer's respective rights to enforce every term and condition of such Assumed Contract.

29

26.    23. If any person or entity that has filed financing statements, mortgages, deeds of trust, mechanic's liens, *lis pendens*, or other documents or agreements evidencing interests with respect to the Debtor and/or the Purchased Assets shall not have delivered to the Debtor or Buyer prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of Claims and Encumbrances which the person or entity has with respect to the Debtor, the Purchased Assets, or otherwise (except Assumed Liabilities) then (i) the Buyer and/or the Debtor are hereby authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Purchased Assets and (ii) the Buyer and/or the Debtor is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of (but not a necessary condition to) the release of all such Claims and Encumbrances in, against, or with respect to the Debtor and/or the Purchased Assets. This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, and local governmental agency, department, or office. Notwithstanding the foregoing, the provisions of this Sale Order and the transfer of the Purchased Assets to the Buyer free and clear of all Claims and Encumbrances (other than Assumed Liabilities) shall be and are self-executing without the necessity of any recording or filing of any document.

27.    24. All entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release

any documents or instruments, or who may be required to report or insure any title or state of title in or to the Purchased Assets conveyed to the Buyer may rely on this Sale Order as confirmation from this Court that the Debtor has all right, title, and authority and approval to transfer legal title to the Purchased Assets to the Buyer, free and clear of all Claims and Encumbrances (other than Assumed Liabilities).

28.  25.  No person or entity shall take or cause to be taken any action that would interfere with the Sale Transaction, including without limitation the transfer of the Purchased Assets to the Buyer, in accordance with the terms of this Sale Order and the Stalking Horse APA.

29.  26.  Any persons or entities that are presently, or as of the Closing may be, in possession of any portion of the Purchased Assets to be transferred pursuant to this Sale Order are hereby directed to surrender possession of such Purchased Assets to the Buyer on the date of the Closing.

30.  27.  The Sale Transaction contemplated by this Sale Order and the Stalking Horse APA have been bargained for and undertaken by the Debtor and Buyer at arm's length, without collusion, and in good faith within the meaning of section 363(m) of the Bankruptcy Code. The Debtor and the Buyer have not engaged in any conduct that would cause or permit this Sale Order or the Sale Transaction to be avoided.

31.  28.  Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Sale Order are hereafter reversed, modified, or vacated by a subsequent order of this Court or any other court, such reversal, modification, or *vacatur* shall not affect the validity and enforceability of any obligation or right granted pursuant to the terms of this Sale Order. Notwithstanding any reversal, modification, or vacatur of this Sale Order, any actions

31

taken by the Buyer or the Debtor pursuant to the terms of this Sale Order prior to the effective date of any such reversal, modification, or *vacatur* shall be governed in all respects by the original provisions of this Sale Order and the Stalking Horse APA, as the case may be.

32.    ~~29.~~ None of the Debtor, the Buyer, any designees of the Buyer, or their respective representatives and affiliates have engaged in any conduct that would cause or permit the Sale Transaction and/or the Stalking Horse APA to be avoided or costs and damages to be imposed against the Buyer, their affiliates, their representatives, or designees of the Buyer pursuant to section 363(n) of the Bankruptcy Code.

~~30. Neither the Buyer nor any of its affiliates, successors, and assigns, nor any of their professionals, shall have, or incur any liability to, or be subject to any action by, the Debtor or any of its predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, or delivery of the Stalking Horse APA and the entry into and consummation of the transactions thereunder, except as expressly provided in the Stalking Horse APA and this Sale Order.~~

