## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

|  |  |  |
|---|---|---|
| _____ x | : | Chapter 11 |
| In re | : |  |
|  | : | Case No.: 6:25-bk-04156-LVV |
| THE VILLAGES HEALTH SYSTEM, LLC,[1] | : |  |
|  | : |  |
| Debtor. | : |  |
|  | : |  |
| _____ x | : |  |

### UNITEDHEALTHCARE INSURANCE COMPANY AND UNITEDHEALTHCARE OF FLORIDA, INC.'S OBJECTION TO (I) THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' APPLICATION FOR APPROVAL OF EMPLOYMENT AND RETENTION OF PACK LAW AS COUNSEL EFFECTIVE AS OF SEPTEMBER 4, 2025 AND (II) THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' APPLICATION FOR APPROVAL OF EMPLOYMENT AND RETENTION OF GENESIS CREDIT PARTNERS LLC AS FINANCIAL ADVISOR, EFFECTIVE AS OF SEPTEMBER 5, 2025

UnitedHealthcare Insurance Company and UnitedHealthcare of Florida, Inc., together with their affiliates (collectively, "UnitedHealthcare"), hereby submit this objection (the "Objection") to (i) the *Official Committee of Unsecured Creditors' Application for Approval of Employment and Retention of Pack Law as Counsel Effective as of September 4, 2025* [D.I. 211] (the "Pack Retention Application") and (ii) the *Official Committee of Unsecured Creditors' Application for Approval of Employment and Retention of Genesis Credit Partners LLC as Financial Advisor, Effective as of September 5, 2025* [D.I. 213] (the "GCP Retention Application").  In support of the Objection, UnitedHealthcare respectfully states as follows:

### Preliminary Statement

1.      The UCC currently consists of only three members—one holder of a

---

[1]     The Debtor in this Chapter 11 Case is The Villages Health System, LLC and the last four digits of its federal tax identification number are 6436. The Debtor's address is 600 Sunbelt Road, The Villages, FL 32159.

contingent litigation claim to which the Debtor ascribes *de minimis* value and two holders of contingent trade claims.  In connection with the court-approved Sale, the purchaser will fully assume the two contingent trade claims at closing.  In fact, the purchaser will assume the majority of general unsecured claims, other than claims of the United States and the insurance payors.  The only non-government and non-insurance payor general unsecured claims that will remain post-closing are the contingent litigation claim held by the current committee member and one other contingent litigation claim to which the Debtor also ascribes *de minimis* value. Accordingly, after the closing of the Sale (which is expected to occur in three-and-a-half weeks), the UCC will be a committee of one general unsecured creditor holding a contingent litigation claim of little or no value.  Meanwhile, the Debtor's other creditors will be forced to bear the cost of the UCC's professionals.

2.      The UCC has not demonstrated that retaining Pack Law and GCP is necessary, let alone beneficial, particularly under the unique circumstances prevailing here, which the UCC ignores in its retention applications.  To the contrary, the UCC was not appointed until the eve of the hearing to approve the Sale, and UnitedHealthcare has already been performing much of the work that would normally fall to a creditors' committee:  negotiating improvements to the DIP facility and sale process, safeguarding valuable estate claims, and pursuing various investigations, including with respect to insider transactions.  Allowing the UCC to retain Pack Law and GCP would be duplicative and wasteful and result in an unjustified drain of already limited estate resources.

3.      The Bankruptcy Code requires the retention of UCC professionals to be necessary and not wasteful or duplicative.  The UCC's retention applications fail to demonstrate a distinct and potentially conflicting interest that requires separate legal representation.  An

unsecured creditors' committee of one or two creditors is not representative of all unsecured creditors nor an appropriate choice for an estate fiduciary.

4.      Here, the proposed retentions would only benefit a very limited constituency—one, or at most two, low- or no-value contingent litigation claims, one for defamation and the other an equity buyback claim that is subject to subordination under section 510(b) of the Bankruptcy Code—while imposing significant additional cost on all of the estate's stakeholders.  In fact, a committee of one or two creditors holding such contingent litigation claims could hold the rest of the unsecured creditors hostage by threatening to waste estate resources at administrative priority in return for higher settlement of their contingent litigation claims that appear to have little merit.

