**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| The Villages Health System, LLC,[1] | Case No. 6:25-bk-04156-LVV |
| Debtor. | |

### SUMMARY COVER SHEET TO
### EVERCORE GROUP L.L.C.'S FIRST
### AND FINAL APPLICATION FOR ALLOWANCE OF
### COMPENSATION AND REIMBURSEMENT OF EXPENSES
### FOR THE PERIOD FROM JULY 3, 2025 THROUGH NOVEMBER 7, 2025

| | | |
|---|---|---|
| **Name of Applicant:** | Evercore Group L.L.C. | |
| **Applicant's Role in Case:** | Investment Banker for Debtor | |
| **Employment Order:** | August 11, 2025 [Docket No. 149] *Effective as of July 3, 2025* | |
| **Interim or Final Application:** | First and Final | |
| | **Beginning Date** | **End Date** |
| **Time period covered by this Application for which interim compensation has not previously been awarded:** | July 3, 2025 | November 7, 2025 |
| **Compensation Breakdown for Time Period Covered by this Application** | | |
| **Amount of Compensation Sought:** | $5,600,000.00[2] | |
| **Amount of Expense Reimbursement:** | $42,936.14 | |
| **Amount of Original Retainer:** | N/A | |
| **Current Retainer Balance:** | N/A | |

---

[1] The address of the Debtor is 600 Sunbelt Road, The Villages, Florida 32159. The last four digits of the Debtor's federal tax identification number is 6436.

[2] See **Exhibit C** for a detailed calculation of requested fees. Total fees requested include (i) a Restructuring Fee of $5,000,000.00, and (ii) aggregate Monthly Fees in the amount of $600,000.00.

| | |
|---|---|
| **Blended Hourly Rate:** | N/A |
| **Total fees awarded in all prior Applications:** | N/A |
| **Total expenses awarded in all prior Applications:** | N/A |

134562.000006\4917-9567-9351.2

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| The Villages Health System, LLC, [1] | Case No. 6:25-bk-04156-LVV |
| Debtor. | |

**FIRST AND FINAL FEE APPLICATION**
**OF EVERCORE GROUP L.L.C. AS INVESTMENT**
**BANKER FOR THE DEBTOR AND DEBTOR IN POSSESSION,**
**FOR THE PERIOD FROM JULY 3, 2025 THROUGH NOVEMBER 7, 2025**

---

**NOTICE OF OPPORTUNITY TO**
**OBJECT AND REQUEST FOR HEARING**

If you object to the relief requested in this paper you must file a response with the Clerk of Court at 400 W. Washington Street, Suite 5100, Orlando, FL 32801 within 14 days from the date of the attached proof of service, plus an additional three days if this paper was served on any party by U.S. Mail.

If you file and serve a response within the time permitted, the Court will either notify you of a hearing date or the Court will consider the response and grant or deny the relief requested in this paper without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, and the Court may grant or deny the relief requested without further notice or hearing.

**You should read these papers carefully and discuss them with your attorney if you have one. If the paper is an objection to your claim in this bankruptcy case, your claim may be reduced, modified, or eliminated if you do not timely file and serve a response.**

---

Evercore Group L.L.C. ("Evercore"), investment banker for The Villages Health System, LLC (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), hereby files this application (the "Application") for the allowance on a final basis and payment for

---

[1] The address of the Debtor is 600 Sunbelt Road, The Villages, Florida 32159. The last four digits of the Debtor's federal tax identification number is 6436.

compensation for professional services provided in the amount of $5,600,000.00 for the period from July 3, 2025, through November 7, 2025 (the "Fee Period") and reimbursement of actual and necessary expenses incurred in connection therewith in the amount of $42,936.14.  In support of this Application, Evercore respectfully states as follows:

## JURISDICTION

1.      The United States Bankruptcy Court for the Middle District of Florida (this "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.   This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court may enter a final order consistent with Article III of the United States Constitution.   Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The bases for the relief requested herein are sections 327(a), 328(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-1 of the Bankruptcy Local Rules for the Middle District of Florida (the "Bankruptcy Local Rules"), the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 (the "UST Guidelines"), the *Order (I) Authorizing the Retention and Employment of Evercore Group L.L.C. as Investment Banker for the Debtor Pursuant to 11 U.S.C. §§ 327(a) and 328(a)*, Nunc Pro Tunc t*o the Petition Date and (II) Waiving Certain Time-Keeping Requirements* [Docket No. 149] (the "Retention Order" and, collectively with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the UST Guidelines, the "Guidelines").

134562.000006\4917-9567-9351.2

## RELIEF REQUESTED

3.       Evercore requests that the Court enter an order allowing Evercore's compensation for professional services rendered during the Fee Period in the amount of $5,600,000.00 and reimbursement of actual and necessary expenses incurred by Evercore in the amount of $42,936.14.

## BACKGROUND

4.       On July 3, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business and manage its properties as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this Chapter 11 Case.

5.       On September 4, 2025, the Office of the United States Trustee appointed a statutory committee of creditors in this Chapter 11 Case [Docket No. 206].

6.       On September 9, 2025, the Court entered the *Order (A) Approving Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 222].

7.       Additional factual background regarding the Debtor, including its business operations, its corporate and capital structure, and the events leading to the filing of the Chapter 11 Case, is set forth in detail in the *Declaration of Neil Luria, Chief Restructuring Officer of the Debtor, in Support of Chapter 11 Petition and Various First Day Applications and Motions* [Docket No. 3].

8.       Upon consummation of the Sale, Evercore's work for the Debtor pursuant to the Retention Order was substantially complete.

## COMPLIANCE WITH GUIDELINES

9.    This Application was prepared in accordance with the applicable provisions of the Guidelines.  Pursuant to, and consistent with, the relevant requirements of the Guidelines, as applicable, the following exhibits are attached hereto:

i.    **Exhibit A** contains Evercore's Retention Order;

ii.    **Exhibit B** contains time records for the Fee Period detailing the name of each professional for whose work compensation is sought and the aggregate time expended by each professional; and

iii.    **Exhibit C** contains a summary of Evercore's fees and reimbursable expenses, including invoices for legal fees, during the Fee Period and in connection with the preparation of this Application.

10.    As described more fully in the *Debtor's Application for Entry of an Order (I) Authorizing the Retention and Employment of Evercore Group L.L.C. as Investment Banker for the Debtor Pursuant to 11 U.S.C. §§ 327(a) and 328(a) Nunc Pro Tunc to the Petition Date, and (II) Waiving Certain Time-Keeping Requirements* (the "Retention Application") [Docket No. 74], consistent with its ordinary practice and the practice of investment bankers in other chapter 11 cases whose fee arrangements are transaction-based, Evercore does not ordinarily maintain contemporaneous time records or provide or conform to a schedule of hourly rates for its professionals.  Evercore therefore sought authorization, also consistent with the ordinary practice of Evercore and other investment bankers in large chapter 11 cases, to maintain time records in half-hour increments rather than the tenth-of-an-hour increments that are more standard for professionals billing on an hourly basis.  The Retention Order, however, required that Evercore "maintain time records in tenth-hour (0.10) increments setting forth, in a summary format, reasonably detailed description of services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtor." Retention Order ¶ 5.

11.     Through an administrative miscommunication, during the pendency of this Chapter 11 Case, Evercore kept time records only in half-hour increments, which are attached at **Exhibit B**, and not tenth-hour increments.  Evercore respectfully submits that this oversight does not impede a meaningful review of its services to the Debtor, the need for such services or the benefit of those services to the Debor's estate.  Evercore's compensation sought in this Application is based on a periodic monthly fee and a transaction-based restructuring fee, neither of which is dependent on the amount of time spent by Evercore professionals on any particular task in pursuing the Debtor's successful Sale transaction.  Moreover, Evercore has included reasonably detailed descriptions of its services as required by the Retention Order, providing sufficient insight into the activities of Evercore professionals in this Chapter 11 Case to support granting the relief requested in this Application.  In fact, courts and parties in interest in complex bankruptcy cases around the country routinely evaluate investment banker fee applications based on half-hour time records, as evidenced by the retention orders in such cases.[2]

12.     Accordingly, and to the extent that this Application is not in compliance with the Guidelines, Evercore respectfully submits that such noncompliance is immaterial and requests a waiver of the applicable requirements.

13.     A proposed order granting the relief requested in this Application is attached hereto (the "Proposed Order").

---

[2]     See., e.g., *In re Zips Car Wash, LLC*, No. 25-80069 (MVL) (Bankr. N.D. Tex. Apr. 7, 2025) (Evercore retention order); *In re Hearthside Food Solutions, LLC*, No. 24-90587 (ARP) (Bankr. S.D. Tex. Jan. 22, 2025) (Evercore retention order); *In re Enviva Inc.*, No 24-10453 (BFK) (Bankr. E.D. Va. May 8, 2024) (Lazard Fréres & Co. LLC retention order); *In re Number Holdings, Inc.*, No. 24-10719 (JKS) (Bankr. D. Del. May 6, 2024) (Jefferies LLC retention order); *In re Invitae Corp.*, No 24-11362 (MBK) (Bankr. D.N.J. April 23, 2040) (Moelis & Company LLC retention order); *In re Mercon Coffee Corp.*, No. 23-11945 (MEW) (Bankr. S.D.N.Y. Mar 25, 2024) (Rothschild & Co US Inc. and Rothschild & Co Mexico S.A. De C.V. retention order); *In re Audacy, Inc.*, No. 24-90004 (CML) (Bankr. S.D. Tex. Feb 20, 2024) (PJT Partners LP retention order).  Because of the voluminous nature of these orders, they are not attached to this Application.  Copies are available upon request to the Debtor's counsel.

**TERMS AND CONDITIONS OF EMPLOYMENT AND COMPENSATION**

14.    The terms and conditions of Evercore's employment by the Debtor and compensation to be paid to Evercore by the Debtor is specifically outlined in the Retention Application and was approved, as modified, by the Retention Order.

**SUMMARY OF SERVICES PERFORMED BY EVERCORE DURING THE FEE PERIOD**

15.    Evercore submits that the investment banking services and advice it rendered to the Debtor in connection with the Chapter 11 Case during the Fee Period, all at the direction of the Debtor or its counsel, were necessary and beneficial to the Debtor, its creditors, and its estate. These services were necessary to address a multitude of critical issues both unique to the Chapter 11 Case, and typically faced by large corporate debtors in similar cases, and were within the scope of those services contemplated by that certain engagement agreement dated as of July 2, 2025, between the Debtor and Evercore (the "Engagement Letter") and authorized by the Retention Order.

16.    To provide a meaningful summary of its services provided on behalf of the Debtor and its estate, Evercore has established, in accordance with its internal procedures, the following subject matter categories (each, a "Matter Category") in connection with the Chapter 11 Case:

| Matter Number | Description |
| --- | --- |
| 1 | General Case Administration / Court Hearings |
| 2 | Due Diligence |
| 3 | Financing, Capital Structure Review & Analysis |
| 4 | Asset Sales & Other M&A Activity |
| 5 | Travel |
| 6 | Evercore Retention and Fee Application |

17.    The following is a summary, by Matter Category, of the most significant professional services provided by Evercore during the Fee Period. This summary is organized in accordance with Evercore's internal system of matter numbers. The detailed descriptions below

8

and the time records attached as **Exhibit B** demonstrate that Evercore was heavily involved in performing services for the Debtor on a daily basis to meet the Debtor's needs in the Chapter 11 Case.

18.     Immediately prior to filing the Chapter 11 Case, the Debtor entered into a stalking-horse asset purchase agreement, which provided for the sale of substantially all of the Debtor's assets as a going concern, following many months of engagement by Evercore with the Debtor and its stakeholders.   Because the terms of the stalking-horse asset purchase agreement were negotiated prior to the commencement of the Chapter 11 Case, a substantial amount of services conducted by Evercore professionals occurred pre-petition and are not included in the total hours below.

