**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| In re: | Case No.: 6:25-bk-04156-LVV |
| THE VILLAGES HEALTH SYSTEM, LLC,[1] | Chapter 11 |
| Debtor. | |

**DEBTOR'S MOTION TO APPROVE SETTLEMENT AGREEMENT
BY AND BETWEEN THE DEBTOR AND THE UNITED STATES**

The Villages Health System, LLC ("TVH" or the "Debtor"), the debtor and debtor in possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), files this motion (the "Motion") requesting entry of an order approving the settlement agreement (the "Settlement Agreement")[2] by and between the Debtor, and the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General of the United States Department of Health and Human Services (the "United States").  In support of the Motion, the Debtor respectfully submits as follows:

**JURISDICTION AND VENUE**

1.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  This Court is the proper venue for the Chapter 11 Case and the Motion pursuant to 28 U.S.C. §§ 1408 and 1409. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicate for the relief sought herein is section 105(a) of title 11 of the United States

---

[1] The address of the Debtor is 600 Sunbelt Road, The Villages, Florida 32159. The last four digits of the Debtor's federal tax identification number is 6436.

[2] The principal terms of the Settlement Agreement are described in this Motion. A redacted copy of the Settlement Agreement is attached to this Motion as Exhibit A, and an unredacted copy of the Settlement Agreement may be provided to parties-in-interest upon their request, subject to the protections of the *Confidentiality Stipulation and Protective Order* (Doc. No. 321) and consent of the United States. The redactions are limited to portions of Recitals D and E of the Settlement Agreement.

Code (the "Bankruptcy Code"), Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules for the U.S. Bankruptcy Court for the Middle District of Florida (the "Local Rules").

## BACKGROUND

1. On July 3, 2025 (the "Petition Date"), the Debtor filed for relief under chapter 11 of the Bankruptcy Code—thereby commencing the above-captioned Chapter 11 Case. The Debtor continues to act as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On September 4, 2025, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee").

2. Additional information concerning the Debtor and its business operations as well as the facts and circumstances precipitating this Chapter 11 Case are set forth in the *Declaration of Neil Luria, Chief Restructuring Officer of the Debtor, in Support of Chapter 11 Petition and First Day Motions* (the "First Day Declaration") [Doc. No. 3], which is incorporated herein by reference.

**A.      Discovery and Reporting of TVH HCC Coding Irregularities**

3. As set forth in more detail in the First Day Declaration, in approximately August 2024, TVH learned of potential issues with certain Hierarchical Condition Categories ("HCC") coding practices. Upon learning of the potential coding issues, TVH suspended the subject practices and hired outside counsel and a consultant to investigate and evaluate its coding practices and guidelines as well as potential implications of any erroneous coding. Additionally, TVH (i) worked with Goodwin and FTI to ensure it had appropriate policies and procedures, training, and review with respect to future coding and any amendments to medical records, (ii) in November 2024, established a compliance committee on the TVH board of managers to guide the

2

investigation into the HCC code practices; and (iii) in December 2024, appointed an interim Chief Compliance Officer ("CCO") who reported to the CEO and the board of managers. Additionally, the CCO became permanent in June 2025.

4.      On or about December 27, 2024, TVH submitted a voluntary disclosure (the "Self-Disclosure") pursuant to the Health Care Fraud Self-Disclosure Protocol (the "Disclosure Protocol") established by the Office of Inspector General ("HHS-OIG") for the United States Department of Health and Human Services ("HHS").  In the self-disclosure, TVH voluntary disclosed the existence of, and the circumstances relating to, the coding issues.

5.      On or about December 30, 2024, TVH sent a letter to its patients stating that "beginning in 2020, TVH implemented certain billing processes and practices that were not consistent with Medicare payment policies" and "resulted in TVH receiving more money from the Medicare program than if billed correctly."  TVH also informed its patients that it submitted the HHS-OIG Disclosure and was "in the process of repaying the Medicare program for any overpayments that resulted from the billing issue."

6.      On or about January 6, 2025, TVH notified the subject Medicare Advantage Organizations ("MAOs") of the HHS-OIG Disclosure submission and provided the relevant MAOs a copy of the letter TVH sent patients.

