IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| In re: | Case No.: 6:25-bk-04156-LVV |
| THE VILLAGES HEALTH SYSTEM, LLC,[1] | Chapter 11 |
| Debtor. | |

**FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION FOR
THE VILLAGES HEALTH SYSTEM, LLC**

---

**THIS IS NOT A SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED OR PRELIMINARILY APPROVED BY THE BANKRUPTCY COURT. THIS PLAN HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**

---

Dated: March 20, 2026

Respectfully submitted,

*/s/   Danielle L. Merola*

| | |
|---|---|
| Elizabeth A. Green (FL Bar No. 600547) | Michael T. Delaney (admitted *pro hac vice*) |
| Jimmy D. Parrish (FL Bar No. 526401) | **BAKER & HOSTETLER LLP** |
| Andrew V. Layden (FL Bar No. 86070) | Key Tower |
| Danielle L. Merola (FL Bar No. 120120) | 127 Public Square, Suite 2000 |
| **BAKER & HOSTETLER LLP** | Cleveland, Ohio 44114 |
| 200 South Orange Avenue | Telephone:   216.621.0200 |
| Suite 2300 | Facsimile:   216.696.0740 |
| Orlando, Florida 32801-3432 | Email: mdelaney@bakerlaw.com |
| Telephone:   407.649.4000 | |
| Facsimile:   407.841.0168 | *Counsel for the Debtor and Debtor in Possession* |
| Email: egreen@bakerlaw.com | |
|      jparrish@bakerlaw.com | |
|      alayden@bakerlaw.com | |

---

[1] The address of the Debtor is 425 W. New England Avenue Suite 300, Winter Park, Florida 32789. The last four digits of the Debtor's federal tax identification number is 6436.

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ..................................................................................................1

II. DEFINED TERMS AND RULES OF INTERPRETATION............................................1

    A.  Defined Terms ........................................................................................1
    B.  Rules of Interpretation ...........................................................................12
    C.  Computation of Time .............................................................................13
    D.  Governing Law ......................................................................................13
    E.  Reference to Monetary Figures................................................................14
    F.  Controlling Document .............................................................................14

III. UNCLASSIFIED CLAIMS........................................................................................14

    A.  Administrative Expense Claims................................................................14
    B.  Professional Fee Claims..........................................................................15
    C.  Priority Tax Claims ................................................................................16
    D.  United States Trustee Statutory Fees .......................................................16

IV. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ..................16

    A.  Classification of Claims and Interests.......................................................16
    B.  Treatment of Claims and Interests ...........................................................17
    C.  Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ........................21
    D.  Elimination of Vacant Classes .................................................................21

V.  FORMATION OF THE LIQUIDATING TRUST .......................................................22

    A.  Establishment of Liquidating Trust ..........................................................22
    B.  Liquidating Trust Assets.........................................................................22
    C.  Liquidating Trustee................................................................................22

VI. MEANS FOR IMPLEMENTATION OF THE PLAN....................................................24

    A.  The Proposed DOJ Settlement.................................................................24
    B.  Preservation of Right to Conduct Investigations .......................................26
    C.  Prosecution and Resolution of Causes of Action and Avoidance Actions............26
    D.  Effectuating Documents and Further Transactions.....................................27
    E.  Funding of Liabilities and Distributions....................................................27
    F.  Release of Liens.....................................................................................27
    G.  Exemption from Securities Laws..............................................................27
    H.  Exemption from Certain Taxes and Fees...................................................27
    I.  Debtor's Privileges as to Certain Causes of Action....................................28
    J.  Insurance Policies ..................................................................................28

    K.    Filing of Monthly and Quarterly Reports and Payment of Statutory Fees ...........29
    L.    Completion of Services of Professionals ...............................................................29
    M.   Operations of Debtor Between the Confirmation Date and the Effective Date ...............................................................................................................................29

VII.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..........29

    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ..........29
    B.    Rejection of Executory Contracts and Unexpired Leases.....................................29
    C.    Claims Based on Rejection of Executory Contracts or Unexpired Leases............30

VIII.   PROVISIONS GOVERNING DISTRIBUTIONS ........................................................30

    A.    Distribution Record Date .....................................................................................30
    B.    Method of Payment...............................................................................................31
    C.    No Distribution Pending Allowance .....................................................................31
    D.    Reserve of Cash Distributions ..............................................................................31
    E.    Distribution After Allowance ...............................................................................31
    F.    Delivery of Distributions .....................................................................................31
    G.    Fractional Dollars; *De Minimis* Distributions.....................................................32
    H.    Excess Funds.........................................................................................................32
    I.    Unclaimed Distributions ......................................................................................32
    J.    Set-Off..................................................................................................................32
    K.    Maximum Recovery and Postpetition Interest......................................................33
    L.    Allocation of Distributions Between Principal and Interest ..................................33
    M.   Prepayment ...........................................................................................................33
    N.    Claims Paid or Payable by Third Parties ..............................................................33
       i.   Claims Paid by Third Parties ...............................................................33
      ii.  Claims Payable by Third Parties..........................................................34

IX.    PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS ................................................................................................34

    A.    Allowance of Claims.............................................................................................34
    B.    No Distributions Pending Allowance ...................................................................34
    C.    Claims Administration..........................................................................................34
    D.    Estimation of Claims.............................................................................................34
    E.    Time to File Objections to Claims ........................................................................35
    F.    Disallowance of Claims ........................................................................................35
    G.    Distributions After Allowance ..............................................................................35

X.    RELEASES, INJUNCTION AND RELATED PROVISIONS .......................................36

    A.    Discharge of Debtor..............................................................................................36
    B.    Releases by Debtor ...............................................................................................36
    C.    Releases by the Releasing Parties .........................................................................37
    D.    Exculpation ...........................................................................................................38
    E.    Preservation of Causes of Action..........................................................................39

         1.   Vesting of Causes of Action .................................................................. 39
         2.   Preservation of All Causes of Action Not Expressly Settled or Released ............ 39
    F.   Injunction .................................................................................................40
    G.   Exclusions from Releases .........................................................................41
    H.   Exclusions and Limitations on Liability ..................................................41
    I.   Protections Against Discriminatory Treatment .......................................41
    J.   Document Retention .................................................................................42
    K.   Term of Injunctions or Stays....................................................................42
    L.   Termination of All Employee and Workers' Compensation Benefits..................42

XI.   CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ........................42

    A.   Conditions Precedent to the Effective Date for the Plan .........................42
    B.   Substantial Consummation .......................................................................43
    C.   Effect of Failure of Conditions ...............................................................43

XII.   MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN ...................43

    A.   Modification and Amendments..................................................................43
    B.   Effect of Confirmation on Modifications .................................................43
    C.   Revocation or Withdrawal of Plan............................................................43

XIII.   RETENTION OF JURISDICTION ...................................................................44

XIV.   MISCELLANEOUS PROVISIONS...................................................................45

    A.   Immediate Binding Effect.........................................................................45
    B.   Additional Documents ..............................................................................46
    C.   Payment of Statutory Fees .......................................................................46
    D.   Successors and Assigns.............................................................................46
    E.   Notices ......................................................................................................46
    F.   Entire Agreement ......................................................................................47
    G.   Exhibits .....................................................................................................47
    H.   Non-Severability of Plan Provisions.........................................................48
    I.   Closing of Chapter 11 Case ......................................................................48
    J.   Conflicts....................................................................................................48
    K.   Rates..........................................................................................................48

## I.    INTRODUCTION

The Villages Health System, LLC, the debtor and debtor in possession in the above-captioned bankruptcy case, proposes this Plan for the resolution of the outstanding Claims against and Interests in the Debtor pursuant to chapter 11 of the Bankruptcy Code.  The Plan entails the formation of a post-confirmation trust to (i) administer the remaining assets of the Estate following the Sale of Debtor's business concerns and assets and (ii) distribute the proceeds thereof as proposed herein and in the Liquidating Trust Agreement.

The Debtor is the proponent of the Plan and encourages holders of Claims to vote to "Accept" the Plan.

The Plan is accompanied by the Disclosure Statement.  Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of, among other things, Debtor's historical operations, events leading to the bankruptcy filing, the Sale during the Chapter 11 Case, the proposed resolution of the DOJ Claim and potential claims and causes of action against the Developer, and a further explanation regarding the terms and potential implications of the Plan.

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

## II.    DEFINED TERMS AND RULES OF INTERPRETATION

### A.    Defined Terms

As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:

"Administrative Expense Claim" means Claims that have been timely filed, pursuant to the deadline and procedures set forth in any bar date order or Plan Confirmation Order, as applicable, or late filed Claims otherwise allowed by Final Order for costs and expenses of administration under sections 503(b), 507(a)(2) or 1114(e)(2) of the Bankruptcy Code, including, but not limited to: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the businesses of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) administrative expense claims Allowed under section 503(b)(9) of the Bankruptcy Code (if any); and (c) Professional Fee Claims.

"Administrative Expense Claim Bar Date" means the deadline for filing requests for allowance and payment of Administrative Expense Claims, which will beestablished by order of the Bankruptcy Court.

"Allowed" means, with respect to Claims: (a) any Claim for which a proof of Claim was filed (or a Claim that does not require the filing of a proof of Claim as provided for under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court,); (b) any Claim which has been or hereafter is listed by Debtor in the Schedules as liquidated in amount and not disputed or contingent and for which no superseding proof of Claim has been filed; (c) any Claim allowed

pursuant to the Plan or a Final Order of the Bankruptcy Court; and (d) any Claim that is compromised, settled, or otherwise resolved; *provided* that with respect to any Claim described in clauses (a) and (b), such Claim shall be considered Allowed only if and to the extent that with respect to such Claim, no objection to the allowance was timely filed (including but not limited to, an objection relating to the timeliness of the filing of the proof of claim), or if such timely objection was filed, the Claim is subsequently Allowed by a Final Order or by compromise, settlement, or other resolution. Notwithstanding anything herein to the contrary, Claims allowed solely for the purpose of voting to accept or reject this Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" Claims for any other purpose.

"Assets" means all tangible and intangible assets of every kind and nature of Debtor and its Estate within the meaning of section 541 of the Bankruptcy Code.

"Assumed General Unsecured Claims" shall have the meaning ascribed to such term in the CenterWell Purchase Agreement, a copy of which is attached to the Plan Supplement.

"Avoidance Actions" means all rights to avoid transfers or distributions and recover any such avoided transfers or distributions for the benefit of the Estate or Liquidating Trust, as applicable, under chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, sections 506(d), 522, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code, or otherwise under the Bankruptcy Code, or under similar or related state or federal statutes and common law, and other similar avoidance claims, rights, and causes of action, whether or not demand has been made or litigation has been commenced as of the Effective Date.

"Ballot" means the ballot on which each holder of a Claim entitled to vote to accept or reject this Plan casts such vote.

"Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, as amended from time to time.

"Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the Middle District of Florida, Orlando Division.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time.

"Beneficial Interests" means interests in the Liquidating Trust entitling each holder thereof to receive its Pro Rata Share of Distributions, other than Professionals or other administrative claimants.

"Beneficiaries" or "Liquidating Trust Beneficiaries" means holders of Beneficial Interests in the Liquidating Trust.

"Business Day" means any day other than a Saturday, Sunday, or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

"Cash" means legal tender of the United States of America and equivalents thereof.

"Causes of Action" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, suspected or unsuspected, assertable, directly or derivatively, in contract, tort, law, equity, or otherwise, with the exception, as to each, of those transferred to Purchaser pursuant to the Sale Order.

"CenterWell Purchase Agreement" means the asset purchase agreement entered into by and between Debtor and Purchaser dated on or about September 8, 2025, and which is referred to as the Stalking Horse APA in the Sale Order.

"Chapter 11 Case" means the bankruptcy case commenced by the filing of a voluntary petition for relief for the Debtor on July 3, 2025, under chapter 11 of the Bankruptcy Code, which has been assigned case no. 6:25-bk-04156 and is currently pending in the Bankruptcy Court.

"Claim" has the meaning set forth in section 101(5) of the Bankruptcy Code.  As used herein, "Class [__] Claim(s)" shall refer to the Claims classified into the specified Class of this Plan.

"Claims Agent" and "Balloting Agent", as applicable, means Stretto, Inc.

"Claims Objection Deadline" means the date that is one hundred and eighty (180) days after the Effective Date or such later date as may be approved by the Bankruptcy Court upon motion of the Liquidating Trustee.

"Class" means any group of substantially similar Claims or Equity Interests classified by this Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  As used herein, "Class" followed by a number (*e.g.*, Class 1, Class 2, etc.) shall refer to the specified Class designated in this Plan.

"Class A Beneficial Interests" means Beneficial Interests in the Liquidating Trust entitling each holder thereof to receive its Pro Rata Share of Distributions from the Liquidating Trust, until all Class A Beneficial Interests are paid in full.

"Class B Beneficial Interests" means Beneficial Interests in the Liquidating Trust entitling each holder thereof to receive its Pro Rata Share of Distributions from the Liquidating Trust *after* all of the Class A Beneficial Interests are paid in full.

"Clerk" means the clerk of the Bankruptcy Court.

"Collateral" means any Asset of the Estate subject to a lien, charge, or other encumbrance to secure the payment or performance of any Claim, which lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

"Creditors' Committee" or "Committee" means the Official Committee of Unsecured Creditors appointed by the United States Trustee in the Chapter 11 Case on or about September 4, 2025, and the members thereof, as such membership may be amended.