33.    ~~31.~~ Effective as of the Closing, the Debtor, for itself and each of its controlled affiliates and any former, current or future estates, heirs, executors, administrators, trustees, successors and assigns of any of the foregoing (each, a "Company Releasor"), irrevocably, knowingly and voluntarily releases, discharges and forever waives and relinquishes all claims, demands, obligations, liabilities, defenses, affirmative defenses, setoffs, counterclaims, actions and causes of action of whatever kind or nature, whether known or unknown, which any Company Releasor has, may have, or might have or may assert now or in the future, against Buyer, its affiliates or any of its or their respective former~~,~~ or current ~~or future~~ directors, officers, employees, general or limited partners, managers, members, direct or indirect equityholders,

controlling persons, affiliates, attorneys, assignees, agents, advisors, or representatives, or representatives or affiliates of any of the foregoing, or any former, current or future estates, heirs, executors, administrators, trustees, successors or assigns of any of the foregoing (each, a "Company Releasee") arising out of, based upon or resulting from any contract, transaction, event, circumstance, action, failure to act or occurrence of any sort or type, whether known or unknown, and which occurred, existed or was taken or permitted at or before the Closing to the extent relating to the Debtor's business or the Purchased Assets, including, without limitation the negotiation, investigation, preparation, execution, or delivery of the Stalking Horse APA and the entry into and consummation of the transaction; *provided*, that nothing contained in this paragraph shall release, waive, discharge, relinquish or otherwise affect the rights or obligations of any person or entity under the Stalking Horse APA, any other ~~transaction document~~Transaction Document or any other agreement delivered or required to be delivered pursuant to the Stalking Horse APA ~~or~~for any claims of fraud, intentional misconduct or gross negligence. The Debtor shall, and shall cause its controlled affiliates to, refrain from, directly or indirectly, asserting any claim or demand, or commencing, instituting or causing to be commenced any legal proceeding of any kind against a Company Releasee based upon any matter released pursuant to this paragraph.

34. Notwithstanding any other provision, the Sale Order does not waive, release, or discharge any estate claims and causes of action of any nature against the Debtor's current or former officers, directors, owners, affiliates, and related persons.

35. ~~32.~~ No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Stalking Horse APA, the transfer of the Purchased Assets pursuant thereto, or this Sale Order.

36.    33. The Debtor shall be and is hereby authorized, empowered, and directed to take such actions, including the execution and delivery of any and all instruments and documents, as may be required to effectuate the terms of the Stalking Horse APA and this Sale Order. The Stalking Horse APA and any agreements, documents, or other instruments related to this Sale Order or the transactions contemplated herein may be modified, amended, or supplemented by the parties thereto, in a writing signed by all parties, and in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on Debtor's estate.

37.    34. The Debtor is authorized to pay, without further order of the Court, whether before, at, or after Closing, any expenses or costs required to be paid to perform its obligations in accordance with the Stalking Horse APA.

38.    35. Each and every federal, state, and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Sale Transaction. No governmental unit may revoke or suspend any lawful right, license, trademark, or other permission relating to the Sale Transaction or use of the Purchased Assets sold, transferred, or conveyed to the Buyer on account of the filing or pendency of this chapter 11 case or the consummation of the Sale Transaction. For the avoidance of doubt, the Sale Transaction authorized herein shall be of full force and effect, regardless of whether the Debtor or any of its affiliates lack good standing in any jurisdiction in which such entity is formed or is authorized to transact business.

39.    36. The provisions of this Sale Order and any actions taken pursuant hereto shall survive any conversion or dismissal of the chapter 11 case and the entry of any other order which may be entered in the chapter 11 case, including any order: (i) confirming any plan of

reorganization; (ii) converting the case from chapter 11 to chapter 7; (iii) appointing a trustee or examiner; or (iv) dismissing the chapter 11 case or any successor case. The terms and provisions of this Sale Order, as well as the rights granted under the Stalking Horse APA, shall continue in full force and effect and shall be binding upon the Debtor and its successors, assigns, any reorganized Debtor, trustee, plan trustee, plan administrator (or similar representative), or chapter 7 trustee applicable to the Debtor and its estate, or any person or entity acting on behalf of the Debtor, notwithstanding any such conversion, dismissal, or entry of any order.