5.      This Court should not allow the estate to be used as a professional fee fund for services that are unnecessary and redundant.  For these reasons, UnitedHealthcare submits that the Court should deny the Pack Retention Application and the GCP Retention Application. Alternatively, the Court should limit the scope of services to be performed by Pack Law and GCP to those related to the Debtor's sale process through the closing and cap the fees and expenses to $50,000 for each of Pack Law and GCP.

## Background

6.      On July 3, 2025, The Villages Health System, LLC (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida (the "Court").

7.      On July 28, 2025, the Court entered an order [D.I. 110] approving, among other things, bidding procedures for sale of substantially all of the Debtor's assets (the "Sale") and CenterWell Senior Primary Care (Vitality), Inc. ("CenterWell") as the stalking horse bidder.

By the same order, the Court set a bid deadline of September 3, 2025, an auction on September 7, 2025, and a sale hearing on September 9, 2025.

8.      On September 4, 2025, the United States Trustee for Region 21 (the "U.S. Trustee") appointed a committee of unsecured creditors (the "UCC") of three members: (i) Alliant Dermatology, PA ("Alliant"), (ii) Dr. Jennifer Peters, and (iii) Customize It Right LLC.  [D.I. 206]

9.      On September 7, 2025, at the auction, CenterWell indicated that the Debtor had described to them that the litigation claims that they were not assuming were "de minimis."  (Auction Tr. at 15:2–4.)[2]

10.     On September 8, 2025, the UCC filed (i) the Pack Retention Application, seeking to employ Pack Law as its counsel and (ii) the GCP Retention Application, seeking to employ Genesis Credit Partners LLC ("GCP") as its financial advisor.

11.     On September 9, 2025, the Court held a hearing and entered an order [D.I. 222] (the "Sale Order") approving, among other things, the Sale to CenterWell.  The executed asset purchase agreement (the "APA") is attached to the Sale Order.

## Objection

12.     Section 1103 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") provides that "with the court's approval," a committee of unsecured creditors may employ professionals.  11 U.S.C. § 1103(a).  An application to employ professionals must include, among other things, the specific facts showing the necessity for the employment, the professional services to be rendered, any proposed arrangement for

---

[2]     The Debtor's counsel indicated that certain corrections unrelated to the cited portions were being made to the auction transcript.

compensation, and the person's connections with any interested party.  Fed. R. Bankr. P.

2014(a).  "[T]he test of 'necessity' is whether the committee seeking appointment of counsel

under § 1103(a) has demonstrated a distinct and potentially conflicting interest in the disposition

of the assets of the estate that requires separate legal representation." *In re Standard Steel*

*Sections, Inc.*, 200 B.R. 511, 513 (S.D.N.Y. 1996).

13.    With respect to professional retentions, "[a] party's request for

independent professional services should be denied if such services are clearly duplicative and

wasteful." *In re Saxon Industries, Inc.*, 29 B.R. 320, 322 (Bankr. S.D.N.Y. 1983).  In particular,

with respect to the retention of a financial advisor, the burden to demonstrate the necessity of

retention rests on the moving party. *In re Sunshine Precious Metals, Inc.*, 142 B.R. 918, 921

(Bankr. D. Idaho 1992) (denying a creditors' committee's application to retain an accountant

because the record failed to support the necessity of the work and expense).

14.    The UCC's retention applications to employ Pack Law and GCP fail to

demonstrate that they are not duplicative and wasteful and that the services of those professionals

are necessary.  The applications should therefore be denied or, in the alternative, the Court

should limit the scope of services to be performed by Pack Law and GCP to those related to the

Debtor's sale process through the closing and cap the fees and expenses to $50,000 for each of

Pack Law and GCP.