### i.       General Case Administration / Court Hearings (Matter #1)

### Total Hours: 22.0

19.     This category includes time spent by Evercore speaking on telephone conversations and in meetings with the Debtor, the Debtor's attorneys and other professionals and parties-in-interest regarding the status of the case. This category also includes the preparation and review of court documents filed by the Debtor and other parties-in-interest except as such related to Evercore's retention. This category also includes attending case hearings and preparation for case hearings.

### ii.      Due Diligence (Matter #2)

### Total Hours: 457.5

20.     This matter encompasses the full scope of diligence-related activities undertaken in connection with prospective buyers' evaluation of the opportunity to purchase the Debtor's assets. Work under this matter includes attending and preparing for meetings with both the Debtor's

management and potential acquirers to discuss the Debtor's business, operations, historical performance, and future projections. It also covers in-depth review and analysis of materials provided by the Debtor to support the buyers' diligence processes and response to virtual data room ("VDR") requests. Time under this matter also includes coordination with the Debtor's legal, financial, and operational teams to ensure that diligence inquiries are properly addressed and that buyers receive the necessary materials to assess the opportunity.

### iii.    Financing and Capital Structure Review (Matter #3)

**Total Hours: 9.5**

21.    This category includes time spent by Evercore in identifying and contacting potential sources of financing, including, but not limited to debtor in possession ("DIP"), and postpetition financing, and equity financing, as well as time spent negotiating and structuring the terms of such financing. This category includes time spent by Evercore evaluating the Debtor's capital structure alternatives in light of its current capital structure, the Debtor's financial performance, market conditions, and other relevant factors.

### iv.    Asset Sales & Other M&A Activity (Matter #4)

**Total Hours: 186.0**

22.    This matter relates to Evercore's efforts to identify, solicit, and execute potential sale or strategic transaction opportunities involving the Debtor's assets. This category includes time spent by Evercore in advising the Debtor on the sale of substantially all its assets, such as discussing the Debtor's business with interested parties and tracking inbound interest from potential buyers, as well as negotiating the terms and conditions of the agreed-to sale. Work under this matter includes initial outreach to potential acquirers and investors, preparation of transaction marketing materials and coordination of management meetings to present the

opportunity.  It also encompasses development of buyer lists, evaluation of strategic alternatives, and support of management throughout the marketing and sale process.

23.     **Travel (Matter #5)**

**Total Hours: 8.0**

24.      This category includes time spent traveling to and from the Debtor's offices or to other destinations on the Debtor's behalf.

25.     **Evercore Retention and Fee Application (Matter #6)**

**Total Hours: 4.5**

26.     This category includes time spent by Evercore preparing and reviewing the Retention Application and this Application.

* * *

27.     The foregoing professional services were performed by Evercore at the request of the Debtor, conducted in an efficient manner, were necessary and appropriate to the administration of the Chapter 11 Case, consistent with market practices for investment banking firms both in and out of a bankruptcy context, and were in the best interests of the Debtor, its estate, and other parties in interest.

### ACTUAL AND NECESSARY EXPENSES INCURRED

28.      Evercore incurred a total of $42,936.14 in expenses in connection with its services to the Debtor during the Fee Period and in connection with preparing this Application.  Annexed hereto as **Exhibit C** is a summary setting forth the type and amounts of such expenses.  Evercore submits that all such expenses were necessarily incurred, are reasonable in amount, and represent only the actual costs incurred.

29.     Legal expenses represent legal fees charged by Evercore's external legal counsel, Debevoise & Plimpton LLP, for legal advice in connection with the Chapter 11 Case and for its

work related to the preparation of this Application.  Invoices detailing the legal expenses incurred during the Fee Period and in connection with the preparation of this Application are set forth in **Exhibit C**.

30.     Evercore has made every effort to minimize its expenses in the Chapter 11 Case. The actual expenses incurred in providing professional services to the Debtor were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtor, its estate, and other parties-in-interest.

## EVERCORE'S REQUESTED COMPENSATION AND REIMBURSEMENT SHOULD BE ALLOWED

31.     Section 330 of the Bankruptcy Code provides that, subject to section 328 of the Bankruptcy Code, a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered . . . and reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1).

32.     The Retention Order approved Evercore's compensation pursuant to section 328 of the Bankruptcy Code, subject to the terms of the Retention Order.  Accordingly, compensation is sought subject to the standard of review set forth in section 328 of the Bankruptcy Code, and not the standard of review set forth in section 330 of the Bankruptcy Code, but subject to the terms of the Retention Order.

33.     In the instant case, Evercore submits that the services for which it seeks compensation and the expenditures for which it seeks reimbursement in this Application were necessary for and beneficial to the preservation and maximization of value for all stakeholders and to the orderly administration of the Debtor's estate.  The compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtor, its estate, and all parties-in-interest.

34.     In sum, the services rendered by Evercore were necessary and beneficial to the Debtor's estate and were consistently performed in a timely manner commensurate with the types of issues involved in the Chapter 11 Case.   Accordingly, approval of the compensation for professional services and reimbursement of expenses sought in this Application is warranted.

## RESERVATION OF RIGHTS

35.     It is possible that some professional time expended or expenses incurred during the Fee Period are not reflected in the Application.  Accordingly, Evercore reserves the right to amend the Application.

WHEREFORE, Evercore, as investment banker to the Debtor respectfully requests entry of the Proposed Order granting the relief requested herein and such other relief as the Court may deem just and proper.

Dated: November 11, 2025                  Respectfully submitted,
      New York, New York

                                        */s/ Stephen Goldstein*
                                        Senior Managing Director
                                        Evercore Group, L.L.C.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 11, 2025, a true and correct copy of the foregoing has been served through the CM/ECF system to all registered CM/ECF recipients and by email, facsimile or first-class mail to: (a) the Office of the United States Trustee for the Middle District of Florida; (b) all secured creditors; (c) the Office of the Attorney General of the State of Florida; (d) the twenty (20) largest unsecured creditors for the Debtor; (e) other interested parties as identified by the Debtor; and (f) any known counsel for (a)-(f).The method of service for each party will be described more fully in the certificate of service prepared by Stretto.

                                        */s/ Elizabeth A. Green*
                                        Elizabeth A. Green

## Exhibit A

Retention Order

ORDERED.

**Dated:  August 11, 2025**

_____

Lori V. Vaughan
United States Bankruptcy Judge

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

| | |
|---|---|
| In Re: | **Case No.: 6:25-bk-04156-LVV** |
| **THE VILLAGES HEALTH SYSTEM, LLC,[1]** | Chapter 11 |
| **Debtor.** | |

### ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF EVERCORE GROUP L.L.C. AS INVESTMENT BANKER FOR THE DEBTOR PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a), *NUNC PRO TUNC* TO THE PETITION DATE AND (II) WAIVING CERTAIN TIME-KEEPING REQUIREMENTS

This case came before the Court without a hearing upon the Application for Order

Authorizing the Retention and Employment of Evercore Group L.L.C. as Investment Banker for

the Debtor Pursuant to 11 U.S.C. §§327(a) and 328(a), *nunc pro tunc* to the Petition Date and (II)

---

[1] The address of the Debtor is 600 Sunbelt Road, The Villages, Florida 32159. The last four digits of the Debtor's federal tax identification number is 6436.

Waiving Certain Time-Keeping Requirements (Doc. No. 74) (the "Application")[2] of the above-captioned debtor and debtor in possession (the "Debtor") for entry of an order (this "Order"), (a) authorizing the Debtor to retain and employ Evercore Group L.L.C. ( "Evercore") as their investment banker, *nunc pro tunc* to July 3, 2025, pursuant to the terms and subject to the conditions of the Engagement Letter, which is annexed to this Order as **Exhibit 1**, (ii) approving the terms of Evercore's employment and retention, including the fee and expense structure and the indemnification, contribution, reimbursement and related provisions set forth in the Engagement Letter, (iii) waiving certain timekeeping requirements and (iv) granting such other and further relief as is just and proper, all as more fully set forth in the Application; and upon the First Day Declaration and the Berens Declaration; the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this district pursuant to 28 U.S.C. § 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (iv) the Court may enter a final order consistent with Article III of the United States Constitution; (v) the terms and conditions of Evercore's employment, including the Fee Structure set forth in the Engagement Letter and summarized in the Application, are reasonable as required by section 328(a) of the Bankruptcy Code, (vi) Evercore is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, (vii) the relief requested in the Application is in the best interests of the Debtor's estate, its creditors, and other parties in interest and (viii) the Debtor's notice of the Application and opportunity for a hearing on the Application were appropriate and no other notice need be provided; and the Court having reviewed the Application; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due

---

[2] Capitalized terms used and not defined herein have the meanings ascribed to them in the Application.

deliberation and sufficient cause appearing therefor, it is

ORDERED:

1.      The Application is GRANTED.

2.      The Debtor is authorized to retain and employ Evercore as its investment banker in the Chapter 11 Case, pursuant to the terms and subject to the conditions set forth in the Engagement Letter attached hereto as **Exhibit 1**, *nunc pro tunc* to July 3, 2025.

3.      The Engagement Letter (together with all schedules thereto), including without limitation the Fee Structure, are approved pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, and the Debtor is authorized and directed to perform their payment, reimbursement, contribution, and indemnification obligations and their non-monetary obligations in accordance with the terms and conditions, and at the times specified, in the Engagement Letter.  Subject to this Order, all compensation and reimbursement of expenses payable under the Engagement Letter shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to any other standard of review including, but not limited to, that set forth in section 330 of the Bankruptcy Code.

4.      None of the fees payable to Evercore shall constitute a "bonus" or fee enhancement under applicable law.

5.      Evercore's professionals shall be excluded from (a) submitting monthly and interim fee applications, and (b) maintaining or providing detailed time records in accordance with Bankruptcy Rule 2016(a) or conforming to a schedule of hourly rates in connection with the services to be rendered pursuant to the Engagement Letter.  Evercore shall maintain time records in tenth-hour (0.10) increments setting forth, in a summary format, a reasonably detailed

description of services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtor.

6.      Evercore shall file a final fee application for allowance and compensation for services rendered and reimbursement of expenses incurred pursuant to the procedures set forth in section 330 of the Bankruptcy Code, the Bankruptcy Rules, and any other applicable order of this Court; *provided* that such fee application shall be subject to review pursuant only to the standard of review set forth in section 328 of the Bankruptcy Code, except as expressly set forth herein. Notwithstanding the foregoing, Monthly Fees shall be paid by the Debtor on a monthly basis, as set forth in the Engagement Letter, without the need to file monthly fee statements; *provided*, *however*, that for the avoidance of doubt, Monthly Fees shall be subject to review and approval in connection with the final fee application.

7.      Notwithstanding anything to the contrary in this Order, the U.S. Trustee shall have the right to object to Evercore's request for final compensation and reimbursement based on the reasonableness standard provided in section 330 of the Bankruptcy Code, not section 328(a) of the Bankruptcy Code.   This Order and the record relating to the Court's consideration of the Application shall not prejudice or otherwise affect the rights of the U.S. Trustee to challenge the reasonableness of Evercore's fees under the standard set forth in the preceding sentence. Accordingly, nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of Evercore's fees.

8.      In the event that, during the pendency of this Chapter 11 Case, Evercore requests reimbursement for any attorneys' fees and/or expenses, the invoices and supporting time records from such attorneys (which may be redacted for privilege) shall be included in Evercore's fee

applications, and such invoices and time records shall be in compliance with and the U.S. Trustee Guidelines and subject to approval of the Bankruptcy Court under the standards of section 330 and 331 of the Bankruptcy Code, without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.  Notwithstanding the foregoing, Evercore shall only be reimbursed for any legal fees incurred in connection with this Chapter 11 Case to the extent permitted under applicable law and the decisions of this Bankruptcy Court.