7.      On or about January 31, 2025, TVH was accepted into the Disclosure Protocol.

**B.      TVH Files This Chapter 11 Bankruptcy Case and Negotiates the Proposed Settlement Agreement with the United States.**

8.      On the Petition Date, the Debtor filed the above-captioned Chapter 11 Case.

9.      Since its acceptance into the Disclosure Protocol and continuing since the Petition Date, TVH, primarily through its regulatory counsel Goodwin Proctor, has produced a significant amount of information and analyses to the United States, including an analysis by FTI indicating

that, in connection with TVH's historical coding practices, the Centers for Medicare & Medicaid Services ("CMS") paid approximately $416 million to the MAOs from which TVH received approximately $361 million. TVH has engaged in substantial negotiations regarding TVH's conduct, the United States's assertions and potential claims against TVH, and potential resolutions the United States's claims.

10.     These self-disclosures and substantial and arm's length negotiations with the United States have culminated in the proposed Settlement Agreement that is the subject of this Motion.  The principal terms of the Settlement Agreement are as follows:[3]

   a.  Allowed Claim.  TVH shall be deemed liable to the United States in the amount of $541.5 million  (the "Settlement Amount").  The United States shall receive an undisputed, noncontingent, liquidated, nondischargeable allowed claim against TVH and its bankruptcy estate (the "DOJ Claim"), subject to any permitted credits or offsets, including credits and offset for amounts returned by MAOs to CMS. Funds recovered by CMS from MAOs before final distributions from the bankruptcy estate shall be credited against and reduce the amount of the Settlement Amount and DOJ Claim.

   b.  Plan Distributions.  Prior to any distribution under the Plan, TVH shall notify the United States of its intention to make a distribution in the Chapter 11 Case, and as soon as is practicable, the United States will provide an updated accounting of all payments returned by MAOs to the United States.

   c.  MAO Enforcement Actions.  TVH agrees not to pursue the risk adjustment payments (*i.e.* surplus amounts, quality bonuses and other similar payments) withheld by an MAO if the MAO enters into an agreement with the United States regarding the return of funds the MAO received from CMS in connection with the Covered Conduct (as defined in the Settlement Agreement), unless such agreement between the United States and the MAO returns an amount that is smaller than the amount of funds withheld from TVH by the MAO; *provided*, that TVH may pursue recovery of any withheld risk adjustment payments from MAOs that do not entered into an agreement with the United States for the return of such payments by May 1, 2027.

---

[3] For the avoidance of doubt, to the extent of any conflict between the terms of this summary and the terms of the Settlement Agreement, the Settlement Agreement shall control.

d.  United States Release.   The United States releases TVH from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733, the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a, the Administrative False Claims Act of 2023 (and its predecessor, the Program Fraud Civil Remedies Act), 31 U.S.C. §§ 3801-3812, and/or the common law theories of payment by mistake, unjust enrichment, and fraud.   Furthermore, the OIG-HHS waives any claims, rights or basis institute, direct, or maintain any administrative action seeking exclusion from Medicare, Medicaid, and other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) against TVH under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited activities) for the Covered Conduct; *provided* that the OIG-HHS expressly reserves all rights to comply with any statutory obligations to exclude TVH from Medicare, Medicaid, and other Federal health care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the Covered Conduct. Notwithstanding the foregoing, the United States reserves the following claims, which are *not* released under the Settlement Agreement:

   i.   Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

   ii.   Any criminal liability;

   iii.   Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including mandatory exclusion from Federal health care programs;

   iv.   Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

   v.   Any liability based upon obligations created by this Settlement Agreement;

   vi.   Any liability of individuals;

   vii.   Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

   viii.   Any liability for failure to deliver goods or services due; and

   ix.   Any liability for personal injury, property damage, or other consequential damages arising from the Covered Conduct.

e.   TVH Waiver and Release.   TVH waives, and shall not assert, any defenses TVH may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based, in whole or in part, on a contention that, under

5

the Double Jeopardy Clause in the Fifth Amendment of the Constitution or the Excessive Fines Clause in the Eighth Amendment of the Constitution, the Settlement Agreement bars a remedy sought in such criminal prosecution or administrative action. Furthermore, TVH fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that TVH has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct or the United States' investigation or prosecution thereof.

f.    Unallowable Costs. TVH agrees that is shall not charge the United States, directly or indirectly, for any Unallowable Costs (as defined in the Settlement Agreement) and, with respect to Unallowable Costs included in payments previously sought by TVH, TVH shall identify and repay any such Unallowable Costs by adjustments to future claims for payment.