"Creditor" shall have the meaning ascribed to such term in section 101(10) of the Bankruptcy Code. As used herein, "Class [__] Creditor(s)" shall refer to the Creditor(s) holding Allowed Claims classified into the specified Class of this Plan.

"CRO" means, individually and collectively, as applicable, the Chief Restructuring Officer for Debtor, Neil Luria, and SOLIC.

"Debtor" and "TVH" means The Villages Health System, LLC, as debtor and Debtor in Possession, as applicable.

"Debtor in Possession" means Debtor in its capacity as debtor in possession in the Chapter 11 Case pursuant to sections 1107 and 1108 of the Bankruptcy Code.

"Developer" means, collectively and individually, as applicable, TVHH, PMA Lender, and other affiliated entities party to the Developer Settlement.

"Developer Releases" means, collectively and individually, as applicable, the releases granted to the Developer pursuant to the Developer Settlement as Released Parties under Article XI of the Plan

"Developer Settlement" means the Settlement Agreement by and among Debtor and Developer dated as of March 20, 2026, including, without limitation, all exhibits, supplements, appendices, and schedules thereto, either in their present form or as the same may be altered, amended, or modified, a copy of which is appended as Exhibit A to Docket No. 448.

"Disclosure Statement" means the *Disclosure Statement for the First Amended Chapter 11 Plan of Liquidation for the Villages Health System, LLC* dated as of March 20, 2026, including, without limitation, all exhibits, supplements, appendices, and schedules thereto, either in their present form or as the same may be altered, amended, or modified, filed by the Debtor in the Chapter 11 Case.

"DIP Collateral" means such property of Debtor or the Estate encumbered by the DIP Liens, as described in the DIP Financing Motion.

"DIP Facility" means that certain super-priority, senior secured debtor in possession credit facility under the DIP Loan Documents and the DIP Orders.

"DIP Financing Motion" means the *Debtor's Emergency Motion for Interim and Final Orders (I) Approving Postpetition Financing, (II) Authorizing the Use of Cash Collateral, (III) Approving Liens and Superpriority Administrative Expenses Status, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief*, filed by the Debtor on July 3, 2025 [Doc No. 4], together with any related or supporting submissions and evidence.

"DIP Lender" means PMA Lender, LLC, a Florida limited liability company, or any of its predecessors or successors, as defined in the DIP Orders.

"DIP Liens" means such liens on and security interests granted to the DIP Lender in the DIP Collateral, as described in the DIP Orders.

"DIP Loan Documents" has the meaning ascribed to such term in the DIP Orders, as amended.

"DIP Obligations" has the meaning ascribed to such term in the DIP Orders, as amended.

"DIP Orders" means, collectively, the orders entered by the Bankruptcy Court approving, extending, modifying, or otherwise pertaining to the DIP Facility or approval thereof.

"Disputed Claim" means any Claim that (a) is or hereafter may be listed on the Schedules as disputed, contingent, or unliquidated, (b) is subject to a timely objection to the allowance of such Claim, in whole or in part, or (c) otherwise not an Allowed Claim, in whole or in part.

"Disputed Claims Reserve" means the reserve, if any, established by the Liquidating Trustee for the benefit of holders of Disputed Claims.

"Distribution" means any distribution, disbursement or transfer of Assets to holders of Allowed Claims or Beneficiaries under or pursuant to this Plan and/or the Liquidating Trust Agreement.

"Distribution Record Date" means the record date for establishing the holders of Allowed Claims for purposes of making Distributions under the Plan, which date shall be the Effective Date.

"Docket" means the docket in the Chapter 11 Case and, as applicable, any related proceedings.

"DOJ" means the United States Department of Justice, Civil Division, Civil Frauds Section, and the United States Attorney's Office for the Middle District of Florida.

"DOJ Claim" means the Claim(s) or Cause of Action(s) resolved by the Debtor and the DOJ in the DOJ Settlement Agreement related to the Debtor's voluntary self-disclosure to the Office of Inspector General for the Department of Health & Human Services in or about December 2024, as amended or supplemented.

"DOJ Settlement" means the Settlement Agreement by and among Debtor and the United States dated as of March 20, 2026, including, without limitation, all exhibits, supplements, appendices, and schedules thereto, either in their present form or as the same may be altered, amended, or modified, a copy of which is appended as Exhibit A to Docket No. 447.

"D&O Claims" means Claims and Causes of Action against former and current directors, managers and officers of Debtor; *provided* that D&O Claims shall not include (i) any Claims and Causes of Action against the CRO, the Independent Director, or any Person receiving a release under the Plan; or (ii) any Cause of Action released by the Developer Settlement or DOJ Settlement.

"D&O Coverage" means the extent of insurance coverage for the Debtor's directors and officers under the D&O Policies.

"D&O Policies" means all applicable liability insurance policies (including primary insurance, excess insurance, or tail insurance policies) of Debtor applicable to or otherwise extending coverage to the directors and officers of Debtor.

"Effective Date" means the date on which the conditions specified in Article XI of this Plan have been satisfied or waived in accordance with the terms hereof.

"Entity" shall have the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

"Equity Interest" or "Interest" means any direct equity, membership, or other ownership interest in Debtor.  As used herein, "Class [__] Equity Interest(s)" refers to the Equity Interests classified in the specified Class of this Plan.

"Estate" means the estate of Debtor created upon the commencement of the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

"Excluded General Unsecured Claim" shall have the meaning ascribed to such term in the CenterWell Purchase Agreement.

"Exculpated Parties" means each of the following solely in its capacity as such (i) Debtor, (ii) Debtor's officers and directors, including Debtor's independent director, Anna Phillips, (iii) Debtor's chief restructuring officer, Neil Luria and SOLIC, (iv) the Committee and its members, (v) the DIP Lender, and (vi) the professionals and advisors of the foregoing parties.

"Exculpation Timeframe" means the period from the Petition Date through and including the Effective Date.

"Executory Contract" means any executory contract or unexpired lease, within the meaning of section 365 of the Bankruptcy Code, to which Debtor is a party or beneficiary or otherwise constituting an Asset of the Estate, in whole or in part.

"Final DIP Order" means the *Final Order Granting Debtor's Emergency Motion for Entry of Order (I) Authorizing the Debtor to Borrow Additional Funds under the Existing DIP Facility, with Certain Modifications, and (II) Granting Related Relief* [Doc. No. 343], as may be amended or modified from time to time, entered by the Bankruptcy Court on November 20, 2025.

"Final Order" means an Order of the Bankruptcy Court, or other court of competent jurisdiction to hear matters or appeals arising from or related to Debtor, the Estate, and/or Chapter 11 Case, that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, to petition for certiorari, or to move for re-argument or rehearing has expired, and as to which no appeal, petition for certiorari, or other proceedings for re-argument or rehearing shall then be pending; *provided, however,* that the possibility that a motion under Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order shall not cause such order not to be a Final Order.

"General Bar Date" means September 11, 2025, the deadline for each Person or Entity, including without limitation, individuals, partnerships, corporations, joint ventures and trusts, other than Governmental Units, to file a proof of claim against Debtor for any Claim that arose prior to the Petition Date.

"General Unsecured Claim" means any Claim against Debtor or the Estate (a) that is not an Administrative Expense Claim, Priority Tax Claim, Other Priority Claim, or Subordinated Section 510(b) Claim, or (b) that is determined by the Bankruptcy Court to be a non-priority unsecured Claim; *provided*, for the avoidance of doubt, that General Unsecured Claims includes all (i) Payor Claims, (ii) DOJ Claim(s), (iii) Excluded General Unsecured Claims, (iv) Rejection Damages Claims, and (v) any portion of a Secured Claim exceeding the value of the Estate's interest in the subject Collateral or subject to setoff, as determined pursuant to section 506(a) of the Bankruptcy Code.

"Governmental Unit" shall have the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

"Governmental Unit Bar Date" means February 28, 2026, the deadline for Governmental Units to file a proof of Claim against Debtor for a Claim that arose prior to the Petition Date.

"Impaired" means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"Insider Claims" means all Claims and Causes of Action against any person who is an insider of Debtor, as defined in section 101(31) of the Bankruptcy Code, including, without limitation, any current or former officer, director, manager, equity holder, Affiliate of (i) Debtor or (ii) any of Debtor's Affiliates, or any Person that received a direct or indirect dividend or equity distribution from Debtor; *provided, however*, Insider Claims excludes (i) any Claims and Causes of Action against the CRO or Independent Director, (ii) any Payor Debtor Claims, and (iii) any Claims and Causes of Action settled or otherwise disposed of prior to the Effective Date, including any Claims and Causes of Action resolved under the Developer Settlement and/or DOJ Settlement.

"Insurance Policies" means all insurance policies under which Debtor, or any current or former officer, director, or agent of Debtor, is an insured, additional insured, beneficiary, or otherwise entitled to coverage.

"Interim DIP Orders" means the *Interim Order Granting Debtor's Emergency Motion for Interim and Final Orders (I) Approving Postpetition Financing, (II) Authorizing the Use of Cash Collateral, (III) Approving Liens and Superpriority Administrative Expenses Status, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief*, entered by the Bankruptcy Court on July 11, 2025 [Doc No. 60], together with subsequent interim orders extending the terms thereof.

"Lien" means any mortgage, pledge, deed of trust, assessment, security interest, lease, lien, adverse claim, levy, charge, right of first refusal or surrender right, or other encumbrance of any kind, including any "lien" as defined in section 101(37) of the Bankruptcy Code.

"Liquidating Trust" means the liquidating or litigation trust to be established on the Effective Date pursuant to and in accordance with the terms of this Plan, the Liquidating Trust Agreement, and Confirmation Order.

"Liquidating Trust Advisors" means any firm(s) or individual(s) retained by the Liquidating Trustee to serve as a legal counsel or provide other professional services in connection with the performance of any duties, responsibilities, or obligations under this Plan and the Liquidating Trust Agreement, for the period on or after the Effective Date.

"Liquidating Trust Agreement" means the agreement governing the Liquidating Trust, dated on or about the Effective Date, substantially in the form attached to the Plan Supplement.

"Liquidating Trust Assets" means all Assets of Debtor and the Estate as of the Effective Date, including, without limitation, (i) Cash on hand, (ii) Causes of Action, (iii) Privilege; and (iv) any rights under the Insurance Policies, including the D&O Policies, or proceeds thereof.

"Liquidating Trustee" the trustee(s) and/or plan administrator(s) identified in the Plan Supplement to act as trustee and administrator of the Liquidating Trust and its assets, and any successor thereto.

"Local Rules" means the of Local Rules of the United States Bankruptcy Court for the Middle District of Florida, as amended from time to time.

"Notice of Effective Date" means a notice to be filed with the Bankruptcy Court by Debtor indicating the Effective Date of the Plan.

"Order" means an order, decree, opinion, or judgment of the Bankruptcy Court, or other court of competent jurisdiction, pertaining to Debtor, the Estate, and/or Chapter 11 Case.

"Other Priority Claim" means unsecured Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than Administrative Expense Claims or Priority Tax Claims.

"Other Secured Claims" means Claims (or portions thereof) that are secured by a Lien on Collateral that are valid, perfected and enforceable under applicable law as of the Petition Date, *but excluding* any Claims secured by Assets subject to the Sale to CenterWell.

"Payor Claims" means all Claims and Causes of Action against the Debtor held by any person, organization, or entity responsible for reimbursing Debtor for the cost of medical care provided by its healthcare professional.

"Payor Debtor Claims" means all Claims and Causes of Action Debtor holds as of the Effective Date, or may thereafter acquire, against (i) United Healthcare Insurance Company, United Healthcare of Florida, Inc., Blue Cross and Blue Shield of Florida, Inc., Health Options, Inc., and any of their respective affiliates or (ii) any person, organization, or entity responsible for reimbursing the Debtor for the cost of medical care provided by its healthcare professionals.

"Person" shall have the meaning ascribed to such term in section 101(41) of the Bankruptcy Code.

"Petition Date" means July 3, 2025, the date on which Debtor commenced the Chapter 11 Case.

"Plan" means the *First Amended Chapter 11 Plan of Liquidation for the Villages Health System, LLC* dated as of March 20, 2026, including, without limitation, all exhibits, supplements, appendices, and schedules thereto, either in their present form or as the same may be altered, amended, or modified.

"Plan Confirmation Date" means the date on which the Bankruptcy Court enters the Plan Confirmation Order.

"Plan Confirmation Hearing" means the hearing to be held by the Bankruptcy Court to consider approval and confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

"Plan Confirmation Order" and "Confirmation Order" mean an order entered by the Bankruptcy Court confirming this Plan.

"Plan Documents" means this Plan, the Disclosure Statement, the Plan Supplement, Liquidating Trust Agreement, and all exhibits and schedules attached to or documents filed in support of any of the foregoing.

"Plan Proponent" means Debtor.

"Plan Supplement" means the appendix of any schedules or exhibits to the Plan, which Debtor shall file with the Bankruptcy Court and serve on necessary parties, and make available publicly on the Claims Agent's website for the Chapter 11 Case, at least five (5) days prior to the deadline for submission of Ballots to vote to accept or reject the Plan.

"PMA Lender" and "Prepetition Lender" means PMA Lender, LLC, a Florida limited liability company, or any of its predecessors or successors.

"Prepetition Secured Loan" means the secured loan by and between Debtor and PMA Lender dated as of April 7, 2025.

"Preserved Claims and Causes of Action" means all Claims or Causes of Action of Debtor that are not specifically released, waived or otherwise compromised in the Plan or other Final Order, or transferred or otherwise assigned to Purchaser pursuant to the Sale Order.