40.    37. All of the transfers and other performance set forth in this Sale Order and the Stalking Horse APA, together with the performance under all of the agreements identified herein to be executed and performed at Closing, are part of a single transaction such that the same is not subject to being avoided, rejected, or otherwise terminated or modified by a division or separate treatment of the various agreements or component transactions. Accordingly, the provisions of this Sale Order and the Stalking Horse APA are non-severable and mutually dependent.

41.    38. The Court shall retain exclusive jurisdiction to enforce the provisions of this Sale Order and to resolve any dispute concerning this Sale Order, the Stalking Horse APA, and/or the rights and duties of the parties hereunder or thereunder, or any issues relating to the Sale Transaction and this Sale Order, including, but not limited to, interpretation of the terms, conditions, and provisions hereof, and the status, nature, and extent of the Purchased Assets, and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the Purchased Assets free and clear of Claims and Encumbrances (other than Assumed Liabilities) as set forth herein.

42.    39. For the avoidance of doubt, notwithstanding anything contained in this Order or the Transaction Documents to the contrary, the Buyer shall not acquire any interest in any

Excluded Assets, as that term is defined in the Stalking Horse APA.; *provided further* that the definition of Avoidance Actions in the Stalking Horse APA shall include and be deemed to include any state law analogues to any claims or causes of action arising under Sections 542 through 553 of the Bankruptcy Code.  Further, any and all claims, causes of action, or rights of recovery, belonging to the Debtor or its estate against any current or former director, officer, manager, member, insider, shareholder or employee of the Debtor or any of the Debtor's controlled affiliates, including, without limitation, claims for breach of fiduciary duty, mismanagement, negligence, gross negligence, misconduct, fraud, corporate waste, or any similar cause of action under applicable law ("D&O Claims") and all insurance policies and all rights to proceeds thereunder, including, without limitation, any director or officer insurance policies relating to any matter, event, or circumstance occurring on or prior to the Closing Dateshall constitute Excluded Assets.  Nothing in this Order or the Transaction Documents shall release any party (other than the Company Releasees, pursuant to paragraph 33) for any liability for any Claims that constitute Excluded Assets, including without limitation Avoidance Actions or D&O Claims.

43.    40. The Buyer shall provide any liquidating trustee access to the Debtor's books and records so the liquidating trustee may wind down and fully administer the bankruptcy estate.

44.    41. Notwithstanding anything to the contrary in this Sale Order, neither the Buyer nor the Debtor shall have an obligation to close the Sale Transaction until all conditions precedent in the Stalking Horse APA or other Sale Transaction documents have been satisfied or waived in accordance with the terms of the Stalking Horse APA.

45.    42. Notwithstanding any provision of the Bankruptcy Code or Federal Rules of Bankruptcy Procedure to the contrary, this Sale Order shall be effective and enforceable

immediately upon entry, and any stays thereof, including without limitation pursuant to Fed. R. Bankr. P. 6004(h) and 6006(d), are hereby abrogated.  Time is of the essence in closing the transactions referenced herein, and the Debtor and the Buyer intend to close the transactions as soon as practicable.  This Sale Order is a final order and the period in which an appeal must be filed shall commence upon the entry of this Sale Order.  Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

###

Attorney Elizabeth A. Green is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and to file a proof of service within three days of entry of this order.

**EXHIBIT 1**

**Stalking Horse APA**

**Exhibit 2**

**Cure Amounts**

| Summary report: Litera Compare for Word 11.4.0.111 Document comparison done on 9/9/2025 10:45:48 AM | |
|---|---|
| **Style name:** BH Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** nd://4907-6809-5077/1/Sale Order.docx | |
| **Modified DMS:** nd://4920-5390-5255/1/Sale Order - FINAL clean.docx | |
| **Changes:** | |
| Add | 115 |
| Delete | 85 |
| Move From | 4 |
| Move To | 4 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 208 |