**A.    The UCC Does Not Have a Meaningful Constituency Post Sale Closing.**

15.    At the closing of the Sale, which is expected to occur only a little more

than three weeks from now in mid-October 2025,[3] the purchaser, CenterWell, will assume all of

---

[3]    The current DIP Facility contains a milestone for Sale closing by October 17, 2025.  (*See* second interim DIP
order [D.I. 178] at ¶ 4(f)(iv).)

the Debtor's general unsecured claims other than contingent litigation claims and claims held by

the United States and the insurance payors.  (*See* APA, Section 2.03(d).)  UnitedHealthcare

understands from the Debtor's counsel that, apart from the potential claims of the United States

and the insurance payors, there are only two contingent litigation claims, one of which is held by

current UCC member Alliant and the other of which is held by another claimant, and that the

Debtor ascribes *de minimis* value to these claims.  Accordingly, after the closing of the Sale, the

UCC will only have one remaining member (with two members' claims having been fully

assumed by CenterWell) and will only be representing two creditors holding *de minimis*

contingent litigation claims and creditors that are adequately represented by separate counsel,

*i.e.*, the United States and the insurance payors.

16.     After the closing of the Sale, the United States and the insurance payors

will hold the remaining general unsecured claims against the Debtor.  The Debtor has indicated

that the United States' claims could be worth approximately $350 million.  (*See Declaration of

Neil Luria in Support of Chapter 11 Petition and First Day Motions* [D.I. 3] at ¶ 30.)

UnitedHealthcare and the other insurance payors could also have substantial claims against the

Debtor.  (*See* UnitedHealthcare's objection to the bidding procedures motion [D.I. 85] at ¶ 7.)

17.     The United States and the insurance payors, including UnitedHealthcare,

are adequately represented and do not stand to benefit from the UCC's representation.  As such,

the UCC will have no meaningful constituency remaining to represent after the closing of the

Sale, and it is therefore duplicative and wasteful for the estate to pay for the UCC's professionals

at the expense of all of the general unsecured creditors.  Indeed, the prospect of a committee of

one creditor, particularly one whose claim is not representative of the claims of major creditors,

raises serious questions about the UCC's continued viability post-closing.  *See In re M.H. Corp.*,

30 B.R. 266, 267 (Bankr. S.D. Ohio 1983) (refusing to appoint a creditors' committee consisting of a single creditor because it is "inherently inconsistent with the notion of a committee"); *see also Objection of the United States Trustee to Jason Scott Jordan and Cornerstone Law Firm, LLC's Expedited Motion to Compel the Assistant U.S. Trustee to Appoint a Creditors' Committee and for Other Relief, In re Alan Christopher Redmond*, No. 24-13093 (PMM) (Bankr. E.D. Pa. Jan. 8, 2025), D.I. 185, at ¶ 4[4] ("A committee of one simply is not a committee within the meaning of Bankruptcy Code section 1102, which requires multiple independent members represent the differing interests and perspectives of the entire unsecured creditor body, a purpose that cannot be fulfilled by a single voice."); 7 Collier on Bankruptcy, ¶ 1102.02 (16th 2025) (citation omitted) ("In a small case, a committee of three or five may be sufficient and a smaller number is likely to reduce the cost and expense of the committee.  In larger cases, United States trustees routinely appoint larger committees.").  An unsecured creditors' committee of one or two creditors is not representative of all unsecured creditors nor an appropriate choice for an estate fiduciary, especially in this circumstance where the claim is one or two contingent litigation claim(s), one for defamation and the other an equity buyback claim that is subject to subordination under section 510(b) of the Bankruptcy Code, with little merit.