9.     The indemnification, contribution, and reimbursement provisions included in Schedule A to the Engagement Letter are approved, subject to the following modifications, applicable during the pendency of this Chapter 11 Case:

  a.     No Indemnified Person shall be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services, unless such services and the indemnification, contribution or reimbursement therefor are approved by the Court;

  b.     The Debtor shall have no obligation to indemnify any Indemnified Person, or provide contribution or reimbursement to any Indemnified Person, for any claim or expense that is either:  (i) judicially determined (the determination having become final) to have arisen from such Indemnified Person's gross negligence, fraud, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing; (ii) for a contractual dispute in which the Debtor alleges the breach of such Indemnified Person's contractual obligations, unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing, to be a claim or expense for which such Indemnified Person should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter as modified by this Order; and

  c.     If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in this Chapter 11 Case (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing this Chapter 11 Case, any Indemnified Person believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification,

5

contribution and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including, without limitation, the advancement of defense costs, such Indemnified Person must file an application therefor in this Court, and the Debtor may not pay any such amounts to such Indemnified Person before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Indemnified Persons for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify Evercore and the other Indemnified Persons. All parties in interest shall retain the right to object to any demand by any Indemnified Person for indemnification, contribution or reimbursement.

10.     To the extent the Debtor wishes to expand the scope of Evercore's services or seek additional fees beyond those set forth in the Engagement Letter or this Order, the Debtor shall be required to seek further approval from this Court. The Debtor shall file a notice of any proposed additional services or fees and any underlying engagement agreement with the Court. If no such party files and objection within fourteen (14) days of the Debtor filing such notice, the additional services or fees and any underlying engagement agreement, as applicable, may be approved by the Court by further order without notice or hearing.

11.     Evercore shall use reasonable efforts to avoid any duplication of services provided by any of the Debtor's other retained professionals in the Chapter 11 Case.

12.     To the extent that there may be any inconsistency between the terms of the Application, the Berens Declaration, the Engagement Letter, and this Order, the terms of this Order shall govern.

13.     The Debtor is authorized and empowered to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

14.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice.

15.     The relief granted herein shall be binding upon any chapter 11 trustee appointed in this Chapter 11 Case, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of this Chapter 11 Case to a case under chapter 7.

16.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

17.     This Bankruptcy Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# # #

*Attorney Elizabeth A. Green is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of the order.*

## Exhibit 1

**Engagement Letter**

July 2, 2025

The Villages Health System, LLC
3619 Kiessel Road
The Villages, FL 32163
Ladies and Gentlemen:

This engagement letter (this "Agreement") is to formalize the arrangement between Evercore Group L.L.C. ("Evercore") and The Villages Health System, LLC (together with any direct or indirect subsidiaries, the "Company") regarding the retention of Evercore by the Company as a financial advisor for the purposes set forth herein.

**Assignment Scope:**

The Company hereby retains Evercore as its exclusive investment banker to provide the Company with general investment banking advice and to advise it in connection with any Restructuring or Financing transactions (each defined below) on the terms and conditions set forth herein.

As used in this Agreement, the term "Restructuring" shall mean, collectively, any restructuring, reorganization and/or recapitalization, however such result is achieved, including, without limitation, through one or more of the following: (i) a plan of reorganization or liquidation confirmed pursuant to 11 U.S.C. §101 *et. seq.*, as from time to time amended, or any other current or future federal statute or regulation that may be applicable to such plan (11 U.S.C. §101 *et. seq.* and those other statutes and regulations are referred to herein generically as the "Bankruptcy Code")), (ii) a refinancing, cancellation, forgiveness, satisfaction, retirement, purchase, assumption and/or a material modification or amendment to the terms of the Company's outstanding indebtedness (including bank debt, bond debt, preferred stock, government and government related liabilities and other on and off balance sheet indebtedness), trade claims, leases (both on and off balance sheet), litigation-related claims and obligations, unfunded pension and retiree medical liabilities, lease obligations, partnership interests and other liabilities (collectively, the "Existing Obligations") including pursuant to a sale, repurchase or an exchange transaction, a Plan (as defined below) or a solicitation of consents, waivers, acceptances or authorizations, or (iii) an acquisition, merger, sale, consolidation, or other business combination, including a sale pursuant to section 363 of the Bankruptcy Code (including via credit bid), pursuant to which a majority of the business, assets, or existing equity or securities of the Company are, directly or indirectly, sold or transferred to, or combined with, another company (other than an ordinary course intra-company transaction).

As used in this agreement, the term "Financing" shall mean the issuance, sale or placement of newly issued or treasury equity, equity-linked or debt securities, instruments or obligations of the Company with one or more lenders and/or investors or security holders (each such lender or investor, an "Investor"), including any "debtor-in-possession financing" or "exit financing" in connection with a case under the Bankruptcy Code or a refinancing, repricing, rights offering or any loan or other financing or obligation.

1

The Villages Health System, LLC July 2, 2025
Page 2

## Description of Services:

1. Evercore agrees, in consideration of the compensation provided in Section 2 below, to perform the following services, to the extent it deems such services necessary, appropriate and feasible:

   a. Reviewing and analyzing the Company's business, operations and financial projections in connection with a proposed Financing or Restructuring;

   b. Advising and assisting the Company in a Restructuring and/or Financing transaction, if the Company determines to undertake such a transaction;

   c. Providing financial advice in developing and implementing a Restructuring, which would include:

      i. Evaluating transaction alternatives and financial implications on the Company's capital structure and financial condition;

      ii. Analyzing various Restructuring scenarios and the potential impact of those scenarios on the value of the Company and the recoveries of those stakeholders impacted by the Restructuring;

      iii. Assisting the Company in developing and seeking approval of a restructuring plan or plan of reorganization, including a plan of reorganization pursuant to the Bankruptcy Code (any such plans are referred to generically herein as the "Plan");

      iv. Advising and assisting in structuring, negotiating, implementing, and otherwise responding to the financial aspects of a Restructuring, in each case on behalf of the Company;

      v. Providing financial advice and assistance to the Company in structuring any new securities to be issued pursuant to a Restructuring;

      vi. Advising the Company on tactics and strategies for negotiating with various stakeholders regarding a Restructuring;

      vii. Evaluating the terms of Restructuring proposals;

      viii. Providing testimony, as necessary, with respect to matters on which Evercore has been engaged to advise the Company in any proceedings under the Bankruptcy Code that are pending before a court (generically referred to herein as the "Bankruptcy Court") exercising jurisdiction over the Company as a debtor; and,

      ix. Providing the Company with other financial restructuring advice as Evercore and the Company may deem appropriate.

2

The Villages Health System, LLC July 2, 2025
Page 3

    d.  If the Company pursues a Financing, assisting the Company in:

        i.  Structuring and effecting a Financing;

        ii.  Identifying potential Investors (as defined below) and, at the Company's request, contacting such Investors; and,

        iii.  Managing the due diligence process and working with the Company in negotiating a potential Financing with potential Investors;

        iv.  Assisting the Company in preparing marketing materials for such Financing;

        v.  Evaluating the terms of Financing proposals; and,

        vi.  Providing the Company with other financial advice as Evercore and the Company may deem appropriate.

It is understood that nothing contained herein shall constitute an express or implied commitment by Evercore to act in any capacity or to underwrite, place or purchase any financing or securities, which commitment, if any, shall be set forth in a separate underwriting placement or other appropriate agreement relating to a Financing.

In rendering its services to the Company hereunder, Evercore is not assuming any responsibility for the Company's underlying business decision to pursue or not to pursue any business strategy or to effect or not to effect any Restructuring, Financing, or other transaction.

Evercore shall not have any obligation or responsibility to provide accounting, audit, "crisis management" or business consultant services to the Company, and shall have no responsibility for design or implementation of operating, organizational, administrative, cash management or liquidity improvements; nor shall Evercore be responsible for providing any tax, legal or other specialist advice. The Company confirms that it will rely on its own counsel, accountants and similar expert advisors for legal, accounting, tax and other similar advice.

**Fees:**

2.  As compensation for the services rendered by Evercore hereunder, the Company agrees to pay Evercore the following fees in cash as and when set forth below:

    a.  Upon execution hereof, the Company will pay to Evercore an upfront retainer in the amount of $600,000 which will be fully earned upon receipt. In addition, the Company will pay to Evercore a monthly fee of $200,000 (a "Monthly Fee"), with the first such Monthly Fee payable on the first day of each month commencing August 1, 2025 until the earlier of the consummation of the Restructuring transaction or the termination of Evercore's engagement.

The Villages Health System, LLC July 2, 2025
Page 4

b. A fee of $5.0 million (a "Restructuring Fee"), payable upon the earlier of (i) confirmation of a Plan or (ii) consummation of any Restructuring.

Notwithstanding the foregoing, no Restructuring Fee shall be payable in connection with any Restructuring solely involving a waiver or forbearance with respect to any of the Company's outstanding indebtedness provided by The Villages, Inc.

c. A fee (a "Financing Fee"), payable upon consummation of any Financing and incremental to any Restructuring Fee, equal to the following:

i. Applicable percentage(s) set forth in the table below:

| Financing | As a Percentage of Financing Gross Proceeds |
|---|---|
| Indebtedness Secured by a First Lien | 1.25% |
| Indebtedness Secured by a Second Lien, Unsecured, Subordinated and/or a Structured Financing | 1.25% |
| Equity or Equity-linked Securities/Obligations | 1.25% |

For purposes of calculating each Financing Fee, "Gross Proceeds" shall equal the aggregate amount of capital committed, whether or not drawn or funded.

Notwithstanding the foregoing, no Financing Fee shall be payable on any financing provided by (i) the Company's existing equity holders or (ii) any affiliated entities that hold equity investments in the Company.

d. In addition to any fees that may be payable to Evercore and, regardless of whether any transaction occurs, the Company, on a monthly basis, shall promptly reimburse to Evercore (a) all reasonable expenses (including travel and lodging, data processing and communications charges, courier services and other appropriate expenditures) and (b) other documented reasonable fees and expenses, including expenses of counsel, if any.

e. If Evercore provides services to the Company for which a fee is not provided herein, such services shall, except insofar as they are the subject of a separate agreement, be treated as falling within the scope of this Agreement, and the Company and Evercore will agree upon a fee for such services based upon good faith negotiations.

f. All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts accrue hereunder.

In addition, the Company and Evercore acknowledge and agree that more than one fee may be payable to Evercore under subparagraphs 2(b), 2(c) and/or 2(e) hereof in connection with any single transaction or a series of transactions, it being understood and agreed that if more than one fee becomes so payable to Evercore in connection with a series of transactions, each such fee shall be paid to Evercore.

4

The Villages Health System, LLC July 2, 2025
Page 5

The Company acknowledges that the fee structure herein, including the Monthly Fees, reflects the substantial commitment of professional time and effort that will be required of Evercore and its professionals and in light of the fact that (i) such commitment may foreclose other opportunities for Evercore and (ii) the actual time and commitment required of Evercore and its professionals to perform its services may vary substantially from week to week and month to month, creating "peak load" issues for Evercore.