## RELIEF REQUESTED

11.    The Debtor respectfully requests that the Court enter an order: (a) approving the Settlement Agreement pursuant to and in accordance with section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a), and (b) grant the Debtor such further and additional relief as may be necessary to effectuate the terms of the Settlement Agreement and relevant orders of this Court.

## BASIS FOR RELIEF REQUESTED

12.    Pursuant to Bankruptcy Rule 9019(a), "after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). "[Bankruptcy] Rule 9019(a) gives the Court broad authority in approving compromises or settlements. … 'The determination of whether to approve an application to compromise is a matter within the sound discretion of the bankruptcy judge.'" *In re Kay*, 223 B.R. 816, 819 (Bankr. M.D. Fla. 1998) (*quoting Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602-03 (5th Cir. 1980)). "A proposed settlement will be approved unless it 'falls below the lowest point in the range of reasonableness.'" *In re Vosotas*, 666 B.R. 684, 690 (Bankr. S.D. Fla. 2025).

13.     In evaluating a proposed compromise or settlement, the court must "make an independent judgment as to whether the settlement presented is fair and equitable." *In re Ortiz*, 619 B.R. 273, 274-75 (Bankr. M.D. Fla. 2020).  The court, however, need not "conduct a 'mini-trial' on the merits of the underlying litigation" [*Id*. at 275]; rather, "the bankruptcy court must simply 'make a pragmatic decision based on all [of the] equitable factors.'"  *In re Huckleberry Partners LLC*, No. 6:23-CV-1849-PGB, 2024 WL 4332610, at *5 (M.D. Fla. Sept. 27, 2024).  In deciding whether a compromise or settlement is fair and equitable, the court must consider:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; [and] (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir. 1990) (*quoting Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986).

14.     The court, however, "'may certainly give weight to the trustee's informed judgment that a compromise is fair and equitable.'"  *In re Vosotas*, 666 B.R. at 690 (*quoting In re S & I Investments*, 421 B.R. 569, 584 (Bankr. S.D. Fla. 2009)).  Indeed, in evaluating a proposed compromise or settlement, "the court's role is to ensure that the trustee has exercised property judgment in making the decision to agree to the proposed settlement." *In re Ortiz*, 619 B.R. at 275 (internal quotations omitted).  And, in so doing, courts give the estate "considerable deference to exercise their business judgment with respect to settlements"; although, such deference is not without limits, as "[t]here must be at least some rational business purpose to support the disinterested trustee's decision." *Id*. (internal quotations omitted); *see also In re Kenny*, 630 B.R. 853, 859 (M.D. Fla. 2021) ("approval of a settlement agreement must be affirmed unless the [bankruptcy] court's decision is (1) completely devoid of minimal evidentiary support or (2) bears

7

no rational relationship to the evidence"), *aff'd,* No. 21-12295, 2022 WL 2282843 (11th Cir. June 23, 2022).   The estate representative, however, is deemed to have "exercised sound business judgment when he [or she] evaluates 'the strength and weaknesses of the potential claims and the cost and time it would take to litigate the claims.'" *In re Vosotas*, 666 B.R. at 690 (*quoting United States v. Hartog (In re Exp. Bonded Corp.)*, 597 B.R. 673, 679 (S.D. Fla. 2019), *appeal dismissed sub nom.*, *In re Exp. Bonded Corp.*, 2019 WL 4137769 (11th Cir. 2019).