"Priority Tax Claim" means an unsecured Claim, or applicable portion thereof, that is entitled to priority under sections 502(i) or 507(a)(8) of the Bankruptcy Code.

"Privilege" means the attorney client privilege, work product protections, or other privilege, immunity (including without limitation those related to a common interest or a joint defense with other parties to the extent set forth in such documents), or protections from disclosure

of any kind held by Debtor or the Estate as permitted under the Federal Rule of Evidence 501 and all other applicable law.

"Professional" means any Person or Entity employed by Debtor, the Committee, or other Estate representative in the Chapter 11 Case pursuant to sections 327, 363, or 1103 of the Bankruptcy Code, as applicable, or otherwise pursuant to an Order of the Bankruptcy Court.

"Professional Fee Claim" means a Claim under sections 328, 330(a), 331, and/or 503 of the Bankruptcy Code for compensation of a Professional related to services rendered or expenses incurred in the Chapter 11 Case.

"Pro Rata Share" means, with respect to any Distribution on account of any Allowed Claim, a percentage represented by a fraction (i) the numerator of which shall be an amount equal to such Claim and (ii) the denominator of which shall be an amount equal to the aggregate amount of Allowed Claims in the same Class as the subject Claim, *provided* that in cases where Pro Rata Share is used in reference to Beneficial Interests in the Liquidating Trust, Pro Rata Share means the portion that such holder's Claim bears to the aggregate amount of all Allowed Claims in all Classes entitled to Beneficial Interests in the Liquidating Trust; *provided, further*, that in no case shall a Beneficial Interest in the Liquidating Trust confer an interest in any assets held by the Liquidating Trust prior to the Distribution of such assets.

"Purchaser" means CenterWell Senior Primary Care (FL), Inc.

"Rejection Damages Claim" means any Claim under section 502(g) of the Bankruptcy Code arising from, or relating to, the rejection of an Executory Contract pursuant to section 365(a) of the Bankruptcy Code by Debtor, as limited, in the case of a rejected employment contract or unexpired lease, by section 502(b) of the Bankruptcy Code.

"Released Party" and "Released Parties" means, individually and collectively, and solely in their capacities as such, (i) Debtor's professionals, which specifically include: (a) Baker & Hostetler LLP as legal counsel, (b) Neil Luria and SOLIC as CRO and support staff to Debtor, and (c) Anna Phillips as independent director, [2] (ii) the Committee's professionals (a) Pack Law P.A. and (b) Genesis Credit Partners LLC, and (iii) Debtor, and, solely with respect to the Persons and Entities listed in (i) and (ii), above, their respective officers and directors, equity holders, members, partners, managers, employees, agents, attorneys, accountants, consultants, and other professionals; *provided, however*, that if the Developer Settlement is approved, "Released Parties" shall include the Settlement Release Parties (as defined in the Developer Settlement) as well as their respective officers and directors, equity holders, members, partners, manager, and employees.

"Releasing Party" and "Releasing Parties" means, individually and collectively, and solely in their capacities as such, (i) the DIP Lender, (ii) the Prepetition Lender, (iii) the Purchaser, (iv) the Committee, and (v) the Liquidating Trustee; *provided* that notwithstanding the foregoing,

---

[2] For the avoidance of doubt, only the Professionals set forth in (i) and (ii) shall be included in the definition of a Released Party. Without limiting the generality of the foregoing, KPMG, BDO USA, and/or any other unnamed professional retained by the Debtor shall not be included in this definition of a Released Party.

neither the United States Trustee, DOJ, nor any other department or element of the government of the United States of America shall constitute a Releasing Party under the Plan.

"Retained Causes of Action" means any and all Causes of Action constituting, in whole or in part, Assets of the Estate as of the Effective Date, including, without limitation, all existing or potential Causes of Action identified or described in the Plan Supplement, that have not been expressly waived, released, settled, adjudicated to final judgment, or otherwise resolved prior to the Effective Date or under the terms of the Plan, and any and all counterclaims, compulsory or otherwise, to any claims or causes of action brought against Debtor, the Estate, or the Liquidating Trust.

"Sale" means the sale of Estate Assets to Purchaser pursuant to the CenterWell Purchase Agreement, as approved pursuant to the Sale Order.

"Sale Order" means the *Order (A) Approving Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* entered by the Bankruptcy Court on September 9, 2025 [Docket No. 222].

"Sale Proceeds" means the net proceeds from the Sale.

"Schedules" means the schedules of assets and liabilities and statements of financial affairs filed by Debtor pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007(b), as such schedules or statements may be amended or supplemented from time to time.

"Secured Claim" means a Claim: (a) secured by a Lien on collateral, which Lien is valid, perfected and enforceable, to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

"SOLIC" means GBH SOLIC Holdco, LLC, and its direct or indirect parent, subsidiaries and affiliates, and their respective officers, directors, agents, employees, independent contractors, professionals, and other representatives.

"Solicitation Procedures Order" means an order entered by the Bankruptcy Court [Doc. No. [•]] approving the Disclosure Statement and the solicitation of votes on the Plan.

"Statutory Fees" means any and all fees payable to the U.S. Trustee pursuant to section 1930 of title 28 of the United States Code and any interest thereupon.

"Subordinated Section 510(b) Claims" means any unsecured Claim that is subordinated to General Unsecured Creditors under section 510 of the Bankruptcy Code or other legal or equitable principles.

"TVHH" means The Villages Health Holding Company LLC, a Florida limited liability company.

"Unclaimed Distribution" means a Distribution that is not claimed by a holder of an Allowed Claim on or prior to the Unclaimed Distribution Deadline.

"Unclaimed Distribution Deadline" means the date that is three (3) months from the date of the subject Distribution.

"Unimpaired" means, with respect to a Claim or Class of Claims, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

"United States" means the United States of America and its departments, agencies, representatives, appointees, employees, independent contractors, and other agents acting for or for the benefit of any of the foregoing; *provided, however*, that with respect to the DOJ Settlement, "United States" shall be deemed to refer to the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services.

"U.S. Trustee" or "United States Trustee" means the Office of the United States Trustee assigned to the Middle District of Florida, Orlando Division.

"Voting Deadline" means [•], 2025, at 5:00 p.m. (Eastern Standard Time).

"Voting Procedures" means the procedures approved by the Bankruptcy Court for voting to accept or reject the Plan.

## B.      Rules of Interpretation

For purposes of the Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, includes both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not filed, having been filed, or to be filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the Plan; (4) any reference to a Person as a holder of a Claim or Interest includes that Person's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules, or, if no rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or otherwise specifically stated, the laws of the State of Florida, without giving effect to the principles of conflict of laws; (9) captions and headings are inserted for convenience of reference only and are not intended to

be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) all references to docket numbers of documents filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time and as applicable to the Chapter 11 Case, unless otherwise stated; (13) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (14) references to "Proofs of Claim," "holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "holders of Interests," "Disputed Interests," and the like, as applicable; (15) any effectuating provisions may be interpreted in a manner that is consistent with the overall purpose and intent of the Plan; (16) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (17) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; (18) with respect to Liquidating Trust Assets, all references to "Debtor" or the "Estate" shall include the "Liquidating Trustee" or "Liquidating Trust," respectively, if such reference pertains to the period following the Effective Date; (19) with respect to Assets of the Estate and Liquidating Trust Assets, all references to the "Liquidating Trustee" or "Liquidating Trust" shall include "Debtor" or the "Estate," respectively, if such reference pertains to the period on or before the Effective Date; and (20) any capitalized term used but not otherwise defined herein shall have the meaning ascribed to that term as used in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

## C.    Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. If any deadline established by the Plan shall occur on a day that is not a Business Day, such deadline shall be extended automatically, and without further action or Order, to the next Business Day. Any action to be taken or transaction to be completed on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date, and the Debtor shall retain all necessary authority to take such action or complete such transaction after the Effective Date; *provided* that Debtor, in its discretion, may assign such authority to the Liquidating Trustee.

## D.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Florida, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control);

*provided, however*, that corporate or limited liability company governance matters relating to Debtor shall be governed by the laws of the state of incorporation or formation of Debtor.

### E.        Reference to Monetary Figures

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

### F.        Controlling Document

In the event of an inconsistency between the Plan and the Plan Supplement with respect to the Plan, the terms of the relevant document in the Plan Supplement with respect to the Plan shall control unless otherwise specified in such Plan Supplement document.  In the event of an inconsistency between the Plan and any other instrument or document created or executed pursuant to the Plan, or between the Plan and the Disclosure Statement, the Plan shall control.  The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided, however*, that if there is determined to be any inconsistency between any provision of the Plan and any provision of the Confirmation Order that cannot be reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provisions of the Confirmation Order shall be deemed a modification of the Plan.

## III.    UNCLASSIFIED CLAIMS

### A.        Administrative Expense Claims

Unless otherwise agreed by the holder of an Administrative Expense Claim, each holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash as follows: (a) if Allowed prior to the Effective Date, on the Effective Date or as soon as practicable thereafter, but in no event later than 30 days after the Effective Date; (b) if Allowed on or after the Effective Date, as soon as practicable after the date such Claim is Allowed, but in no event later than 30 days after the date such Claim is Allowed; (c) at such time and upon such terms as may be agreed upon by such holder and Debtor, if agreed before the Effective Date, or the Liquidating Trustee, if agreed after the Effective Date; or (d) at such time and upon such terms as ordered by the Bankruptcy Court.  The Liquidating Trust shall be responsible for the payment of any Allowed Administrative Expense Claims not paid in full on the Effective Date, which amount shall be paid from Liquidating Trust Assets; *provided* that holders of Allowed Administrative Expense Claims shall not constitute Beneficiaries of the Liquidating Trust solely on account of the right to payment of an Allowed Administrative Expense Claim from the Liquidating Trust after the Effective Date.

Unless previously Allowed by Final Order of the Bankruptcy Court or agreement of Debtor, holders of Administrative Expense Claims accruing from the Petition Date through and including the Effective Date, other than Professional Fee Claims, shall file with the Bankruptcy Court and serve on Debtor, and, if filed following the Effective Date, the Liquidating Trustee, requests for allowance of such Administrative Expense Claims, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules,

the Local Rules, and any applicable Order of the Bankruptcy Court, no later than the Administrative Expense Claim Bar Date.

Holders of Administrative Expense Claims that do not file and serve a motion for allowance of such Administrative Expense Claim(s) by the Administrative Expense Claim Bar Date shall be forever barred, estopped, and enjoined from asserting an Administrative Expense Claim against Debtor, the Estate, the Liquidating Trust, or their respective assets and properties, and any Administrative Expense Claims shall be deemed disallowed as of the Effective Date without the need for any notices, objection, or other action from Debtor or Liquidating Trustee, as applicable, or any action or approval by the Bankruptcy Court.  For the avoidance of doubt, a Proof of Claim asserting an Administrative Expense Claim (other than 503(b)(9) Claims) does not constitute a motion or request for allowance and payment of an Administrative Expense Claim, and as such, shall not be regarded or entitled to treatment as an actual or informal proof of claim or request for allowance of any Administrative Expense Claim.

**B.      Professional Fee Claims**

On the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order approving the final fee applications of the applicable Professional, Debtor, on or before the Effective Date, or the Liquidating Trustee, after the Effective Date, shall pay all unpaid amounts approved by the Bankruptcy Court owing to such Professional on account of an Allowed Professional Fee Claim.  No later than 30 days after the Effective Date, unless extended for good cause, each Professional shall file with the Bankruptcy Court its final fee application seeking final approval of all fees and expenses from the Petition Date through the Effective Date; *provided* that the Liquidating Trustee may pay retained Liquidating Trust Advisors, Professionals or other Entities in the ordinary course of business for services rendered and expenses incurred after the Effective Date without further Bankruptcy Court order.  Objections to any Professional Fee Claim must be filed and served on counsel to the Debtor, Committee (if extant), and Liquidating Trustee, and the subject Professional no later than fourteen (14) days after such Professional Fee Claim is filed with the Bankruptcy Court, and must be set forth in writing and state with specificity the particular billing entry(ies), fee(s), or cost(s) subject to the objection and the basis for the objection to the subject billing entry, fee, or cost.  If no timely objection is filed, the Professional may lodge an order with the Bankruptcy Court granting final approval of the Professional Fee Claim.  If a timely objection is filed, the Professional shall set the matter for hearing on no less than seven (7) days' notice to the Debtor, Committee (if extant), Liquidating Trust, the United States Trustee, and the objecting party.

The Liquidating Trust shall pay any Professional Fee Claims allowed after the Effective Date no later than three (3) days after the Order allowing such Professional Fee Claims becomes a Final Order.  The Liquidating Trustee shall pay such Allowed Professional Fee Claims from the Liquidating Trust Assets and shall retain sufficient Cash in the Liquidating Trust for such purpose. Professional Fee Claims allowed on or prior to the Effective Date shall be paid either (i) by the Debtor on the Effective Date, if deemed practicable by the Debtor, or (ii) by the Liquidating Trust within ten (10) days after the Effective Date.

The entitlement to or receipt of any Distributions from the Liquidating Trust on account of an Allowed Professional Fee Claim shall not render the holder(s) of such Allowed Professional Fee Claim(s) Beneficiaries of the Liquidating Trust.

Notwithstanding the foregoing, Liquidating Trust Advisors, even if formerly Professionals, shall be entitled to payment from the Liquidating Trust for fees and expenses incurred in service of the Liquidating Trust on or after the Effective Date, subject solely to the procedures and requirements for such compensation established in the Liquidating Trust Agreement.