18. In *In re Standard Steel Sections, Inc.*, the United States District Court for the Southern District of New York (the "Southern District of New York District Court") reasoned that the test of "necessity" under Bankruptcy Rule 2014(a) is "whether the committee seeking appointment of counsel under § 1103(a) has demonstrated a distinct and potentially conflicting interest in the disposition of the assets of the estate that requires separate legal

---

[4] The bankruptcy court in this case denied the debtor's motion to compel the U.S. Trustee for Region 3 to appoint a creditors' committee. *See Order, In re Alan Christopher Redmond*, No. 24-13093 (PMM) (Bankr. E.D. Pa. Feb. 11, 2025), D.I. 270.

representation." 200 B.R. 511, 513.  In *Standard Steel Sections*, the Southern District of New York District Court held that the committee had a substantial interest in protecting its legal position on a subordination issue between two creditor constituencies and that that was sufficient to meet the standard of "necessity" under Bankruptcy Rule 2014(a).  *Id.* at 513–14.  Here, however, the facts are different.  The two creditors holding contingent litigation claims do not have, and the UCC has not shown (or even attempted to show), any diverging interest from the other general unsecured creditors or the estate that is distinct or potentially conflicting.  In fact, there will not be any meaningful interest for the UCC to represent after the closing of the Sale. The UCC has thus failed to carry its burden in establishing that it is "necessary" for it to seek appointment of counsel or financial advisor under section 1103(a) of the Bankruptcy Code.

19.     UnitedHealthcare submits that the UCC's retention applications should therefore be denied or, in the alternative, that the Court should limit the scope of services to be performed by Pack Law and GCP to those related to the Debtor's sale process through the closing and cap the fees and expenses to $50,000 for each of Pack Law and GCP.

**B.     Pack Law's and GCP's Services Are Unnecessary in This Chapter 11 Case.**

20.     The UCC also has failed to carry its burden to show the necessity for the employment of Pack Law and GCP.  By the time the UCC was appointed—some two months into the case—the Court had already (a) approved the bidding procedures, the stalking horse protection, and the contract assumption and assignment procedures, (b) approved the DIP facility on an interim basis and (c) approved the retention of the Debtor's professionals.  The bid deadline was the day before the UCC's appointment, and the sale objection deadline was the day after the UCC's appointment.  Despite the UCC's claim that Pack Law and GCP worked "day and night" to familiarize themselves with this Chapter 11 Case, Pack Law and GCP clearly did not have sufficient time to provide any meaningful service to the UCC that would be beneficial

to the UCC's constituency.  (*See* Pack Retention App. at ¶ 12; *see also* GCP Retention App. at ¶ 12.)

21.    In fact, by the time the UCC was appointed, UnitedHealthcare and its counsel (at UnitedHealthcare's own expense) had already done most of the work that would typically have been done by a creditors' committee.  *First,* UnitedHealthcare successfully negotiated with the Debtor on the terms of the interim approval of the DIP facility for improved terms for the benefit of the Debtor's estate and all creditors, including limiting the amount of approved funding in the initial interim order.  (*See* [D.I. 42]; July 9, 2025 Hr'g Tr. at 37:23–41:2.)  *Second,* UnitedHealthcare filed an objection, [D.I. 85], to the bidding procedures motion and successfully negotiated with the Debtor and CenterWell, the stalking horse bidder, for several improved terms for the benefit of the Debtor's estate and all of its stakeholders, including the extension of sale milestones and a carve-out of estate claims and causes of action.  (*See* July 23, 2025 Hr'g Tr. at 11:15–16:22.)  *Third*, in connection with final approval of the DIP facility, UnitedHealthcare made a DIP proposal to the Debtor and filed an objection, [D.I. 164], which led to, among other things, increased liquidity to the Debtor, elimination of the prepetition roll-up, and a lower interest rate.  (*See* second interim DIP order [D.I. 178] at ¶¶ 4–5.)

22.    UnitedHealthcare has also made significant progress in investigating potential avoidance actions and estate claims, including those against the Debtor's affiliates and insiders.  UnitedHealthcare has served discovery requests on the Debtor and the Debtor's affiliates and insiders, *e.g.*, [D.I.s 228–234], and has actively been conferring with the Debtor on the Debtor's document production in response to UnitedHealthcare's requests.  UnitedHealthcare's involvement in this Chapter 11 Case also elicited the Debtor's disclosure to the Court of at least $183 million of potentially avoidable historical payments to the Debtor's

insiders. (*See* UnitedHealthcare's objection to DIP facility [D.I. 164] at ¶ 18; Luria declaration