### Support of Fees and Retention in Bankruptcy Code Proceedings:

3. In the event the Company obtains support (e.g., via an executed term sheet, restructuring support agreement, or other agreement in principle documenting the key terms of a Plan and/or out-of-court restructuring) from one or more of the Company's key creditor classes (such creditors the "Supporting Creditors" and any such documentation of support, an "RSA"), the Company agrees that it will use best efforts to include in the RSA a provision that the Supporting Creditors affirmatively agree to support and not to object or in any way oppose: (i) the retention of Evercore; (ii) the terms and conditions set forth in this Agreement including, for the avoidance of doubt, the fee and expense structure included herein; and/or (iii) any fee statement or application submitted by Evercore to the Bankruptcy Court. In the event of the commencement of Chapter 11 proceedings, the Company agrees that it will use best efforts to obtain prompt authorization from the Bankruptcy Court to retain Evercore on the terms and conditions set forth in this Agreement under the provisions of 11 U.S.C. §§ 327 and 328 subject to the standard of review provided in Section 328(a), and not subject to the standard of review under 11 U.S.C. § 330 or any other standard of review. Subject to being so retained, Evercore agrees that during the pendency of any such proceedings, it shall continue to perform its obligations under this Agreement and that it shall file interim and final applications for allowance of the fees and expenses payable to it under the terms of this Agreement pursuant to the applicable Federal Rules of Bankruptcy Procedure, and the local rules and orders of the Bankruptcy Court. The Company shall supply Evercore with a draft of the application and proposed retention order authorizing Evercore's retention sufficiently in advance of the filing of such application and proposed order to enable Evercore and its counsel to review and comment thereon. Evercore shall be under no obligation to provide any services under this agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Evercore's retention under the terms of this Agreement is approved under Section 328(a) by final order of the Bankruptcy Court, not subject to appeal, which order is acceptable to Evercore. In so agreeing to seek Evercore's retention under Section 328(a), the Company acknowledges that it believes that Evercore's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Restructuring, and/or Financing, that the value to the Company of Evercore's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent fees are reasonable under the standard set forth in Section 328(a), regardless of the number of hours to be expended by Evercore's professionals in the performance of the services to be provided hereunder. No fee payable to any other person, by the Company or any other party, shall reduce or otherwise affect any fee payable hereunder to Evercore.

4924-3243-3746.2

The Villages Health System, LLC July 2, 2025
Page 6

**Other:**

4. Evercore's engagement hereunder is premised on the assumption that the Company will make available to Evercore all information and data that Evercore reasonably deems appropriate in connection with its activities on the Company's behalf and will not omit or withhold any material information. The Company represents and warrants to Evercore that any information heretofore or hereafter furnished to Evercore is and will be true and correct in all material respects. The Company recognizes and consents to the fact that (a) Evercore will use and rely on the accuracy and completeness of public reports and other information provided by others, including information provided by the Company, other parties and their respective officers, employees, auditors, attorneys or other agents in performing the services contemplated by this Agreement, and (b) Evercore does not assume responsibility for, and may rely without independent verification upon, the accuracy and completeness of any such information.

5. Evercore's engagement hereunder may be terminated by the Company or Evercore at any time upon written notice and without liability or continuing obligation to the Company or Evercore, except that following such termination Evercore shall remain entitled to any fees accrued pursuant to Section 2 but not yet paid prior to such termination, and to reimbursement of expenses incurred prior to such termination, and Evercore shall remain entitled to full payment of all fees contemplated by Section 2 hereof in respect to any Restructuring and/or Financing announced or occurring during the period from the date hereof until 12 months following such termination.

6. Nothing in this Agreement, expressed or implied, is intended to confer or does confer on any person or entity other than the parties hereto or their respective successors and assigns, and to the extent expressly set forth in accordance with the indemnification agreement ("Indemnification Agreement") attached to this Agreement as Schedule I, the Indemnified Persons (as defined in the Indemnification Agreement), any rights or remedies under or by reason of this Agreement or as a result of the services to be rendered by Evercore hereunder. The Company acknowledges that Evercore is not acting as an agent of the Company or in a fiduciary capacity with respect to the Company and that Evercore is not assuming any duties or obligations other than those expressly set forth in this Agreement. Nothing contained herein shall be construed as creating, or be deemed to create, the relationship of employer and employee between the parties, nor any agency, joint venture or partnership. Evercore shall at all times be and be deemed to be an independent contractor. Nothing herein is intended to create or shall be construed as creating a fiduciary relationship between Evercore and the Company or its Board of Directors. No party to this Agreement nor its employees or agents shall have any authority to act for or to bind the other party in any way or to sign the name of the other party or to represent that that the other party is in any way responsible for the acts or omissions of such party.

7. As part of the compensation payable to Evercore hereunder, the Company agrees to indemnify Evercore and certain related persons in accordance with the Indemnification Agreement. The provisions of the Indemnification Agreement are an integral part of this Agreement, and the terms thereof are incorporated by reference herein. The

6

The Villages Health System, LLC July 2, 2025
Page 7

provisions of the Indemnification Agreement shall survive any termination or completion of Evercore's engagement hereunder.

8. The Company agrees that it is solely responsible for any decision regarding a transaction, regardless of the advice provided by Evercore with respect to such a transaction. The Company acknowledges that the Company's appointment of Evercore pursuant to this Agreement is not intended to achieve or guarantee the closing of a transaction and that Evercore is not in a position to guarantee the achievement or closing of a transaction.

9. The Company recognizes that Evercore has been engaged only by the Company and that the Company's engagement of Evercore is not deemed to be on behalf of and is not intended to confer rights on any shareholder, partner or other owner of the Company, any creditor, lender or any other person not a party hereto or any of its affiliates or their respective directors, officers, members, agents, employees or representatives. Unless otherwise expressly agreed, no one, other than senior management or the Board of Directors of the Company, is authorized to rely upon the Company's engagement of Evercore or any statements, advice, opinions or conduct by Evercore. Without limiting the foregoing, any advice, written or oral, rendered to the Company's Board of Directors or senior management in the course of the Company's engagement of Evercore are solely for the purpose of assisting senior management or the Board of Directors of the Company, as the case may be, in evaluating the Restructuring or , Financing or other transaction and does not constitute a recommendation to any stakeholder of the Company that such stakeholder might or should take in connection with a transaction. Any advice, written or oral, rendered by Evercore may not be disclosed publicly or made available to third parties without the prior written consent of Evercore.

10. In order to coordinate Evercore's efforts on behalf of the Company during the period of Evercore's engagement hereunder, the Company will promptly inform Evercore of any discussions, negotiations, or inquiries regarding a potential transaction, including any such discussions or inquiries that have occurred during the six-month period prior to the date of this Agreement.

11. This Agreement (including the Indemnification Agreement) between Evercore and the Company, embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect this Agreement in any other respect, which will remain in full force and effect. This Agreement may not be amended or modified except in writing signed by each of the parties.

12. In the event that, as a result of or in connection with Evercore's engagement for the Company, Evercore becomes involved in any legal proceeding or investigation or is required by government regulation, subpoena or other legal process to produce documents, or to make its current or former personnel available as witnesses at deposition or trial, the Company will reimburse Evercore for the reasonable fees and

7

The Villages Health System, LLC July 2, 2025
Page 8

expenses of its counsel incurred in responding to such a request. Nothing in this paragraph shall affect in any way the Company's obligations pursuant to the separate Indemnification Agreement attached hereto.

13. The Company agrees that Evercore shall have the right to place advertisements in financial and other newspapers and journals at its own expense describing its services to the Company hereunder.

14. The Company acknowledges that Evercore, in the ordinary course, may have received information and may receive information from third parties which could be relevant to this engagement but is nevertheless subject to a contractual, equitable or statutory obligation of confidentiality, and that Evercore is under no obligation hereby to disclose any such information or include such information in its analysis or advice provided to the Company. In addition, Evercore or one or more of its affiliates may in the past have had, and may currently or in the future have, investment banking, investment management, financial advisory or other relationships with the Company and its affiliates, potential parties to a Transaction and their affiliates or persons that are competitors, customers or suppliers of (or have other relationships with) the Company or its affiliates or potential parties to a Transaction or their affiliates, and from which conflicting interests or duties may arise. Nothing contained herein shall limit or preclude Evercore or any of its affiliates from carrying on (i) any business with or from providing any financial or non-financial services to any party whatsoever, including, without limitation, any competitor, supplier or customer of the Company, or any other party which may have interests different from or adverse to the Company or (ii) its business as currently conducted or as such business may be conducted in the future. The Company also acknowledges that Evercore and its affiliates engage in a wide range of activities for their own accounts and the accounts of customers, including corporate finance, mergers and acquisitions, equity sales, trading and research, private equity, asset management and related activities. In the ordinary course of such businesses, Evercore and its affiliates may at any time, directly or indirectly, hold long or short positions and may trade or otherwise effect transactions for their own accounts or the accounts of customers, in debt or equity securities, senior loans and/or derivative products relating to the Company or its affiliates, potential parties to a Transaction and their affiliates or persons that are competitors, customers or suppliers of the Company.

15. The Company agrees to provide and procure all corporate, financial, identification and other information regarding the Company and control persons and/or beneficial owners, as Evercore may require to satisfy its obligations as a U.S. financial institution under the USA PATRIOT Act and Financial Crimes Enforcement Network regulations.

16. Evercore may, in the performance of its services hereunder, delegate the performance of all or certain services as it may select to any of its affiliated entities; provided that no such delegation by Evercore shall in any respect affect the terms hereof, and Evercore shall be responsible for any acts or omissions by any of its affiliated entities in the performance of any services delegated to such entity.

The Villages Health System, LLC July 2, 2025
Page 9

17. For the convenience of the parties hereto, any number of counterparts of this Agreement may be executed by the parties hereto, each of which shall be an original instrument and all of which taken together shall constitute one and the same Agreement. Delivery of a signed counterpart of this Agreement by facsimile transmission shall constitute valid sufficient delivery thereof.

18. Except as provided herein, the parties hereby irrevocably consent to the exclusive jurisdiction of any New York State or United States federal court sitting in the Borough of Manhattan of the City of New York over any action or proceeding arising out of or relating to this Agreement, and the parties hereby irrevocably agree that all claims in respect of such action or proceeding may be heard in such New York State or federal court. The parties irrevocably agree to waive all rights to trial by jury in any such action or proceeding and irrevocably consent to the service of any and all process in any such action or proceeding by the mailing of copies of such process to each party at its address set forth above. The parties agree that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. The Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to conflicts of law principles that would result in the application of any law other than the law of the State of New York). The parties further waive any objection to venue in the State of New York and any objection to any action or proceeding in such state on the basis of forum non conveniens.

If the foregoing correctly sets forth the understanding and agreement between Evercore and the Company, please so indicate in the space provided below, whereupon this letter shall constitute a binding agreement as of the date hereof.

*[signature pages follow]*

4924-3243-3746.2

The Villages Health System, LLC July 2, 2025
Page 10

Very truly yours,

Evercore Group L.L.C.

By:_____
Mark Hanson
Senior Managing Director

By:_____
Stephen Goldstein
Senior Managing Director

Agreed to and Accepted as of the Date
July 2, 2025:

The Villages Health System, LLC

By: _____
Neil F. Luria
Chief Restructuring Officer

4924-3243-3746.2

Schedule I

Indemnification Agreement

July 2, 2025

The Villages Health System, LLC
Attention: Brian Hudson, Esq., The Villages General Counsel
3619 Kiessel Road
The Villages, FL 32163

Gentlemen:

In connection with the engagement of Evercore Group L.L.C. ("Evercore") to render financial advisory services to The Villages Health System, LLC (the "Company") pursuant to the engagement letter, dated July 2, 2025, the Company and Evercore are entering into this Indemnification Agreement (this "Agreement"). It is understood and agreed that in the event that Evercore or any of its members, partners, officers, directors, advisors, representatives, employees, agents, affiliates or controlling persons, if any (each of the foregoing, including Evercore, an "Indemnified Person"), become involved in any capacity in any claim, action, proceeding or investigation brought or threatened by or against any person, including the Company's stockholders, related to, arising out of or in connection with Evercore's engagement, Evercore's performance of any service in connection therewith or any transaction contemplated thereby, the Company will promptly reimburse each such Indemnified Person for its reasonable legal and other expenses (including the reasonable cost of any investigation and preparation) as and when they are incurred in connection therewith. The Company will indemnify and hold harmless each Indemnified Person from and against any losses, claims, damages, liabilities or expense to which any Indemnified Person may become subject under any applicable federal or state law, or otherwise, related to, arising out of or in connection with Evercore's engagement, Evercore's performance of any service in connection therewith or any transaction contemplated thereby, whether or not any pending or threatened claim, action, proceeding or investigation giving rise to such losses, claims, damages, liabilities or expense is initiated or brought by or on the Company's behalf and whether or not in connection with any claim, action, proceeding or investigation in which the Company or an Indemnified Person is a party, except to the extent that any such loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from such Indemnified Person's gross negligence, bad faith or willful misconduct. The Company also agrees that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or its security holders or creditors related to, arising out of or in connection with Evercore's engagement, Evercore's performance of any service in connection therewith or any transaction contemplated thereby, except to the extent that any loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from such Indemnified Person's gross negligence, bad faith or willful misconduct. Each

1

The Villages Health System, LLC July 2, 2025
Page 2

Indemnified Person shall promptly remit to the Company any amounts paid to such Indemnified Person under this Agreement in respect of losses, claims, damages, liabilities or expense that resulted from such Indemnified Person's gross negligence, bad faith or willful misconduct. If multiple claims are brought against Evercore in an arbitration related to, arising out of or in connection with Evercore's engagement, Evercore's performance of any service in connection therewith or any transaction contemplated thereby, with respect to at least one of which such claims indemnification is permitted under applicable law, the Company agrees that any arbitration award shall be conclusively deemed to be based on the claims as to which indemnification is permitted and provided for hereunder, except to the extent the arbitration award expressly states that the award, or any portion thereof, is based solely on a claim as to which indemnification is not available.