15.     The first *Justice Oaks* factor requires the Court to consider TVH's chances of successfully defending against the United States' claims against TVH, and supports approval of the Settlement Agreement. While TVH disputes certain aspects of the alleged conduct and likely the level of any damages or penalties against TVH that are appropriate, it is undisputed that, if TVH were to fully litigate these issues against the United States, TVH could face damages significantly in excess of the Settlement Agreement, including treble damages plus additional amounts that could potentially aggregate over $1 billion. Additionally, TVH could incur substantial costs litigating these issues against the United States. Based on the arm's length negotiations, TVH believes the Settlement Agreement represents a reasonable and fair resolution of TVH's potential liabilities to the United States, especially given TVH's current inability to fully satisfy the potential claims of the United States.

16.     The second *Justice Oaks* factor evaluates the potential difficulties of collecting. This factor is irrelevant because the United States, not TVH, would be the party attempting to collect any damages or judgment, and TVH does not currently have the ability to pay the settlement amount in full.

17.     The third *Justice Oaks* factor considers the complexity of the dispute and the expense, inconvenience and delay necessarily attending its resolution -and similarly supports

approval of the Settlement Agreement. TVH's ultimate potential liability for the various statutory violations alleged by the United States and the liquidation of those amounts would be time consuming, factually complex, and extremely expensive, all for a bankruptcy estate that is currently unable to satisfy the settlement amount in the Settlement Agreement. The Debtor's business judgment is that expending further time and resources to fully litigate all issues with the United States is an inappropriate use of the estate's limited resources, given the reasonable resolution the parties have negotiated in the Settlement Agreement. As such, TVH submits that the third *Justic Oaks* factor weighs in favor of approving the Settlement Agreement and avoidance of costs of litigation and the potential for a judgment substantially more than the Settlement Payment.

18.    The fourth *Justice Oaks* factor considers the interests of creditors and supports approval of the Settlement Agreement. Indeed, "[w]hile the desire of the creditors [is] not binding, a court 'should carefully consider the wishes of the majority of the creditors.'" *In re Kay*, 223 B.R. at 820-21 (*quoting In re Transcontinental Energy Corp.*, 764 F.2d 1296, 1299 (9th Cir. 1978)). TVH submits that the best interests of creditors would be served by the approval of the Settlement Agreement. TVH believes the United States claim is by far the largest claim against the bankruptcy estate. Obviously, the Settlement Agreement is supported by the United States based on the arm's length negotiations between the parties and their respective counsel. The Settlement Agreement liquidates what TVH believes to be the largest claim against the bankruptcy estate, and would avoid potentially costly claim objection litigation within the bankruptcy case.

19.    Based on the foregoing, TVH respectfully submits that each of the *Justice Oaks* factors, to the extent applicable, weigh in favor of approving the Settlement Agreement and, such

9

approval, serves the best interests of TVH, the bankruptcy estate and its creditors as well as other interested parties.

## CONCLUSION

WHEREFORE, TVH respectfully requests that the Court enter an order approving the Settlement Agreement attached as Exhibit A and granting such further and additional relief the Court deems just and proper.

RESPECTFULLY SUBMITTED the 20th day of March 2026.

**BAKER & HOSTETLER LLP**

*/s/ Danielle L. Merola*
Elizabeth A. Green, Esq.
FL Bar No.: 0600547
Email: egreen@bakerlaw.com
Jimmy D. Parrish, Esq.
FL Bar No.: 0526401
E-mail: jparrish@bakerlaw.com
Andrew V. Layden, Esq.
FL Bar No.: 86070
E-mail: alayden@bakerlaw.com
Benjamin R. Taylor, Esq.
FL. Bar No.:1024101
Email: brtaylor@bakerlaw.com
Danielle L. Merola, Esq.
FL Bar No.: 120120
Email: dmerola@bakerlaw.com
200 South Orange Avenue
Suite 2300
Orlando, Florida 32801-3432
Telephone: (407) 649-4000
Facsimile: (407) 841-0168


Michael T. Delaney, Esq.
Admitted *Pro Hac Vice*
Email: mdelaney@bakerlaw.com
Key Tower
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Telephone:    216.621.0200

10

Facsimile:      216.696.0740
*Counsel for the Debtor and Debtor in Possession*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 20, 2026, a true copy of the foregoing was filed with the Court using the CM/ECF System, which will provide notice of such filing to all parties requesting such notice.