### C.      Priority Tax Claims

On the later of the Effective Date or the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, or, in each such case, as soon as practicable thereafter, but in no event later than 30 days after such event, each holder of an Allowed Priority Tax Claim will be paid an amount equal to the Allowed amount of such Claim plus, to the extent applicable, any amount required to comply with section 1129(a)(9)(C) or 1129(a)(9)(D) of the Bankruptcy Code, in Cash by Debtor, if on the Effective Date, or the Liquidating Trust, if after the Effective Date, from Estate Assets or Liquidating Trust Assets, respectively.

### D.      United States Trustee Statutory Fees

All fees payable pursuant to 28 U.S.C. § 1930, and any applicable interest thereon, that are due and payable as of the Effective Date shall be paid in full in Cash by the Debtor or the Liquidating Trustee on the Effective Date.  For the avoidance of doubt, the U.S. Trustee shall not be required to file a request or motion for allowance of an Administrative Expense Claim to establish its entitlement to statutory fees.

## IV.      CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.      Classification of Claims and Interests

The Classes of Claims and Interests listed below classify Claims and Interests for all purposes, including voting on, and distributions pursuant to, the Plan in accordance with sections 1122 and 1123(a) of the Bankruptcy Code.  The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that (i) the Claim or Interest is an Allowed Claim or Interest and qualifies within the description of that Class, and it shall be deemed classified in a different Class to the extent that it qualifies within the description of such different Class, and (ii) such Allowed Claim or Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

The following table (a) designates the Classes of Claims against and Interests in Debtor and specifies which Classes are (i) Impaired and Unimpaired under the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (iii) presumed to accept or deemed to reject the Plan, and (b) estimates the potential Distribution (stated

as a percentage of the Allowed Claim or Allowed Interest) to holders of Allowed Claims and Interest in the subject Class.[3]

| Class | Claim or Interest | Status | Voting Rights | Est. Recovery |
|:---:|:---:|:---:|:---:|:---:|
| 1 | Prepetition Secured Loan Claims | Impaired | Entitled to Vote | 100% |
| 2 | Other Secured Claims | Impaired | Entitled to Vote | 100% |
| 3 | Convenience Class Claims | Impaired | Entitled to Vote | 90% |
| 4 | DOJ Claims and Payor Claims | Impaired | Entitled to Vote | Unknown |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote | Unknown |
| 6 | Subordinated Section 510(b) Claims | Impaired | Entitled to Vote | 0% |
| 7 | Equity Interests | Impaired | Deemed to Reject | 0% |

**B.      Treatment of Claims and Interests**

The holders of classified Claims and Interests against Debtor shall receive the treatment described below in full and final satisfaction of such Claim or Interest.

**Class 1 - Prepetition Secured Loan Claims**

a.      *Classification*: Class 1 consists of all Allowed Prepetition Secured Loan Claims against Debtor.

b.      *Treatment*: Each holder of an Allowed Prepetition Secured Loan Claim in Class 1 shall receive from Debtor, or if after the Effective Date, the Liquidating Trustee, in full satisfaction, settlement, release and extinguishment of such Claim, Cash equal to the amount of the Allowed Prepetition Secured Loan Claim of said holder plus interest as provided herein; *provided* that if any Prepetition Secured Loan Claim has been challenged, and such challenge remains unresolved on the Effective Date, such Prepetition Secured Loan Claim shall constitute a Disputed Claim unless and until the challenge is resolved by Final Order of the Bankruptcy Court or other court of competent jurisdiction—at which point, the Liquidating Trustee shall pay the amounts, if any, then due and owing to the holder of the previously-disputed Prepetition Secured Loan Claim.

---

[3] Please be aware that the estimates of potential distributions are forward-looking statements. All forward-looking statements are necessarily speculative and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward-looking statements.

Class 1 Claims shall be paid over a period of five (5) years via annual payments due on the anniversary of the Effective Date, beginning on the date one year after the Effective Date.  Such annual payments shall be in an amount equal to (i) ten percent (10%) of the unpaid amount of the Class 1 Claim plus (ii) one-hundred percent (100%) of interest accrued as of the date of the subject payment; *provided*, *however*, that the fifth and final annual payment shall be in an amount equal to the unpaid portion of the Class 1 Claim, including accrued interest.  Pending payment in full, Class 1 Claims shall accrue interest at a rate of three percent (3%) *per annum*.

*Caveat*.  If the Bankruptcy Court approves the Developer Settlement prior to the Effective Date, Class 1 shall be deemed a vacant Class and eliminated pursuant to Article IV.D.

c.      *Voting*:  Class 1 is Impaired under the Plan.  Holders of Allowed Class 1 Claims are entitled to vote to accept or reject the Plan, unless Class 1 becomes a vacant Class prior to the Voting Deadline.

### Class 2 - Other Secured Claims

a.      *Classification:*  Class 2 consists of all Allowed Other Secured Claims against Debtor.  Each Other Secured Claim shall be classified into separate subclasses of Class 2 (*e.g.,* Class 2A, Class 2B, Class 2C, *etc*.) for treatment and voting under the Plan.

b.      *Treatment*:  On the Effective Date, or as soon thereafter as is practicable, Debtor shall surrender the Collateral for the Other Secured Claims to the holder(s) in full satisfaction, settlement, release and extinguishment of such Claim.

c.      *Voting*:  Class 2 is Impaired under the Plan.  Holders of Class 2 Claims are entitled to vote to accept or reject the Plan.

**Class 3 - Convenience Class Claims**

a. *Classification:* Class 3 consists of all Allowed Convenience Class Claims against Debtor. Any General Unsecured Claim against the Debtor in an amount equal to or less than $10,000.00 on a per claim basis, as determined on the Effective Date, shall automatically constitute a Convenience Class Claim. Any holder of a General Unsecured Claim against the Debtor in an amount greater than $10,000.00 on a per claim basis may elect for its General Unsecured Claim(s) to be treated as a Convenience Class Claim by indicating such election on its Ballot.

b. *Treatment*: As soon as practicable following the Effective Date, but in no event later than 30 days thereafter, each holder of an Allowed Convenience Class Claim shall receive from the Liquidating Trustee, in full and final satisfaction, settlement, release, and extinguishment of such Claim, Cash in an amount equal to ninety percent (90%) of its Class 3 Claim up to $9,000. For example, a holder of an Allowed Convenience Class Claim in the amount of $5,000 shall be entitled to a Distribution in the amount of $4,500 on account of its Class 3 Claim, while a holder of a General Unsecured Claim in the amount of $15,000 that elects to include such Claim in Class 3 shall be entitled to a Distribution in the amount of $9,000 on account of such Claim.

On the Effective Date, any and all objections to the allowance or payment of Class 3 Claims as provided under the Plan shall be deemed waived, *except* for objections to the validity or veracity of any Class 3 Claims.

c. *Voting:* Class 3 is Impaired under the Plan. Holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

**Class 4 - DOJ Claims and Payor Claims**

a. *Classification:* Class 4 consists of all Allowed DOJ Claims and Allowed Payor Claims against Debtor.

b. *Treatment*: On the Effective Date, holders of Allowed DOJ Claims and Payor Claims shall receive a Pro Rata Share of the Class A Beneficial Interests in the Liquidating Trust in full and final satisfaction, settlement, release, and extinguishment of such Claim; *provided* that if any Class 4 Claims are Disputed Claims on the Effective Date, the holder of such Claim shall receive its Pro Rata Share of the Class A Beneficial Interests upon allowance of its Class 4 Claim by Final Order of the Bankruptcy Court.

Holders of Class A Beneficial Interests in the Liquidating Trust shall be entitled to a Pro Rata Share of any Distributions from the Liquidating

Trust per the terms of the Liquidating Trust Agreement and Confirmation Order; *provided, however*, that such entitlement shall be subject to the terms and provisions of this Plan and the Confirmation Order, including provisions governing the treatment of Disputed Claims.

*Caveat.* The DOJ Claim and Payor Claims constitute Disputed Claims under the Plan; *provided, however*, that if the DOJ Settlement is approved, the DOJ Claim shall constitute an Allowed Class 4 Claim in the amount of $541.5 million.

c.   *Voting:* Class 4 is Impaired under the Plan. Holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

### Class 5 - General Unsecured Claims

a.   *Classification:* Class 5 consists of all Allowed General Unsecured Claims against Debtor.

b.   *Treatment:* On the Effective Date, holders of Allowed General Unsecured Claims shall receive a Pro Rata Share of the Class A Beneficial Interests in the Liquidating Trust in full and final satisfaction, settlement, release, and extinguishment of such Claim; *provided* that if any Class 5 Claims are Disputed Claims on the Effective Date, the holder of such Claim shall receive its Pro Rata Share of the Class A Beneficial Interests upon allowance of its Class 5 Claim by Final Order of the Bankruptcy Court.

Holders of Class A Beneficial Interests in the Liquidating Trust shall be entitled to a Pro Rata Share of any Distributions from the Liquidating Trust per the terms of the Liquidating Trust Agreement and Confirmation Order; *provided, however*, that such entitlement shall be subject to the terms and provisions of this Plan, including provisions governing the treatment of Disputed Claims.

c.   *Voting:* Class 5 is Impaired under the Plan. Holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

### Class 6 - Subordinated Section 510(b) Claims

a.   *Classification:* Class 6 consists of all Allowed Subordinated Section 510(b) Claims against Debtor.

b.   *Treatment:* On the Effective Date, holders of Allowed Subordinated Section 510(b) Claims shall receive a Pro Rata Share of the Class B Beneficial Interests in the Liquidating Trust in full and final satisfaction, settlement, release, and extinguishment of such Claim; *provided* that if any Class 6 Claims are Disputed Claims on the Effective Date, the

holder of such Claim shall receive its Pro Rata Share of the Class B Beneficial Interests upon allowance of its Class 6 Claim by Final Order of the Bankruptcy Court. Class B Beneficial Interests are subordinate to Class A Beneficial Interests in the Liquidating Trust.

Following the payment in full of all Allowed Claims in Classes 1-5, holders of Class B Beneficial Interests in the Liquidating Trust shall be entitled to a Pro Rata Share of any Distributions from the Liquidating Trust per the terms of the Liquidating Trust Agreement and Confirmation Order; *provided, however*, that such entitlement shall be subject to the terms and provisions of this Plan, including provisions governing the treatment of Disputed Claims.

Class 6 Claims do not qualify for automatic or elective treatment as Convenience Class Claims in Class 3.

c. *Voting:* Class 6 is Impaired under the Plan. Holders of Class 6 Claims are entitled to vote to accept or reject the Plan.

### Class 7 – Equity Interests

a. *Classification:* Class 7 consists of all Allowed Equity Interests in Debtor.

b. *Treatment:* On the Effective Date, all Equity Interests in Debtor shall be cancelled and holders of Equity Interests shall receive no recovery on account of such Interest.

c. *Voting:* Class 7 is Impaired under the Plan. Holders of Allowed Class 7 Equity Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(f) of the Bankruptcy Code. Accordingly, holders of Allowed Class 7 Equity Interests are not entitled to vote to accept or reject the Plan.

**C.     Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code**

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims entitled to vote on the Plan. Debtor shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Equity Interests. Debtor reserves the right to modify the Plan in accordance with Article XII of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

**D.     Elimination of Vacant Classes**

Any Class that does not have a Claim or Interest in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for all purposes.

## V.    FORMATION OF THE LIQUIDATING TRUST

### A.    Establishment of Liquidating Trust

On the Effective Date, the Liquidating Trust will be established and all Liquidating Trust Assets shall be deemed transferred to the Liquidating Trust.

The Liquidating Trust shall be established for the purpose of liquidating the Liquidating Trust Assets, maximizing recoveries for the benefit of the Liquidating Trust Beneficiaries, and making distributions in accordance with this Plan to the Liquidating Trust Beneficiaries, with no objective to continue or engage in the conduct of a trade or business in accordance with Treas. Reg. § 301.7701-4(d).  The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes, with the Liquidating Trust Beneficiaries treated as grantors and owners of the Liquidating Trust.

### B.    Liquidating Trust Assets

On the Effective Date, any and all rights and interests of Debtor or the Estate in or to the Liquidating Trust Assets shall vest in the Liquidating Trust, which shall include: (i) all Cash on hand on the Effective Date, *except* for any funds Debtor requires to pay amounts due on the Effective Date; (ii) all Insider Claims; (iii) all D&O Claims; (iv) any claims against any person or party (including third party professionals) relating to the DOJ Claims, any D&O Claim, or any Insider Claim; (v) the Payor Debtor Claims; and (vi) all Retained Causes of Action; *provided, however,* that the Liquidating Trust Assets shall not include any Claims or Causes of Action settled or otherwise resolved prior to the Effective Date, including, if approved, any Claims or Causes of Action settled or otherwise resolved under the DOJ Settlement or Developer Settlement.

Pursuant to section 1141 of the Bankruptcy Code, all property transferred to the Liquidating Trust shall be transferred free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as may be otherwise provided in this Plan.  Once transferred to the Liquidating Trust, Debtor will have no further interest in, or with respect to, the Liquidating Trust Assets, or the Liquidating Trust.  For all federal income tax purposes, all parties (including, without limitation, Debtor, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) will treat the transfer of assets to the Liquidating Trust in accordance with the terms of this Plan as a transfer to the Liquidating Trust Beneficiaries, followed by a transfer by such Liquidating Trust Beneficiaries to the Liquidating Trust, and the Liquidating Trust Beneficiaries will be treated as the grantors and owners thereof.