in support of Debtor's modified DIP motion [D.I. 160].)  The UCC claims that Pack Law "has

already worked on what it believes to be the correct roadmap for the resolution of matters

involving the Debtor's estate, including but not limited to, the crux of legal and financial issues

related to avoidance and other causes of action." (Pack Retention App. at ¶ 12.)  But the UCC

provides no detail on this supposed "roadmap" and no explanation of the basis for this vague and

conclusory assertion, which does nothing to establish—and, if anything, casts serious doubt on—

the necessity and usefulness to creditors of Pack Law's services.  The UCC also fails to

demonstrate how what its professionals will do here is not duplicative of what UnitedHealthcare

has done to date and is continuing to do.

   23. Pack Law's proposed scope of employment also contains unnecessary

services.  By the time that the UCC was appointed, all of the Debtor's applications for

professional retention had already been approved by the Court.  (*See* orders approving Debtor's

retention applications [D.I.s 148, 149, 166, 179, 180, 199].)  It is thus unclear what there is left

for Pack Law to "[a]ssist[], advis[e], and represent[] the Committee [on] with respect to the

Debtor's retention of professionals and advisors . . . ." (Pack Retention App. at ¶ 16.)

   24. Similarly, the scope of employment in the GCP Retention Application

contains unnecessary services.  Many of the listed services would not be needed given the stage

of this Chapter 11 Case.  For example, GCP would not have any opportunity to conduct any

"analysis of marketing efforts, outreach and potential supplementation as requested; review[]

bidding procedures, stalking horse bids, indications of interest received . . . and assess[] the

economics thereof" because the Court has already approved bid procedures and the bid deadline

had already passed by the time the UCC was appointed.  (*See* GCP Retention App. at ¶ 11.)  The

UCC also fails to explain why it cannot leverage the work of the Debtor's restructuring advisor, GBH SOLIC Holdco, LLC, to prepare or review an "assessment of causes of action, avoidance action and claims and claims pool analyses and other investigative analyses" or to "[investigate] and assess[] various past financial and other transactions by the Debtor and the management team" such that it must have GCP do the same work.  (*See id.*)

25.    Given the lateness of the appointment of the UCC in this Chapter 11 Case and the inadequate description of the professional services to be rendered by Pack Law and GCP, the Pack Retention Application and the GCP Retention Application should be denied because the UCC has not demonstrated that Pack Law's and GCP's services are necessary and would not be duplicative and wasteful.  Alternatively, the Court should limit the scope of Pack Law's and GCP's services to those related to the Debtor's sale process through the closing and cap the legal fees and expenses to $50,000 for each of Pack Law and GCP.

**C.    It Is a Waste of Estate Resources To Pay for the UCC's Professionals.**

26.    Without a showing that the services to be provided by Pack Law and GCP are both necessary and beneficial, the UCC's applications are nothing more than an attempt to convert the Debtor's remaining assets into a professional fee fund.  In examining fee applications of a management consulting firm in a chapter 11 case, one court has noted:

> The main goal of Chapter 11 apart from a successful reorganization of a debtor is a maximum distribution to the creditors of the estate. Ultimately, that is the benchmark against which success or failure must be judged.  More often than not, a debtor is experiencing serious financial difficulty, if not near a point of total collapse.  The bankruptcy estate is distinct from all other nonbankruptcy clients.  It is not principally to serve as a fund for payment of professional fees. It is finite, rarely expands over time, possesses limited cash and usually has diminishing prospects despite high expectations.  The estate is not a cash cow to be milked to death by professionals . . . .

*In re Chas. A. Stevens & Co.*, 105 B.R. 866, 871-72 (Bankr. N.D. Ill. 1989). The Court should not allow the professionals to waste the already limited estate resources for services that are not necessary.