If for any reason the foregoing indemnification is unavailable to an Indemnified Person or insufficient to hold it harmless, then the Company shall contribute to the loss, claim, damage, liability or expense for which such indemnification is unavailable or insufficient in such proportion as is appropriate to reflect the relative benefits received, or sought to be received, by the Company and its security holders on the one hand and the party entitled to contribution on the other hand in the matters contemplated by Evercore's engagement as well as the relative fault of the Company and such party with respect to such loss, claim, damage, liability or expense and any other relevant equitable considerations. The Company agrees that for the purposes hereof the relative benefits received, or sought to be received, by the Company and its security holders and Evercore shall be deemed to be in the same proportion as (i) the aggregate consideration paid or contemplated to be paid or received or contemplated to be received by the Company or its security holders, as the case may be, pursuant to a transaction contemplated by the engagement (whether or not consummated) for which Evercore has been engaged to perform financial advisory services bears to (ii) the fees paid or payable to Evercore in connection with such engagement; provided, however, that, to the extent permitted by applicable law, in no event shall Evercore or any other Indemnified Person be required to contribute an aggregate amount in excess of the aggregate fees actually paid to Evercore for such financial advisory services. The Company and Evercore agree that it would not be just and equitable if contribution hereunder were determined by pro rata allocation or by any other method that does not take into account the equitable considerations referred to herein. The Company's reimbursement, indemnity and contribution obligations under this Agreement shall be in addition to any liability which the Company may otherwise have, shall not be limited by any rights Evercore or any other Indemnified Person may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company, Evercore, and any other Indemnified Persons.

If any claim, action, proceeding or investigation shall be brought, threatened or asserted against an Indemnified Person in respect of which indemnity may be sought against the Company, Evercore shall promptly notify the Company in writing, and the Company shall be entitled, at its expense, and upon delivery of written notice to Evercore, to assume the defense thereof with counsel reasonably satisfactory to Evercore. Such Indemnified Person shall have the right to employ separate counsel in any such claim, action, proceeding or investigation and to participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of such Indemnified Person unless (i) the Company has agreed in writing to pay such fees and expenses,

2

The Villages Health System, LLC July 2, 2025
Page 3

(ii) the Company has failed to assume the defense, pursue the defense diligently or to employ counsel in a timely manner or (iii) in such action, claim, suit, proceeding or investigation there is, in the reasonable belief of such Indemnified Person, a conflict of interest or a conflict on any material issue between the Company's position and the position of the Indemnified Person. It is understood, however, that in the situation in which an Indemnified Person is entitled to retain separate counsel pursuant to the preceding sentence, the Company shall, in connection with any one such claim, action, proceeding, investigation or separate but substantially similar or related claims, actions, proceedings or investigations in the same jurisdiction arising out of the same general allegations or circumstances, be liable for the reasonable fees and expenses of only one separate firm of attorneys at any time for all such Indemnified Persons (unless in the reasonable belief of such Indemnified Persons, there is a conflict of interest or a conflict on any material issue between the positions of such Indemnified Persons), which firm shall be designated in writing by Evercore. The Company shall not be liable for any settlement or compromise of any claim, action, proceeding or investigation (or for any related losses, claims, damages, liabilities or expenses) if such settlement or compromise is affected without the Company's prior written consent (which will not be unreasonably withheld).

The Company agrees that, without Evercore's prior written consent, it will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action, proceeding or investigation in respect of which indemnification or contribution is reasonably likely to be sought hereunder (whether or not Evercore or any other Indemnified Person is an actual or potential party to such claim, action, proceeding or investigation), unless such settlement, compromise or consent includes an unconditional release from the settling, compromising or consenting party of each Indemnified Person from all liability arising out of such claim, action, proceeding or investigation. No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby.

For the convenience of the parties hereto, any number of counterparts of this Agreement may be executed by the parties hereto, each of which shall be an original instrument and all of which taken together shall constitute one and the same Agreement. Delivery of a signed counterpart of this Agreement by facsimile transmission shall constitute valid sufficient delivery thereof.

This Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to conflicts of law principles that would result in the application of any law other than the law of the State of New York). No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York. Evercore and the Company (on its own behalf and, to the extent permitted by applicable law, on behalf of its stockholders and creditors) waive all right to trial by jury in any claim, action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of or in connection with this Agreement.

Each party has all necessary corporate or limited liability company, as applicable, power and authority to enter into this Agreement. All corporate or limited liability company, as applicable,

The Villages Health System, LLC July 2, 2025
Page 4

action has been taken by each party necessary for the authorization, execution, delivery of, and the performance of all obligations of each of the parties under the Agreement, and each signatory below is duly authorized to sign this Agreement on behalf of the party it represents.

This Agreement shall remain in effect indefinitely, notwithstanding any termination of Evercore's engagement.

Very truly yours,

Evercore Group L.L.C.

By:_____
    Mark Hanson
    Senior Managing Director

By:_____
    Stephen Goldstein
    Senior Managing Director

Agreed to and Accepted as of the Date
July 2, 2025:

The Villages Health System, LLC

By:_____
    Neil F. Luria
    Chief Restructuring Officer

4

## Exhibit B

### Evercore Time Records by Professional

#### Summary by Matter

| Matter Number | Matter Description | Hours |
|---|---|---|
| 1 | 1. General Case Administration / Court Hearings | 22.0 |
| 2 | 2. Due Diligence | 457.5 |
| 3 | 3. Financing, Capital Structure Review & Analysis | 9.5 |
| 4 | 4. Asset Sales & Other M&A Activity | 186.0 |
| 5 | 5. Travel | 8.0 |
| 6 | 6. Evercore Retention | 4.5 |
| **Total** | | 687.5 |

#### Summary by Professional

| Professional | Position | Hours |
|---|---|---|
| Mark Hanson | Senior Managing Director | 61.0 |
| Stephen Goldstein | Senior Managing Director | 11.5 |
| AJ Berens | Managing Director | 89.0 |
| Neal Patel | Managing Director | 38.0 |
| Jacob Lurie | Vice President | 121.0 |
| Roland Wang | Associate | 121.0 |
| Scott Chung | Analyst | 121.0 |
| Tejaswi Rajanbabu | Analyst | 23.5 |
| Umangi Singh | Analyst | 101.5 |
| **Total** | | **687.5** |

#### Mark Hansen, Senior Managing Director

| Date | Work Done | Hour | Code |
|---|---|---|---|
| 7/7/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/7/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/8/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/10/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/10/2025 | External NDA Review | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/10/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/11/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/11/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/14/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 7/14/2025 | External NDA Review | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/14/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/17/2025 | External NDA Review | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/17/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/21/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 7/23/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 7/23/2025 | External Diligence Call | 0.5 | 2. Due Diligence |

134562.000006\4917-9567-9351.2

| Date | Description | Hours | Category |
|---|---|---|---|
| 7/23/2025 | External Catch-Up Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/24/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/25/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 7/28/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/29/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 7/29/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 7/31/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/1/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/6/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/6/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/7/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/7/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/8/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/11/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/11/2025 | External Diligence Call | 1.5 | 2. Due Diligence |
| 8/11/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/11/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/12/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/12/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/12/2025 | External Diligence Call | 2 | 2. Due Diligence |
| 8/12/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/12/2025 | External Management Presentation | 3 | 2. Due Diligence |
| 8/12/2025 | External Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/12/2025 | External New Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/13/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/13/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/13/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/13/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/14/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/14/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/14/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/14/2025 | External Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/15/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/18/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/18/2025 | External New Opportunity Discussion | 1 | 4. Asset Sales & Other M&A Activity |
| 8/18/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/19/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/19/2025 | External New Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/20/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/20/2025 | External Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/20/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/21/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/22/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/25/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/25/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/26/2025 | External Diligence Call | 2 | 2. Due Diligence |
| 8/26/2025 | External Process Update | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/26/2025 | External Diligence Call | 2 | 2. Due Diligence |
| 8/27/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/27/2025 | External New Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |

3

| Date | Work Done | Hour | Code |
|------|-----------|------|------|
| 8/29/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 9/2/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 9/2/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 9/2/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 9/2/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 9/2/2025 | External Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 9/3/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 9/5/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 9/7/2025 | External Auction Process | 1 | 4. Asset Sales & Other M&A Activity |
| | **Total** | **61.0** | |

| Stephen Goldstein, Senior Managing Director | | | |
|------|-----------|------|------|
| **Date** | **Work Done** | **Hour** | **Code** |
| 7/7/2025 | Evercore Retention Application Preparation | 0.5 | 6. Evercore Retention / Fee Applications |
| 7/8/2025 | First Day DIP Declaration Preparation | 0.5 | 1. General Case Administration / Court Hearings |
| 7/16/2025 | Weekly Check In Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/21/2025 | Review United Health Objection | 1.0 | 1. General Case Administration / Court Hearings |
| 7/21/2025 | Advisor Call on United Health Objection | 0.5 | 1. General Case Administration / Court Hearings |
| 7/21/2025 | Comparable Stalking Horse Bids Analysis | 3.0 | 4. Asset Sales & Other M&A Activity |
| 7/23/2025 | Weekly M&A Process Check In Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/30/2025 | Weekly M&A Process Check In Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/3/2025 | United DIP Proposal Review | 1.0 | 3. Financing, Capital Structure Review & Analysis |
| 8/13/2025 | Weekly M&A Process Check In Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/18/2025 | DIP Hearing Preparation | 1.0 | 3. Financing, Capital Structure Review & Analysis |
| 9/9/2025 | Final Sale Hearing | 2.0 | 1. General Case Administration / Court Hearings |
| | **Total** | **11.5** | |

| AJ Berens, Managing Director | | | |
|------|-----------|------|------|
| **Date** | **Work Done** | **Hour** | **Code** |
| 7/7/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/7/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/7/2025 | Internal Company Deck Review | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/8/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/10/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/10/2025 | Internal NDA Review | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/10/2025 | External NDA Review | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/10/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/11/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/11/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/11/2025 | Internal Process Catch-Up | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/14/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 7/14/2025 | External NDA Review | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/14/2025 | Internal Discussion with Counsel | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/14/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/15/2025 | Internal Sale Process Overview Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/17/2025 | External NDA Review | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/17/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/21/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 7/21/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/22/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |

4

| 7/23/2025 | External Diligence Call | 1 | 2. Due Diligence |
|---|---|---|---|
| 7/23/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 7/23/2025 | External Catch-Up Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/24/2025 | Internal Catch-Up Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/24/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/25/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 7/28/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/28/2025 | Internal Catch-Up Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/28/2025 | Internal Diligence Review | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/29/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 7/29/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 7/29/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/29/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/29/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/29/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/31/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/1/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/1/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/4/2025 | Internal Advisor Call | 1 | 4. Asset Sales & Other M&A Activity |
| 8/4/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/4/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/6/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/6/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/7/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/7/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/7/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/8/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/11/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/11/2025 | External Diligence Call | 1.5 | 2. Due Diligence |
| 8/11/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/11/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/11/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/12/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/12/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/12/2025 | External Diligence Call | 2 | 2. Due Diligence |
| 8/12/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/12/2025 | External Management Presentation | 3 | 2. Due Diligence |
| 8/12/2025 | External Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/12/2025 | External New Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/13/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/13/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/13/2025 | Internal Diligence Sync | 0.5 | 2. Due Diligence |
| 8/13/2025 | Internal Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/13/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/13/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/14/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/14/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/14/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/14/2025 | Internal Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/14/2025 | Internal Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |

| Date | Work Done | Hour | Code |
|---|---|---|---|
| 8/14/2025 | External Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/15/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/17/2025 | Internal Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/18/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/18/2025 | External New Opportunity Discussion | 1 | 4. Asset Sales & Other M&A Activity |
| 8/18/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/19/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/19/2025 | Internal Company Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/19/2025 | External New Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/20/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/20/2025 | External Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/20/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/21/2025 | Internal Company Prep Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/21/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/22/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/25/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/25/2025 | Internal Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/25/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/26/2025 | External Diligence Call | 2 | 2. Due Diligence |
| 8/26/2025 | External Process Update | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/26/2025 | Internal Process Update | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/26/2025 | External Diligence Call | 2 | 2. Due Diligence |
| 8/27/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/27/2025 | External New Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/29/2025 | Internal Materials Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/29/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 9/2/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 9/2/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 9/2/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 9/2/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 9/2/2025 | External Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 9/3/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 9/3/2025 | Internal Company Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 9/5/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 9/7/2025 | Auction | 13 | 4. Asset Sales & Other M&A Activity |
| | **Total** | **89.0** | |

### Neal Patel, Managing Director

| Date | Work Done | Hour | Code |
|---|---|---|---|
| 7/7/2025 | Evercore Retention Application Preparation | 1.0 | 6. Evercore Retention / Fee Applications |
| 7/8/2025 | First Day DIP Declaration Preparation | 2.0 | 1. General Case Administration / Court Hearings |
| 7/9/2025 | Travel for Court Hearing | 4.0 | 5. Travel |
| 7/9/2025 | Court Hearings | 3.0 | 1. General Case Administration / Court Hearings |
| 7/16/2025 | Weekly M&A Process Check In Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/21/2025 | Review United Health Objection | 1.0 | 1. General Case Administration / Court Hearings |
| 7/22/2025 | Comparable stalking horse bids Analysis | 1.5 | 4. Asset Sales & Other M&A Activity |
| 7/23/2025 | Weekly M&A Process Check In Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/7/2025 | United DIP proposal Review | 2.5 | 3. Financing, Capital Structure Review & Analysis |
| 8/13/2025 | Weekly M&A Process Check In Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/18/2025 | DIP Hearing Preparation | 1.0 | 3. Financing, Capital Structure Review & Analysis |

6

| Date | Work Done | Hour | Code |
|---|---|---|---|
| 8/20/2025 | Weekly M&A Process Check In Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 9/5/2025 | Auction Preparation | 0.5 | 4. Asset Sales & Other M&A Activity |
| 9/7/2025 | Travel for Court Hearing | 4.0 | 5. Travel |
| 9/7/2025 | Auction | 13.0 | 4. Asset Sales & Other M&A Activity |
| 9/9/2025 | Final Sale Hearing | 2.0 | 1. General Case Administration / Court Hearings |
| 10/21/2025 | Closing Application Preparation | 0.5 | 1. General Case Administration / Court Hearings |
| | **Total** | **38.0** | |

| Jacob Lurie, Vice President | | | |
|---|---|---|---|
| **Date** | **Work Done** | **Hour** | **Code** |
| 7/7/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/7/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/7/2025 | Internal Company Deck Review | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/8/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/10/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/10/2025 | Internal NDA Review | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/10/2025 | External NDA Review | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/10/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/11/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/11/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/11/2025 | Internal Process Catch-Up | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/14/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 7/14/2025 | External NDA Review | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/14/2025 | Internal Discussion with Counsel | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/14/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/15/2025 | Internal Sale Process Overview Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/17/2025 | External NDA Review | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/17/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/21/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 7/21/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/22/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/23/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 7/23/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 7/23/2025 | External Catch-Up Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/24/2025 | Internal Catch-Up Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/24/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/25/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 7/25/2025 | Process initial set of diligence questions from UHG | 3 | 2. Due Diligence |
| 7/28/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/28/2025 | Internal Catch-Up Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/28/2025 | Internal Diligence Review | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/29/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 7/29/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 7/29/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/29/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/29/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/29/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/31/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/31/2025 | Reconcile existing items in VDR to UHG tracker (7/25 - 7/31) | 4 | 2. Due Diligence |
| 8/1/2025 | External Diligence Call | 1 | 2. Due Diligence |

7

| 8/1/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/4/2025 | Internal Advisor Call | 1 | 4. Asset Sales & Other M&A Activity |
| 8/4/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/4/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/6/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/6/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/7/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/7/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/7/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/7/2025 | Coordinate diligence responses from TVH and Advisors (7/31 - 8/7) | 5 | 2. Due Diligence |
| 8/7/2025 | Process initial set of diligence responses from TVH since 7/31 | 3 | 2. Due Diligence |
| 8/7/2025 | Prepare and send updated request lists for UHG and TVH | 1 | 2. Due Diligence |
| 8/8/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/11/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/11/2025 | External Diligence Call | 1.5 | 2. Due Diligence |
| 8/11/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/11/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/11/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/12/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/12/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/12/2025 | External Diligence Call | 2 | 2. Due Diligence |
| 8/12/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/12/2025 | External Management Presentation | 3 | 2. Due Diligence |
| 8/12/2025 | External Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/12/2025 | External New Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/12/2025 | Coordinate diligence responses from TVH and Advisors (8/7 - 8/12) | 5 | 2. Due Diligence |
| 8/12/2025 | Process set of diligence responses from TVH since 8/7/25 | 3 | 2. Due Diligence |
| 8/13/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/13/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/13/2025 | Internal Diligence Sync | 0.5 | 2. Due Diligence |
| 8/13/2025 | Internal Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/13/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/13/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/14/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/14/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/14/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/14/2025 | Internal Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/14/2025 | Internal Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/14/2025 | External Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/14/2025 | Coordinate diligence responses from TVH and Advisors (8/12 - 8/14) | 2 | 2. Due Diligence |
| 8/14/2025 | Process set of diligence responses from TVH since 8/12/25 | 3 | 2. Due Diligence |
| 8/14/2025 | Prepare and send updated request lists for UHG and TVH | 1 | 2. Due Diligence |
| 8/15/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/17/2025 | Internal Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/18/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/18/2025 | External New Opportunity Discussion | 1 | 4. Asset Sales & Other M&A Activity |
| 8/18/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/19/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/19/2025 | Internal Company Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/19/2025 | External New Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |

8

| 8/19/2025 | Coordinate diligence responses from TVH and Advisors (8/14 - 8/19) | 5 | 2. Due Diligence |
| 8/19/2025 | Process set of diligence responses from TVH since 8/14/26 | 3 | 2. Due Diligence |
| 8/19/2025 | Prepare and send updated request lists for UHG and TVH | 1 | 2. Due Diligence |
| 8/20/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/20/2025 | External Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/20/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/21/2025 | Internal Company Prep Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/21/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/21/2025 | Coordinate diligence responses from TVH and Advisors (8/19 - 8/21) | 2 | 2. Due Diligence |
| 8/21/2025 | Process set of diligence responses from TVH since 8/19/25 | 3 | 2. Due Diligence |
| 8/21/2025 | Prepare and send updated request lists for UHG and TVH | 1 | 2. Due Diligence |
| 8/22/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/25/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/25/2025 | Internal Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/25/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/26/2025 | External Diligence Call | 2 | 2. Due Diligence |
| 8/26/2025 | External Process Update | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/26/2025 | Internal Process Update | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/26/2025 | External Diligence Call | 2 | 2. Due Diligence |
| 8/27/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/27/2025 | External New Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/29/2025 | Internal Materials Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/29/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 9/2/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 9/2/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 9/2/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 9/2/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 9/2/2025 | External Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 9/3/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 9/3/2025 | Internal Company Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 9/5/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| | **Total** | **121.0** | |

| Roland Wang, Associate | | | |
| --- | --- | --- | --- |
| **Date** | **Work Done** | **Hour** | **Code** |
| 7/7/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/7/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/7/2025 | Internal Company Deck Review | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/8/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/10/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/10/2025 | Internal NDA Review | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/10/2025 | External NDA Review | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/10/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/11/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/11/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/11/2025 | Internal Process Catch-Up | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/14/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 7/14/2025 | External NDA Review | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/14/2025 | Internal Discussion with Counsel | 0.5 | 4. Asset Sales & Other M&A Activity |

9

| Date | Description | Hours | Category |
|---|---|---|---|
| 7/14/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/15/2025 | Internal Sale Process Overview Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/17/2025 | External NDA Review | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/17/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/21/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 7/21/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/22/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/23/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 7/23/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 7/23/2025 | External Catch-Up Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/24/2025 | Internal Catch-Up Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/24/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/25/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 7/25/2025 | Process initial set of diligence questions from UHG | 3 | 2. Due Diligence |
| 7/28/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/28/2025 | Internal Catch-Up Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/28/2025 | Internal Diligence Review | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/29/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 7/29/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 7/29/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/29/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/29/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/29/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/31/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/31/2025 | Reconcile existing items in VDR to UHG tracker (7/25 - 7/31) | 4 | 2. Due Diligence |
| 8/1/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/1/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/4/2025 | Internal Advisor Call | 1 | 4. Asset Sales & Other M&A Activity |
| 8/4/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/4/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/6/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/6/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/7/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/7/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/7/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/7/2025 | Coordinate diligence responses from TVH and Advisors (7/31 - 8/7) | 5 | 2. Due Diligence |
| 8/7/2025 | Process initial set of diligence responses from TVH since 7/31 | 3 | 2. Due Diligence |
| 8/7/2025 | Prepare and send updated request lists for UHG and TVH | 1 | 2. Due Diligence |
| 8/8/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/11/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/11/2025 | External Diligence Call | 1.5 | 2. Due Diligence |
| 8/11/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/11/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/11/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/12/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/12/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/12/2025 | External Diligence Call | 2 | 2. Due Diligence |
| 8/12/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/12/2025 | External Management Presentation | 3 | 2. Due Diligence |
| 8/12/2025 | External Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |

10

| Date | Description | Hours | Category |
|---|---|---|---|
| 8/12/2025 | External New Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/12/2025 | Coordinate diligence responses from TVH and Advisors (8/7 - 8/12) | 5 | 2. Due Diligence |
| 8/12/2025 | Process set of diligence responses from TVH since 8/7/25 | 3 | 2. Due Diligence |
| 8/13/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/13/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/13/2025 | Internal Diligence Sync | 0.5 | 2. Due Diligence |
| 8/13/2025 | Internal Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/13/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/13/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/14/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/14/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/14/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/14/2025 | Internal Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/14/2025 | Internal Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/14/2025 | External Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/14/2025 | Coordinate diligence responses from TVH and Advisors (8/12 - 8/14) | 2 | 2. Due Diligence |
| 8/14/2025 | Process set of diligence responses from TVH since 8/12/25 | 3 | 2. Due Diligence |
| 8/14/2025 | Prepare and send updated request lists for UHG and TVH | 1 | 2. Due Diligence |
| 8/15/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/17/2025 | Internal Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/18/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/18/2025 | External New Opportunity Discussion | 1 | 4. Asset Sales & Other M&A Activity |
| 8/18/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/19/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/19/2025 | Internal Company Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/19/2025 | External New Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/19/2025 | Coordinate diligence responses from TVH and Advisors (8/14 - 8/19) | 5 | 2. Due Diligence |
| 8/19/2025 | Process set of diligence responses from TVH since 8/14/25 | 3 | 2. Due Diligence |
| 8/19/2025 | Prepare and send updated request lists for UHG and TVH | 1 | 2. Due Diligence |
| 8/20/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/20/2025 | External Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/20/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/21/2025 | Internal Company Prep Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/21/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/21/2025 | Coordinate diligence responses from TVH and Advisors (8/19 - 8/21) | 2 | 2. Due Diligence |
| 8/21/2025 | Process set of diligence responses from TVH since 8/19/25 | 3 | 2. Due Diligence |
| 8/21/2025 | Prepare and send updated request lists for UHG and TVH | 1 | 2. Due Diligence |
| 8/22/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/25/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/25/2025 | Internal Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/25/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/26/2025 | External Diligence Call | 2 | 2. Due Diligence |
| 8/26/2025 | External Process Update | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/26/2025 | Internal Process Update | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/26/2025 | External Diligence Call | 2 | 2. Due Diligence |
| 8/27/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/27/2025 | External New Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/29/2025 | Internal Materials Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/29/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 9/2/2025 | External Diligence Call | 1 | 2. Due Diligence |

11

| Date | Work Done | Hour | Code |
|------|-----------|------|------|
| 9/2/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 9/2/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 9/2/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 9/2/2025 | External Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 9/3/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 9/3/2025 | Internal Company Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 9/5/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| | **Total** | **121.0** | |

| Scott Chung, Analyst | | | |
|------|-----------|------|------|
| **Date** | **Work Done** | **Hour** | **Code** |
| 7/7/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/7/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/7/2025 | Internal Company Deck Review | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/8/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/10/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/10/2025 | Internal NDA Review | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/10/2025 | External NDA Review | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/10/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/11/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/11/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/11/2025 | Internal Process Catch-Up | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/14/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 7/14/2025 | External NDA Review | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/14/2025 | Internal Discussion with Counsel | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/14/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/15/2025 | Internal Sale Process Overview Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/17/2025 | External NDA Review | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/17/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/21/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 7/21/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/22/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/23/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 7/23/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 7/23/2025 | External Catch-Up Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/24/2025 | Internal Catch-Up Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/24/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/25/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 7/25/2025 | Process initial set of diligence questions from UHG | 3 | 2. Due Diligence |
| 7/28/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/28/2025 | Internal Catch-Up Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/28/2025 | Internal Diligence Review | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/29/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 7/29/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 7/29/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/29/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/29/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/29/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/31/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/31/2025 | Reconcile existing items in VDR to UHG tracker (7/25 - 7/31) | 4 | 2. Due Diligence |

12

| Date | Description | Hours | Category |
|---|---|---|---|
| 8/1/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/1/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/4/2025 | Internal Advisor Call | 1 | 4. Asset Sales & Other M&A Activity |
| 8/4/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/4/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/6/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/6/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/7/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/7/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/7/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/7/2025 | Coordinate diligence responses from TVH and Advisors (7/31 - 8/7) | 5 | 2. Due Diligence |
| 8/7/2025 | Process initial set of diligence responses from TVH since 7/31 | 3 | 2. Due Diligence |
| 8/7/2025 | Prepare and send updated request lists for UHG and TVH | 1 | 2. Due Diligence |
| 8/8/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/11/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/11/2025 | External Diligence Call | 1.5 | 2. Due Diligence |
| 8/11/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/11/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/11/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/12/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/12/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/12/2025 | External Diligence Call | 2 | 2. Due Diligence |
| 8/12/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/12/2025 | External Management Presentation | 3 | 2. Due Diligence |
| 8/12/2025 | External Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/12/2025 | External New Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/12/2025 | Coordinate diligence responses from TVH and Advisors (8/7 - 8/12) | 5 | 2. Due Diligence |
| 8/12/2025 | Process set of diligence responses from TVH since 8/7/25 | 3 | 2. Due Diligence |
| 8/13/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/13/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/13/2025 | Internal Diligence Sync | 0.5 | 2. Due Diligence |
| 8/13/2025 | Internal Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/13/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/13/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/14/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/14/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/14/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/14/2025 | Internal Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/14/2025 | Internal Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/14/2025 | External Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/14/2025 | Coordinate diligence responses from TVH and Advisors (8/12 - 8/14) | 2 | 2. Due Diligence |
| 8/14/2025 | Process set of diligence responses from TVH since 8/12/25 | 3 | 2. Due Diligence |
| 8/14/2025 | Prepare and send updated request lists for UHG and TVH | 1 | 2. Due Diligence |
| 8/15/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/17/2025 | Internal Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/18/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/18/2025 | External New Opportunity Discussion | 1 | 4. Asset Sales & Other M&A Activity |
| 8/18/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/19/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/19/2025 | Internal Company Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |

| Date | Work Done | Hour | Code |
|---|---|---|---|
| 8/19/2025 | External New Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/19/2025 | Coordinate diligence responses from TVH and Advisors (8/14 - 8/19) | 5 | 2. Due Diligence |
| 8/19/2025 | Process set of diligence responses from TVH since 8/14/25 | 3 | 2. Due Diligence |
| 8/19/2025 | Prepare and send updated request lists for UHG and TVH | 1 | 2. Due Diligence |
| 8/20/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/20/2025 | External Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/20/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/21/2025 | Internal Company Prep Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/21/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/21/2025 | Coordinate diligence responses from TVH and Advisors (8/19 - 8/21) | 2 | 2. Due Diligence |
| 8/21/2025 | Process set of diligence responses from TVH since 8/19/25 | 3 | 2. Due Diligence |
| 8/21/2025 | Prepare and send updated request lists for UHG and TVH | 1 | 2. Due Diligence |
| 8/22/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/25/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/25/2025 | Internal Process Sync | 0.5 | v |
| 8/25/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/26/2025 | External Diligence Call | 2 | 2. Due Diligence |
| 8/26/2025 | External Process Update | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/26/2025 | Internal Process Update | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/26/2025 | External Diligence Call | 2 | 2. Due Diligence |
| 8/27/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/27/2025 | External New Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/29/2025 | Internal Materials Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/29/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 9/2/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 9/2/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 9/2/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 9/2/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 9/2/2025 | External Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 9/3/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 9/3/2025 | Internal Company Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 9/5/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| | **Total** | **121.0** | |

| Tejaswi Rajanbabu, Analyst | | | |
|---|---|---|---|
| **Date** | **Work Done** | **Hour** | **Code** |
| 7/7/2025 | Evercore Retention Application Preparation | 2.0 | 6. Evercore Retention / Fee Applications |
| 7/7/2025 | Conflicts Check | 1.0 | 6. Evercore Retention / Fee Applications |
| 7/8/2025 | First Day DIP Declaration Preparation | 2.0 | 1. General Case Administration / Court Hearings |
| 7/9/2025 | Court Hearings | 3.0 | 1. General Case Administration / Court Hearings |
| 7/16/2025 | Weekly Check In Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/21/2025 | Review United Health Objection | 1.0 | 1. General Case Administration / Court Hearings |
| 7/21/2025 | Advisor Call on United Health Objection | 0.5 | 1. General Case Administration / Court Hearings |
| 7/21/2025 | Comparable stalking horse bids Analysis | 3.0 | 4. Asset Sales & Other M&A Activity |
| 7/22/2025 | Comparable stalking horse bids Analysis | 1.0 | 4. Asset Sales & Other M&A Activity |
| 7/23/2025 | Weekly M&A Process Check In Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/30/2025 | Weekly M&A Process Check In Call | 0.5 | 4. Asset Sales & Other M&A Activity |

| Date | Work Done | Hour | Code |
|------|-----------|------|------|
| 8/3/2025 | United DIP proposal Review | 1.0 | 3. Financing, Capital Structure Review & Analysis |
| 8/7/2025 | United DIP proposal Review | 2.0 | 3. Financing, Capital Structure Review & Analysis |
| 8/13/2025 | Weekly M&A Process Check In Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/18/2025 | DIP Hearing Preparation | 1.0 | 3. Financing, Capital Structure Review & Analysis |
| 8/20/2025 | Weekly M&A Process Check In Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 9/3/2025 | Weekly M&A Process Check In Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 9/9/2025 | Final Sale Hearing | 2.0 | 1. General Case Administration / Court Hearings |
| 10/21/2025 | Closing Application Preparation | 1.0 | 1. General Case Administration / Court Hearings |
| | **Total** | **23.5** | |

| Umangi Singh, Analyst | | | |
|------|-----------|------|------|
| **Date** | **Work Done** | **Hour** | **Code** |
| 7/29/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 7/29/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 7/29/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/29/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/29/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/29/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/31/2025 | External M&A Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 7/31/2025 | Reconcile existing items in VDR to UHG tracker (7/25 - 7/31) | 4 | 2. Due Diligence |
| 8/1/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/1/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/4/2025 | Internal Advisor Call | 1 | 4. Asset Sales & Other M&A Activity |
| 8/4/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/4/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/6/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/6/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/7/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/7/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/7/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/7/2025 | Coordinate diligence responses from TVH and Advisors (7/31 - 8/7) | 5 | 2. Due Diligence |
| 8/7/2025 | Process initial set of diligence responses from TVH since 7/31 | 3 | 2. Due Diligence |
| 8/7/2025 | Prepare and send updated request lists for UHG and TVH | 1 | 2. Due Diligence |
| 8/8/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/11/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/11/2025 | External Diligence Call | 1.5 | 2. Due Diligence |
| 8/11/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/11/2025 | Internal Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/11/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/12/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/12/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/12/2025 | External Diligence Call | 2 | 2. Due Diligence |
| 8/12/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/12/2025 | External Management Presentation | 3 | 2. Due Diligence |
| 8/12/2025 | External Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/12/2025 | External New Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |

15

| Date | Description | Hours | Category |
|---|---|---|---|
| 8/12/2025 | Coordinate diligence responses from TVH and Advisors (8/7 - 8/12) | 5 | 2. Due Diligence |
| 8/12/2025 | Process set of diligence responses from TVH since 8/7/25 | 3 | 2. Due Diligence |
| 8/13/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/13/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/13/2025 | Internal Diligence Sync | 0.5 | 2. Due Diligence |
| 8/13/2025 | Internal Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/13/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/13/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/14/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/14/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/14/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/14/2025 | Internal Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/14/2025 | Internal Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/14/2025 | External Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/14/2025 | Coordinate diligence responses from TVH and Advisors (8/12 - 8/14) | 2 | 2. Due Diligence |
| 8/14/2025 | Process set of diligence responses from TVH since 8/12/25 | 3 | 2. Due Diligence |
| 8/14/2025 | Prepare and send updated request lists for UHG and TVH | 1 | 2. Due Diligence |
| 8/15/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/17/2025 | Internal Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/18/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/18/2025 | External New Opportunity Discussion | 1 | 4. Asset Sales & Other M&A Activity |
| 8/18/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/19/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/19/2025 | Internal Company Advisor Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/19/2025 | External New Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/19/2025 | Coordinate diligence responses from TVH and Advisors (8/14 - 8/19) | 5 | 2. Due Diligence |
| 8/19/2025 | Process set of diligence responses from TVH since 8/14/25 | 3 | 2. Due Diligence |
| 8/19/2025 | Prepare and send updated request lists for UHG and TVH | 1 | 2. Due Diligence |
| 8/20/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/20/2025 | External Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/20/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 8/21/2025 | Internal Company Prep Call | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/21/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/21/2025 | Coordinate diligence responses from TVH and Advisors (8/19 - 8/21) | 2 | 2. Due Diligence |
| 8/21/2025 | Process set of diligence responses from TVH since 8/19/25 | 3 | 2. Due Diligence |
| 8/21/2025 | Prepare and send updated request lists for UHG and TVH | 1 | 2. Due Diligence |
| 8/22/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/25/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/25/2025 | Internal Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/25/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/26/2025 | External Diligence Call | 2 | 2. Due Diligence |
| 8/26/2025 | External Process Update | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/26/2025 | Internal Process Update | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/26/2025 | External Diligence Call | 2 | 2. Due Diligence |
| 8/27/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 8/27/2025 | External New Opportunity Discussion | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/29/2025 | Internal Materials Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 8/29/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 9/2/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 9/2/2025 | External Diligence Call | 1 | 2. Due Diligence |