*/s/ Danielle L. Merola*
Danielle L. Merola, Esq.

11

# EXHIBIT A

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (collectively the "United States") and The Villages Health System, LLC ("TVH") (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A.      TVH is a healthcare provider group located within The Villages, a retirement community in central Florida. At all relevant times, TVH provided primary care and specialty care physician healthcare services to beneficiaries enrolled in Medicare Advantage ("MA") plans, including plans offered by UnitedHealthcare Insurance Company, Blue Cross Blue Shield of Florida, Inc., and Humana (collectively, the "Medicare Advantage Organizations" or "MAOs").

B.      On December 27, 2024, TVH made a submission pursuant to the HHS-OIG's Health Care Fraud Self-Disclosure Protocol (hereinafter, "HHS-OIG Disclosure Protocol") whereby TVH relayed that it had submitted invalid diagnosis codes to the MAOs for certain beneficiaries enrolled in their plans and these diagnosis codes increased the capitated payments made by the Centers for Medicare & Medicaid Services ("CMS") to the MAOs under the MA program. On December 30, 2024, TVH sent a letter to its patients stating that "beginning in 2020, TVH implemented certain billing processes and practices that were not consistent with Medicare payment policies. This resulted in TVH receiving more money from the Medicare program than if billed

correctly." In the letter, TVH noted that it made a disclosure to the government and was "in the process of repaying the Medicare program for any overpayments that resulted from the billing issue." On January 6, 2025, TVH provided notice to the MAOs of the HHS-OIG Disclosure and provided the MAOs with a copy of the letter it sent to its patients. TVH was accepted into the HHS-OIG Disclosure Protocol on January 31, 2025.

  C.  TVH received credit under the Department of Justice's guidelines for taking disclosure, cooperation, and remediation into account in False Claims Act cases, pursuant to Justice Manual §4-4.112.

  D.  TVH does not dispute the following facts relating to the conduct that is the subject of TVH's HHS-OIG Disclosure:





3







E.    The United States contends that it has certain civil claims against TVH arising from the following conduct, which is referred to below as the "Covered Conduct." The United States contends that from January 2020 through December 2024, TVH violated the False Claims Act, 31 U.S.C. §§ 2729-3733, by knowingly submitting improper diagnoses to MAOs for, according to TVH's estimates, $361 million in inflated payments of federal funds from the MAOs or knowingly causing the MAOs to submit false claims to Medicare Part C resulting in, according to TVH's estimates, $416 million in inflated payments from CMS to the MAOs.

6

F.     This Agreement is neither an admission of liability by TVH nor a concession by the United States that its claims are not well founded.

G.     On July 3, 2025, TVH filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, commencing a bankruptcy case styled *In re The Villages Health System, LLC*, Case No. 6:25-bk-04156-LVV ("Bankruptcy Case"), in the United States Bankruptcy Court for the Middle District of Florida, Orlando Division ("Bankruptcy Court").

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1.     TVH shall be liable to the United States in the amount of $541.5 million ("Settlement Amount"), to resolve its False Claims Act liability. TVH agrees that the Settlement Amount is, and the United States shall have an undisputed, noncontingent, liquidated, nondischargeable allowed claim against TVH's bankruptcy estate in accordance with the Title 11 of the United States Code (the "Bankruptcy Code") in the amount of the Settlement Amount, subject to any credits or offsets set forth herein. TVH will submit any unsupported diagnoses identified in the 2024 DOS audit referenced in paragraph D(x), *supra*, and any other additional unsupported diagnoses TVH identifies to the MAOs for deletion. Any funds returned by the MAOs to CMS in connection with the diagnosis codes described in the Covered Conduct before the final distribution in the bankruptcy case will be credited against the Settlement Amount and will reduce the liability of the bankruptcy estate. To date, the MAOs have returned payments detailed in

7

Attachment A. Prior to any distribution in the bankruptcy case, the estate's representative will provide the United States with notice that it intends to make a distribution in the bankruptcy case, and as soon as is practicable, the United States will provide an updated Attachment A. In each distribution, the United States shall participate pro rata based on the Settlement Amount less the returned payments detailed in the updated Attachment A. The amounts up to $416 million paid to the United States shall constitute restitution to the United States.