### C.    Liquidating Trustee

1.    *Liquidating Trustee as Representative of the Debtor's Estate*.  From and after the Effective Date, the Liquidating Trustee shall act as the representative of the Estate for all purposes, including specifically, pursuant to section 1123(b)(3) of the Bankruptcy Code, for the purpose of retaining and enforcing any claims or interests of the Estate, including any rights pursuant to the Sale Order, and any Causes of Action in accordance with the best interests of and for the benefit of the Liquidating Trust Beneficiaries.

Neil Luria shall be designated as and shall hold the position of Liquidating Trustee, including all rights, powers, authorities, obligations, and other responsibilities assigned thereto under the Plan and Liquidating Trust Agreement, effective on the Effective Date of the Plan. Any successor Liquidating Trustee appointed pursuant to the Liquidation Trust Agreement shall be bound by and comply with the terms of the Plan, the Confirmation Order and the Liquidating Trust Agreement.

2.  *Responsibilities and Authority of the Liquidating Trustee*.  The responsibilities and authority of the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement, and shall include the following: (a) preserving and liquidating the Liquidating Trust Assets and making distributions to the Beneficiaries in accordance with the provisions of this Plan, the Liquidating Trust Agreement, and any applicable Orders; (b) administering and paying taxes, including, among other things, (i) filing tax returns (to the extent not the obligation of Purchaser or, if approved, TVHH and TVH under the Developer Settlement) and (ii) representing the interest and account of the Liquidating Trust before any taxing authority in all matters including, without limitation, any action, suit, proceeding, or audit; (c) retaining and paying professionals in connection with the Liquidating Trustee's performance of its duties under this Plan and the Liquidating Trust Agreement; (d) distributing information statements as required for federal income tax and other applicable tax purposes; (e) filing an application for entry by the Bankruptcy Court of a final decree closing the Chapter 11 Case; (f) making distributions to holders of Allowed Administrative Priority Claims and Professional Fee Claims, to the extent such Claims are not paid in full on the Effective Date; (g) making distributions to holders of Allowed Claims in accordance with the Plan and Liquidating Trust Agreement; and (h) such other responsibilities as may be vested in the Liquidating Trustee pursuant to this Plan, the Liquidating Trust Agreement, or an applicable Order(s) of the Bankruptcy Court (including, without limitation, the Confirmation Order), or as may be necessary and proper to carry out the provisions and purpose of this Plan, the Liquidating Trust Agreement, or any applicable Orders.  In addition, after the Effective Date, the Liquidating Trustee shall file with the Bankruptcy Court and submit to the United States Trustee regular post-confirmation quarterly disbursement reports, on or before the twentieth (20th) day of each of January, April, July, and October, as appropriate, until the Chapter 11 Case is closed, converted, or dismissed, whichever happens earlier.

3.  *Powers of the Liquidating Trustee*.  The powers of the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement, and shall include the following: (a) the power to invest funds of the Liquidating Trust, and withdraw, make Distributions, and pay taxes and other obligations owed by the Liquidating Trust from such funds in accordance with this Plan and the Liquidating Trust Agreement; (b) the power to engage and compensate, without prior Bankruptcy Court order or approval, employees and professionals to assist the Liquidating Trustee with respect to its responsibilities; (c) the power to pursue, prosecute, resolve, compromise and settle any Causes of Action against any other Person or Entity without notice to or approval from the Bankruptcy Court, including any and all derivative actions pending or otherwise existing against Debtor as of the Effective Date; (d) the power to object to Claims and Interests, including, without limitation, the power to seek subordination or recharacterization of Claims by objection, motion, or adversary proceeding, as applicable; (e) the power to enforce the Sale Order, the Confirmation Order, or any other Order of the Bankruptcy Court; and (f) such other powers as may be vested in or assumed by the Liquidating Trustee pursuant to this Plan, the Liquidating Trust

Agreement, or any Order of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions or purpose(s) of this Plan.

4.     *Compensation of Liquidating Trustee*.  The Liquidating Trustee shall be compensated as set forth in the Liquidating Trust Agreement.  The Liquidating Trustee shall fully comply with the terms, conditions and rights set forth in this Plan, the Confirmation Order, and the Liquidating Trust Agreement.

5.     *Retention and Payment of Professionals*.  The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals and agents, to assist and advise the Liquidating Trustee in the performance of his, her, or its duties, and to compensate and reimburse expenses of such professionals in accordance with the Liquidating Trust Agreement.

6.     *Initial Liquidating Trust Professionals*.  The Liquidating Trustee shall be Neil Luria, with the assistance of SOLIC.  Pack Law will be retained as special litigation counsel to the Liquidating Trustee for the purposes of pursuing the D&O Claims, the Insider Claims, and certain other Causes of Action to be determined in the Liquidating Trustee's business judgment. The engagement and compensation of professionals for the Liquidating Trustee for services rendered on or after the Effective Date shall be governed in all respects by the terms of this Plan, the Liquidating Trust Agreement, and the Confirmation Order.

7.     *Limitation on Liability and Indemnification of the Liquidating Trustee*.  The Liquidating Trustee and his, her, or its consultants or professionals shall be entitled to indemnification and advancement from the Liquidating Trust against any losses, liabilities, expenses (including reasonable attorneys' fees and disbursements), damages, taxes, suits, or claims that the Liquidating Trustee or its consultants or professionals may incur or sustain by reason of being or having been a Liquidating Trustee or consultants or professionals of the Liquidating Trustee for performing any functions incidental to such service; *provided, however*, the foregoing shall not relieve the Liquidating Trustee or his, her, or its consultants or professionals (the "Trustee Indemnified Parties") from liability which is finally judicially determined to have arisen solely from the gross negligence or willful misconduct of the Trustee Indemnified Parties.

## VI.     MEANS FOR IMPLEMENTATION OF THE PLAN

### A.     The Proposed DOJ Settlement.

Prior to the filing of the Bankruptcy Case, in December 2024, the Debtor instituted a voluntary self-disclosure to the Office of Inspector General ("OIG") for the Department of Health & Human Services regarding its coding issues, including that it may have submitted Hierarchical Condition Categories diagnosis codes that were not clinically supported or otherwise did not meet Medicare coding and payment guidance.

Since that time, and continuing throughout the Bankruptcy Case, the Debtor, through its counsel, has been in contact with OIG and the Department of Justice, Civil Division ("DOJ") regarding the potential overpayments relating to the coding issues.

After significant legal work and discussion, the Debtor and the DOJ have negotiated a resolution of the dispute pertaining to the validity and amount of the DOJ Claim against the Debtor (the "DOJ Settlement Agreement"). The DOJ Settlement Agreement is subject to Bankruptcy Court and final DOJ approval, which is pending.  A copy or detailed summary of the DOJ Settlement Agreement shall be filed with the Plan Supplement.  The material terms of the DOJ Settlement Agreement are set forth below:[4]

      a.     The DOJ Claim shall be treated as an Allowed Claim in the amount of $541.5 million (the "DOJ Settlement Amount"). The DOJ Settlement Amount shall be reduced by any funds returned by the Medicare Advantage Organizations (as defined in the DOJ Settlement Agreement) to CMS in connection with the conduct that was the subject of the Debtor's voluntary self-disclosure before the final distribution in the Bankruptcy Case and will reduce the liability of the Estate.

      b.     The Debtor agrees not to pursue in the bankruptcy case the Risk Adjustment payments (i.e. surplus amounts, incentive payments and other similar payments) withheld by a Medicare Advantage Organization if the Medicare Advantage Organization enters into an agreement by May 1, 2027, with the United States regarding the return of funds the Medicare Advantage Organization received from CMS in connection with the conduct that was the subject of the Debtor's voluntary self-disclosure, unless such agreement with the Medicare Advantage Organization returns an amount that is smaller than the amount of funds withheld from TVH by the Medicare Advantage Organization.

The Debtor believes that the DOJ Settlement Agreement is in the best interest of the Estate and its creditors and represents a significant step forward in concluding the self-disclosure process and maximizing the return to creditors.

On March 20, 2026, the Debtor filed a motion for approval of the DOJ Settlement pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a), which remains pending as of the filing of this Plan.

## B.    The Proposed Developer Settlement.

Debtor has identified potential claims against certain insiders and affiliates of TVH, including the Developer parties, related to the validity and characterization of certain claims and potential avoidance actions, including, without limitation, (i) potential recharacterization and avoidance of payment obligations under the TVHH Line of Credit, (ii) potential challenges to the characterization and priority of the PMA Line of Credit, (iii) potential avoidance of tax distributions paid on account of pass-through tax liability of TVHH and other equity holders of Debtor, (iv) potential avoidance of payments made in connection with transactions involving the Developer, and (iv) potential claims against the Debtor's board of managers and officers for breach of fiduciary duty, among other claims.

---

[4] For the avoidance to doubt, in the event of an inconsistency between this summary and the DOJ Settlement Agreement, the DOJ Settlement Agreement shall control.

On or about March 20, 2026, TVH and the Developer entered into the Developer Settlement, the principal terms of which are summarized as follows:

     a.     <u>PMA Secured Claim</u>.  Debtor agrees and acknowledges that PMA Lender holds a $15 million secured claim, plus reimbursable fees and expenses, on account of the PMA Line of Credit.

     b.     <u>Developer Claims</u>.  Developer agrees to pay the Debtor an aggregate amount of $80 million in settlement of the Developer Claims, which amount shall be satisfied via (i) the waiver of the PMA Secured Claim ($15 million) and (ii) the payment of $65 million in cash (which will be adjusted downward to take into account interest and other obligations on the PMA Secured Claim).

     c.     <u>Released Parties</u>.  Debtor agreed to revise the Plan to incorporate the Developer Settlement and include the Developer and certain related parties within the scope of "Released Parties" under the revised Plan.

     d.     <u>United States Support</u>. The United States agrees to file a statement in support of the resolution of the Developer Claims pursuant to the Developer Settlement.

If approved, the Developer Settlement shall provide the funding necessary to confirm the Plan, fund the liquidating trust, pay administrative claims and "Convenience Class" claims under the Plan on the effective date, or as soon thereafter as practicable, and pay a significant initial dividend to Beneficiaries of the Liquidating Trust (i.e., general unsecured creditors), while enabling the parties to avoid the uncertainty, cost, and delay inherent in adversarial litigation.

On March 20, 2026, the Debtor filed a motion for approval of the Developer Settlement pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a), which remains pending as of the filing of this Plan.

## C.     **Preservation of Right to Conduct Investigations**.

The Plan shall preserve for the Liquidating Trust the right to conduct investigations pursuant to Bankruptcy Rule 2004 as necessary and relevant to the liquidation and administration of the Liquidating Trust Assets, which rights shall vest in the Liquidating Trust on the Effective Date and shall continue until dissolution of the Liquidating Trust.

## D.     **Prosecution and Resolution of Causes of Action and Avoidance Actions**.

From and after the Effective Date, prosecution and settlement of all Causes of Action conveyed to the Liquidating Trust shall be the sole responsibility of the Liquidating Trustee, subject to the terms of the Plan, Plan Confirmation Order, and Liquidating Trust Agreement.  The Liquidating Trustee may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Beneficiaries of the Liquidating Trust.  From and after the Effective Date, with respect to the Liquidating Trust Assets, the Liquidating Trust shall have exclusive rights, powers, and interests of the Estate to pursue, settle, or abandon such Causes of Action as the sole representative of the Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code; *provided* that, resolutions of claims involving more than $1 million shall be subject to Court approval under

Bankruptcy Rule 9019.  Notwithstanding the occurrence of the Effective Date, all Causes of Action that are not expressly released or waived under the Plan or by separate action prior to the Effective Date are reserved and preserved and vest in the Liquidating Trust in accordance with the Plan.

**E.     Effectuating Documents and Further Transactions**.

All documents, agreements and instruments entered into and delivered on or as of the Effective Date contemplated by or in furtherance of the Plan, this Disclosure Statement, Plan Supplement, the Plan Confirmation Order, and any other agreement or document related to or entered into in connection with the Plan, shall become, and shall remain, effective and binding in accordance with their respective terms and conditions upon the parties thereto, in each case without further notice or Order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person (other than as expressly required by such applicable agreement).  The Liquidating Trustee may, and all holders of Allowed Claims receiving Distributions pursuant to the Plan, at the request or direction of the Liquidating Trustee shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**F.     Funding of Liabilities and Distributions**.

On the Effective Date, Debtor shall transfer the Liquidating Trust Assets to the Liquidating Trust.  The Liquidating Trust shall administer the Liquidating Trust Assets and distribute the proceeds thereof to the Beneficiaries of the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement, Plan, and Plan Confirmation Order.

**G.     Release of Liens**.

Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate and Liquidating Trust Assets shall be deemed fully released without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code or other applicable law; *provided, however*, that any tax liens that have been asserted against Debtor or its assets shall not be released until the underlying tax claim has been satisfied.

**H.     Exemption from Securities Laws**.

Beneficial Interests shall not constitute "securities" and under section 1145 of the Bankruptcy Code and, as such, the issuance of Beneficial Interests in the Liquidating Trust under the Plan shall be exempt from registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities.