27.    Furthermore, GCP has a history of potentially overbilling for their work. Objections to GCP's fee applications have been filed in at least two chapter 11 cases this year.[5] *See Objection of the United States Trustee to the Third Interim and Final Fee Application for Compensation and Reimbursement of Expenses of Genesis Credit Partners LLC, as Financial Advisor to the Official Committee of Unsecured Creditors*, *In re Terraform Labs Pte. Ltd.*, No. 24-10070 (BLS) (Bankr. D. Del. Feb. 18, 2025), D.I. 927; *Objection of the United States Trustee to the Combined Fourth Monthly and Final Fee Application of Genesis Credit Partners LLC, Co-Financial Advisor to the Official Committee of Unsecured Creditors, for Allowance of Compensation and Reimbursement of Expenses for the Monthly Period from December 1, 2024 through December 20, 2024 and the Final Period from August 23, 2024 through December 20, 2024*, *In re LL Flooring Holdings, Inc.*, No. 24-11680 (BLS) (Bankr. D. Del. Feb. 19, 2025), D.I. 819. In these objections, the United States Trustee for Region 3 ("Region 3 U.S. Trustee") alleged that GCP's time records were not credible. The Region 3 U.S. Trustee reviewed GCP's time records in seven chapter 11 cases over the same period of time and noted that "GCP professionals had over 27 days in which they billed 19 or more hours per day in May through September 2024" and that "GCP professionals regularly billed over 400 hours a month" over the five-month period that the United States Trustee investigated. *Terraform Labs Pte., Ltd.*, No. 24-10070 (BLS), D.I. 927, at ¶ 34; *LL Flooring Holdings, Inc.*, No. 24-11680 (BLS), D.I. 819, at

---

[5]    These fee applications and related objections are currently subject to pending discovery and have not yet been adjudicated.

¶ 20.  In these objections, the Region 3 U.S. Trustee pointed out other issues with GCP's billing, such as overstaffing, duplicative work, excessive expense reimbursement and unsubstantiated expense reimbursement requests.  *See Terraform Labs Pte., Ltd.*, No. 24-10070 (BLS), D.I. 927, at ¶¶ 47, 49, 51, 53; *see also LL Flooring Holdings, Inc.*, No. 24-11680 (BLS), D.I. 819, at ¶¶ 33, 36.

28.     In any event, the two contingent litigation creditors have adequate access to counsel.  If they believe work is necessary that could benefit the estate, they have the right, like the insurance payors or any other creditors, to seek reimbursement of fees on a substantial contribution theory at the right time in this Chapter 11 Case, including for expenses incurred to date.  This is the appropriate approach here because it allows the Court to assess the value of a creditor's contribution on the facts before committing the estate to pay unnecessary costs at the expense of all creditors.

29.     For these reasons, the Court should deny the Pack Retention Application and the GCP Retention Application, or alternatively, limit the scope of Pack Law's and GCP's services to those related to the Debtor's sale process through the closing and cap the legal fees and expenses to $50,000 for each of Pack Law and GCP.

## Reservation of Rights

30.     UnitedHealthcare respectfully reserves all rights to supplement this Objection, as well as to assert any other objection at the appropriate time in connection with the retention applications of the UCC's professionals.

## Conclusion

WHEREFORE, for the reasons set forth herein, UnitedHealthcare respectfully requests that the Court deny approval of the Pack Retention Application and the GCP Retention Application, or alternatively, limit the scope of Pack Law's and GCP's services to those related

to the Debtor's sale process through the closing and cap the legal fees and expenses to $50,000

for each of Pack Law and GCP.

Dated: September 23, 2025

**SULLIVAN & CROMWELL LLP**
*/s/ Andrew G. Dietderich*
Andrew G. Dietderich, New York Bar No. 2850584
Justin J. DeCamp, New York Bar No. 4373163
Alexa J. Kranzley, New York Bar No. 4707386
125 Broad Street
New York, New York 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
E-mail:     dietdericha@sullcrom.com
            decampj@sullcrom.com
            kranzleya@sullcrom.com
*Counsel to UnitedHealthcare Insurance Company*
*and UnitedHealthcare of Florida, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 23, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with CM/ECF.

By: */s/ Patricia A. Redmond*
    Florida Bar No. 303739
    Patricia A. Redmond