16

| | | | |
|---|---|---|---|
| 9/2/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 9/2/2025 | External Diligence Call | 1 | 2. Due Diligence |
| 9/2/2025 | External Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 9/3/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| 9/3/2025 | Internal Company Process Sync | 0.5 | 4. Asset Sales & Other M&A Activity |
| 9/5/2025 | External Diligence Call | 0.5 | 2. Due Diligence |
| | **Total** | **101.5** | |

134562.000006\4917-9567-9351.2

**Exhibit C**

**Fee and Expense Summary**

| FEE | TOTAL |
|---|---|
| Restructuring Fee | $5,000,000.00 |
| August Monthly Fee | 200,000.00 |
| September Monthly Fee | 200,000.00 |
| October Monthly Fee | 200,000.00 |
| **TOTAL FEES REQUESTED** | **$5,600,000.00** |

| EXPENSE | TOTAL |
|---|---|
| Travel | $2,647.22 |
| Legal and Other Professional Fees | $36,374.67 |
| Meals | $603.51 |
| Transportation | $2,196.06 |
| Administrative / Research Services | $1,114.68 |
| **TOTAL EXPENSES** | **$42,936.14** |

## Expense Detail

### Travel

| Date | EXPENSE | TOTAL |
|---|---|---|
| 7/3/25 | Travel (Neal Patel) | $27.24 |
| 7/3/25 | Travel (Neal Patel) | $27.24 |
| 7/3/25 | Travel (Neal Patel) | $314.48 |
| 7/3/25 | Travel (Neal Patel) | $308.48 |
| 7/7/25 | Travel (Neal Patel) | $27.24 |
| 7/7/25 | Travel (Neal Patel) | $9.82 |
| 7/8/25 | Travel (Neal Patel) | $98.28 |
| 7/8/25 | Travel (Neal Patel) | $359.00 |
| 7/9/25 | Travel (Neal Patel) | $27.24 |
| 7/9/25 | Travel (Neal Patel) | $808.53 |
| 7/11/25 | Travel (Neal Patel) | ($318.30) |
| 7/15/25 | Travel (Neal Patel) | $20.50 |
| 9/3/25 | Travel (Neal Patel) | $27.24 |
| 9/3/25 | Travel (Neal Patel) | $675.99 |
| 9/7/25 | Travel (Neal Patel) | $27.24 |
| 9/7/25 | Travel (Neal Patel) | $23.00 |
| 9/7/25 | Travel (Neal Patel) | $184.00 |
| **TOTAL EXPENSES** | | **$2,647.22** |

### Legal and Other Professional Fees

| Date | EXPENSE | TOTAL |
|---|---|---|
| 7/6/25 | Legal and Other Professional Fees | $12.45 |
| 7/6/25 | Legal and Other Professional Fees | $35.88 |
| 8/3/25 | Legal and Other Professional Fees | $10.77 |
| 8/3/25 | Legal and Other Professional Fees | $144.38 |
| 8/3/25 | Legal and Other Professional Fees | $72.19 |
| 8/22/25 | Legal and Other Professional Fees | $17,097.00 |
| 11/3/25 | Legal and Other Professional Fees | $19,002.00 |
| **TOTAL EXPENSES** | | **$36,374.67** |

134562.000006\4917-9567-9351.2

**Meals**

| Date | EXPENSE | TOTAL |
|---|---|---|
| 7/7/25 | Meals (Scott Chung) | $17.85 |
| 7/7/25 | Meals (Scott Chung) | $17.15 |
| 7/8/25 | Meals (Scott Chung) | $12.79 |
| 7/8/25 | Meals (Scott Chung) | $22.10 |
| 7/8/25 | Meals (Neal Patel) | $37.73 |
| 7/8/25 | Meals (Neal Patel) | $40.68 |
| 7/9/25 | Meals (Scott Chung) | $17.47 |
| 7/9/25 | Meals (Scott Chung) | $17.53 |
| 7/9/25 | Meals (Neal Patel) | $16.83 |
| 7/9/25 | Meals (Neal Patel) | $24.96 |
| 7/10/25 | Meals (Scott Chung) | $23.08 |
| 7/10/25 | Meals (Scott Chung) | $11.92 |
| 7/12/25 | Meals (Scott Chung) | $34.50 |
| 7/15/25 | Meals (Neal Patel) | $34.22 |
| 7/30/25 | Meals (Roland Wang) | $35.00 |
| 7/31/25 | Meals (Roland Wang) | $35.00 |
| 8/5/25 | Meals (Roland Wang) | $34.98 |
| 9/4/25 | Meals (Neal Patel) | $20.25 |
| 9/4/25 | Meals (Neal Patel) | $33.24 |
| 9/7/25 | Meals (Neal Patel) | $31.13 |
| 9/7/25 | Meals (Neal Patel) | $16.47 |
| 9/8/25 | Meals (Neal Patel) | $10.60 |
| 9/8/25 | Meals (Neal Patel) | $29.12 |
| 9/9/25 | Meals (Neal Patel) | $28.91 |
| **TOTAL EXPENSES** | | **$603.51** |

**Administrative / Research Services**

| Date | EXPENSE | TOTAL |
|---|---|---|
| 7/31/25 | Administrative / Research Services | $5.16 |
| 7/31/25 | Administrative / Research Services | $13.42 |
| 7/31/25 | Administrative / Research Services | $19.98 |
| 7/31/25 | Administrative / Research Services | $70.49 |
| 7/31/25 | Administrative / Research Services | $38.07 |
| 7/31/25 | Administrative / Research Services | $63.33 |
| 7/31/25 | Administrative / Research Services | $10.23 |

134562.000006\4917-9567-9351.2

| Date | | Total |
|---|---|---|
| 7/31/25 | Administrative / Research Services | $183.07 |
| 8/31/25 | Administrative / Research Services | $5.55 |
| 8/31/25 | Administrative / Research Services | $7.28 |
| 8/31/25 | Administrative / Research Services | $38.22 |
| 8/31/25 | Administrative / Research Services | $99.25 |
| 8/31/25 | Administrative / Research Services | $2.80 |
| 8/31/25 | Administrative / Research Services | $20.64 |
| 8/31/25 | Administrative / Research Services | $10.83 |
| 8/31/25 | Administrative / Research Services | $34.33 |
| 9/25/25 | Administrative / Research Services | $39.22 |
| 9/25/25 | Administrative / Research Services | $187.94 |
| 9/25/25 | Administrative / Research Services | $5.32 |
| 9/25/25 | Administrative / Research Services | $10.54 |
| 9/25/25 | Administrative / Research Services | $20.58 |
| 9/25/25 | Administrative / Research Services | $65.24 |
| 9/25/25 | Administrative / Research Services | $72.61 |
| 9/29/25 | Administrative / Research Services | $29.68 |
| 10/28/25 | Administrative / Research Services | $3.92 |
| 10/28/25 | Administrative / Research Services | $5.17 |
| 10/28/25 | Administrative / Research Services | $51.81 |
| **TOTAL EXPENSES** | | **$1,114.68** |

### Transportation

| Date | EXPENSE | TOTAL |
|---|---|---|
| 8/1/25 | Transportation (AJ Berens) | $117.79 |
| 8/1/25 | Transportation (AJ Berens) | $122.74 |
| 8/1/25 | Transportation (AJ Berens) | $31.69 |
| 8/1/25 | Transportation (AJ Berens) | $78.94 |
| 8/1/25 | Transportation (AJ Berens) | $102.20 |
| 8/1/25 | Transportation (Neal Patel) | $149.40 |
| 8/1/25 | Transportation (Neal Patel) | $27.72 |
| 8/1/25 | Transportation (Neal Patel) | $57.45 |
| 8/1/25 | Transportation (Neal Patel) | $103.61 |
| 9/1/25 | Transportation (AJ Berens) | $10.74 |
| 9/1/25 | Transportation (AJ Berens) | $109.65 |
| 9/1/25 | Transportation (AJ Berens) | $117.55 |
| 9/1/25 | Transportation (AJ Berens) | $136.94 |

4

| Date | Description | Amount |
|---|---|---|
| 9/1/25 | Transportation (AJ Berens) | $17.29 |
| 9/1/25 | Transportation (AJ Berens) | $17.89 |
| 9/1/25 | Transportation (AJ Berens) | $31.67 |
| 9/1/25 | Transportation (AJ Berens) | $3.99 |
| 9/1/25 | Transportation (AJ Berens) | $35.53 |
| 9/1/25 | Transportation (AJ Berens) | $36.16 |
| 9/1/25 | Transportation (AJ Berens) | $36.59 |
| 9/1/25 | Transportation (AJ Berens) | $86.45 |
| 9/1/25 | Transportation (AJ Berens) | $94.90 |
| 9/1/25 | Transportation (AJ Berens) | $97.04 |
| 10/1/25 | Transportation (AJ Berens) | $143.96 |
| 10/1/25 | Transportation (AJ Berens) | $35.40 |
| 10/1/25 | Transportation (AJ Berens) | $92.50 |
| 10/1/25 | Transportation (AJ Berens) | $105.12 |
| 10/1/25 | Transportation (Neal Patel) | $47.41 |
| 10/1/25 | Transportation (Neal Patel) | $51.27 |
| 10/1/25 | Transportation (Neal Patel) | $96.47 |
| **TOTAL EXPENSES** | | **$2,196.06** |

134562.000006\4917-9567-9351.2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| The Villages Health System, LLC, [1] | Case No. 6:25-bk-04156-LVV |
| Debtor. | |

**ORDER ALLOWING
COMPENSATION AND REIMBURSEMENT OF
EXPENSES INCURRED BY EVERCORE GROUP
L.L.C. AS INVESTMENT BANKER FOR THE DEBTOR
AND DEBTOR IN POSSESSION FOR THE FEE PERIOD FROM
JULY 3, 2025 THROUGH AND INCLUDING NOVEMBER 7, 2025**
(Related Docket No. _____)

This case came before the Court for hearing on November/December __, 2025 at _____

a.m./p.m. upon the *First and Final Fee Application of Evercore Group L.L.C. as Investment

Banker for the Debtor and Debtor in Possession for the Period from July 3, 2025 Through

November 7, 2025* (the "Application") filed by Evercore Group, L.L.C. (the "Applicant") for entry

of an order (this "Order") allowing compensation and reimbursement of expenses incurred by the

Applicant during the Fee Period; the Court having found that (i) the Court has jurisdiction over

this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this District pursuant to

28 U.S.C. § 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (iv) the Court may

enter a final order consistent with Article III of the United States Constitution, (v) the relief

requested in the Application is in the best interests of the Debtor's estate, its creditors, and other

parties-in-interest, and (vi) notice of the Application and opportunity for a hearing on the

Application were appropriate and no other notice need be provided; and the Court having reviewed

---

[1] The address of the Debtor is 600 Sunbelt Road, The Villages, Florida 32159. The last four digits of the Debtor's federal tax identification number is 6436.

the Application; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before the Court, and after due deliberation and sufficient cause appearing therefore,[2] the Court hereby orders:

1.      The Applicant is allowed compensation and reimbursement of expenses in the total amount of $5,642,936.14.

2.      The compensation and reimbursement of expenses allowed in this order are approved on a final basis.

3.      The Debtor is authorized to disburse any unpaid amounts allowed pursuant to paragraphs 1 and 2 of this Order.

4.      Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice.

5.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

6.      The Court retains jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Order.

###

*Attorney Elizabeth A. Green is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of the order.*

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

134562.000006\4917-9567-9351.2