2. TVH agrees not to pursue in the bankruptcy case the Risk Adjustment payments (*i.e.* surplus amounts, quality bonuses and other similar payments) withheld by an MAO if the MAO enters into an agreement with the United States regarding the return of funds the MAO received from CMS in connection with the Covered Conduct, unless such agreement between the United States and the MAO returns an amount that is smaller than the amount of funds withheld from TVH by the MAO. Notwithstanding the foregoing, TVH may pursue recovery of any withheld Risk Adjustment payments from MAOs that have not, by May 1, 2027, entered into an agreement with the United States satisfying the terms described in the preceding sentence.

3. Subject to the exceptions in Paragraph 5 (concerning reserved claims) below and subject to Paragraph 10 (concerning bankruptcy) below, and conditioned upon TVH's compliance with Paragraphs 1 and 2, the United States releases TVH from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Administrative False Claims Act of 2023 (and its predecessor,

the Program Fraud Civil Remedies Act), 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

4.     In consideration of TVH's HHS-OIG Disclosure and the obligations of TVH in this Agreement, and upon the United States' receipt of full payment of the Settlement Amount, the OIG-HHS shall release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicare, Medicaid, and other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) against TVH under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited activities) for the Covered Conduct.  The OIG-HHS expressly reserves all rights to comply with any statutory obligations to exclude TVH from Medicare, Medicaid, and other Federal health care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the Covered Conduct.  Nothing in this paragraph precludes the OIG-HHS from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 5, below.

5.     Notwithstanding the releases given in Paragraph 3 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

a.     Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b.     Any criminal liability;

c.     Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including mandatory exclusion from Federal health care programs;

9

d.    Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.    Any liability based upon obligations created by this Agreement;

f.    Any liability of individuals;

g.    Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

h.    Any liability for failure to deliver goods or services due; and

i.    Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

6.    TVH waives and shall not assert any defenses TVH may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

7.    TVH fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that TVH has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct or the United States' investigation or prosecution thereof.

8.   a.   Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of TVH, and its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)   the matters covered by this Agreement;

(2)   the United States' audit(s) and civil and any criminal investigation(s) of the matters covered by this Agreement;

(3)   TVH's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

(4)   the negotiation and performance of this Agreement;

(5)   the payment TVH makes to the United States pursuant to this Agreement,

are unallowable costs for government contracting purposes (hereinafter referred to as Unallowable Costs).

b.   Future Treatment of Unallowable Costs:  Unallowable Costs will be separately determined and accounted for by TVH, and TVH shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

c.   Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Agreement, TVH shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by TVH or any of its subsidiaries or affiliates

11

from the United States. TVH agrees that the United States, at a minimum, shall be entitled to recoup from TVH any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment. The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine TVH's books and records and to disagree with any calculations submitted by TVH or any of its subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by TVH, or the effect of any such Unallowable Costs on the amount of such payments.

9. TVH agrees to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement. Upon reasonable notice, TVH shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. TVH further agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

10. In exchange for valuable consideration provided in this Agreement, TVH acknowledges the following:

a. In evaluating whether to execute this Agreement, the Parties intend that the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous exchange for new value given to TVH, within the meaning of 11

12

U.S.C. § 547(c)(1), and the Parties conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.

b.      The mutual promises, covenants, and obligations set forth herein are intended by the Parties to, and do in fact, constitute a reasonably equivalent exchange of value.

c.      The Parties do not intend to hinder, delay, or defraud any entity to which TVH was or became indebted to on or after the date of any transfer contemplated in this Agreement, within the meaning of 11 U.S.C. § 548(a)(1).

d.      If any of TVH's payments or obligations under this Agreement are avoided for any reason (including but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code) or if, before the Settlement Amount is paid, TVH or a third party commences a case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors seeking any order for relief of any of TVH's debts, or to adjudicate TVH as bankrupt or insolvent; or seeking appointment of a receiver, trustee, custodian, or other similar official for TVH or for all or any substantial part of any of TVH's assets (in all cases, other than the Bankruptcy Case):