**I.     Exemption from Certain Taxes and Fees**.

Pursuant to and to the fullest extent permitted by section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of

transfer under the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax or other similar tax or governmental assessment, and upon entry of the Plan Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfer of property without payment of any such tax, recordation fee, or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the Plan Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

J.      **Debtor's Privileges as to Certain Causes of Action**.

Effective as of the Effective Date, all Privileges of Debtor relating to the Liquidating Trust Assets shall be deemed transferred, assigned, and delivered by Debtor to the Liquidating Trust, without waiver or release, and shall vest with the Liquidating Trust. The Liquidating Trustee shall hold and be the beneficiary of all such Privileges and entitled to assert such Privileges.  No such Privilege shall be waived by disclosures to the Liquidating Trustee of Debtor's documents, information, or communications subject to attorney-client privileges, work product protections, or other immunities (including those related to common interest or joint defense with third parties), or protections from disclosure held by Debtor. Debtor's Privileges relating to the Liquidating Trust Assets will remain subject to the rights of third parties under applicable law, including any rights arising from the common interest doctrine, the joint defense doctrine, joint attorney-client representation, or any agreement; *provided, however*, prior to waiving such privilege, the Liquidating Trustee shall provide such third party with any written notice to the extent such notice is required by any joint defense or common interest agreements that might have existed as of the Petition Date.  Nothing contained herein or in the Plan Confirmation Order, nor any professionals of the Estate or Liquidating Trust compliance herewith and therewith, shall constitute a breach of any Privileges of Debtor.

K.      **Insurance Policies**.

Except as otherwise specifically stated herein, nothing in the Plan, the Plan Confirmation Order, or the Liquidating Trust Agreement, alters the rights and obligations of Debtor and its insurers (and third-party claims administrators) under the Insurance Policies or modifies the coverage or benefits provided thereunder or the terms and conditions thereof or diminishes or impairs the enforceability of the Insurance Policies.  On the Effective Date, the rights of Debtor and the Estate under any Insurance Policy to which Debtor or its Estate may be beneficiaries shall vest with the Liquidating Trust.  For the avoidance of doubt, Debtor is deemed to have assumed all of the Insurance Policies prior to such vesting.  Nothing in this provision shall be deemed to be an admission of any fact, liability or other matter whatsoever.

Each applicable insurer under the Insurance Policies is prohibited from, and the Plan Confirmation Order shall include an injunction against, denying, refusing, altering or delaying coverage on any basis regarding or related to the Chapter 11 Case, the Plan or any provision

therein, including the treatment or means of liquidation set out within the Plan for any insured Claims or Causes of Action. For the avoidance of doubt, nothing herein impairs the rights of Debtor, Debtor's directors and officers, or the Liquidating Trust with respect to the Insurance Policies.

**L.      Filing of Monthly and Quarterly Reports and Payment of Statutory Fees**.

Debtor shall file all monthly reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. After the Effective Date, the Liquidating Trustee shall file with the Bankruptcy Court quarterly reports when they become due, in a form reasonably acceptable to the U.S. Trustee. If, after the Effective Date, disbursements, other than those made by the Liquidating Trust, are made in any quarter, the entity making such disbursements shall report the distributions to the Liquidating Trustee for inclusion in the appropriate separate quarterly report.

Debtor and the Liquidating Trustee, as provided herein, shall remain obligated to pay Statutory Fees to the U.S. Trustee until the earliest of the closure, dismissal or conversion of the Chapter 11 Case. The U.S. Trustee shall not be required to file any Administrative Expense Claim in the case and shall not be treated as providing any release under the Plan in connection therewith.

**M.      Completion of Services of Professionals**.

On the Effective Date, the Professionals for Debtor and the Committee shall be deemed to have completed their services to the Debtor's Estate and such Professionals shall be able to file final and interim applications and be paid for reasonable compensation and reimbursement of expenses related thereto allowed by the Bankruptcy Court in accordance with Section V.B. above. Any of such Professionals may be retained by the Liquidating Trustee to represent the Liquidating Trust.

**N.      Operations of Debtor Between the Confirmation Date and the Effective Date**.

During the period from the Confirmation Date through and until the Effective Date, Debtor shall continue to operate as debtor in possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

**VII.      TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.      Assumption and Rejection of Executory Contracts and Unexpired Leases**

Debtor has assumed and assigned to Purchaser certain executory contracts and unexpired leases by and through the Sale. Unless otherwise provided herein, Debtor shall reject any executory contract or unexpired lease not assumed and assigned to Purchaser via the Sale.

**B.      Rejection of Executory Contracts and Unexpired Leases**.

Subject to Section VI.A., this Plan shall constitute a motion to reject all Executory Contracts not previously rejected pursuant to an order of the Bankruptcy Court unless (i) otherwise

set forth in the Plan Supplement or (ii) expressly assumed by Debtor under this Plan, and Debtor shall have no further obligation thereunder. The entry of the Plan Confirmation Order by the Bankruptcy Court shall constitute approval of any such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code and that the rejection thereof is in the best interest of Debtor, its Estate and all parties in interest in the Chapter 11 Case. The foregoing information shall be included in the notice of entry of the Plan Confirmation Order.

Notwithstanding the foregoing, to the extent any Insurance Policies are deemed to be Executory Contracts, (i) Debtor does not seek to reject the Insurance Policies through this general rejection provision and (ii) the Insurance Policies shall be assumed by Debtor pursuant to this Plan. Nothing in the Plan, the Confirmation Order, or the Liquidating Trust Agreement alters, or shall be deemed to alter, the rights and obligations of Debtor (and the Estate) and Debtor's insurers (and third-party claims administrators) under the Insurance Policies or modifies, or shall be deemed to modify, the coverage or benefits provided thereunder or the terms and conditions thereof or diminishes or impairs the enforceability of the Insurance Policies. All of Debtor's rights and its Estate's rights under any Insurance Policy to which Debtor and/or Debtor's Estate may be beneficiaries shall vest with the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries and all of the beneficiaries of such policies.

**C.** **Claims Based on Rejection of Executory Contracts or Unexpired Leases**.

Claims created by the rejection of any Executory Contracts pursuant to this Plan, or the expiration or termination of any Executory Contracts prior to the Effective Date, must be filed with the Bankruptcy Court and served on Debtor no later than thirty (30) days after service of notice of entry of the Plan Confirmation Order by the Bankruptcy Court, which notice shall set forth the deadline to file such Claims. Any Claims arising from the rejection of an Executory Contract for which proofs of Claim are not timely filed will be forever barred from assertion against Debtor, its Estate, the Liquidating Trust, and their respective successors and assigns, and their respective assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. Unless otherwise ordered by the Bankruptcy Court, all timely filed Rejection Damages Claims shall be treated as General Unsecured Claims in Class 5 and shall be subject to the provisions of this Plan.

## VIII. PROVISIONS GOVERNING DISTRIBUTIONS

**A.** **Distribution Record Date**

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Equity Interests as maintained by Debtor or its agents shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Equity Interests. Debtor and the Liquidating Trustee shall have no obligation to recognize an ownership transfer of any Claims or Equity Interests occurring after the Distribution Record Date. Debtor and the Liquidating Trustee, or any party responsible for making Distributions, shall be entitled to recognize and deal for all purposes under the Plan only with those holders of record stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

### B.      Method of Payment

Unless otherwise expressly agreed in writing or provided in this Plan, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank or an electronic wire or ACH transfer.

### C.      No Distribution Pending Allowance

Notwithstanding any other provision of the Plan or the Liquidating Trust Agreement, no Distributions shall be made on account of a Disputed Claim unless and until such Claim is deemed Allowed by Final Order of the Bankruptcy Court.

### D.      Reserve of Cash Distributions

On any date that Distributions are to be made under the terms of the Plan, Debtor or the Liquidating Trustee, or their respective agents, as applicable, shall hold in reserve Cash equal to the amount that would be distributed on such date to holders of Disputed Claims, if each such Disputed Claim were an Allowed Claim.

### E.      Distribution After Allowance

Debtor shall make any and all Distributions paid, or to be paid, on or before the Effective Date.  The Liquidating Trustee shall make any and all Distributions paid, or to be paid, after the Effective Date, including, without limitation, Claims related to Professionals and costs of the Estate, even if the holders of such Claims do not constitute Beneficiaries of the Liquidating Trust.

### F.      Delivery of Distributions

All Distributions under the Plan shall be made by the Claims Agent on or after the Effective Date. The Claims Agent shall not be required to give any bond or surety or other security for the performance of its duties; however, if the Claims Agent is ordered to provide security, the costs of obtaining and maintaining such security shall be borne by the Liquidating Trust.

Except as provided herein, Distributions to holders of Allowed Claims shall be made: (i) at the addresses set forth on the respective proofs of Claim filed by such holders; (ii) at the addresses set forth on any written notices of address changes delivered to the Claims Agent after the date of any related proof of Claim; or (iii) at the address reflected in the Schedules, or, if not reflected in the Schedules, then in other records of Debtor as of the Distribution Record Date, if no proof of Claim is filed and the Liquidating Trustee or Debtor have not received a written notice of a change of address.

If the Distribution to the holder of any Claim is returned to Debtor or the Liquidating Trustee as undeliverable, no further Distributions shall be made to such holder unless and until Debtor or the Liquidating Trustee, as applicable, are notified in writing of such holder's then current address.  The Liquidating Trustee shall retain any undeliverable Distribution(s) until the earlier of (i) such time as a Distribution becomes deliverable and (ii) such undeliverable Distribution becomes an Unclaimed Distribution. Undeliverable Distributions shall revert to the

Liquidating Trust.  The Liquidating Trustee shall not have an obligation to update or correct the contact information for recipients of undeliverable Distributions.

All Distributions on the DOJ Claim shall be made via electronic transfer pursuant to payment instructions provided by the United States Attorney's Office for the Middle District of Florida.

### G.      Fractional Dollars; *De Minimis* Distributions

Notwithstanding any other provision of the Plan to the contrary, (a) Debtor and the Liquidating Trust shall not be required to make Distributions or payments of fractions of dollars, and whenever any Distribution of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars ($0.50) being rounded down; and (b) Debtor and the Liquidating Trust shall have no duty to make a Distribution on account of any Allowed Claim (i) if the aggregate amount of all Distributions authorized to be made on such date is less than $25,000, in which case such Distributions shall be deferred to the next Distribution, (ii) if the amount to be distributed to a holder on the particular Distribution date is less than $100.00, unless such Distribution constitutes the final Distribution to such holder, or (iii) if the amount of the final Distribution to such holder is $50.00 or less; *provided, however*, that the Debtor or the Liquidating Trustee, as applicable, may elect in their sole discretion, to make Distributions even if no duty exists to do so.

### H.      Excess Funds

After final Distributions have been made from the Liquidating Trust in accordance with the terms of the Plan and the Liquidating Trust Agreement, if the amount of remaining Cash in the Liquidating Trust is $15,000 or less, the Liquidating Trustee, may donate such amount to charity; *provided* that the charity shall be unrelated to Debtor, the Committee and its members, the Liquidating Trustee, the Liquidating Trust Advisors, and their respective professionals.

### I.      Unclaimed Distributions

Any Cash or other property to be distributed under the Plan shall revert to the Liquidating Trust if it is not claimed by the Beneficiary within three (3) months after the date of such Distribution.  If such Cash or other property is not claimed on or before such date, the Distribution made to such Beneficiary shall be deemed to be reduced to zero and such returned, undeliverable, or unclaimed Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall be returned to the Liquidating Trust.  All Unclaimed Distributions shall revert to the Liquidating Trust and the intended recipient of such Distribution(s) shall be deemed to have waived and released any and all rights to such Distribution(s) and any other Distribution(s) under the Plan. This provision is not intended to impair the sovereign immunity of any Governmental Unit or limit its right to a Distribution that it is otherwise entitled to under the Plan.

### J.      Set-Off

Except as otherwise provided herein, Debtor or the Liquidating Trustee, as applicable, retains the right to reduce any Claim by way of setoff in accordance with Debtor's books and

records without further Order of the Bankruptcy Court. Rights of setoff and recoupment, if any, held by any Entity or Person are preserved for the purpose of asserting such rights as a defense to any Claims or Causes of Action of Debtor, its Estate, or the Liquidating Trustee, and regardless of whether such Entity or Person is the holder of an Allowed Claim.

### K.      Maximum Recovery and Postpetition Interest

Except as may be expressly provided herein, interest shall not accrue on any Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date. No Claim shall be Allowed to the extent it is for postpetition interest or other similar charges, except to the extent permitted for holders of Secured Claims under section 506(b) of the Bankruptcy Code.

Notwithstanding anything to the contrary in the Plan, no holder of an Allowed Claim shall receive, on account of such Allowed Claim, Distributions in excess of the Allowed amount of such Claim.

### L.      Allocation of Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a Distribution under the Plan comprises indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid prepetition interest.

### M.      Prepayment.

Except as otherwise provided herein or in the Liquidating Trust Agreement or the Plan Confirmation Order, Debtor and the Liquidating Trustee, as applicable, shall have the right to prepay, without penalty, all or any portion of an Allowed Claim.

### N.      Claims Paid or Payable by Third Parties

#### i.   Claims Paid by Third Parties

If a holder of a Claim receives a payment or other satisfaction of its Claim other than through the Debtor and/or the Liquidating Trustee on account of such Claim, such Claim shall be reduced by the amount of such payment or satisfaction without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, and if the Claim was paid or satisfied in full other than through the Debtor and/or the Liquidating Trustee, then such Claim shall be disallowed and any recovery in excess of a single recovery in full shall be paid over to the Liquidating Trustee without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court. To the extent a holder of a Claim receives a distribution on account of such Claim and receives payment or satisfaction from a party that is not the Debtor and/or the Liquidating Trustee on account of such Claim, such holder shall, within fourteen (14) days of receipt thereof, repay or return the Distribution to the Debtor or Liquidating Trustee (as applicable), to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

    ii.   Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's Insurance Policies until the holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policies. To the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim, then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

## IX.    PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

### A.    Allowance of Claims

After the Effective Date, the Liquidating Trustee shall have and retain any and all rights and defenses Debtor had immediately before the Effective Date. No Claim shall be deemed an Allowed Claim unless and until such Claim is Allowed under the Plan or under any Order entered in the Chapter 11 Case before the Effective Date (including the Confirmation Order), when such order becomes a Final Order.