(1)     the United States may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against TVH for the claims that would otherwise be covered by the releases provided in Paragraph 3 above; and

(2)     the United States has an undisputed, noncontingent, and liquidated allowed claim against TVH in the amount of the Settlement Amount that

13

is non-dischargeable, less any payments received pursuant to Paragraph 1 of this Agreement or offsets against the Settlement Amount as set forth herein, provided, however, that such payments are not otherwise avoided and recovered from the United States by TVH, a receiver, trustee, custodian, or other similar official for TVH.

e.     TVH agrees that any civil and/or administrative claim, action, or proceeding brought by the United States under Paragraph 9.d is not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) because it would be an exercise of the United States' police and regulatory power.  TVH shall not argue or otherwise contend that the United States' claim, action, or proceeding is subject to an automatic stay and, to the extent necessary, consent to relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1).  TVH waives and shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claim, action, or proceeding brought by the United States within 120 days of written notification to TVH that the releases have been rescinded pursuant to this paragraph.

12.     This Agreement is intended to be for the benefit of the Parties only.  The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 13 (waiver for beneficiaries paragraph), below.

13.     Except as provided in Paragraph 2 above, TVH agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

14

14.     Except as provided in Paragraph 3, above, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

15.     Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

16.     This Agreement is governed by the laws of the United States. The exclusive venue for any dispute relating to this Agreement is the United States District Court for the Middle District of Florida. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

17.     This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties. Forbearance by the United States from pursuing any remedy or relief available to it under this Agreement shall not constitute a waiver of rights under this Agreement.

18.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

19.     The undersigned Government signatories represent that they are signing this Agreement in their official capacities and that they are fully authorized to execute this Agreement on behalf of the Government entities through their respective agencies and departments.

15

20.    This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

21.    This Agreement is binding on TVH's successors, transferees, heirs, and assigns.

22.    All Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

23.    TVH shall promptly seek approval of this Agreement from the Bankruptcy Court by filing, if not already filed, in the Bankruptcy Case either (1) a bankruptcy plan incorporating this Agreement or (2) a motion to approve the Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019. This Agreement is effective (the "Effective Date") on the earlier of the following: (1) the date on which the Bankruptcy Court enters an Order approving this Agreement or (2) the effective date of a confirmed plan that incorporates this Agreement. If TVH elects to seek approval of this Agreement through confirmation of a bankruptcy plan and does not obtain confirmation within 60 calendar days, TVH shall file a motion to approve this Agreement in the Bankruptcy Case. The United States may extend the 60-day deadline in its sole discretion. Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

DATED: _____3/20/2026_____ BY: _Martha Glover_____

Martha Glover
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice

DATED: _____ BY: CHRISTOPHER EMDEN
Digitally signed by CHRISTOPHER EMDEN
Date: 2026.03.20 14:20:20 -04'00'

Christopher Emden
Assistant United States Attorney
Middle District of Florida

DEPARTMENT OF HEALTH AND HUMAN SERVICES

DATED: _____ BY: SPENCER TURNBULL
Digitally signed by SPENCER TURNBULL
Date: 2026.03.20 14:05:12 -04'00'

Spencer K. Turnbull
Acting Assistant Inspector General for Legal Affairs
Office of Inspector General
Office of Counsel for the Inspector General
Department of Health and Human Services

TVH - DEFENDANT

DATED: 3/20/2026 BY: _____

Neil Luria
Chief Restructuring Officer for TVH

DATED: 03/20/2026 BY: _____

Kirk Ogrosky
Counsel for TVH

17

**Attachment A**

*As of March 9, 2026*

To date, MAOs under the umbrella of the parent organizations included in the table below have deleted diagnoses codes or otherwise returned funds to CMS, the estimated value of which is also included in the table below.

| Parent Organizations | Estimated Amount Returned |
|---|---|
| Humana | $150,793.51 |
| Blue Cross Blue Shield of Florida, Inc. | $3,021,970.50 |

Based on the estimated values above, the United States' allowed claim in the Bankruptcy Case is $538,327,235.99.

The United States reserves the right to amend this attachment as appropriate.