### B.    No Distributions Pending Allowance

If an objection to a Claim, or a portion thereof, is filed, no Distribution(s) shall be made on account of such Claim, or the applicable portion thereof, unless and until such Disputed Claim becomes an Allowed Claim.

### C.    Claims Administration

Except as otherwise specifically provided in the Plan, after the Effective Date, the Liquidating Trustee shall have the authority to: (1) file, withdraw, or litigate to judgment objections to Claims; (2) settle, compromise, or otherwise resolve Disputed Claims without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the applicable Claims Register to reflect any settlements, compromises or Final Orders resolving Disputed Claims or the fact that any Claim has been paid or satisfied, or that any Proof of Claim that has been amended or superseded, cancelled or otherwise expunged (including pursuant to the Plan), in each case without any further notice to or action, order, or approval by the Bankruptcy Court; *provided, however,* the Liquidating Trustee may not resolve any objection(s) to Assumed General Unsecured Claim(s) without the prior consent of Purchaser. The Liquidating Trustee shall be primarily responsible for reconciling and objecting to General Unsecured Claims in accordance with the Plan.

### D.    Estimation of Claims

Before or after the Effective Date, Debtor or the Liquidating Trustee, as applicable, may, at any time and for any reason, request that the Bankruptcy Court estimate any Claim that is disputed, contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has

ruled on any such objection.  The Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to such Claim or during the appeal relating to such objection.

Notwithstanding any provision in the Plan, a Claim that has been expunged from the claims register, but that either is subject to appeal or that otherwise has not yet been resolved by a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that any contingent, unliquidated, or Disputed Claim is estimated, or deemed estimated, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of Distributions), and Debtor or the Liquidating Trustee, as applicable, may elect to pursue a supplemental proceeding to object to any allowance of such Claim.

### E.  Time to File Objections to Claims

Debtor or Liquidating Trustee, as applicable, to the extent permitted pursuant to this Plan or section 502(a) of the Bankruptcy Code, shall file and serve objections to any Claims no later than the Claims Objection Deadline; *provided, however*, that upon notice and hearing, the Court may extend the Claims Objection Deadline upon a showing that such extension serves the best interests of the Estate or Liquidating Trust, as applicable; *provided* that any motion to extend the Claims Objection Deadline shall be filed on or before the Claims Objection Deadline then in effect. The filing of a motion to extend the Claims Objection Deadline shall be deemed to automatically extend the Claims Objection Deadline until such motion is resolved by Final Order of the Bankruptcy Court.

### F.  Disallowance of Claims

Any Claims held by Persons from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action against that Person have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, from that Person have been turned over or paid to the Liquidating Trustee. If an action to recover any avoidable transfer is commenced prior to the Effective Date, the Claims held by such Persons shall be deemed estimated at zero dollars ($0.00).

### G.  Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as practicable after the date that the order allowing a Disputed Claim becomes a Final Order, the Liquidating Trustee shall provide to the holder of such Claim the Distribution (if any) to which such holder is entitled, without interest, dividends, or accruals to be paid on account of such Claim unless required under applicable law.

## X.      RELEASES, INJUNCTION AND RELATED PROVISIONS

### A.      Discharge of Debtor

Pursuant to section 1141(d)(3) of the Bankruptcy Code, Debtor shall not be entitled to a discharge.

### B.      Releases by Debtor

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is hereby released by Debtor, its Estate, the Liquidating Trustee, and the Liquidating Trust (as applicable) from any and all Claims, Causes of Action, Avoidance Actions, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever (including any derivative claims, asserted or assertable on behalf of Debtor, its Estate, the Liquidating Trustee, or the Liquidating Trust), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, accrued or unaccrued, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims, asserted or that could be asserted on behalf of Debtor, that Debtor, its Estate, the Liquidating Trustee, or the Liquidating Trust (as applicable), that such Person or its estate, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Equity Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, Debtor (including the management, ownership, or operation thereof), the Estate, Debtor's in- or out-of-court restructuring efforts, Debtor's intercompany transactions, any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between Debtor and any Released Party, the restructuring of any Claim or Equity Interest before or during the Chapter 11 Case, or any restructuring, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Plan Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan Documents and any related agreements, instruments, and other documents, the Chapter 11 Case, the filing of the Chapter 11 Case, the pursuit of confirmation, the pursuit of consummation, the solicitation of votes with respect to the Plan, the administration and implementation of the Plan, including the issuance or distribution of any property pursuant to the Plan, the Plan Documents, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in this subsection do not release (i) any post-Effective Date obligations of any Person or Entity under the Plan, including any such obligations created in connection with the restructuring, or (ii) any Preserved Claims and Causes of Action, including, but not limited to, (a) Insider Claims, (b) D&O Claims, (c) any claims against any person or party (including third party professionals)**

relating to the DOJ Claims, any D&O Claim, or any Insider Claim, and (d) the Payor Debtor Claims; *provided, however,* that the preceding limitation shall not apply to any Claims, Causes of Action, Avoidance Actions, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever resolved by or through the Developer Settlement (if approved), which shall be entitled to the full scope of releases, waivers, and other rights and protections afforded by this subsection.  Nothing in this subsection shall be deemed to release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be solely the result of such Released Party's gross negligence, fraud or willful misconduct.

Entry of the Plan Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by Debtor set forth in this subsection, which includes by reference each of the related provisions and definitions contained herein, and, furthermore, shall constitute the Bankruptcy Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims and Causes of Action released by such releases; (3) in the best interests of Debtor and the Estate; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to Debtor or the Estate asserting any Claim or Cause of Action released pursuant to such releases.

C.      **Releases by the Releasing Parties**.

As of the Effective Date, each Releasing Party hereby releases Debtor, the Estate, and Released Party from any and all Claims, Causes of Action, Avoidance Actions, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever (including any derivative claims, asserted or assertable on behalf of Debtor, the Estate, the Liquidating Trustee, or the Liquidating Trust), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, accrued or unaccrued, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, that such Releasing Party or its estate, affiliates (excluding the Debtor's affiliates), heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Equity Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, Debtor (including the management, ownership, or operation thereof), the Estate, Debtor's in- or out-of-court restructuring efforts, the Debtor's intercompany transactions, any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any security of Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between Debtor and any Released Party, the restructuring of any Claim or Equity Interest before or during the Chapter 11 Case, or any restructuring, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Plan Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan Documents and any related agreements, instruments, and other documents, the Chapter 11

Case, the filing of the Chapter 11 Case, the process and approval of Sale, the pursuit of Plan confirmation, the pursuit of consummation of the Plan, the solicitation of votes with respect to the Plan, the administration and implementation of the Plan, including the issuance or distribution of any property pursuant to the Plan, the Plan Documents, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in this subsection do not release (i) any post-Effective Date obligations of any Person or Entity under the Plan, including any such obligations created in connection with the restructuring, or (ii) any Preserved Claims and Causes of Action; *provided, however,* that the preceding limitation shall not apply to any Claims, Causes of Action, Avoidance Actions, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever resolved by or through the Developer Settlement (if approved), which shall be entitled to the full scope of releases, waivers, and other rights and protections afforded by this subsection.  Nothing in this subsection shall be deemed to release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be solely the result of such Released Party's gross negligence, fraud or willful misconduct.

Entry of the Plan Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth in this Subsection, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims and Causes of Action released by such releases; (3) in the best interests of Debtor and the Estates; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan and the restructuring; and (7) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to such releases.

D.    Exculpation.

The Exculpated Parties shall neither have nor incur any liability to any Person or Entity, including the Exculpated Parties, for any and all claims, causes of action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances taking place or arising during the Exculpation Timeframe related in any way to the Liquidating Trust Agreement, Chapter 11 Case, the Disclosure Statement, the Plan, or any other Plan Document, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the post-petition debtor-in-possession financing approved by the Bankruptcy Court, or any other contract, instrument, release or other agreement or document created or entered into in connection with this Plan, including, without limitation, those that Debtor, Liquidating Trustee, or any holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for or on behalf of any of Debtor or the Estate; *provided, however*, that the foregoing provisions shall have no

**effect on the liability of any Exculpated Party that solely results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted gross negligence, fraud, a violation of criminal law, or willful misconduct.  Notwithstanding anything provided herein, the foregoing provisions of this subsection shall have no effect on the liability of any Person or Entity that is solely the result of actions or omissions that occurred prior to or after the Exculpation Timeframe or the rights of any Person or Entity to enforce the Plan or other agreements or documents delivered under or in connection with the Plan.**

### E.        Preservation of Causes of Action

### 1.   Vesting of Causes of Action

Except as otherwise provided in this Plan or the Plan Confirmation Order, in accordance with section 1123(b)(3) of the Bankruptcy Code, any and all Causes of Action and Avoidance Actions that are Liquidating Trust Assets are reserved for, assigned to, and shall become property of the Liquidating Trust, and the Liquidating Trustee shall be vested with any and all rights and standing to commence, prosecute, and resolve such Causes of Action, on the Effective Date; *provided, however*, that any Cause of Action or Avoidance Action settled or otherwise resolved prior to the Effective Date shall not vest in the Liquidating Trust, except to the extent that the settled or resolved Cause of Action or Avoidance Action includes payments over time, then such payments shall vest in the Liquidating Trust.

Except as otherwise provided in this Plan, Plan Confirmation Order or the Liquidating Trust Agreement, after the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute, abandon, settle, or compromise any Causes of Action conveyed to the Liquidating Trust, in its sole discretion and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in any adversary proceeding.

### 2.   Preservation of All Causes of Action Not Expressly Settled or Released

Unless a Cause of Action against any Person or Entity is expressly waived, relinquished, released, compromised, or settled in this Plan or any Final Order (including the Plan Confirmation Order), Debtor expressly reserves such Cause of Action, including all Causes of Action to be transferred by Debtor to the Liquidating Trust pursuant to this Plan and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata,* collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Plan Confirmation Order or Effective Date based on the Disclosure Statement, this Plan or the Plan Confirmation Order or any other Final Order (including the Plan Confirmation Order).  In addition, the Liquidating Trust reserves the right to pursue or adopt any claims or causes of action alleged in any lawsuit in which Debtor or the Committee is a defendant or an interested party, against any Person or Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.  Furthermore, in the pursuit of an Avoidance Action, Debtor, the Liquidating Trust, the Liquidating Trustee, and/or their assignees shall certify in writing in any demand, claim, complaint, and other effort to collect on an Avoidance Action to compliance with section 547(b) of the Bankruptcy Code.

The failure of Debtor to list a claim, right, cause of action, suit or proceeding shall not constitute a waiver or release by Debtor of such claim, cause of action, right of action, suit or proceeding.  IT IS THE EXPRESSED INTENTION OF THE PLAN TO PRESERVE RIGHTS, CLAIMS, AND CAUSES OF ACTION OF THE DEBTOR AND THE ESTATE, WHETHER NOW KNOWN OR UNKNOWN, FOR THE BENEFIT OF THE LIQUIDATING TRUST AND THE DEBTOR'S CREDITORS. **No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Causes of Action against them as any indication that the Liquidating Trustee will not pursue any available Causes of Action against them.**

Notwithstanding the foregoing, Debtor has made a good faith effort to identify and disclose all known Causes of Action.  A schedule identifying Debtor's known Causes of Action to be transferred to and retained by the Liquidating Trust shall be attached to the Plan Supplement.

F.      **Injunction**.

**From and after the Effective Date and except as otherwise set forth in the Plan or the Plan Confirmation Order, all Persons and Entities are permanently enjoined from commencing or continuing in any manner against Debtor, the Committee or its members, the Released Parties, the Liquidating Trust or the Liquidating Trustee, or their respective predecessors, successors, and assigns, current and former shareholders, affiliates, subsidiaries, principals, employees, agents, officers, directors, managers, consultants, limited partners, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants, in each case in their capacity as such, and their respective assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any claim, demand, liability, obligation, debt, right, cause of action, interest or remedy released or to be released pursuant to the Plan or the Plan Confirmation Order.**

**Except as otherwise specifically provided in the Plan or the Plan Confirmation Order, all Persons who have held, hold, or may hold Claims against or Equity Interests in Debtor and any successors, assigns or representatives of such Person shall be precluded and permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any Claim, action or other proceeding of any kind against any of the assets to be distributed under the Plan, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order with respect to any of the assets to be distributed under the Plan, and (c) creating, perfecting or enforcing any encumbrance of any kind with respect to any of the assets to be distributed under the Plan.  Except as otherwise expressly provided for in this Plan, with respect to obligations issued pursuant to this Plan, or to the extent that a permissible right of subrogation is asserted with respect to a timely filed proof of claim, all Persons are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest satisfied and released hereby, from: (i) commencing or continuing in any manner any action or other proceeding of any kind against any of the Liquidating Trust or the Liquidating Trustee, or their successors and assigns, and their assets and properties; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any of the Liquidating Trust or the Liquidating Trustee, their successors and assigns, and their assets and properties; (iii) creating, perfecting, or enforcing any encumbrance of any kind against any of the**

**Liquidating Trust or the Liquidating Trustee, or the property or estate of the Liquidating Trust; (iv) asserting any right of subrogation against any of the Liquidating Trust or the Liquidating Trustee, or against the property or estate of any of the Liquidating Trust; or (v) commencing or continuing in any manner any action or other proceeding of any kind in respect of any claim or equity interest or cause of action released or settled hereunder.**

**Notwithstanding any provision in this Plan or the Plan Confirmation Order to the contrary, nothing contained in this Plan or the Plan Confirmation Order shall (i) extinguish, impact, or release any right of setoff, recoupment, or subrogation of any kind (a) held by any Creditor which is asserted in a timely filed proof of claim or objection to this Plan, or pursuant to section 503(b)(1)(d) of the Bankruptcy Code, or (b) that is or may be asserted as an affirmative defense or other defense to a Cause of Action or Claim asserted by Debtor or the Liquidating Trust against such creditor or vendor; or (ii) affect the applicability of 26 U.S.C. § 7421(a).**

**Notwithstanding any provision in this Plan or the Plan Confirmation Order, the United States is not enjoined or barred by this subsection but shall be bound by the Plan and Plan Confirmation Order as against the Liquidating Trustee and Liquidating Trust with respect to any Claim of the United States that arose prior to the Effective Date.**

### G.      Exclusions from Releases

Notwithstanding anything contained in this Article X, except to the extent of the Released Parties, no release or exculpation shall be granted to (i) any current or former officers, managers or directors; (ii) any current or former statutory or non-statutory insiders; (iii) the Prepetition Secured Lender; (iv) any person or entity who is subject to any Liquidating Trust Claims; and (v) any other affiliated person or entity that the Debtor or the Committee may determine have liability to the Debtor (collectively the "Non-Released Parties"); *provided*, for the avoidance of doubt, that subject to approval of the Developer Settlement, the Developer, or any of them, shall not constitute Non-Released Parties.

### H.      Exclusions and Limitations on Liability.

Notwithstanding anything in this Plan to the contrary, no provision of this Plan or the Plan Confirmation Order, including, without limitation, the exculpation provision contained in Article X.D of this Plan, shall (a) modify, release or otherwise limit the liability of any Person or Entity not specifically released or exculpated hereunder, including, without limitation, any Person or Entity that is otherwise liable under theories of vicarious or other derivative liability or that is a non-Debtor third party guarantor of any obligation of the Debtor, or (b) affect the ability of the Internal Revenue Service to pursue any non-Debtor entity to the extent allowed by non-bankruptcy law for any liabilities that are related to any federal income tax liabilities that owed by Debtor or the Estate.

### I.      Protections Against Discriminatory Treatment

To the maximum extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Persons shall not discriminate against Debtor or the Liquidating Trustee, as applicable, or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with

respect to such a grant against, Debtor or the Liquidating Trustee, as applicable, or another Person with whom Debtor or the Liquidating Trustee, as applicable, have been associated, solely because Debtor has been a debtor under the Bankruptcy Code, was insolvent before the commencement of or during the Chapter 11 Case, or did not pay a debt that is satisfied or discharged hereunder.

### J.  Document Retention

On and after the Plan Effective Date, Debtor or the Liquidating Trustee, or their designee, as applicable, may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented.

### K.  Term of Injunctions or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court in effect on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

### L.  Termination of All Employee and Workers' Compensation Benefits.

Except as otherwise provided in the Liquidating Trust Agreement, all existing employee benefit plans and workers' compensation benefits not previously expired or terminated by Debtor or assigned by Debtor to Purchaser via the Sale will be deemed terminated on the Effective Date.

## XI.  CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

### A.  Conditions Precedent to the Effective Date for the Plan

The following are conditions precedent to the Effective Date of the Plan that must be satisfied or waived (as provided below):

a.  The Plan Confirmation Order, which shall be in a form acceptable to Debtor, shall have been entered by the Bankruptcy Court, and shall become a Final Order;

b.  The Plan Confirmation Order shall be in full force and effect;

c.  The Liquidating Trust Agreement, in a form and substance acceptable to Debtor, shall have been fully executed and the Liquidating Trust shall have been formed;

d.  The final version of all schedules, documents, and Plan exhibits, including a Plan Supplement, shall have been filed;

e.  All actions, agreements, instruments, or other documents necessary to implement the terms and conditions of the Plan are affected or executed and delivered; and

f.      All Liquidating Trust Assets shall have been transferred to and/or vested in the Liquidating Trust.

Notwithstanding the foregoing, Debtor, with the consent of the Committee, may waive the occurrence of any condition precedent to the Effective Date.  Any such written waiver of a condition precedent set forth in this Section may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action, other than proceeding to consummate this Plan.

## B.      Substantial Consummation

On the Effective Date, the Plan shall be deemed substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

## C.      Effect of Failure of Conditions

If the consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any claims by Debtor or any other Person, or any Claims or Interests by any holders thereof; (ii) prejudice in any manner the rights of Debtor, any holder of Claims or Interests, or any other Person; or (iii) constitute an admission, acknowledgment, offer or undertaking by Debtor, any holder of Claims or Interests, or any other Person in any respect.

## XII.   MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

## A.      Modification and Amendments

Subject to the limitations contained in this Plan, Debtor, in consultation with the Committee, reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, and subject to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, to amend or modify this Plan prior to the Effective Date, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code.

## B.      Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan following the solicitation of votes thereon are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation.

## C.      Revocation or Withdrawal of Plan

Debtor reserves the right to revoke or withdraw this Plan, prior to the entry of the Plan Confirmation Order and to file subsequent chapter 11 plans.  If Debtor revokes or withdraws this Plan, or if the Effective Date does not occur within one-hundred and eighty (180) days after entry of the Confirmation Order, then: (i) this Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in this Plan, assumption or rejection of Executory Contracts effected by this Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (iii) nothing contained in this Plan shall: (a) constitute a waiver or release of

any Claims by or against, or any Equity Interests in, Debtor or any other Entity; (b) prejudice or alter in any manner the rights of Debtor or any other Entity; or (c) constitute an admission of any sort by Debtor or any other Entity.

## XIII. RETENTION OF JURISDICTION

After the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case and all Persons and Entities with respect to all matters related to the Chapter 11 Case, Debtor, the Estate, the Liquidating Trust, and this Plan as is legally permissible, including, but not limited to, jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Expense Claim and Professional Fee Claim and the resolution of any objections to the allowance or priority of any Claims or Interests;

2. grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date;

3. resolve any matters related to the assumption, assignment or rejection of any Executory Contract to which Debtor is party or with respect to which Debtor may be liable, and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

4. ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of this Plan and the Liquidating Trust Agreement;

5. hear and determine any motions, adversary proceedings, mediations, contested or litigated matters, applications involving Debtor, and any other matters that may be pending on the Effective Date or instituted by the Liquidating Trust after the Effective Date, including any Liquidating Trust Causes of Action;

6. hear and determine disputes (i) arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, or Liquidating Trust Agreement or (ii) arising out of or related to the issuance of any subpoenas or requests for examination pursuant to Bankruptcy Rule 2004 issued before or after the entry of the Plan Confirmation Order relating to the subject matter of any Causes of Action;

7. enter such orders as may be necessary or appropriate to implement, interpret, enforce or consummate the provisions of this Plan, the Confirmation Order, the Liquidating Trust Agreement and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with this Plan, Plan Supplement or the Disclosure Statement;

8. issue and enforce injunctions and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the Effective Date or enforcement of this Plan, except as otherwise provided in this Plan;

9.  enforce all Orders previously entered by the Bankruptcy Court;

10. resolve any cases, controversies, suits or disputes with respect to the exculpation, injunctions, releases, and other provisions contained in this Plan, and enter such orders as may be necessary or appropriate to implement or enforce all such exculpation, injunction, release and other provisions;

11. enter and implement such orders, as necessary or appropriate, if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

12. resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Plan Confirmation Order, the Liquidating Trust Agreement or any contract, instrument, release, indenture or other agreement or document adopted in connection with this Plan or the Disclosure Statement;

13. enter an order and/or the decree contemplated in Bankruptcy Rule 3022 concluding the Chapter 11 Case; and

14. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code, including any request made under section 505 of the Bankruptcy Code for the expedited determination of any unpaid liability of Debtor for any tax incurred during the administration of the Chapter 11 Case, including any tax liability arising from or relating to the transactions contemplated by the Plan, for tax periods ending after the Petition Date and through the closing of the Chapter 11 Case.

Notwithstanding anything contained herein to the contrary, the Bankruptcy Court shall retain jurisdiction, to the fullest extent permitted by applicable law, to adjudicate Liquidating Trust Causes of Action and to hear and determine disputes concerning Liquidating Trust Causes of Action, including any motions to compromise or settle such Liquidating Trust Causes of Action or disputes relating thereto.  Despite the foregoing, if the Liquidating Trustee chooses to pursue any Liquidating Trust Cause of Action in another court of competent jurisdiction, the Liquidating Trustee will have authority to bring such action.

## XIV.  MISCELLANEOUS PROVISIONS

### A.  Immediate Binding Effect

Subject to Article XI, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Documents shall be immediately effective and enforceable and deemed binding upon Debtor and the Liquidating Trustee, as applicable, and any and all holders of Claims against and Equity Interests in Debtor (irrespective of whether their Claims or Interests are Allowed or whether they have accepted the Plan), all Persons that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Person acquiring property under the Plan, and any and all non-Debtor counterparties to the Executory Contracts.

**B.      Additional Documents**

On or before the Effective Date, Debtor may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

**C.      Payment of Statutory Fees**

All fees due and payable by the Estate pursuant to section 1930 of Title 28 of the U.S. Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the U.S. Code to the extent applicable ("Quarterly Fees") prior to the Effective Date shall be paid by Debtor on the Effective Date.  After the Effective Date, the Liquidating Trustee shall be responsible for paying Quarterly Fees when due and payable.  Debtor and the Liquidating Trustee, as applicable, shall remain obligated to pay Quarterly Fees to the U.S. Trustee until the earliest of the Chapter 11 Case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code.  The U.S. Trustee shall not be required to file any Administrative Expense Claim in the Chapter 11 Case, and shall not be treated as providing any release under the Plan.

**D.      Successors and Assigns**

The rights, benefits, and obligations of any Person or Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

**E.      Notices**

Any pleading, notice or other document required by this Plan to be served on or delivered to Debtor, the Committee, or Liquidating Trustee shall be sent by first class U.S. mail, postage prepaid to:

| To Debtor: | The Villages Health System, LLC c/o Neil F. Luria<br>SOLIC Capital Advisors<br>425 W. New England Avenue, Suite 300<br>Winter Park, FL 32789<br>nluria@soliccapital.com<br><br>With a copy to:<br><br>Baker & Hostetler LLP<br>Attn: Elizabeth A. Green (egreen@bakerlaw.com)<br>Jimmy D. Parrish (jparrish@bakerlaw.com)<br>Andrew Layden (alayden@bakerlaw.com)<br>Michael T. Delaney (mdelaney@bakerlaw.com)<br>Benjamin R. Taylor (brtaylor@bakerlaw.com)<br>200 South Orange Avenue<br>Suite 2300<br>Orlando, FL  32801-3432 |
| --- | --- |
| To Committee: | PACK LAW<br>Attn: Joseph A. Pack (joe@packlaw.com)<br>Robert Burns (robert@packlaw.com)<br>Jessey J. Krehl (jessey@packlaw.com)<br>Lynn Sherman (weltersherman@icloud.com)<br>51 N.E. 24th Street, Suite 108<br>Miami, Florida 33137<br>Telephone: (305) 916-4500 |
| To the Liquidating Trust: | To be provided in the Plan Supplement. |

### F. Entire Agreement

Except as otherwise indicated, the Plan, the Plan Supplement, and other Plan Documents supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on the subjects covered thereby, all of which have become merged and integrated into the Plan and the Confirmation Order; *provided* that such integration shall not supersede, nullify, alter or otherwise affect any order of the Court or any agreements or rights approved or conferred by order of the Court, including, without limitation, any settlement agreements approved by the Court prior to the Effective Date.

### G. Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan, as applicable, as if set forth in full in the Plan.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the relevant portion of the Plan shall control.

### H.      Non-Severability of Plan Provisions

The provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable, other than as described below. The Confirmation Order shall constitute a judicial determination, and shall provide, that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the consent of Debtor; and (iii) non-severable and mutually dependent.

### I.      Closing of Chapter 11 Case

Debtor shall, promptly after the full administration of the Chapter 11 Case, and with the consent of the Liquidating Trustee, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order necessary to close the Chapter 11 Case.

### J.      Conflicts

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other Order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.  In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

### K.      Rates

The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Plan Effective Date.

###

Dated: March 20, 2026

Respectfully submitted,

*/s/  Danielle L. Merola*
Elizabeth A. Green (FL Bar No. 600547)
Jimmy D. Parrish (FL Bar No. 526401)
Andrew V. Layden (FL Bar No. 86070)
**BAKER & HOSTETLER LLP**
200 South Orange Avenue
Suite 2300
Orlando, Florida 32801-3432
Telephone:  407.649.4000
Facsimile:   407.841.0168
Email:  egreen@bakerlaw.com
         jparrish@bakerlaw.com
         alayden@bakerlaw.com

Michael T. Delaney (admitted *pro hac vice*)
**BAKER & HOSTETLER LLP**
Key Tower
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Telephone:  216.621.0200
Facsimile:   216.696.0740
Email: mdelaney@bakerlaw.com

*Counsel for the Debtor and Debtor in Possession*