**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| In re: | Case No.: 6:25-bk-04156 |
| THE VILLAGES HEALTH SYSTEM, LLC,[1] | Chapter 11 |
| Debtor. | |

**DISCLOSURE STATEMENT FOR THE**
**FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION**
**FOR THE VILLAGES HEALTH SYSTEM, LLC**

---

**THIS IS A SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN IN ACCORDANCE WITH SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE, 11 U.S.C. § 101 *ET SEQ.* THIS DISCLOSURE STATEMENT HAS BEEN CONDITIONALLY APPROVED BY THE BANKRUPTCY COURT. A HEARING ON THE ADEQUACY OF THIS DISCLOSURE STATEMENT WILL BE HELD FOLLOWING SOLICITATION AND CONCURRENTLY WITH CONFIRMATION OF THE DEBTOR'S CHAPTER 11 PLAN. THE INFORMATION IN THIS DISCLOSURE STATEMENT IS SUBJECT TO CHANGE. THIS DISCLOSURE STATEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

---

Dated: March 20, 2026

Respectfully submitted,

<u>/s/   Danielle L. Merola</u>

| | |
|---|---|
| Elizabeth A. Green (FL Bar No. 600547) | Michael T. Delaney (admitted *pro hac vice*) |
| Jimmy D. Parrish (FL Bar No. 526401) | **BAKER & HOSTETLER LLP** |
| Andrew V. Layden (FL Bar No. 86070) | Key Tower |
| Danielle L. Merola (FL Bar No. 120120) | 127 Public Square, Suite 2000 |
| **BAKER & HOSTETLER LLP** | Cleveland, Ohio 44114 |
| 200 South Orange Avenue, Suite 2300 | Telephone:  216.621.0200 |
| Orlando, Florida 32801-3432 | Facsimile:   216.696.0740 |
| Telephone:  407.649.4000 | Email: mdelaney@bakerlaw.com |
| Facsimile:   407.841.0168 | |
| Email: egreen@bakerlaw.com | |
|      jparrish@bakerlaw.com | |
|      alayden@bakerlaw.com | *Counsel for the Debtor and Debtor in Possession* |

---

[1] The address of the Debtor is 425 W. New England Ave, Suite 300, Winter Park, FL 32789.. The last four digits of the Debtor's federal tax identification number is 6436.

**DISCLAIMER**

This Disclosure Statement has been prepared in accordance with section 1125 of the Bankruptcy Code, Rules 3016 and 3017 of the Federal Rules of Bankruptcy Procedure, and the Local Rules for the United States Bankruptcy Court for the Middle District of Florida, and not in accordance with federal or state securities law or other applicable non-bankruptcy law. Persons or Entities trading in or otherwise purchasing, selling, or transferring Claims against Debtor should evaluate this Disclosure Statement considering the purpose for which it was prepared.

To ensure compliance with IRS circular 230, holders of Claims and Equity Interests are hereby notified that: (a) any discussion of U.S. federal tax issues contained or referred to in the Plan or this Disclosure Statement is not intended or written to be used, and cannot be used, by holders of Claims for the purpose of avoiding penalties that may be imposed on them under the Internal Revenue Code; (b) such discussion is written in connection with the promotion or marketing by Debtor of the transactions or matters addressed herein; and (c) holders of Claims should seek advice based on their particular circumstances from an independent tax advisor.

There has been no independent audit of the financial information contained in the Plan or this Disclosure Statement, except as expressly indicated.  The Plan and this Disclosure Statement were compiled from information obtained from numerous sources believed to be accurate to the best of Debtor's knowledge, information, and belief.

The Plan and this Disclosure Statement were not filed with the Securities and Exchange Commission or any state authority.  As such, neither the Securities and Exchange Commission nor any state authority has passed upon the accuracy, adequacy, or merits of the Plan or transactions contemplated therein.  Nothing contained in the Plan or Disclosure Statement, or in any materials related to the solicitation of votes to accept or reject the Plan, constitutes an offer to sell or the solicitation of an offer to buy securities in any state or jurisdiction in which such offer or solicitation is not authorized.

The Plan and Disclosure Statement contain "forward looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995.  Such statements consist of any statement other than a recitation of historical fact and can be identified by the use of forward-looking terminology such as "may," "expect," "anticipate," "estimate," or "continue" or the negative thereof or other variations thereon or comparable terminology.  The reader is cautioned that all forward looking statements are necessarily speculative and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward looking statements.

Any projected recoveries to holders of Claims or Equity Interests forecast in the Plan or this Disclosure Statement are based upon the analyses performed by Debtor and its advisors. Although Debtor and its advisors have made every effort to verify the accuracy of the information presented herein, Debtor and its advisors cannot make any representations or warranties regarding the accuracy of the information.

Nothing stated herein shall be deemed or construed as an admission of any fact or liability by any party or be admissible in any proceeding involving Debtor or any other party.  The

statements contained herein are made as of the date hereof unless another time is specified. Nothing contained in the Plan or Disclosure Statement shall be deemed or construed to create any implication or assurance that the information contained herein is correct at any time after the date hereof.

This Disclosure Statement, the Plan, the Plan Supplement, and any attachments, exhibits, supplements, and annexes hereto or thereto (collectively, the "Plan Documents") are the *only* documents to be used in connection with the solicitation of votes on the Plan. The Plan Documents may not be relied upon for any purpose other than to determine whether and how to vote on the Plan. Neither the Bankruptcy Court nor Debtor has authorized any person to give any information or to make any representation in connection with the Plan or the solicitation of votes on the Plan, except as contained in the Plan Documents. Any information or representation obtained from any other source may be incomplete, inaccurate, or false, and may not be relied upon in evaluating or determining whether and how to vote on the Plan.

**IMPORTANT NOTICES**

**THIRD PARTY RELEASE.**

**ARTICLE X OF THE PLAN CONTAINS A THIRD-PARTY RELEASE THAT MAY AFFECT THE RIGHTS OF THE RELEASING PARTIES . THIS RELEASE IS DISCUSSED FURTHER IN ARTICLE XI OF THIS DISCLOSURE STATEMENT.VOTING. THE DEADLINE TO VOTE TO ACCEPT OR REJECT THE PLAN IS 4:00 P.M. (PREVAILING EASTERN TIME), ON [•], 2026 (THE "VOTING DEADLINE"), UNLESS EXTENDED BY DEBTOR, IN ITS DISCRETION, OR ORDER OF THE BANKRUPTCY COURT. HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN MUST SUBMIT THEIR BALLOT IN ACCORDANCE WITH THE INSTRUCTIONS SET FORTH HEREIN AND ON THE BALLOT SO THAT DEBTOR ACTUALLY RECEIVES THE BALLOT BEFORE THE VOTING DEADLINE.**

**UNTIMELY BALLOTS AND BALLOTS SUBMITTED BY UNAPPROVED MEANS SHALL NOT BE COUNTED. ANY QUESTIONS REGARDING THE PROCEDURES FOR VOTING ON THE PLAN MAY BE ADDRESSED TO: (I) TEAMVILLAGESHEALTH@STRETTO.COM; (II) THE VILLAGES HEALTH SYSTEM, LLC BALLOT PROCESSING C/O STRETTO, 410 EXCHANGE, SUITE 100, IRVINE, CA 92602; OR (III) CALLING THE BALLOT AGENT'S TOLL-FREE INFORMATION LINE WITH RESPECT TO THE DEBTOR AT (855) 951-2698.**

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ AND CAREFULLY CONSIDER THIS ENTIRE DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN ARTICLE XVI BELOW, THE PLAN, AND THE PLAN SUPPLEMENT BEFORE SUBMITTING BALLOTS IN RESPONSE TO SOLICITATION OF THE PLAN.**

**RECOMMENDATION BY THE DEBTOR.**

**VOTE TO ACCEPT THE PLAN.**

**DEBTOR BELIEVES THAT THE PLAN IS FAIR AND EQUITABLE AND SERVES THE BEST INTERESTS OF CREDITORS AND OTHER PARTIES IN INTEREST BY (I) MAXIMIZING THE VALUE OF THE ESTATE AND ITS ASSETS FOR THE BENEFIT OF PARTIES IN INTEREST AND (II) PRESERVING CRITICAL SERVICES TO DEBTOR'S PATIENTS AND OTHER STAKEHOLDERS.**

**DEBTOR, THEREFORE, STRONGLY RECOMMENDS THAT HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN VOTE TO ACCEPT THE PLAN. TO VOTE ON THE PLAN, HOLDERS OF CLAIMS MUST SUBMIT A BALLOT IN ACCORDANCE WITH THE VOTING PROCEDURES SUCH THAT THE BALLOT IS ACTUALLY RECEIVED BY DEBTOR NO LATER THAN <u>4:00 P.M. (PREVAILING EASTERN TIME) ON [•], 2026</u>.**

<u>**QUESTIONS AND ADDITIONAL INFORMATION**</u>

If you would like to obtain copies of this Disclosure Statement, the Plan, the Plan Supplement, or any of the documents attached hereto or referenced herein, or have questions about the solicitation and voting process or Debtor's Chapter 11 Cases generally, please contact the Claims Agent by (i) accessing the Debtor's restructuring website at https://cases.stretto.com/thevillageshealth/; (ii) writing to The Villages Health System, LLC Ballot Processing c/o Stretto, Inc, 410 Exchange, Suite 100, Irvine, CA 92602; or (iii) calling the Claims Agent's information line with respect to the Debtor at (855) 951-2698.

Please be aware that Debtor and its professionals are unable to advise any particular creditor or other party in interest regarding the applicability of the Plan to any particular Claim or Equity Interest or the implications thereof to the holder of any particular Claim or Equity Interest. If any creditor or other party in interest has questions regarding the effect or implications of the Plan, such party is encouraged to consult with its counsel.

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ............................................................................................ 15

II.     DEFINED TERMS AND RULES OF INTERPRETATION........................................ 47

        A.      Defined Terms............................................................................... 47
        B.      Rules of Interpretation .................................................................. 1518
        C.      Computation of Time .................................................................... 1619
        D.      Governing Law .............................................................................. 1619
        E.      Reference to Monetary Figures...................................................... 1619
        F.      Controlling Document ................................................................... 1619

III.    BACKGROUND ............................................................................................. 1720

        A.      Nature and History of Debtor's Businesses .................................... 1720
        B.      Debtor's Prepetition Indebtedness ................................................ 1721
        C.      Events Precipitating Bankruptcy.................................................... 1821
        D.      The Chapter 11 Case ..................................................................... 1922
            1.  Appointment of the Creditors' Committee .................................... 1922
            2.  Claims Process and Bar Date...................................................... 1922
            3.  Postpetition Financing and Cash Collateral Orders ...................... 2022
            4.  Sale of Substantially All the Debtors' Assets................................ 2023
            5.  The Proposed DOJ Settlement .................................................... 2123

IV.     CONFIRMATION AND VOTING........................................................................ 2324

        A.      Plan Confirmation Hearing............................................................ 2324
        B.      Requirements for Plan Confirmation .............................................. 2425
        C.      Best Interests of the Creditors Test ............................................... 2425
        D.      Plan Feasibility............................................................................. 2526
        E.      Classification of Claims and Interests............................................. 2526
        F.      Impaired Claims or Interests ......................................................... 26
        G.      Eligibility to Vote on the Plan ....................................................... 2627
        H.      Voting Procedure and Deadlines .................................................... 2627
        I.      Acceptance of the Plan.................................................................. 2728
        J.      Elimination of Vacant Classes ....................................................... 2728

V.      THE PLAN; TREATMENT OF CLAIMS AND EQUITY INTERESTS ....................... 28

        A.      Treatment of Unclassified Claims................................................... 28
            i.   Administrative Expense Claims.................................................... 28
            ii.  Professional Fee Claims.............................................................. 2829
            iii. Priority Tax Claims .................................................................... 2930
            iv.  United States Trustee Statutory Fees ........................................... 30
        B.      Classification of Claims and Interests; Estimated Recoveries......... 3031

C. Treatment of Claims and Interests ........................................................ 31

VI. PROVISIONS GOVERNING THE LIQUIDATING TRUST........................................ 35

 A. Appointment of the Liquidating Trustee............................................... 35
 B. Creation of the Liquidating Trust.......................................................... 35
 C. Beneficiaries of the Liquidating Trust .................................................. 36
 D. Vesting and Transfer of Assets to the Liquidating Trust.................................. 3637
 E. Powers and Duties of the Liquidating Trust and Liquidating Trustee ................. 37
  i. General Powers of the Liquidating Trustee ......................................... 37
  ii. Books and Records ........................................................................ 38
  iii. Investments of Cash...................................................................... 38
  iv. Costs and Expenses of Administration of the Liquidating Trust ..................... 3839
  v. Reporting...................................................................................... 3839
 F. Post-Effective Date Notice ................................................................... 39
 G. Federal Income Tax Treatment of the Liquidating Trust for the Liquidating
  Trust Assets; Preparation and Filing of Tax Returns for Debtor........................... 39
 H. Term of Liquidating Trust...................................................................... 40
 I. Limitation of Liability of the Liquidating Trustee....................................... 4041

VII. MEANS FOR IMPLEMENTATION OF THE PLAN........................................................ 41

 A. Proposed DOJ Settlement ..................................................................... 41
 B. Preservation of Right to Conduct Investigations ..................................... 41
 C. Prosecution and Resolution of Causes of Action and Avoidance Actions ............ 41
 D. Effectuating Documents and Further Transactions................................... 42
 E. Funding of Liabilities and Distributions ................................................ 42
 F. Release of Liens................................................................................... 42
 G. Exemption from Securities Laws............................................................ 42
 H. Exemption from Certain Taxes and Fees ............................................... 42
 I. Debtor's Privileges as to Certain Causes of Action ................................. 43
 J. Insurance Policies ............................................................................... 43
 K. Filing of Monthly and Quarterly Reports and Payment of Statutory Fees ........... 44
 L. Completion of Services of Professionals ............................................... 44
 M. Operations of Debtor Between the Confirmation Date and the Effective
  Date ................................................................................................... 44
 N. Settlement of the DOJ Claim ................................................................ 44

VIII. PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN ..................... 4544

 A. Distribution Record Date ..................................................................... 4544
 B. Method of Payment.............................................................................. 45
 C. No Distribution Pending Allowance ...................................................... 45
 D. Reserve of Cash Distributions .............................................................. 45
 E. Distribution Authorization .................................................................... 45
 F. Delivery of Distributions ...................................................................... 45
 G. Fractional Dollars; De Minimis Distributions ........................................ 46

| | | | |
|---|---|---|---|
| H. | Excess Funds | | 46 |
| I. | Unclaimed Distributions | | 47~~46~~ |
| J. | Set-Off | | 47~~46~~ |
| K. | Maximum Recovery and Postpetition Interest | | 47 |
| L. | Allocation of Distributions Between Principal and Interest | | 47 |
| M. | Prepayment | | 47 |
| N. | Claims Paid or Payable by Third Parties | | 48~~47~~ |
| | i. | Claims Paid by Third Parties | 48~~47~~ |
| | ii. | Claims Payable by Third Parties | 48 |

IX.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES .......................................... 48

| | | |
|---|---|---|
| A. | Assumption and Rejection of Executory Contracts and Unexpired Leases | 48 |
| B. | Rejection of Executory Contracts and Unexpired Leases | 48 |
| C. | Claims Based on Rejection of Executory Contracts or Unexpired Leases | 49~~48~~ |

X.    PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS .......................................................................................... 49

| | | |
|---|---|---|
| A. | Allowance of Claims | 49 |
| B. | No Distributions Pending Allowance | 49 |
| C. | Claims Administration | 49 |
| D. | Estimation of Claims | 50~~49~~ |
| E. | Time to File Objections to Claims | 50 |
| F. | Disallowance of Claims | 50 |
| G. | Distributions After Allowance | 51~~50~~ |

XI.    RELEASES, INJUNCTION AND RELATED PROVISIONS .................................... 51~~50~~

| | | |
|---|---|---|
| A. | Discharge of Debtor | 51~~50~~ |
| B. | Releases by Debtor | 51 |
| C. | Releases by the Releasing Parties | 52 |
| D. | Exculpation | 54~~53~~ |
| E. | Preservation of Causes of Action | 54 |
| | 1. Vesting of Causes of Action | 54 |
| | 2. Preservation of All Causes of Action Not Expressly Settled or Released | 55~~54~~ |
| F. | Injunction | 55 |
| G. | Exclusions from Releases | 56 |
| H. | Exclusions and Limitations on Liability | 57~~56~~ |
| I. | Protections Against Discriminatory Treatment | 57~~56~~ |
| J. | Document Retention | 57~~56~~ |
| K. | Term of Injunctions or Stays | 57 |
| L. | Termination of All Employee and Workers' Compensation Benefits | 57 |

XII.    CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ................... 58~~57~~

| | | |
|---|---|---|
| A. | Conditions Precedent to the Effective Date of the Plan | 58~~57~~ |
| B. | Substantial Consummation | 58 |

C.        Effect of Failure of Conditions ................................................................. 58

XIII.   MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN .............. 5958

A.        Modification and Amendments ................................................................. 5958
B.        Effect of Confirmation on Modifications ................................................. 5958
C.        Revocation or Withdrawal of Plan .......................................................... 5958

XIV.    RETENTION OF JURISDICTION ................................................................... 5958

XV.     MISCELLANEOUS PROVISIONS ................................................................... 6160

A.        Immediate Binding Effect ........................................................................ 6160
B.        Additional Documents .............................................................................. 6160
C.        Payment of Statutory Fees ....................................................................... 61
D.        Successors and Assigns ............................................................................ 61
E.        Notices ...................................................................................................... 6261
F.        Entire Agreement ..................................................................................... 62
G.        Exhibits ..................................................................................................... 6362
H.        Non-Severability of Plan Provisions ........................................................ 6362
I.         Closing of Chapter 11 Case ...................................................................... 6362
J.         Conflicts .................................................................................................... 6362
K.        Rates .......................................................................................................... 63

XVI.    RISKS AND OTHER CONSIDERATIONS ...................................................... 63

A.        Bankruptcy Considerations ...................................................................... 63
B.        No Duty to Update Disclosures ................................................................ 6463
C.        Alternatives to Confirmation and Consummation of the Plan ................. 6463
    1.    Alternate Plan ........................................................................................... 6463
    2.    Chapter 7 Liquidation or Dismissal ......................................................... 6564
D.        Certain Federal Tax Consequences .......................................................... 6564
    1.    Consequences to U.S. Holders of Allowed Claims .................................. 6665
    2.    U.S. Federal Income Tax Consequences to Non-U.S. Holders of Allowed
          Claims ...................................................................................................... 6968
    3.    Tax Treatment of the Liquidating Trust and U.S. Holders of Beneficial
          Interests Therein ...................................................................................... 6968
    4.    FATCA ...................................................................................................... 7271
    5.    Backup Withholding and Information Reporting ...................................... 7271

XVII.   RECOMMENDATIONS AND CONCLUSION ................................................... 7372

## I.      INTRODUCTION

The Villages Health System, LLC, the debtor and debtor in possession in the above-captioned chapter 11 case pending in the United States Bankruptcy Court for the Middle District of Florida, submits this disclosure statement with respect to the *First Amended Chapter 11 Plan of Liquidation for The Villages Health System, LLC* dated as of March 20, 2026  and solicitation of votes thereon in accordance with section 1125 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*.

Through a series of transactions and settlement agreements, Debtor has administered substantially all assets of the Estate.  On or about November 7, 2025, Debtor consummated a series of transactions  resulting in the sale, assignment and transfer to CenterWell Senior Primary Care (FL), Inc. of substantially all assets of Debtor and the Estate.  Thereafter, Debtor negotiated two settlement agreements—the first with the United States and the second with the Developer.  The DOJ Settlement resolves certain claims the United States has alleged against Debtor arising from improper diagnostic coding practices via the allowance of a $541.5 million general unsecured claim (the DOJ Claim) in Class 4.  The Developer Settlement settles certain claims Debtor has, or may have, against the Developer for $80 million, which is comprised of $65 million in Cash[2] and the waiver of a $15 million secured claim (*i.e.*, the Prepetition Secured Loan Claims) held by PMA Lender.[3]

Debtor has proposed the Plan to facilitate the administration of assets remaining after the Sale (the Liquidating Trust Assets, as defined in the Plan).  The primary objective of the Plan is to maximize the value of such assets for the benefit of creditors.  The Plan contemplates the creation of a Liquidating Trust on the Effective Date for the purposes of effectuating the liquidation of the Liquidating Trust Assets and distributing the proceeds thereof to the Beneficiaries of the Liquidating Trust.

The Liquidating Trust shall be managed by the Liquidating Trustee in accordance with the Liquidating Trust Agreement.   The principal responsibilities of the Liquidating Trust and Liquidating Trustee shall be: (i) administering, monetizing, and liquidating the Liquidating Trust Assets, including the Causes of Action, (ii) resolving all Disputed Claims, and (iii) making all Distributions from the Liquidating Trust as provided for in the Plan and the Liquidating Trust Agreement.

In accordance with sections 1122 and 1123(a) of the Bankruptcy Code, the Plan classifies Claims against and Equity Interests in Debtor into the following Classes:

| Class | Claim or Interest | Status | Voting Rights | Est. Recovery |
|-------|-------------------|--------|---------------|---------------|
| 1 | Prepetition Secured Loan Claims | Impaired | Entitled to Vote | 100% |

---

[2] Which will be adjusted downward to take into account interest and other obligations on the PMA Secured Claim.

[3] As of the filing of the Disclosure Statement, the DOJ Settlement and Developer Settlement are pending approval by the Bankruptcy Court; however, Debtor anticipates receiving a ruling on the approval of these settlements prior to the Effective Date.

| Class | Claim or Interest | Status | Voting Rights | Est. Recovery |
|:---:|:---:|:---:|:---:|:---:|
| 2 | Other Secured Claims | Impaired | Entitled to Vote | 100% |
| 3 | Convenience Class Claims | Impaired | Entitled to Vote | 90% |
| 4 | DOJ Claims and Payor Claims | Impaired | Entitled to Vote | Unknown |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote | Unknown |
| 6 | Subordinated Section 510(b) Claims | Impaired | Entitled to Vote | 0% |
| 7 | Equity Interests | Impaired | Deemed to Reject | 0% |

Claims entitled to specific treatment as a matter of law are not subject to classification under the Bankruptcy Code. The treatment of classified and unclassified Claims is discussed in Article V of this Disclosure Statement.

**ARTICLE X OF THE PLAN CONTAINS RELEASES, EXCULPATION PROVISIONS, AND INJUNCTIONS THAT MAY AFFECT THE RIGHTS OF CREDITORS AND OTHER PARTIES IN INTEREST. ALL PARTIES IN INTEREST ARE ADVISED TO REVIEW THESE PROVISIONS WITH CARE AND, IF SO DESIRED, DISCUSS THE IMPLICATIONS OF THESE PROVISIONS WITH THEIR COUNSEL. IF THE PLAN IS CONFIRMED, THE RELEASES, EXCULPATION PROVISIONS, AND INJUNCTIONS SHALL BE BINDING AND EFFECTIVE ON THE EFFECTIVE DATE.**

PLEASE TAKE NOTICE of the following dates and deadlines, which govern the voting and confirmation of the Plan:

| Event | Date/Deadline | Description |
|:---:|:---:|:---|
| Voting Record Date | [•], 2026 | The date for determining (i) which holders of Claims in the Voting Classes (as defined below) are entitled to vote to accept or reject the Plan, and (ii) whether Claims have been properly assigned or transferred to an assignee under Bankruptcy Rule 3001(e) such that the assignee or transferee, as applicable, can vote to accept or reject the Plan as the holder of a Claim. |
| Entry of Disclosure Statement Order | [•], 2026 | Date requested by Debtor for the Court, should the Court approve the Disclosure Statement and the relief requested in this Motion, to enter an order granting the relief requested herein (the "Disclosure Statement Order"). |
| Confirmation Hearing Notice Deadline | No later than three (3) Business Days after | Deadline for Debtor to provide notice to all parties listed on Debtor's noticing matrix of the hearing to |

| | entry of the Disclosure Statement Order. | consider confirmation of the Plan and other related relief (the "Confirmation Hearing Notice Deadline"). |
|---|---|---|
| Solicitation Deadline | [•], 2026 | Deadline for Debtor to distribute, as applicable, the (i) Solicitation Package to the holders of Claims entitled to vote to accept or reject the Plan, (ii) Non-Voting Status Notices, and (iii) the Disclosure Statement Order (the "Solicitation Deadline"). |
| Plan Supplement Submission Deadline | [•], 2026 | Deadline for Debtor to file the Plan Supplement (the "Plan Supplement Deadline"). |
| Rule 3018(a) Motion Deadline | [•], 2026 | Deadline ("Rule 3018(a) Motion Deadline") for a holder of a disputed, unliquidated or contingent Claim, or Claim of unknown value, to file a motion pursuant to Bankruptcy Rule 3018(a) seeking temporary allowance of such Claim for voting purposes (each a "Rule 3018(a) Motion"). |
| Plan Objection Deadline | [•], 2026 | Deadline for parties in interest to file objections to [(i) final approval of the Disclosure Statement and/or] (ii) confirmation of the Plan (the "Plan Objection Deadline"). |
| Voting Deadline | [•], 2026 | Deadline by which holders of Claims in Voting Classes must submit any ballots voting to accept or reject the Plan pursuant to and in accordance with the Solicitation and Voting Procedures (the "Voting Deadline"). |
| Deadline to File Documents in Support of Plan Confirmation | [•], 2026 | Deadline for Debtor and other parties in interest to file any papers or other documents in support of [final approval of the Disclosure Statement and] confirmation of the Plan. |
| Deadline to Respond to Plan Objection(s) | [•], 2026 | Deadline for Debtor and other parties in interest to file a reply or other response (each, a "Reply" and collectively, the "Replies") to any objections to [final approval of the Disclosure Statement and/or] confirmation of the Plan (the "Reply Deadline"). |
| Confirmation Hearing | [•], 2026 | The proposed date and time for the hearing at which the Court will consider, among other things, [the final approval of the Disclosure Statement and] the confirmation of the Plan.  Additional information related to the time, date and location of the hearing, and how parties in interest may appear for such hearing, shall be set forth in the Confirmation Hearing Notice. |

3

## II.      DEFINED TERMS AND RULES OF INTERPRETATION

### A.       Defined Terms

As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:

"Administrative Expense Claim" means Claims that have been timely filed, pursuant to the deadline and procedures set forth in any bar date order or Plan Confirmation Order, as applicable, or late filed Claims otherwise allowed by Final Order for costs and expenses of administration under sections 503(b), 507(a)(2) or 1114(e)(2) of the Bankruptcy Code, including, but not limited to: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the businesses of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) administrative expense claims Allowed under section 503(b)(9) of the Bankruptcy Code (if any); and (c) Professional Fee Claims.

"Administrative Expense Claim Bar Date" means  the deadline for filing requests for allowance and payment of Administrative Expense Claims, which will be established by order of the Bankruptcy Court.

"Allowed" means, with respect to Claims: (a) any Claim for which a proof of Claim was filed (or a Claim that does not require the filing of a proof of Claim as provided for under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court,); (b) any Claim which has been or hereafter is listed by Debtor in the Schedules as liquidated in amount and not disputed or contingent and for which no superseding proof of Claim has been filed; (c) any Claim allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; and (d) any Claim that is compromised, settled, or otherwise resolved; *provided* that with respect to any Claim described in clauses (a) and (b), such Claim shall be considered Allowed only if and to the extent that with respect to such Claim, no objection to the allowance was timely filed (including but not limited to, an objection relating to the timeliness of the filing of the proof of claim), or if such timely objection was filed, the Claim is subsequently Allowed by a Final Order or by compromise, settlement, or other resolution. Notwithstanding anything herein to the contrary, Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" Claims for any other purpose.

"Assets" means all tangible and intangible assets of every kind and nature of Debtor and its Estate within the meaning of section 541 of the Bankruptcy Code.

"Assumed General Unsecured Claims" shall have the meaning ascribed to such term in the CenterWell Purchase Agreement, a copy of which is attached to the Plan Supplement.

"Avoidance Actions" means all rights to avoid transfers or distributions and recover any such avoided transfers or distributions for the benefit of Estate or Liquidating Trust, as applicable, under chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, sections 506(d), 522, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code, or otherwise under the Bankruptcy Code, or under similar or related state or federal statutes and common law,

4

and other similar avoidance claims, rights, and causes of action, whether or not demand has been made or litigation has been commenced as of the Effective Date.

"Ballot" means the ballot on which each holder of a Claim entitled to vote to accept or reject the Plan casts such vote.

"Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*, as amended from time to time.

"Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the Middle District of Florida, Orlando Division.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time.

"Beneficial Interests" means interests in the Liquidating Trust entitling each holder thereof to receive its Pro Rata Share of Distributions, other than Estate professionals or other administrative claimants.

"Beneficiaries" or "Liquidating Trust Beneficiaries" means holders of Beneficial Interests in the Liquidating Trust.

"Business Day" means any day other than a Saturday, Sunday, or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

"Cash" means legal tender of the United States of America and equivalents thereof.

"Causes of Action" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, suspected or unsuspected, assertable, directly or derivatively, in contract, tort, law, equity, or otherwise, with the exception, as to each, of those transferred to Purchaser pursuant to the Sale Order.  Without limiting the breadth of the foregoing, Causes of Action include:  (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code, with the exception, as to each, of those transferred to Purchaser pursuant to the Sale Documents; and (e) the Retained Causes of Action, Payor Debtor Claims, Insider Claims, and D&O Claims; *provided, however*, that Causes of Action shall not include claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, indemnities, guaranties, and franchises of any kind or character whatsoever, settled, waived, released, or otherwise resolved under the Plan or prior to the Effective Date, including, if approved, via the DOJ Settlement and/or Developer Settlement.

5

"CenterWell Purchase Agreement" means the asset purchase agreement entered into by and between Debtor and Purchaser dated on or about September 8, 2025, and which is referred to as the Stalking Horse APA in the Sale Order.

"Chapter 11 Case" means the bankruptcy case commenced by the filing of a voluntary petition for relief for the Debtor on July 3, 2025, under chapter 11 the Bankruptcy Code, which has been assigned case no. 6:25-bk-04156 and is currently pending in the Bankruptcy Court.

"Claim" has the meaning set forth in section 101(5) of the Bankruptcy Code.  As used herein, "Class [__] Claim(s)" shall refer to the Claims classified into the specified Class of the Plan.

"Claims Agent" and "Balloting Agent", as applicable, means Stretto, Inc.

"Claims Objection Deadline" means the date that is one hundred and eighty (180) days after the Effective Date or such later date as may be approved by the Bankruptcy Court upon motion of the Liquidating Trustee.

"Class" means any group of substantially similar Claims or Equity Interests classified by the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  As used herein, "Class" followed by a number (*e.g.*, Class 1, Class 2, etc.) shall refer to the specified Class designated in the Plan.

"Class A Beneficial Interests" means Beneficial Interests in the Liquidating Trust entitling each holder thereof to receive its Pro Rata Share of Distributions from the Liquidating Trust, until all Class A Beneficial Interests are paid in full.

"Class B Beneficial Interests" means Beneficial Interests in the Liquidating Trust entitling each holder thereof to receive its Pro Rata Share of Distributions from the Liquidating Trust *after* all of the Class A Beneficial Interests are paid in full.

"Clerk" means the clerk of the Bankruptcy Court.

"Collateral" means any Asset of the Estate subject to a lien, charge, or other encumbrance to secure the payment or performance of any Claim, which lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

"Creditors' Committee" or "Committee" means the Official Committee of Unsecured Creditors appointed by the United States Trustee in the Chapter 11 Case on or about September 4, 2025, and the members thereof, as such membership may be amended.

"Creditor" shall have the meaning ascribed to such term in section 101(10) of the Bankruptcy Code.  As used herein, "Class [__] Creditor(s)" shall refer to the Creditor(s) holding Allowed Claims classified into the specified Class of the Plan.

"CRO" means, individually and collectively, as applicable, the Chief Restructuring Officer for Debtor, Neil Luria, and SOLIC.

6

"Debtor" and "TVH" means The Villages Health System, LLC, a Florida limited liability company, as debtor and Debtor in Possession, as applicable.

"Debtor in Possession" means Debtor in its capacity as debtor in possession in the Chapter 11 Case pursuant to sections 1107 and 1108 of the Bankruptcy Code.

"Developer" means, collectively and individually, as applicable, TVHH, PMA Lender, and other affiliated entities party to the Developer Settlement.

"Developer Releases" means, collectively and individually, as applicable, the releases granted to the Developer pursuant to the Developer Settlement as Released Parties under Article XI of the Plan

"Developer Settlement" means the Settlement Agreement by and among Debtor and Developer dated as of March 20, 2026, including, without limitation, all exhibits, supplements, appendices, and schedules thereto, either in their present form or as the same may be altered, amended, or modified, a copy of which is appended as Exhibit A to Docket No. 448.

"Disclosure Statement" means this *Disclosure Statement for the First Amended Chapter 11 Plan of Liquidation for the Villages Health System, LLC* dated as of March 20, 2026, including, without limitation, all exhibits, supplements, appendices, and schedules thereto, either in their present form or as the same may be altered, amended, or modified.

"DIP Collateral" means such property of Debtor or the Estate encumbered by the DIP Liens, as described in the DIP Financing Motion.

"DIP Facility" means that certain super-priority, senior secured debtor in possession credit facility under the DIP Loan Documents and the DIP Orders.

"DIP Financing Motion" means the *Debtor's Emergency Motion for Interim and Final Orders (I) Approving Postpetition Financing, (II) Authorizing the Use of Cash Collateral, (III) Approving Liens and Superpriority Administrative Expenses Status, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief*, filed by the Debtor on July 3, 2025 [Doc No. 4], together with any related or supporting submissions and evidence.

"DIP Lender" means PMA Lender, LLC, a Florida limited liability company, or any of its predecessors or successors, as defined in the DIP Orders.

"DIP Liens" means such liens on and security interests granted to the DIP Lender in the DIP Collateral, as described in the DIP Orders.

"DIP Loan Documents" has the meaning ascribed to such term in the DIP Orders, as amended.

"DIP Obligations" has the meaning ascribed to such term in the DIP Orders, as amended.

"DIP Orders" means, collectively, the orders entered by the Bankruptcy Court approving, extending, modifying, or otherwise pertaining to the DIP Facility or approval thereof.

7

"Disputed Claim" means any Claim that (a) is or hereafter may be listed on the Schedules as disputed, contingent, or unliquidated, (b) is subject to a timely objection to the allowance of such Claim, in whole or in part, or (c) otherwise not an Allowed Claim, in whole or in part.

"Disputed Claims Reserve" means the reserve, if any, established by the Liquidating Trustee for the benefit of holders of Disputed Claims.

"Distribution" means any distribution, disbursement or transfer of Assets to holders of Allowed Claims or Beneficiaries under or pursuant to the Plan and/or the Liquidating Trust Agreement.

"Distribution Record Date" means the record date for establishing the holders of Allowed Claims for purposes of making Distributions under the Plan, which date shall be the Effective Date.

"Docket" means the docket in the Chapter 11 Case and, as applicable, any related proceedings.

"DOJ" means the United States Department of Justice, Civil Division, Civil Frauds Section, and the United States Attorney's Office for the Middle District of Florida.

"DOJ Claim" means the Claim(s) or Cause of Action(s) resolved by the Debtor and the DOJ in the DOJ Settlement Agreement related to the Debtor's voluntary self-disclosure to the Office of Inspector General for the Department of Health & Human Services in or about December 2024, as amended or supplemented.

"DOJ Settlement" means the Settlement Agreement by and among Debtor and the United States dated as of March 20, 2026, including, without limitation, all exhibits, supplements, appendices, and schedules thereto, either in their present form or as the same may be altered, amended, or modified, a copy of which is appended as Exhibit A to Docket No. 447.

"D&O Claims" means Claims and Causes of Action against former and current directors, managers and officers of Debtor; *provided* that D&O Claims shall not include any Claims of Causes of Action against the CRO, the Independent Director, or any Person receiving a release under the Plan.

"D&O Coverage" means the extent of insurance coverage for the Debtor's directors and officers under the D&O Policies.

"D&O Policies" means all applicable liability insurance policies (including primary insurance, excess insurance, or tail insurance policies) of Debtor applicable to or otherwise extending coverage to the directors and officers of Debtor.

"Effective Date" means the date on which the conditions specified in Article XI of the Plan have been satisfied or waived in accordance with the terms hereof.

"Entity" shall have the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

8

"Equity Interest" or "Interest" means any direct equity, membership, or other ownership interest in Debtor. As used herein, "Class [__] Equity Interest(s)" refers to the Equity Interests classified in specified Class of the Plan.

"Estate" means the estate of Debtor created upon the commencement of the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

"Excluded General Unsecured Claim" shall have the meaning ascribed to such term in the CenterWell Purchase Agreement.

"Exculpated Parties" means each of the following solely in its capacity as such (i) Debtor, (ii) Debtor's officers and directors, including Debtor's independent director, Anna Phillips, (iii) Debtor's chief restructuring officer, Neil Luria and SOLIC, (iv) the Committee and its members, (v) the DIP Lender, and (vi) the professionals and advisors of the foregoing parties.

"Exculpation Timeframe" means the period from the Petition Date through and including the Effective Date.

"Executory Contract" means any executory contract or unexpired lease, within the meaning of section 365 of the Bankruptcy Code, to which Debtor is a party or beneficiary or otherwise constituting an Asset of the Estate, in whole or in part.

"Final DIP Order" means the *Final Order Granting Debtor's Emergency Motion for Entry of Order (I) Authorizing the Debtor to Borrow Additional Funds under the Existing DIP Facility, with Certain Modifications, and (II) Granting Related Relief* [Doc. No. 343], as may be amended or modified from time to time, entered by the Bankruptcy Court on November 20, 2025.

"Final Order" means an Order of the Bankruptcy Court, or other court of competent jurisdiction to hear matters or appeals arising from or related to Debtor, the Estate, and/or Chapter 11 Case, that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, to petition for certiorari, or to move for re-argument or rehearing has expired, and as to which no appeal, petition for certiorari, or other proceedings for re-argument or rehearing shall then be pending; *provided, however,* that the possibility that a motion under Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order shall not cause such order not to be a Final Order.

"General Bar Date" means September 11, 2025, the deadline for each Person or Entity, including without limitation, individuals, partnerships, corporations, joint ventures and trusts, other than Governmental Units, to file a proof of claim against Debtor for any Claim that arose prior to the Petition Date.

"General Unsecured Claim" means any Claim against Debtor or the Estate (a) that is not an Administrative Expense Claim, Priority Tax Claim, Other Priority Claim, or Subordinated Section 510(b) Claim, or (b) that is determined by the Bankruptcy Court to be a non-priority unsecured Claim; *provided*, for the avoidance of doubt, that General Unsecured Claims includes all (i) Payor Claims, (ii) DOJ Claim(s), (iii) Excluded General Unsecured Claims, (iv) Rejection Damages Claims, and (v) any portion of a Secured Claim exceeding the value of the Estate's

9

interest in the subject Collateral or subject to setoff, as determined pursuant to section 506(a) of the Bankruptcy Code.

"Governmental Unit" shall have the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

"Governmental Unit Bar Date" means February 28, 2026, the deadline for Governmental Units to file a proof of Claim against Debtor for a Claim that arose prior to the Petition Date.

"Impaired" means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"Insider Claims" means all Claims and Causes of Action against any person who is an insider of Debtor, as defined in section 101(31) of the Bankruptcy Code, including, without limitation, any current or former officer, director, manager, equity holder, Affiliate of (i) Debtor or (ii) any of Debtor's Affiliates, or any Person that received a direct or indirect dividend or equity distribution from Debtor; *provided, however*, Insider Claims excludes (i) any Claims and Causes of Action against the CRO or Independent Director, (ii) any Payor Debtor Claims, and (iii) any Claims and Causes of Action settled or otherwise disposed of prior to the Effective Date, including any Claims and Causes of Action resolved under the Developer Settlement and/or DOJ Settlement.

"Insurance Policies" means all insurance policies under which Debtor, or any current or former officer, director, or agent of Debtor, is an insured, additional insured, beneficiary, or otherwise entitled to coverage.

"Interim DIP Orders" means the *Interim Order Granting Debtor's Emergency Motion for Interim and Final Orders (I) Approving Postpetition Financing, (II) Authorizing the Use of Cash Collateral, (III) Approving Liens and Superpriority Administrative Expenses Status, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief*, entered by the Bankruptcy Court on July 11, 2025 [Doc No. 60], together with subsequent interim orders extending the terms thereof.

"Lien" means any mortgage, pledge, deed of trust, assessment, security interest, lease, lien, adverse claim, levy, charge, right of first refusal or surrender right, or other encumbrance of any kind, including any "lien" as defined in section 101(37) of the Bankruptcy Code.

"Liquidating Trust" means the liquidating or litigation trust to be established on the Effective Date pursuant to and in accordance with the terms of the Plan, the Liquidating Trust Agreement, and Confirmation Order.

"Liquidating Trust Advisors" means any firm(s) or individual(s) retained by the Liquidating Trustee to serve as a legal counsel or provide other professional services in connection with the performance of any duties, responsibilities, or obligations under the Plan and the Liquidating Trust Agreement, for the period on or after the Effective Date.

"Liquidating Trust Agreement" means the agreement governing the Liquidating Trust, dated on or about the Effective Date, substantially in the form attached to the Plan Supplement.

"Liquidating Trust Assets" means all Assets of Debtor and the Estate as of the Effective Date, including, without limitation, (i) Cash on hand, (ii) Causes of Action, and (iii) any rights under the Insurance Policies, including the D&O Policies, or proceeds thereof.

"Liquidating Trustee" the trustee(s) and/or plan administrator(s) identified in the Plan Supplement to act as trustee and administrator of the Liquidating Trust and its assets, and any successor thereto.

"Local Rules" means the of Bankruptcy Local Rules of the United States Bankruptcy Court for the Middle District of Florida, as amended from time to time.

"Notice of Effective Date" means a notice to be filed with the Bankruptcy Court by Debtor indicating the Effective Date of the Plan.

"Order" means an order, decree, opinion, or judgment of the Bankruptcy Court, or other court of competent jurisdiction, pertaining to Debtor, the Estate, and/or Chapter 11 Case.

"Other Priority Claim" means unsecured Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than Administrative Expense Claims or Priority Tax Claims.

"Other Secured Claims" means Claims (or portions thereof) that are secured by a Lien on Collateral that are valid, perfected and enforceable under applicable law as of the Petition Date, *but excluding* any Claims secured by Assets subject to the Sale to CenterWell.

"Payor Claims" means all Claims and Causes of Action against the Debtor held by any person, organization, or entity responsible for reimbursing Debtor for the cost of medical care provided by its healthcare professional.

"Payor Debtor Claims" means all Claims and Causes of Action Debtor holds as of the Effective Date, or may thereafter acquire, against (i) United Healthcare Insurance Company, United Healthcare of Florida, Inc., Blue Cross and Blue Shield of Florida, Inc., Health Options, Inc., and any of their respective affiliates or (ii) any person, organization, or entity responsible for reimbursing the Debtor for the cost of medical care provided by its healthcare professionals.

"Person" shall have the meaning ascribed to such term in section 101(41) of the Bankruptcy Code.

"Petition Date" means July 3, 2025, the date on which Debtor commenced the Chapter 11 Case.

"Plan" means the *First Amended Chapter 11 Plan of Liquidation for the Villages Health System, LLC* dated as of March 20, 2026, including, without limitation, all exhibits, supplements, appendices, and schedules thereto, either in their present form or as the same may be altered, amended, or modified.

"Plan Confirmation Date" means the date on which the Bankruptcy Court enters the Plan Confirmation Order.

11

"Plan Confirmation Hearing" means the hearing to be held by the Bankruptcy Court to consider approval and confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

"Plan Confirmation Order" and "Confirmation Order" mean an order entered by the Bankruptcy Court confirming the Plan.

"Plan Documents" means the Plan, the Disclosure Statement, the Plan Supplement, Liquidating Trust Agreement, and all exhibits and schedules attached to or documents filed in support of any of the foregoing.

"Plan Proponent" means Debtor.

"Plan Supplement" means the appendix of any schedules or exhibits to the Plan, which Debtor shall file with the Bankruptcy Court and serve on necessary parties, and make available publicly on the Claims Agent's website for the Chapter 11 Case, at least five (5) days prior to the deadline for submission of Ballots to vote to accept or reject the Plan.

"PMA Lender" and "Prepetition Lender" mean PMA Lender, LLC, a Florida limited liability company, or any of its predecessors or successors.

"Prepetition Secured Loan" means the secured loan by and between Debtor and PMA Lender dated as of April 7, 2025.

"Preserved Claims and Causes of Action" means all Claims or Causes of Action of Debtor that are not specifically released, waived or otherwise compromised in the Plan or other Final Order, or transferred or otherwise assigned to Purchaser pursuant to the Sale Order.

"Priority Tax Claim" means an unsecured Claim, or applicable portion thereof, that is entitled to priority under sections 502(i) or 507(a)(8) of the Bankruptcy Code.

"Privilege" means the attorney client privilege, work product protections, or other privilege, immunity (including without limitation those related to a common interest or a joint defense with other parties to the extent set forth in such documents), or protections from disclosure of any kind held by Debtor or the Estate as permitted under the Federal Rule of Evidence 501 and all other applicable law.

"Professional" means any Person or Entity employed by Debtor, the Committee, or other Estate representative in the Chapter 11 Case pursuant to sections 327, 363, or 1103 of the Bankruptcy Code, as applicable, or otherwise pursuant to an Order of the Bankruptcy Court.

"Professional Fee Claim" means a Claim under sections 328, 330(a), 331, and/or 503 of the Bankruptcy Code for compensation of a Professional related to services rendered or expenses incurred in the Chapter 11 Case.

"Pro Rata Share" means, with respect to any Distribution on account of any Allowed Claim, a percentage represented by a fraction (i) the numerator of which shall be an amount equal to such Claim and (ii) the denominator of which shall be an amount equal to the aggregate amount

12

of Allowed Claims in the same Class as the subject Claim, *provided* that in cases where Pro Rata Share is used in reference to Beneficial Interests in the Liquidating Trust, Pro Rata Share means the portion that such holder's Claim bears to the aggregate amount of all Allowed Claims in all Classes entitled to Beneficial Interests in the Liquidating Trust; *provided, further*, that in no case shall a Beneficial Interest in the Liquidating Trust confer an interest in any assets held by the Liquidating Trust prior to the Distribution of such assets.

"Purchaser" means CenterWell Senior Primary Care (FL), Inc.

"Rejection Damages Claim" means any Claim under section 502(g) of the Bankruptcy Code arising from, or relating to, the rejection of an Executory Contract pursuant to section 365(a) of the Bankruptcy Code by Debtor, as limited, in the case of a rejected employment contract or unexpired lease, by section 502(b) of the Bankruptcy Code.

"Released Party" and "Released Parties" means, individually and collectively, and solely in their capacities as such, (i) Debtor's professionals, which specifically include: (a) Baker & Hostetler LLP as legal counsel, (b) Neil Luria and SOLIC as CRO and support staff to Debtor, and (c) Anna Phillips as independent director,[4] (ii) the Committee's professionals (a) Pack Law P.A. and (b) Genesis Credit Partners LLC, and (iii) Debtor, and, solely with respect to the Persons and Entities listed in (i) and (ii), above, their respective officers and directors, equity holders, members, partners, managers, employees, agents, attorneys, accountants, consultants, and other professionals; *provided, however*, that if the Developer Settlement is approved, "Released Parties" shall include the Settlement Release Parties (as defined in the Developer Settlement) as well as their respective officers and directors, equity holders, members, partners, manager, and employees.

"Releasing Party" and "Releasing Parties" means, individually and collectively, and solely in their capacities as such, (i) the DIP Lender, (ii) the Prepetition Lender, (iii)  the Purchaser, (iv) the Committee, and (v) the Liquidating Trustee; *provided* that notwithstanding the foregoing, neither the United States Trustee, DOJ, nor any other department or element of the government of the United States of America shall constitute a Releasing Party under the Plan.

"Retained Causes of Action" means any and all Causes of Action constituting, in whole or in part, Assets of the Estate as of the Effective Date, including, without limitation, all existing or potential Causes of Action identified or described in the Plan Supplement, that have not been expressly waived, released, settled, adjudicated to final judgment, or otherwise resolved prior to the Effective Date or under the terms of the Plan, and any and all counterclaims, compulsory or otherwise, to any claims or causes of action brought against Debtor, the Estate, or the Liquidating Trust.

"Sale" means the sale of Estate Assets to Purchaser pursuant to the CenterWell Purchase Agreement, as approved pursuant to the Sale Order.

"Sale Order" means the *Order (A) Approving Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing*

---

[4] For the avoidance of doubt, KPMG, BDO USA, and/or any other unnamed professional shall not be included in this definition of a Released Party.

*Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* entered by the Bankruptcy Court on September 9, 2025 [Docket No. 222].

"Sale Proceeds" means the net proceeds from the Sale.

"Schedules" means the schedules of assets and liabilities and statements of financial affairs filed by Debtor pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007(b), as such schedules or statements may be amended or supplemented from time to time.

"Secured Claim" means a Claim: (a) secured by a Lien on collateral, which Lien is valid, perfected and enforceable, to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

"SOLIC" means GBH SOLIC Holdco, LLC, and its direct or indirect parent, subsidiaries and affiliates, and their respective officers, directors, agents, employees, independent contractors, professionals, and other representatives.

"Solicitation Procedures Order" means an order entered by the Bankruptcy Court [Doc. No. [•]] approving the Disclosure Statement and the solicitation of votes on the Plan.

"Statutory Fees" means any and all fees payable to the U.S. Trustee pursuant to section 1930 of title 28 of the United States Code and any interest thereupon.

"Subordinated Section 510(b) Claims" means any unsecured Claim that is subordinated to General Unsecured Creditors under section 510 of the Bankruptcy Code or other legal or equitable principles.

"TVHH" means The Villages Health Holding Company LLC, a Florida limited liability company.

"Unclaimed Distribution" means a Distribution that is not claimed by a holder of an Allowed Claim on or prior to the Unclaimed Distribution Deadline.

"Unclaimed Distribution Deadline" means the date that is three (3) months from the date the subject Distribution.

"Unimpaired" means, with respect to a Claim or Class of Claims, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

"United States" means the United States of America and its departments, agencies, representatives, appointees, employees, independent contractors, and other agents acting for or for the benefit of any of the foregoing; *provided, however*, that with respect to the DOJ Settlement, "United States" shall be deemed to refer to the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services.

"U.S. Trustee" or "United States Trustee" means the Office of the United States Trustee assigned to the Middle District of Florida, Orlando Division.

"Voting Deadline" means [•], 2026, at 5:00 p.m. (Eastern Standard Time).

"Voting Procedures" means the procedures approved by the Bankruptcy Court for voting to accept or reject the Plan.

## B.      Rules of Interpretation

For purposes of the Plan and this Disclosure Statement: (1) in the appropriate context, each term, whether stated in the singular or the plural, includes both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not filed, having been filed, or to be filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the Plan; (4) any reference to a Person as a holder of a Claim or Interest includes that Person's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan or Disclosure Statement, as applicable; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules, or, if no rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or otherwise specifically stated, the laws of the State of Florida, without giving effect to the principles of conflict of laws; (9) captions and headings are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan or Disclosure Statement; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) all references to docket numbers of documents filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time and as applicable to the Chapter 11 Case, unless otherwise stated; (13) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (14) references to "Proofs of Claim," "holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "holders of Interests," "Disputed Interests," and the like, as applicable; (15) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (16) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have

15

such consent, acceptance, or approval rights, including by electronic mail; (17) with respect to Liquidating Trust Assets, all references to "Debtor" or the "Estate" shall include the "Liquidating Trustee" or "Liquidating Trust," respectively, if such reference pertains to the period following the Effective Date; (18) with respect to Assets of the Estate and Liquidating Trust Assets, all references to the "Liquidating Trustee" or "Liquidating Trust" shall include "Debtor" or the "Estate," respectively, if such reference pertains to the period on or before the Effective Date; and (19) any capitalized term used but not otherwise defined herein shall have the meaning ascribed to that term as used in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

### C.   Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  If any deadline established by the Plan shall occur on a day that is not a Business Day, such deadline shall be extended automatically, and without further action or Order, to the next Business Day.  Any action to be taken or transaction to be completed on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date, and the Debtor shall retain all necessary authority to take such action or complete such transaction after the Effective Date; *provided* that Debtor, in its discretion, may assign such authority to the Liquidating Trustee.

### D.   Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Florida, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided, however*, that corporate or limited liability company governance matters relating to Debtor shall be governed by the laws of the state of incorporation or formation of Debtor.

### E.   Reference to Monetary Figures

All references in the Plan or this Disclosure Statement to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

### F.   Controlling Document

In the event of an inconsistency between the Plan and the Plan Supplement with respect to the Plan, the terms of the relevant document in the Plan Supplement with respect to the Plan shall control unless otherwise specified in such Plan Supplement document.  In the event of an inconsistency between the Plan and any other instrument or document created or executed pursuant to the Plan, or between the Plan and the Disclosure Statement, the Plan shall control.  The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided, however*, that if there is determined to be any inconsistency between any provision of the Plan and any provision of the

16

Confirmation Order that cannot be reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provisions of the Confirmation Order shall be deemed a modification of the Plan.

## III.   BACKGROUND

### A.   Nature and History of Debtor's Businesses.

TVH was formed in 2012 as the result of a collaboration between The Villages and The University of South Florida, which developed a plan for offering high-quality health care by offering patients enhanced resources and time with medical providers by reducing the physician to-patient ratio and, in so doing, increasing the availability of and interactions with primary care physicians and specialists.

Throughout its history, TVH has been known for providing exemplary, patient focused health care to residents of North Central Florida, The Villages, and surrounding communities, and TVH's medical providers have been fixtures in their communities and trusted health care providers to their patients. In addition to primary care, TVH's health care providers provided specialty care services in the fields of cardiology, neurology, rheumatology, podiatry, urology, gynecology, pain intervention and management, and behavioral and mental health.  TVH provided essential care to more than 55,000 patients – the majority of whom are participants in Medicare Advantage plans.

TVH operated ten primary and specialty care clinics (collectively, the "Care Centers") known as (a) Brownwood Care Center, (b) Colony Care Center, (c) Creekside Care Center, (d) Eastport Care Center, (e) Lake Deaton Care Center, (f) Mulberry Grove Care Center, (g) Pinellas Care Center, (h) Santa Barbara Care Center, (i) Specialty Care at Spanish Springs, and (j) The Center for Advanced Healthcare at Brownwood.

TVH employed physicians, medical professionals, and staff who were passionate about providing exceptional patient care. TVH's efforts led to unprecedented patient satisfaction and staff retention, which further increased the quality of health care by creating open lines of communication and relationships of trust between patients and medical staff.  For example, TVH's employee satisfaction was over 80%, staff vacancy rates were less than 7%, the Net Promoter Score for TVH and its services was 96 out of a possible 100, and patient reviews frequently rated TVH and its Care Centers 4.9 or 5.0 out of a possible 5.0.

On the Petition Date, TVH's workforce was comprised of more than 800 employees, including more than 80 primary and specialty care physicians, with the vast majority of TVH's employees serving in full-time roles.

### B.   Debtor's Prepetition Indebtedness.

TVH was a party to one prepetition secured credit facility—a secured line of credit from PMA Lender LLC, a Florida limited liability company, with a principal balance of $15 million (the "PMA Loan Facility"). The amounts due and owing under the PMA Loan Facility were secured by a first-priority security interest in all assets of TVH.  Other than the PMA Loan Facility, TVH had no other material secured debt, except for certain equipment leases.

17

C.      **Events Precipitating Bankruptcy**.

For the past few years, TVH sought a strategic partner to acquire TVH's business or assets and continue TVH's mission of providing high-quality health care to residents in the surrounding communities. Beginning in September 2022, Evercore Group, LLC ("Evercore") worked with TVH as its investment banker and advisor in connection with this endeavor.  Evercore assisted Debtor's management in evaluating sales and other strategic alternatives, identifying and engaging strategic counterparties, facilitating due diligence for various parties in interest, and soliciting proposals from various parties in interest and third parties, among other services.

Starting in September 2023, Evercore engaged in a formal process to market Debtor's business to strategic counterparties.  In April 2024, CenterWell Senior Primary Care, Inc. ("CenterWell") signed a term sheet and emerged as the party most seriously interested in acquiring Debtor.  CenterWell completed significant due diligence, conducted numerous site visits with key leadership, and at the time, substantially negotiated a sale and purchase agreement before the process was suspended due to the discovery of certain Hierarchical Condition Categories ("HCC") coding issues.

TVH was a health care provider that primarily served Medicare patients. TVH accepted Medicare payment primarily through Medicare Advantage ("MA") and traditional Medicare. TVH accepted MA through contracts with MA plans such as United Healthcare Insurance Company and Blue Cross Blue Shield of Florida, Inc., which received payments directly from the Centers for Medicare and Medicaid Services ("CMS"). TVH received a monthly payment per member ("PMPM") for each MA beneficiary that it treated. The PMPM amount that CMS paid MA plans depended on a number of risk adjustments factors ("RAF Scores") that were meant to reflect the illness level of patients. MA plans generally received higher PMPM payments for patients who have higher RAF Scores and are anticipated to have higher medical expenses than patients with lower RAF Scores.  HCC codes are a significant input in the calculation of RAF Scores.

In or about August 2024, TVH became aware of a potential issue with respect to its HCC coding.  In particular, TVH learned that it may have submitted HCC diagnosis codes that were not clinically supported or otherwise did not meet Medicare coding and payment guidelines. Upon learning of the potential coding issue, TVH immediately engaged counsel and advisors and launched an investigation.  The investigation identified codes TVH submitted that did not appear to be supported by a sufficiently documented clinical basis. The investigation also identified that certain retrospective amendments appear to have been inconsistent with CMS guidelines.

TVH took immediate action to curtail and correct these practices and, in December 2024, TVH made a voluntary self-disclosure to the Office of Inspector General ("OIG") for the Department of Health & Human Services ("HHS").  In its self-disclosure, TVH voluntarily disclosed the existence of, and the circumstances relating to, the coding issues. At the conclusion of its investigation, TVH and its professionals estimated that TVH may have received upwards of $350 million in overpayments.

As soon as reasonably practicable after discovery of the issue regarding TVH's coding practices, TVH terminated its retrospective amendments of patient records and diagnostic codes and related practices. TVH has worked with its health care counsel (Goodwin Proctor LLP) and

18

consultants (FTI Consulting Inc.) to ensure it has appropriate policies and procedures, training, and review with respect to future coding and any amendments to medical records. Additionally, TVH retained Alvarez and Marsal to advise on its compliance functions. Prior to the Petition Date, TVH retained Christine Steiner, who previously led TVH's outside compliance team at Alvarez and Marsal, as its Chief Compliance Officer. Additionally, TVH enhanced and formalized its compliance functions, which included the formation of a board compliance committee in or about November 2024. Among other things, the board compliance committee focused on enhancing and maintaining a well-designed, adequately resourced, and effective compliance program on behalf of TVH.

In order to ensure appropriate governance decision making, TVH also engaged professionals to ensure it had independent management. First, in April 2025, the Board of Managers evaluated several candidates to serve as an independent manager of TVH—ultimately selecting Anna Phillips ("Ms. Phillips"). Second, TVH's Board of Managers adopted a resolution creating a restructuring committee (the "Restructuring Committee"), appointing Ms. Phillips as the sole member of the Restructuring Committee, and vesting the Restructuring Committee with the authority to take actions related to a potential restructuring of TVH and/or its Assets. Third, the Restructuring Committee evaluated numerous candidates to assume the position of Chief Restructuring Officer for TVH and ultimately retained SOLIC to provide the services of Neil Luria and certain additional support staff.

While the discovery of the apparent overpayments altered the developing transaction with CenterWell, TVH and CenterWell continued to engage in discussions regarding potential transactions. Ultimately, CenterWell agreed to proceed with an acquisition of substantially all assets of TVH (as opposed to the previously envisioned equity transaction). Shortly before the Petition Date, CenterWell entered into a stalking horse Asset Purchase Agreement and related documents to acquire substantially all of TVH's assets (collectively, the "Stalking Horse APA"). The Stalking Horse APA was predicated on the filing of this Chapter 11 Case and sale of the subject assets through the Chapter 11 Case.

On July 3, 2025, TVH filed a voluntary chapter 11 bankruptcy petition.

### D.    The Chapter 11 Case

The following is a brief description of certain material events that have occurred during the Chapter 11 Case:

#### 1.  Appointment of the Creditors' Committee.

On September 4, 2025, the U.S. Trustee appointed the Official Committee of Unsecured Creditors, consisting of the following members: (i) Alliant Dermatology, P.A.; (ii) Dr. Jennifer Peters; and (iii) Customize It Right LLC.

#### 2.  Claims Process and Bar Date.

     a.  <u>Schedules and Statements</u>. On July 31, 2025, Debtor filed its schedules of assets and liabilities and statement of financial affairs with the Bankruptcy Court. The

19

U.S. Trustee held the meeting of creditors pursuant to section 341(a) of the Bankruptcy Code on August 6, 2025.

b.  <u>General Bar Dates</u>.  The General Bar Date was September 11, 2025; and the Governmental Unit Bar Date is February 28, 2026.

c.  <u>Administrative Expense Claims Bar Date</u>. The Administrative Expense Claims Bar Date will be set by Court order.

**3.  Postpetition Financing and Cash Collateral Orders**.

On the Petition Date, Debtor filed a motion seeking approval of $39 million in post-petition financing under the DIP Facility.  *See* Doc. No. 4.  On November 20, 2025, the Bankruptcy Court entered the Final DIP Order, under which Debtor was authorized to, among other things, incur post-petition financing, use cash collateral in accordance, and grant adequate protection for the liens and security interests.

Without the funds provided under the DIP Loan Documents, Debtor would not have had sufficient available sources of capital and financing to, among other things, fund the Chapter 11 Case and facilitate the Sale (discussed below) pursuant to section 363 of the Bankruptcy Code. Thus, as the Bankruptcy Court determined, the DIP Facility was necessary to preserve, maintain, and enhance the value of Debtor's assets for the benefit of the Estate.

The DIP Facility was repaid on or about November 7, 2025, upon closing of the Sale.

**4.  Sale of Substantially All the Debtors' Assets**.

On the Petition Date, Debtor filed a motion for approval of CenterWell as the stalking horse bidder and certain procedures for the solicitation of competing bids and, if necessary, conducting an overbid auction.  *See* Doc. No. 14.  The Bankruptcy Court entered an order approving CenterWell as the stalking horse bidder and the proposed procedures for the solicitation of competing bids.  *See* Doc. No. 110.

While Debtor engaged in substantive discussions with numerous potential purchasers, Debtor only received one qualified overbid, which triggered a competitive auction process.  Per the bidding and sale procedures, on September 7, 2025, Debtor held an auction for the sale of substantially all assets of Debtor and its Estates.  At the conclusion of the auction, CenterWell was selected as the winning bidder with a bid of $68 million on substantially better terms, as compared to the Stalking Horse Bid. On September 9, 2025, the Bankruptcy Court entered an order approving the winning bid and sale to CenterWell.  *See* Doc. No. 222.

The Sale closed on November 7, 2025.

Following consummation of the Sale, the Assets of the Estate primarily consisted of: (i) Cash and other cash equivalents (est. $13 million); (ii) the equity in a single family home located in The Villages and previously used to house medical residents and students (est. $300,000); (iii) certain uncollected accounts receivables; and (iv) certain claims and Causes of Action, including

20

the Liquidating Trust Causes of Action. The Debtor and Committee believe the Causes of Action have substantial value.

**5. Investigation regarding Medicare Receipts and Allocations and Past Business Practices.**

SOLIC and other professionals have conducted an analysis of cash receipts and the allocation and disbursements of such funds during the period of January 1, 2020, through and including December 31, 2024 (the "Reporting Period"). The cash reconciliation has focused on identifying, analyzing and detailing the receipt, allocation and disbursement of Cash and other funds received by the Debtor during the Reporting Period. The Debtor and its professionals have evaluated thousands of financial records, including, without limitation, the Debtor's books and records, bank statements, invoices, receipts, payment confirmations, and additional information relating to the receipt, disbursement or other transfer of funds, and distilled these documents into a cash reconciliation report (the "Cash Reconciliation"). On October 10, 2025, Debtor submitted an *Interim Cash Reconciliation of The Villages Health System, LLC* [Doc. No. 284] (the "Cash Reconciliation"). A copy of the Cash Reconciliation is attached hereto as **Exhibit B**.

Additionally, the Debtor and the Committee have engaged in substantial investigations regarding the Debtor's past business practices, including the circumstances leading up to the Debtor's voluntary self-report relating to its Medicare coding practices, and ultimately, the proposed DOJ Settlement Agreement. These investigations have involved the production and review of thousands of emails, business records, and related financial documents. The Debtor believes that (i) there are substantial Causes of Action against third parties that will result in significant funds being collected and ultimately distributed by the Liquidating Trust created under the Plan, and (ii) the Plan represents the most efficient and effective mechanism to liquidate such Causes of Action.

**6. The Proposed DOJ Settlement**.

Prior to the filing of the Bankruptcy Case, in December 2024, the Debtor instituted a voluntary self-disclosure to the Office of Inspector General for the Department of Health & Human Services regarding its coding issues, including that it may have submitted HCC diagnosis codes that were not clinically supported or otherwise did not meet Medicare coding and payment guidelines.

Since that time, and continuing throughout the Bankruptcy Case, the Debtor, through its counsel, has been in contact with OIG and the Department of Justice, Civil Division ("DOJ"), as the principal representatives of the United States, regarding the potential overpayments relating to the HCC coding issues.

After significant legal work and discussion, the Debtor and the United States have negotiated a resolution of the dispute pertaining to the validity and amount of the DOJ Claim against the Debtor (*i.e.*, the DOJ Settlement). The DOJ Settlement is subject to Bankruptcy Court

and final DOJ approval, which is pending. A copy of the DOJ Settlement is appended to the Plan Supplement, and a summary of material terms are set forth below:[5]

      a.      The DOJ Claim shall be treated as an Allowed Claim in the amount of $541.5 million (the "DOJ Settlement Amount"). The DOJ Settlement Amount shall be reduced by any funds returned by the Medicare Advantage Organizations (as defined in the DOJ Settlement Agreement) to Centers for Medicare and Medicaid Services ("CMS") in connection with the conduct that was the subject of the Debtor's voluntary self-disclosure before the final distribution in the Bankruptcy Case and will reduce the liability of the Estate.

      b.      The Debtor agrees not to pursue in the bankruptcy case the Risk Adjustment payments (i.e. surplus amounts, incentive payments and other similar payments) withheld by an Medicare Advantage Organization if the Medicare Advantage Organization enters into an agreement by May 1, 2027, with the United States regarding the return of funds the Medicare Advantage Organization received from CMS in connection with the conduct that was the subject of the Debtor's voluntary self-disclosure, unless such agreement with the Medicare Advantage Organization returns an amount that is smaller than the amount of funds withheld from TVH by the Medicare Advantage Organization.

The Debtor believes that the DOJ Settlement is in the best interest of the Estate and its creditors and represents a significant step forward in concluding the self-disclosure process and maximizing the return to creditors.

On March 20, 2026, the Debtor filed a motion for approval of the DOJ Settlement pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a), which remains pending as of the filing of this Disclosure Statement.

### 7. The Proposed Developer Settlement.

Debtor has identified potential claims against certain insiders and affiliates of TVH, including the Developer parties, related to the validity and characterization of certain claims and potential avoidance actions, including, without limitation, (i) potential recharacterization and avoidance of payment obligations under the TVHH Line of Credit, (ii) potential challenges to the characterization and priority of the PMA Line of Credit, (iii) potential avoidance of tax distributions paid on account of pass-through tax liability of TVHH and other equity holders of Debtor, (iv) potential avoidance of payments made in connection with transactions involving the Developer, and (iv) potential claims against the Debtor's board of managers and officers for breach of fiduciary duty, among other claims.

In February 2026, the United States, the Debtor and the Developer reached an understanding as to the terms acceptable to the United States—Debtor's largest creditor.  On or about March 20, 2026, TVH and the Developer entered into the Developer Settlement, the principal terms of which are summarized as follows:

---

[5] For the avoidance to doubt, in the event of an inconsistency between this summary and the DOJ Settlement Agreement, the DOJ Settlement Agreement shall control.

a. <u>PMA Secured Claim</u>. Debtor agrees and acknowledges that PMA Lender holds a $15 million secured claim, plus reimbursable fees and expenses, on account of the PMA Line of Credit.

b. <u>Developer Claims</u>. Developer agrees to pay the Debtor an aggregate amount of $80 million in settlement of the Developer Claims, which amount shall be satisfied via (i) the waiver of the PMA Secured Claim ($15 million) and (ii) the payment of $65 million in cash.

c. <u>Released Parties</u>. Debtor agreed to revise the Plan to incorporate the Developer Settlement and include the Developer and certain related parties within the scope of "Released Parties" under the revised Plan.

d. <u>United States Support</u>. The United States agrees to file a statement in support of the resolution of the Developer Claims pursuant to the Developer Settlement.

If approved, the Developer Settlement shall provide the funding necessary to confirm the Plan, fund the liquidating trust, pay administrative claims and "Convenience Class" claims under the Plan on the effective date, or as soon thereafter as practicable, and pay a significant initial dividend to Beneficiaries of the Liquidating Trust (i.e., general unsecured creditors), while enabling the parties to avoid the uncertainty, cost, and delay inherent in adversarial litigation.

On March 20, 2026, the Debtor filed a motion for approval of the Developer Settlement pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a), which remains pending as of the filing of this Disclosure Statement.

## IV.   CONFIRMATION AND VOTING

### A.   Plan Confirmation Hearing

The Bankruptcy Code, Bankruptcy Rules, and Local Rules require the Bankruptcy Court, after appropriate notice, to hold a hearing on approval and confirmation of the Plan. On [•], 2026, the Bankruptcy Court entered an order scheduling the Plan Confirmation Hearing for [•], 2026 **at [•]:00 [•].m. (prevailing Eastern Time)**, to consider, among other things, final approval of the Disclosure Statement under section 1125 of the Bankruptcy Code and confirmation of the Plan [Doc No. [•]].  Notice of the Plan Confirmation Hearing will be provided to all known holders of Claims and Equity Interests, and other parties in interest. The Plan Confirmation Hearing may be adjourned from time to time by Debtor without further notice, except for an announcement of the adjourned date made at the Plan Confirmation Hearing or by filing a notice with the Bankruptcy Court.

Any objection to confirmation of the Plan and approval of the Disclosure Statement on a final basis must be in writing, must conform to the Bankruptcy Rules, must set forth the name of the objector, the nature and amount of Claims or Equity Interests held or asserted by the objector against Debtor, the basis for the objection and the specific grounds of the objection, and must be filed with the Bankruptcy Court, with a copy to chambers, together with proof of service thereof, and served upon the following parties by no later than [•], 2026 **at [•]:00 [•].m. (prevailing Eastern Time)** through the CM/ECF system, with courtesy copies by email to: (i) counsel for

Debtor at the contact information on the first page of the Plan; (ii) counsel for the Committee; (iii) the Office of the United States Trustee for Region 7; and (iv) such other parties as the Bankruptcy Court may order.

Bankruptcy Rule 9014 governs objections to confirmation of the Plan. **UNLESS AN OBJECTION TO APPROVAL AND CONFIRMATION OF THE PLAN IS TIMELY SERVED UPON THE PARTIES LISTED ABOVE AND FILED WITH THE BANKRUPTCY COURT, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT IN DETERMINING WHETHER TO APPROVE AND CONFIRM THIS COMBINED PLAN AND DISCLOSURE STATEMENT.**

B.      **Requirements for Plan Confirmation**.

The Bankruptcy Court will confirm the Plan only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code. Among the requirements for confirmation is that the Plan be (i) accepted by all impaired Classes of Claims and Equity Interests or, if rejected by an impaired Class, that the Plan "does not discriminate unfairly" against and is "fair and equitable" with respect to such Class and (ii) feasible.  The Bankruptcy Court must also find, among other things, that:

- the Plan has classified Claims and Equity Interests in a permissible manner;

- the Plan complies with the technical requirements of chapter 11 of the Bankruptcy Code; and

- the Plan has been proposed in good faith.

C.      **Best Interests of the Creditors Test**

The Bankruptcy Code requires that, with respect to an impaired class of claims or interests, each holder of an impaired claim or interest in such class either (i) accept the plan or (ii) receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount (value) such holder would receive or retain if the debtor was liquidated under chapter 7 of the Bankruptcy Code on the effective date.

The costs of a chapter 7 liquidation would necessarily include fees payable to a trustee in bankruptcy, as well as fees likely to be payable to attorneys, advisors, and other professionals that a chapter 7 trustee may engage to carry out its duties under the Bankruptcy Code.  Other costs of liquidating Debtor's Estate would include the expenses incurred during the Chapter 11 Case and allowed by the Bankruptcy Court in the chapter 7 cases.  The foregoing types of claims, costs, expenses, and fees that may arise in a chapter 7 liquidation case would be paid in full before payments would be made towards chapter 11 administrative, priority, and unsecured claims.  Like a chapter 7 trustee, the Liquidating Trustee will have the power to retain professionals, but unlike a chapter 7 trustee's professionals, the Bankruptcy Court does not need to approve the retention of such professionals, or their fees. The "learning curve" that the chapter 7 trustee and new professionals would face comes with potential additional costs to the Estate and with a delay compared to the timing of Distributions under the Plan.  Furthermore, a chapter 7 trustee would be entitled to statutory fees relating to the Distributions.  Accordingly, a portion of the Cash that will be available for Distribution to holders of Allowed Claims would instead be paid to the chapter 7 trustee.  Notwithstanding, like a chapter 7 trustee, the Liquidating Trustee also will be paid fees for his or her services.

24

Accordingly, as demonstrated in the liquidation analysis, which is attached hereto as **Exhibit A**, Debtor believes that in a chapter 7 liquidation, holders of Claims would receive less than it would receive under the Plan.  There can be no assurance, however, as to values that would actually be realized in a chapter 7 liquidation, nor can there be any assurance that a Bankruptcy Court would accept Debtor's conclusions or concur with such assumptions in making its determinations under section 1129(a)(7) of the Bankruptcy Code.

### D.    Plan Feasibility

Pursuant to section 1129(a)(11) of the Bankruptcy Code, a debtor must demonstrate that confirmation of a plan is not likely to be followed by the liquidation or need for further financial reorganization of the debtor under the proposed plan, unless such liquidation or reorganization is proposed under the plan.  Pursuant to the Plan, Debtor's Assets are being transferred to the Liquidating Trust.  These Assets will be liquidated and distributed to holders of Allowed Claims pursuant to the terms of the Plan, the Confirmation Order, and the Liquidating Trust Agreement.  Therefore, as this is a liquidating plan, the Bankruptcy Court's confirmation of the Plan will not be followed by liquidation or the need for any further reorganization; accordingly, Debtor submits that the Plan is feasible.

### E.    Classification of Claims and Interests

Section 1122 of the Bankruptcy Code requires that a plan place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class.  The Plan creates separate Classes to treat the Claims against and Equity Interests in Debtor.  Debtor believes that the Plan's classification places substantially similar Claims or Equity Interests in the same Class and thus meets the requirements of section 1122 of the Bankruptcy Code.

**EXCEPT AS SET FORTH IN THE PLAN OR UNDER BANKRUPTCY RULE 3019(A), UNLESS SUCH MODIFICATION OF CLASSIFICATION MATERIALLY AND ADVERSELY AFFECTS THE TREATMENT OF A HOLDER OF A CLAIM AND REQUIRES RE-SOLICITATION, ACCEPTANCE OF THE PLAN BY ANY HOLDER OF A CLAIM PURSUANT TO THIS SOLICITATION WILL BE DEEMED TO BE A CONSENT TO THE PLAN'S TREATMENT OF SUCH HOLDER OF A CLAIM REGARDLESS OF THE CLASS AS TO WHICH SUCH HOLDER ULTIMATELY IS DEEMED TO BE A MEMBER.**

The classification of Claims and Equity Interests and the nature of Distributions to members of each Class are summarized herein.  Debtor believes that the consideration, if any, provided under the Plan to holders of Claims reflects an appropriate resolution of their Claims taking into account the differing nature and priority (including applicable contractual subordination) of such Claims and Equity Interests. The Bankruptcy Court, however, must find that a number of statutory tests are met before it may confirm the Plan.  Many of these tests are designed to protect the interests of holders of Claims or Equity Interests who are not entitled to vote on the Plan, or do not vote to accept the Plan, but who will be bound by the provisions of the Plan if it is confirmed by the Bankruptcy Court.

**F.      Impaired Claims or Interests**

Pursuant to section 1126 of the Bankruptcy Code, only the holders of Claims in Classes "Impaired" by the Plan and receiving a Distribution under the Plan may vote on the Plan.  Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims may be "Impaired" if the Plan alters the legal, equitable, or contractual rights of the holders of such Claims or Equity Interests treated in such Class.  The holders of Claims or Equity Interests not Impaired by the Plan are deemed to accept the Plan and do not have the right to vote on the Plan.  The holders of Claims or Equity Interests in any Class that will not receive any Distribution or retain any property pursuant to the Plan are deemed to reject the Plan and do not have the right to vote.

Under the Plan, Classes 1 through 7 are Impaired and holders of Allowed Claims in Classes 1 through 6 are entitled to vote on the Plan (collectively, the "Voting Classes" and each a "Voting Class").

**G.      Eligibility to Vote on the Plan**

Unless otherwise ordered by the Bankruptcy Court, only holders of Allowed Claims in a Voting Class may vote on the Plan.  To vote on the Plan, you must hold an Allowed Claim in a Voting Class or be the holder of a Claim that has been temporarily Allowed for voting purposes under Bankruptcy Rule 3018(a).

**H.      Voting Procedure and Deadlines**

For a Ballot to count, it must be (1) properly completed, dated, and executed and (2) delivered to the Balloting Agent at one of the following addresses: (i) if by First Class mail, hand delivery or overnight delivery, The Villages Health System, LLC Ballot Processing c/o Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602; or (ii) if by electronic ballot, by using the electronic balloting service available at https://forms.stretto.com/.   Unless submitting electronically, holders of Claims entitled to vote on the Plan must submit the original Ballot bearing the holographic signature of the holder's authorized representative, not a facsimile or copy.

Ballots must be received on or before [•], 2026 at [•]:00 [•].m. (prevailing Eastern Time). Except as otherwise ordered by the Bankruptcy Court, you may not change your vote once a Ballot is submitted to the Balloting Agent.  Any Ballot that is timely received, executed, that contains sufficient information to permit the identification of the claimant and that is cast as an acceptance or rejection of the Plan will be counted and cast as an acceptance or rejection, as the case may be, of the Plan.

The following rules shall govern the tabulation of the Ballots in determining whether the Plan has been accepted or rejected by a particular Class of Claims:

  a.  any Ballot that is timely received, that contains sufficient information to permit the identification of the claimant and that is cast as an acceptance or rejection of the Plan will be counted and cast as an acceptance or rejection, as the case may be, of the Plan;

26

b.  any Ballot that is illegible or contains insufficient information to permit the identification of the claimant will not be counted;

c.  any Ballot cast by a Person or Entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan will not be counted;

d.  any Ballot cast for a Claim designated or determined to be unliquidated, contingent, or disputed or as zero or unknown in amount and for which no motion to estimate the Claim pursuant to Bankruptcy Rule 3018(a) has been timely filed will not be counted;

e.  any Ballot timely received that is cast in a manner that indicates neither acceptance nor rejection of the Plan or that indicates both acceptance and rejection of the Plan will not be counted;

f.  any Ballot received by Debtor after the Voting Deadline will not be counted;

g.  any Ballot not bearing an original signature will not be counted (for the avoidance of doubt, the electronic signature on a Ballot submitted and signed electronically by using the electronic balloting service established by the Balloting Agent shall constitute an original signature); and

h.  any Ballot submitted by facsimile, e-mail or other electronic communication will not be counted, *provided however* that a Ballot may be submitted electronically by using the electronic balloting service established by the Balloting Agent.

## I.  Acceptance of the Plan

As a Creditor, your acceptance of the Plan is important.  For the Plan to be accepted by an impaired Class of Claims, a majority in number (*i.e.*, more than half) and two-thirds in dollar amount of the Claims voting in each Impaired Class of Claims must vote to accept the Plan.  At least one impaired Class of Creditors, excluding the votes of insiders, must actually vote to accept the Plan.  Debtor strongly urges holders of Claims in Classes 1 through 6 to vote to accept the Plan.  Electing to refrain from voting or voting to reject the Plan will not preclude a creditor from receiving a Distribution under the Plan to which it is entitled; *provided* the Plan is confirmed.

## J.  Elimination of Vacant Classes

Any Class of Claims or Equity Interests (i) that does not contain, as of the date of commencement of the Plan Confirmation Hearing, a Holder of an Allowed Claim or Equity Interest, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, or (ii) does not contain, as of the Effective Date of the Plan, a Holder of an Allowed Claim or Equity Interest due to the resolution of all Allowed Claims or Equity Interests in the subject Class, shall be deemed eliminated from the Plan for all purposes, including for purposes of determining acceptance of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

## V.      THE PLAN; TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A.      Treatment of Unclassified Claims

#### i.   Administrative Expense Claims

Unless otherwise agreed by the holder of an Administrative Expense Claim, each holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash as follows: (a) if Allowed prior to the Effective Date, on the Effective Date or as soon as practicable thereafter, but in no event later than 30 days after the Effective Date; (b) if Allowed on or after the Effective Date, as soon as practicable after the date such Claim is Allowed, but in no event later than 30 days after the date such Claim is Allowed; (c) at such time and upon such terms as may be agreed upon by such holder and Debtor, if agreed before the Effective Date, or the Liquidating Trustee, if agreed after the Effective Date; or (d) at such time and upon such terms as ordered by the Bankruptcy Court.  The Liquidating Trust shall be responsible for the payment of any Allowed Administrative Expense Claims not paid in full on the Effective Date, which amount shall be paid from Liquidating Trust Assets; *provided* that holders of Allowed Administrative Expense Claims shall not constitute Beneficiaries of the Liquidating Trust solely on account of the right to payment of an Allowed Administrative Expense Claim from the Liquidating Trust after the Effective Date.

Unless previously Allowed by Final Order of the Bankruptcy Court or agreement of Debtor, holders of Administrative Expense Claims accruing from the Petition Date through and including the Effective Date, other than Professional Fee Claims, shall file with the Bankruptcy Court and serve on Debtor, and, if filed following the Effective Date, the Liquidating Trustee, requests for allowance of such Administrative Expense Claims, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable Order of the Bankruptcy Court, no later than the Administrative Expense Claim Bar Date.

Holders of Administrative Expense Claims that do not file and serve a motion for allowance of such Administrative Expense Claim(s) by the Administrative Expense Claim Bar Date shall be forever barred, estopped, and enjoined from asserting an Administrative Expense Claim against Debtor, the Estate, the Liquidating Trust, or their respective assets and properties, and any Administrative Expense Claims shall be deemed disallowed as of the Effective Date without the need for any notices, objection, or other action from Debtor or Liquidating Trustee, as applicable, or any action or approval by the Bankruptcy Court.  For the avoidance of doubt, a Proof of Claim asserting an Administrative Expense Claim (other than 503(b)(9) Claims) does not constitute a motion or request for allowance and payment of an Administrative Expense Claim, and as such, shall not be regarded or entitled to treatment as an actual or informal proof of claim or request for allowance of any Administrative Expense Claim.

#### ii.  Professional Fee Claims

On the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order approving the final fee applications of the applicable Professional, Debtor, on or before the Effective Date, or the Liquidating Trustee, after the Effective Date, shall pay all unpaid amounts

28

approved by the Bankruptcy Court owing to such Professional on account of an Allowed Professional Fee Claim. No later than 30 days after the Effective Date, unless extended for good cause, each Professional shall file with the Bankruptcy Court its final fee application seeking final approval of all fees and expenses from the Petition Date through the Effective Date; *provided* that the Liquidating Trustee may pay retained Liquidating Trust Advisors, Professionals or other Entities in the ordinary course of business for services rendered and expenses incurred after the Effective Date without further Bankruptcy Court order. Objections to any Professional Fee Claim must be filed and served on counsel to the Debtor, Committee (if extant), and Liquidating Trustee, and the subject Professional no later than fourteen (14) days after such Professional Fee Claim is filed with the Bankruptcy Court, and must be set forth in writing and state with specificity the particular billing entry(ies), fee(s), or cost(s) subject to the objection and the basis for the objection to the subject billing entry, fee, or cost. If no timely objection is filed, the Professional may lodge an order with the Bankruptcy Court granting final approval of the Professional Fee Claim. If a timely objection is filed, the Professional shall set the matter for hearing on no less than seven (7) days' notice to the Debtor, Committee (if extant), Liquidating Trust, the United States Trustee, and the objecting party.

The Liquidating Trust shall pay any Professional Fee Claims allowed after the Effective Date no later than three (3) days after the Order allowing such Professional Fee Claims becomes a Final Order. The Liquidating Trustee shall pay such Allowed Professional Fee Claims from the Liquidating Trust Assets and shall retain sufficient Cash in the Liquidating Trust for such purpose. Professional Fee Claims allowed on or prior to the Effective Date shall be paid either (i) by the Debtor on the Effective Date, if deemed practicable by the Debtor, or (ii) by the Liquidating Trust within ten (10) days after the Effective Date.

The entitlement to or receipt of any Distributions from the Liquidating Trust on account of an Allowed Professional Fee Claim shall not render the holder(s) of such Allowed Professional Fee Claim(s) Beneficiaries of the Liquidating Trust.

Notwithstanding the foregoing, Liquidating Trust Advisors, even if formerly Professionals, shall be entitled to payment from the Liquidating Trust for fees and expenses incurred in service of the Liquidating Trust on or after the Effective Date, subject solely to the procedures and requirements for such compensation established in the Liquidating Trust Agreement.

### iii. Priority Tax Claims

On the later of the Effective Date or the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, or, in each such case, as soon as practicable thereafter, but in no event later than 30 days after such event, each holder of an Allowed Priority Tax Claim will be paid an amount equal to the Allowed amount of such Claim plus, to the extent applicable, any amount required to comply with section 1129(a)(9)(C) or 1129(a)(9)(D) of the Bankruptcy Code, in Cash by Debtor, if on the Effective Date, or the Liquidating Trust, if after the Effective Date, from Estate Assets or Liquidating Trust Assets, respectively.

### iv. United States Trustee Statutory Fees

All fees payable pursuant to 28 U.S.C. § 1930, and any applicable interest thereon, that are due and payable as of the Effective Date shall be paid in full in Cash by the Debtor or the Liquidating Trustee on the Effective Date.  For the avoidance of doubt, the U.S. Trustee shall not be required to file a request or motion for allowance of an Administrative Expense Claim to establish its entitlement to statutory fees.

### B.      Classification of Claims and Interests; Estimated Recoveries

The Classes of Claims and Interests listed below classify Claims and Interests for all purposes, including voting on, and distributions pursuant to, the Plan in accordance with sections 1122 and 1123(a) of the Bankruptcy Code.  The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that (i) the Claim or Interest is an Allowed Claim or Interest and qualifies within the description of that Class, and it shall be deemed classified in a different Class to the extent that it qualifies within the description of such different Class, and (ii) such Allowed Claim or Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

The following table (a) designates the Classes of Claims against and Interests in Debtor and specifies which Classes are (i) Impaired and Unimpaired under the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (iii) presumed to accept or deemed to reject the Plan, and (b) estimates the potential Distribution (stated as a percentage of the Allowed Claim or Allowed Interest) to holders of Allowed Claims and Interest in the subject Class.[6]

| Class | Claim or Interest | Status | Voting Rights | Est. Recovery |
|-------|-------------------|--------|---------------|---------------|
| 1 | Prepetition Secured Loan Claims | Impaired | Entitled to Vote | 100% |
| 2 | Other Secured Claims | Impaired | Entitled to Vote | 100% |
| 3 | Convenience Class Claims | Impaired | Entitled to Vote | 90% |
| 4 | DOJ Claims and Payor Claims | Impaired | Entitled to Vote | Unknown |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote | Unknown |
| 6 | Subordinated Section 510(b) Claims | Impaired | Entitled to Vote | 0% |
| 7 | Equity Interests | Impaired | Deemed to Reject | 0% |

---

[6] Please be aware that the estimates of potential distributions are forward-looking statements.  All forward-looking statements are necessarily speculative and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward-looking statements.

### C.      Treatment of Claims and Interests

The holders of classified Claims and Interests against Debtor shall receive the treatment described below in full and final satisfaction of such Claim or Interest.

#### <u>Class 1</u> - **Prepetition Secured Loan Claims**

a.      *Classification*: Class 1 consists of all Allowed Prepetition Secured Loan Claims against Debtor.

b.      *Treatment*: Each holder of an Allowed Prepetition Secured Loan Claim in Class 1 shall receive from Debtor, or if after the Effective Date, the Liquidating Trustee, in full satisfaction, settlement, release and extinguishment of such Claim, Cash equal to the amount of the Allowed Prepetition Secured Loan Claim of said holder plus interest as provided herein; *provided* that if any Prepetition Secured Loan Claim has been challenged, and such challenge remains unresolved on the Effective Date, such Prepetition Secured Loan Claim shall constitute a Disputed Claim unless and until the challenge is resolved by Final Order of the Bankruptcy Court or other court of competent jurisdiction—at which point, the Liquidating Trustee shall pay the amounts, if any, then due and owing to the holder of the previously-disputed Prepetition Secured Loan Claim.

Class 1 Claims shall be paid over a period of five (5) years via annual payments due on the anniversary of the Effective Date, beginning on the date one year after the Effective Date.  Such annual payments shall be in an amount equal to (i) ten percent (10%) of the unpaid amount of the Class 1 Claim plus (ii) one-hundred percent (100%) of interest accrued as of the date of the subject payment; *provided*, *however*, that the fifth and final annual payment shall be in an amount equal to the unpaid portion of the Class 1 Claim, including accrued interest.  Pending payment in full, Class 1 Claims shall accrue interest at a rate of three percent (3%) *per annum*.

*Caveat*.  If the Bankruptcy Court approves the Developer Settlement prior to the Effective Date, Class 1 shall be deemed a vacant Class and eliminated pursuant to Article IV.J.

c.      *Voting*: Class 1 is Impaired under the Plan.  Holders of Allowed Class 1 Claims are entitled to vote to accept or reject the Plan, unless Class 1 becomes a vacant Class prior to the Voting Deadline.

#### <u>Class 2</u> - **Other Secured Claims**

a.      *Classification:*  Class 2 consists of all Allowed Other Secured Claims against Debtor.  Each Other Secured Claim shall be classified into

31

separate subclasses of Class 2 (*e.g.,* Class 2A, Class 2B, Class 2C, *etc.*) for treatment and voting under the Plan.

b.    *Treatment*:  On the Effective Date, or as soon thereafter as is practicable, Debtor shall surrender the Collateral for the Other Secured Claims to the holder(s) in full satisfaction, settlement, release and extinguishment of such Claim.

c.    *Voting*:  Class 2 is Impaired under the Plan.  Holders of Class 2 Claims are entitled to vote to accept or reject the Plan.

### Class 3 - Convenience Class Claims

a.    *Classification:*  Class 3 consists of all Allowed Convenience Class Claims against Debtor.  Any General Unsecured Claim against the Debtor in an amount equal to or less than $10,000.00 on a per claim basis, as determined on the Effective Date, shall automatically constitute a Convenience Class Claim.  Any holder of a General Unsecured Claim against the Debtor in an amount greater than $10,000.00 on a per claim basis may elect for its General Unsecured Claim(s) to be treated as a Convenience Class Claim by indicating such election on its Ballot.

b.    *Treatment*:  As soon as practicable following the Effective Date, but in no event later than 30 days thereafter, each holder of an Allowed Convenience Class Claim shall receive from the Liquidating Trustee, in full and final satisfaction, settlement, release, and extinguishment of such Claim, Cash in an amount equal to ninety percent (90%) of its Class 3 Claim up to $9,000.  For example, a holder of an Allowed Convenience Class Claim in the amount of $5,000 shall be entitled to a Distribution in the amount of $4,500 on account of its Class 3 Claim, while a holder of a General Unsecured Claim in the amount of $15,000 that elects to include such Claim in Class 3 shall be entitled to a Distribution in the amount of $9,000 on account of such Claim.

On the Effective Date, any and all objections to the allowance or payment of Class 3 Claims as provided under the Plan shall be deemed waived, *except* for objections to the validity or veracity of any Class 3 Claims.

c.    *Voting:*  Class 3 is Impaired under the Plan.  Holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

### Class 4 - DOJ Claims and Payor Claims

a.    *Classification:*  Class 4 consists of all Allowed DOJ Claims and Allowed Payor Claims against Debtor.

32

b.   *Treatment*:  On the Effective Date, holders of Allowed DOJ Claims and Payor Claims shall receive a Pro Rata Share of the Class A Beneficial Interests in the Liquidating Trust in full and final satisfaction, settlement, release, and extinguishment of such Claim; *provided* that if any Class 4 Claims are Disputed Claims on the Effective Date, the holder of such Claim shall receive its Pro Rata Share of the Class A Beneficial Interests upon allowance of its Class 4 Claim by Final Order of the Bankruptcy Court.

Holders of Class A Beneficial Interests in the Liquidating Trust shall be entitled to a Pro Rata Share of any Distributions from the Liquidating Trust per the terms of the Liquidating Trust Agreement and Confirmation Order; *provided, however*, that such entitlement shall be subject to the terms and provisions of the Plan and the Confirmation Order, including provisions governing the treatment of Disputed Claims.

*Caveat*.  The DOJ Claim and Payor Claims constitute Disputed Claims under the Plan; *provided, however*, that if the DOJ Settlement is approved, the DOJ Claim shall constitute an Allowed Class 4 Claim in the amount of $541.5 million.

c.   *Voting:*  Class 4 is Impaired under the Plan.  Holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

### Class 5 - General Unsecured Claims

a.   *Classification:*  Class 5 consists of all Allowed General Unsecured Claims against Debtor.

b.   *Treatment:*   On the Effective Date, holders of Allowed General Unsecured Claims shall receive a Pro Rata Share of the Class A Beneficial Interests in the Liquidating Trust in full and final satisfaction, settlement, release, and extinguishment of such Claim; *provided* that if any Class 5 Claims are Disputed Claims on the Effective Date, the holder of such Claim shall receive its Pro Rata Share of the Class A Beneficial Interests upon allowance of its Class 5 Claim by Final Order of the Bankruptcy Court.

Holders of Class A Beneficial Interests in the Liquidating Trust shall be entitled to a Pro Rata Share of any Distributions from the Liquidating Trust per the terms of the Liquidating Trust Agreement and Confirmation Order; *provided, however*, that such entitlement shall be subject to the terms and provisions of the Plan, including provisions governing the treatment of Disputed Claims.

c.   *Voting:*  Class 5 is Impaired under the Plan.  Holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

33

**Class 6 - Subordinated Section 510(b) Claims**

a.  *Classification:*  Class 6 consists of all Allowed Subordinated Section 510(b) Claims against Debtor.

b.  *Treatment:*  On the Effective Date, holders of Allowed Subordinated Section 510(b) Claims shall receive a Pro Rata Share of the Class B Beneficial Interests in the Liquidating Trust in full and final satisfaction, settlement, release, and extinguishment of such Claim; *provided* that if any Class 6 Claims are Disputed Claims on the Effective Date, the holder of such Claim shall receive its Pro Rata Share of the Class B Beneficial Interests upon allowance of its Class 6 Claim by Final Order of the Bankruptcy Court.  Class B Beneficial Interests are subordinate to Class A Beneficial Interests in the Liquidating Trust.

Following the payment in full of all Allowed Claims in Classes 1-5, holders of Class B Beneficial Interests in the Liquidating Trust shall be entitled to a Pro Rata Share of any Distributions from the Liquidating Trust per the terms of the Liquidating Trust Agreement and Confirmation Order; *provided, however*, that such entitlement shall be subject to the terms and provisions of the Plan, including provisions governing the treatment of Disputed Claims.

Class 6 Claims do not qualify for automatic or elective treatment as Convenience Class Claims in Class 3.

c.  *Voting:*  Class 6 is Impaired under the Plan.  Holders of Class 6 Claims are entitled to vote to accept or reject the Plan.

**Class 7 - Equity Interests**

a.  *Classification:*  Class 7 consists of all Allowed Equity Interests in Debtor.

b.  *Treatment:*  On the Effective Date, all Equity Interests in Debtor shall be cancelled and holders of Equity Interests shall receive no recovery on account of such Interest.

c.  *Voting:*  Class 7 is Impaired under the Plan.  Holders of Allowed Class 7 Equity Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Accordingly, holders of Allowed Class 7 Equity Interests are not entitled to vote to accept or reject the Plan.

## VI.    PROVISIONS GOVERNING THE LIQUIDATING TRUST

### A.    Appointment of the Liquidating Trustee.

The Liquidating Trustee shall be Neil Luria, with the assistance of GBH SOLIC Holdco, LLC.  The engagement and compensation of professionals for the Liquidating Trustee for services rendered on or after the Effective Date shall be governed in all respects by the terms of the Plan, the Liquidating Trust Agreement, and the Confirmation Order. All compensation for the Liquidating Trustee, and Liquidating Trust Advisors, shall be paid from the Liquidating Trust Assets, in accordance with the Liquidating Trust Agreement.  The Liquidating Trustee shall not be required to give any bond or surety or other security for the performance of his or her duties unless otherwise ordered by the Bankruptcy Court.  On the Effective Date, all Beneficiaries of the Liquidating Trust shall be deemed to have ratified and become bound by the terms and conditions of the Liquidating Trust Agreement.

### B.    Creation of the Liquidating Trust.

On the Effective Date, the Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the purpose of, among other things, (i) investigating and, if appropriate, pursuing the Causes of Action, (ii) administering, monetizing, and liquidating the Liquidating Trust Assets, (iii) resolving all Disputed Claims, if appropriate, and (iv) making all Distributions from the Liquidating Trust as provided for in the Plan and the Liquidating Trust Agreement.  The Liquidating Trust Agreement shall be filed with the Plan Supplement.  The Liquidating Trust Agreement shall be incorporated in full and made a part of the Plan upon confirmation.

Upon execution of the Liquidating Trust Agreement, the Liquidating Trustee shall be authorized to take all steps necessary to complete the formation of the Liquidating Trust; *provided, that*, prior to the Effective Date, Debtor may take such steps in furtherance of the formation of the Liquidating Trust as may be necessary, useful or appropriate under applicable law to ensure that the Liquidating Trust shall be formed and in existence as of the Effective Date.  The Liquidating Trust shall be administered by the Liquidating Trustee in accordance with the Liquidating Trust Agreement.

Except for those Liquidating Trust Assets attributable to the Disputed Claims Reserve, it is intended that the Liquidating Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d) and as a "grantor trust" within the meaning of Sections 671 through 679 of the Internal Revenue Code.  In furtherance of this objective, the Liquidating Trustee shall, in its business judgment, make continuing best efforts not to unduly prolong the duration of the Liquidating Trust and have no objective to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.  All Liquidating Trust Assets held by the Liquidating Trust on the Effective Date (except for those assets attributable to the Disputed Claims Reserve) shall be deemed for federal income tax purposes to have been distributed by Debtor on a Pro Rata share basis to Beneficiaries of the Liquidating Trust, and then contributed by the Beneficiaries to the Liquidating Trust in exchange for the Beneficial Interests. All holders of Claims have agreed or shall be deemed to have agreed to use the valuation of the

35

Assets transferred to the Liquidating Trust as established by the Liquidating Trustee for all federal income tax purposes.  The Beneficiaries of the Liquidating Trust will be treated as the grantors and deemed owners of the Liquidating Trust.  The Liquidating Trust will be responsible for filing information on behalf of the Liquidating Trust as grantor trust pursuant to Treasury Regulation Section 1.671-4(a).

**C.      Beneficiaries of the Liquidating Trust**.

On the Effective Date, each holder of an Allowed Claim in Classes 3 through 6 shall, by operation of the Plan and Plan Confirmation Order, receive a Beneficial Interest in the Liquidating Trust.  Each holder of a Disputed Claim that would otherwise be classified in Classes 3 through 6 shall be a contingent Beneficiary of the Liquidating Trust pending allowance of such Claims; *provided* that if the contingent Beneficiary's Claim is not allowed, such contingent Beneficiary shall no longer hold any interest in the Liquidating Trust, contingent or otherwise.  Upon the occurrence of the Effective Date, no other Entity or Person, including Debtor, shall have any interest, legal, beneficial, or otherwise, in the Liquidating Trust or the Liquidating Trust Assets, except as provided in the Plan.  Without limiting the generality of the preceding sentence, and for the avoidance of doubt, holders of Administrative Priority Claims, Professional Fee Claims, Priority Tax Claims, and Claims in Classes 1 and 2 and Equity Interests in Class 7 of the Plan shall not constitute Beneficiaries of the Liquidating Trust; *provided, however*, per the terms of the Liquidating Trust Agreement, the Liquidating Trust shall be obligated and authorized to pay any amounts due after the Effective Date to Holders of Allowed Claims.

The Beneficial Interests shall not be evidenced by any certificate, security, receipt, or any other form or manner whatsoever, except as maintained on the books and records of the Liquidating Trust by the Liquidating Trustee.  Any and all Beneficial Interests shall be non-transferable except (i) upon death of the Beneficiary, (ii) by operation of law, or (iii) to an affiliate of the Beneficiary.  Beneficiaries shall have no voting rights with respect to such Beneficial Interests.

The Liquidating Trust shall have a term of five (5) years from the Effective Date, without prejudice to the rights of the Liquidating Trust and Liquidating Trustee to extend such term by the filing of a motion in the Bankruptcy Court, conditioned upon the Liquidating Trust not becoming subject to the Securities Exchange Act of 1934 (as now in effect or hereafter amended).

**D.      Vesting and Transfer of Assets to the Liquidating Trust**.

Except as otherwise set forth in the Plan, pursuant to section 1141(b) of the Bankruptcy Code, the Liquidating Trust Assets shall vest in the Liquidating Trust free and clear of all Claims, Liens, charges or other encumbrances, except as otherwise provided in the Plan, on the condition that the Liquidating Trustee comply with the terms of the Plan, including the making of all payments and distributions as provided in the Plan. If the Liquidating Trustee defaults in performing under the provisions of the Plan and the Chapter 11 Case are converted to cases under chapter 7 of the Bankruptcy Code, all property vested in the Liquidating Trust and all subsequently acquired property owned as of or after the conversion date shall revest and constitute property of the estate in the chapter 7 case.  The Liquidating Trustee may abandon or otherwise not accept any Liquidating Trust Assets that the Liquidating Trustee believes, in good faith, has no value or will

be unduly burdensome to the Liquidating Trust. Any Liquidating Trust Assets that the Liquidating Trustee abandons or otherwise does not accept shall cease to be Liquidating Trust Assets. The Liquidating Trust Assets shall vest in the Liquidating Trust for the benefit of the Beneficiaries, and Debtor and its Estate will have no further interest in or with respect to the Liquidating Trust Assets or the Liquidating Trust.

On the Effective Date, the Liquidating Trustee shall be deemed to be the representative of the Estate pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code and, as such, shall be vested with the authority and power (subject to the Liquidating Trust Agreement and the Plan) to, among other things: (i) administer, object to or settle any Claims; (ii) make distributions in accordance with the terms of the Plan and Liquidating Trust Agreement; and (iii) carry out the provisions of the Plan related to the Liquidating Trust, including, but not limited to, prosecuting or settling all Causes of Action in his or her capacity as trustee for the benefit of the Beneficiaries. As the representative of the Estate, in his or her capacity as trustee for the benefit of the Beneficiaries, the Liquidating Trustee will succeed to all of the rights and powers of Debtor and its Estate with respect to all Causes of Action assigned and transferred to the Liquidating Trust, and the Liquidating Trustee will be substituted and will replace Debtor, the Estate, and any official committee appointed in the Chapter 11 Case, in all such Causes of Action, whether or not such claims are pending in filed litigation.

### E.     Powers and Duties of the Liquidating Trust and Liquidating Trustee

### i.   General Powers of the Liquidating Trustee

The rights and powers of the Liquidating Trustee are specified in the Liquidating Trust Agreement, which shall be filed with the Plan Supplement. This Article VI.E. provides a summary of the terms of the Liquidating Trust Agreement. In the event of any conflict between this Article VI.E and the Liquidating Trust Agreement, the terms of the Liquidating Trust Agreement control, unless otherwise ordered in the Plan Confirmation Order. The omission of any terms or provisions of the Liquidating Trust Agreement from this summary shall not constitute a conflict between this Article VI.E and the Liquidating Trust Agreement.

Except as expressly set forth in the Plan, the Plan Confirmation Order, or the Liquidating Trust Agreement, and subject to his or her duties and obligations, the Liquidating Trustee, on behalf of the Liquidating Trust, shall have absolute discretion in the administration of the Liquidating Trust and Liquidating Trust Assets.

The Liquidating Trust Agreement generally will provide for, among other things: (i) the payment of the Liquidating Trust expenses; (ii) the retention and compensation of counsel, accountants, financial advisors, or other professionals for the Liquidating Trust; (iii) the investment of Cash by the Liquidating Trustee within certain limitations, including those specified in the Plan; (iv) the orderly liquidation of the Liquidating Trust Assets; (vi) litigation of the Liquidating Trust Causes of Action, which may include the prosecution, settlement, abandonment, or dismissal of any such Causes of Action; and (vii) the prosecution and resolution of objections to such Claims as the Liquidating Trustee deems reasonable and appropriate.

The Liquidating Trustee, on behalf of the Liquidating Trust, may employ, without further order of the Bankruptcy Court, Liquidating Trust Advisors to assist in carrying out the Liquidating Trustee's duties under the Plan, Plan Confirmation Order, and Liquidating Trust Agreement, and may compensate and reimburse the reasonable expenses of the Liquidating Trust Advisors from the Liquidating Trust Assets, in accordance with the Plan and the Liquidating Trust Agreement.

The Liquidating Trust Agreement provides that the Liquidating Trustee shall be indemnified by and receive reimbursement from the Liquidating Trust Assets against and from any and all loss, liability, expense (including reasonable attorneys' fees), or damage which the Liquidating Trustee incurs or sustains, in good faith and without willful misconduct, gross negligence, or fraud, acting as Liquidating Trustee under or in connection with the Liquidating Trust Agreement.

On and after the Effective Date, the Liquidating Trustee shall have the power and responsibility to do all acts contemplated by the Plan and Liquidating Trust Agreement to be done by the Liquidating Trustee and all other acts that may be necessary or appropriate in connection with the disposition of the Liquidating Trust Assets and the distribution of the proceeds thereof, as contemplated by the Plan and in accordance with the Liquidating Trust Agreement. In all circumstances, the Liquidating Trustee shall act in its reasonable discretion in the best interests of the Beneficiaries pursuant to the terms of the Plan and the Liquidating Trust Agreement.

### ii. Books and Records

On or before the Effective Date, Debtor shall provide the Liquidating Trustee an electronic copy of or access to any and all of its documents, books, records, files, and emails available to Debtor and the Estate.

### iii. Investments of Cash

To the extent provided in the Liquidating Trust Agreement, the Liquidating Trust may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code or in other prudent investments; *provided, however*, that such investments are permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

### iv. Costs and Expenses of Administration of the Liquidating Trust

All Liquidating Trust expenses, including the costs associated with retaining Liquidating Trust Advisors, shall be the responsibility of, and paid by, the Liquidating Trust in accordance with the Liquidating Trust Agreement from the Liquidating Trust Assets.

### v. Reporting

No later than forty-five (45) days after the last day of each calendar quarter in which the Liquidating Trust shall remain in existence, the Liquidating Trustee shall file a report of all Liquidating Trust Assets held and received by the Liquidating Trust, all Available Trust Cash (as

defined in the Liquidating Trust Agreement) disbursed to Beneficiaries, and all fees, income, and expenses related to the Liquidating Trust during the preceding calendar quarter.

### F.       Post-Effective Date Notice.

After the Effective Date, to continue to receive notice of documents pursuant to Bankruptcy Rule 2002, all creditors and other parties in interest (except those listed in the following sentence) must file a renewed notice of appearance requesting receipt of documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Liquidating Trustee is authorized to limit the list of parties in interest receiving notice of documents pursuant to Bankruptcy Rules 2002 to the Office of the United States Trustee, the United States of America, and those parties in interest who have filed such renewed requests; *provided, however*, that the Liquidating Trustee also shall serve any known parties directly affected by or having a direct interest in the particular filing.  Notice given in accordance with the foregoing procedures shall be deemed adequate pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

### G.       Federal Income Tax Treatment of the Liquidating Trust for the Liquidating Trust Assets; Preparation and Filing of Tax Returns for Debtor.

For federal income tax purposes, it is intended that (a) the Liquidating Trust be classified as a liquidating trust under section 301.7701-4 of the Treasury regulations and that such trust be owned by its Beneficiaries, (b) the Beneficiaries be treated as if they had received a distribution from the Estate of an undivided interest in each of the Liquidating Trust Assets ((i) to the extent of the value of their respective share in the applicable assets and (ii) except for those assets attributable to the Disputed Claims Reserve) and then contributed such interests to the Liquidating Trust, and (c) the Liquidating Trust's Beneficiaries will be treated as the grantors and owners thereof.

Debtor shall be responsible for filing all required federal, state, and local tax returns and/or informational returns for Debtor (including final tax returns); *provided, however*, if the Developer Settlement is approved, TVHH shall control the preparation and filing of all flow-through federal, state and local income tax returns of the Debtor for each period, or portion thereof, with respect to which TVHH is or was an owner of the Debtor for U.S. federal income tax purposes.

The Liquidating Trust shall be responsible for filing all required federal, state and local tax returns and/or informational returns for the Liquidating Trust and shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements.  The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a Distribution, Beneficiaries complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable. Notwithstanding any other provision of the Plan, (a) each Beneficiary of the Liquidating Trust shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Beneficiary by any Governmental Unit, including income and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to or on behalf of such Beneficiary pursuant to the Plan unless and until such Beneficiary has made

39

arrangements satisfactory to the Liquidating Trustee to allow it to comply with its tax withholding and reporting requirements. Any property to be distributed by the Liquidating Trust shall, pending the implementation of such arrangements, be treated as an Unclaimed Distribution to be held by the Liquidating Trustee until such time as the Liquidating Trustee is satisfied with the Beneficiary's arrangements for any withholding tax obligations or the Liquidating Trustee is ordered by the Bankruptcy Court to disburse such funds. If the Liquidating Trustee makes such a request and the Beneficiary fails to comply or obtain an order of the Bankruptcy Court before the date that is 180 days after the request is made, the amount of such Distribution shall irrevocably revert to the Liquidating Trust and any Claim or Equity Interest in respect of such Distribution shall be disallowed and forever barred from receiving a Distribution under the Plan or Liquidating Trust Agreement.

The Liquidating Trustee (i) may timely elect to treat any Liquidating Trust Assets allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulations Section 1.468B-9, and (2) to the extent permitted by applicable law, shall report consistently for state and local income tax purposes. If a "disputed ownership fund" election is made, all parties (including the Liquidating Trustee and the Holders of Trust Interests) shall report for U.S. federal, state and local income tax purposes consistently with the foregoing. The Liquidating Trustee shall file all income tax returns with respect to any income attributable to a "disputed ownership fund" and shall pay the U.S. federal, state and local income taxes attributable to such disputed ownership fund based on the items of income, deduction, credit, or loss allocable thereto.

### H.      Term of Liquidating Trust.

The Liquidating Trustee shall be discharged and the Liquidating Trust shall be terminated, at such time as (i) all Disputed or temporarily Allowed Claims have been resolved, (ii) all of the Liquidating Trust Assets have been liquidated, (iii) all duties and obligations of the Liquidating Trustee under the Liquidating Trust Agreement, the Plan and the Plan Confirmation Order have been fulfilled, (iv) all Distributions required to be made by the Liquidating Trust under the Plan, the Liquidating Trust Agreement and the Plan Confirmation Order have been made, and (v) the Chapter 11 Case has been closed; *provided, however*, that in no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion filed prior to the fifth anniversary of the Effective Date (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets. Upon the filing of such a motion, the term of the Liquidating Trust shall be automatically extended through entry of a Final Order thereon, unless the extension adversely affects the status of the Liquidating Trust as a liquidating trust for federal income tax purposes.

### I.      Limitation of Liability of the Liquidating Trustee.

As shall be provided in the Liquidating Trust Agreement, the Liquidating Trust shall indemnify the Liquidating Trustee and any retained professionals against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that the

Liquidating Trustee and its professionals may incur or sustain by reason of being or having been a Liquidating Trustee or professionals thereof for performing any functions incidental to such service; *provided, however*, the foregoing shall not relieve the Liquidating Trustee or any retained professionals from liability finally adjudicated and to have arisen solely from bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing, or, in the case of an attorney or other professional and, as required any applicable rules of professional conduct, malpractice.

## VII. MEANS FOR IMPLEMENTATION OF THE PLAN

### A. Proposed DOJ Settlement.

The proposed DOJ Settlement is described in Article III of this Disclosure Statement and discussed in further detail in the motion to approve the DOJ Settlement [Docket No. 447]. The Debtor believes that the DOJ Settlement is in the best interest of the Estate and its creditors and represents a significant step forward in concluding the self-disclosure process and maximizing the return to creditors.

### B. Proposed Developer Settlement.

The proposed Developer Settlement is described in Article III of this Disclosure Statement and discussed in further detail in the motion to approve the Developer Settlement [Docket No. 448]. If approved by the Bankruptcy Court, the Developer Settlement shall result in the satisfaction of all Prepetition Secured Loan Claims in Class 1 and payment of $65 million in Cash to the Estate, which shall permit, among other things, the payment of all amounts due on the Effective Date, funding of the Liquidating Trust, and a significant interim distribution to Beneficiaries of the Liquidating Trust. The Debtor believes that the Developer Settlement is in the best interest of the Estate and its creditors.

### C. Preservation of Right to Conduct Investigations.

The Plan shall preserve for the Liquidating Trust the right to conduct investigations pursuant to Bankruptcy Rule 2004 as necessary and relevant to the liquidation and administration of the Liquidating Trust Assets, which rights shall vest in the Liquidating Trust on the Effective Date and shall continue until dissolution of the Liquidating Trust.

### D. Prosecution and Resolution of Causes of Action and Avoidance Actions.

From and after the Effective Date, prosecution and settlement of all Causes of Action conveyed to the Liquidating Trust shall be the sole responsibility of the Liquidating Trustee, subject to the terms of the Plan, Plan Confirmation Order, and Liquidating Trust Agreement. The Liquidating Trustee may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Beneficiaries of the Liquidating Trust. From and after the Effective Date, with respect to the Liquidating Trust Assets, the Liquidating Trust shall have exclusive rights, powers, and interests of the Estate to pursue, settle, or abandon such Causes of Action as the sole representative of the Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, *provided* that, resolutions of claims involving more than $1 million shall be subject to Court approval under Bankruptcy Rule 9019. Notwithstanding the occurrence of the Effective Date, all Causes of Action

41

that are not expressly released or waived under the Plan f are reserved and preserved and vest in the Liquidating Trust in accordance with the Plan.

**E.        Effectuating Documents and Further Transactions**.

All documents, agreements and instruments entered into and delivered on or as of the Effective Date contemplated by or in furtherance of the Plan, this Disclosure Statement, Plan Supplement, the Plan Confirmation Order, and any other agreement or document related to or entered into in connection with the Plan, shall become, and shall remain, effective and binding in accordance with their respective terms and conditions upon the parties thereto, in each case without further notice or Order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person (other than as expressly required by such applicable agreement).  The Liquidating Trustee may, and all holders of Allowed Claims receiving Distributions pursuant to the Plan, at the request or direction of the Liquidating Trustee shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**F.        Funding of Liabilities and Distributions**.

On the Effective Date, Debtor shall transfer the Liquidating Trust Assets to the Liquidating Trust.  The Liquidating Trust shall administer the Liquidating Trust Assets and distribute the proceeds thereof to the Beneficiaries of the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement, Plan, and Plan Confirmation Order.

**G.        Release of Liens**.

Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate and Liquidating Trust Assets shall be deemed fully released without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code or other applicable law; *provided, however*, that any tax liens that have been asserted against Debtor or its assets shall not be released until the underlying tax claim has been satisfied.

**H.        Exemption from Securities Laws**.

Beneficial Interests shall not constitute "securities" and under section 1145 of the Bankruptcy Code and, as such, the issuance of Beneficial Interests in the Liquidating Trust under the Plan shall be exempt from registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities.

**I.        Exemption from Certain Taxes and Fees**.

Pursuant to and to the fullest extent permitted by section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under the Plan shall not be subject to any document recording tax, stamp tax, conveyance

42

fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax or other similar tax or governmental assessment, and upon entry of the Plan Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfer of property without payment of any such tax, recordation fee, or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the Plan Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

**J.      Debtor's Privileges as to Certain Causes of Action**.

Effective as of the Effective Date, all Privileges of Debtor relating to the Liquidating Trust Assets shall be deemed transferred, assigned, and delivered by Debtor to the Liquidating Trust, without waiver or release, and shall vest with the Liquidating Trust. The Liquidating Trustee shall hold and be the beneficiary of all such Privileges and entitled to assert such Privileges.  No such Privilege shall be waived by disclosures to the Liquidating Trustee of Debtor's documents, information, or communications subject to attorney-client privileges, work product protections, or other immunities (including those related to common interest or joint defense with third parties), or protections from disclosure held by Debtor. Debtor's Privileges relating to the Liquidating Trust Assets will remain subject to the rights of third parties under applicable law, including any rights arising from the common interest doctrine, the joint defense doctrine, joint attorney-client representation, or any agreement; *provided, however*, prior to waiving such privilege, the Liquidating Trustee shall provide such third party with any written notice to the extent such notice is required by any joint defense or common interest agreements that might have existed as of the Petition Date.  Nothing contained herein or in the Plan Confirmation Order, nor any professionals of the Estate or Liquidating Trust compliance herewith and therewith, shall constitute a breach of any Privileges of Debtor.

**K.      Insurance Policies**.

Except as otherwise specifically stated herein, nothing in the Plan, the Plan Confirmation Order, or the Liquidating Trust Agreement, alters the rights and obligations of Debtor and its insurers (and third-party claims administrators) under the Insurance Policies or modifies the coverage or benefits provided thereunder or the terms and conditions thereof or diminishes or impairs the enforceability of the Insurance Policies.  On the Effective Date, the rights of Debtor and the Estate under any Insurance Policy to which Debtor or its Estate may be beneficiaries shall vest with the Liquidating Trust.  For the avoidance of doubt, Debtor is deemed to have assumed all of the Insurance Policies prior to such vesting.  Nothing in this provision shall be deemed to be an admission of any fact, liability or other matter whatsoever.

Each applicable insurer under the Insurance Policies is prohibited from, and the Plan Confirmation Order shall include an injunction against, denying, refusing, altering or delaying coverage on any basis regarding or related to the Chapter 11 Case, the Plan or any provision therein, including the treatment or means of liquidation set out within the Plan for any insured

Claims or Causes of Action. For the avoidance of doubt, nothing herein impairs the rights of Debtor or Debtor's directors and officers, or the Liquidating Trust with respect to the Insurance Policies.

**L.     Filing of Monthly and Quarterly Reports and Payment of Statutory Fees**.

Debtor shall file all monthly reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. After the Effective Date, the Liquidating Trustee shall file with the Bankruptcy Court quarterly reports when they become due, in a form reasonably acceptable to the U.S. Trustee. If, after the Effective Date, disbursements, other than those made by the Liquidating Trust, are made in any quarter, the entity making such disbursements shall report the distributions to the Liquidating Trustee for inclusion in the appropriate separate quarterly report.

Debtor and the Liquidating Trustee, as provided herein, shall remain obligated to pay Statutory Fees to the U.S. Trustee until the earliest of the closure, dismissal or conversion of the Chapter 11 Case. The U.S. Trustee shall not be required to file any Administrative Expense Claim in the case and shall not be treated as providing any release under the Plan in connection therewith.

**M.     Completion of Services of Professionals**.

On the Effective Date, the Professionals for Debtor and the Committee shall be deemed to have completed their services to the Debtor's Estate and such Professionals shall be able to file final and interim applications and be paid for reasonable compensation and reimbursement of expenses related thereto allowed by the Bankruptcy Court in accordance with Section V.B. above. Any of such Professionals may be retained by the Liquidating Trustee to represent the Liquidating Trust.

**N.     Operations of Debtor Between the Confirmation Date and the Effective Date**.

During the period from the Confirmation Date through and until the Effective Date, Debtor shall continue to operate as debtor in possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

**O.     Settlement of the DOJ Claim**

Debtor and the DOJ have negotiated a resolution of the dispute pertaining to the validity and amount of the DOJ Claim (the "DOJ Settlement"). A copy of the DOJ Settlement is appended to the Plan Supplement. Pursuant to the DOJ Settlement, the DOJ Claim shall be treated as an Allowed Class 4 Claim in the amount of $541.5 million. Confirmation of the Plan shall constitute approval of the DOJ Settlement pursuant to Bankruptcy Rule 9019.

44

## VIII.   PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN

### A.      Distribution Record Date

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Equity Interests as maintained by Debtor or its agents shall be deemed closed, and no further changes in the record holders of any of the Claims or Equity Interests shall be permitted. Debtor and the Liquidating Trustee shall have no obligation to recognize an ownership transfer of any Claims or Equity Interests occurring after the Distribution Record Date.   Debtor and the Liquidating Trustee, or any party responsible for making Distributions, shall be entitled to recognize and deal for all purposes under the Plan only with those holders of record stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

### B.      Method of Payment

Unless otherwise expressly agreed in writing, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank or an electronic wire or ACH transfer.

### C.      No Distribution Pending Allowance

Notwithstanding any other provision of the Plan or the Liquidating Trust Agreement, no Distributions shall be made on account of a Disputed Claim unless and until such Claim is deemed Allowed by Final Order.

### D.      Reserve of Cash Distributions

On any date that Distributions are to be made under the terms of the Plan, Debtor or the Liquidating Trustee, or their respective agents, as applicable, shall hold in reserve Cash equal to the amount that would be distributed on such date to holders of Disputed Claims, if each such Disputed Claim were an Allowed Claim.

### E.      Distribution Authorization

Debtor shall make any and all Distributions paid, or to be paid, on or before the Effective Date.  The Liquidating Trustee shall make any and all Distributions paid, or to be paid, after the Effective Date, including, without limitation, Claims related to Professionals and costs of the Estate, even if the holders of such Claims do not constitute Beneficiaries of the Liquidating Trust.

### F.      Delivery of Distributions

All Distributions under the Plan shall be made by the Claims Agent on behalf of Debtor or the Liquidating Trustee, as applicable, on or after the Effective Date.  The Claims Agent shall not be required to give any bond or surety or other security for the performance of its duties; however, if the Claims Agent is ordered to provide security, the costs of obtaining and maintaining such security shall be borne by the Liquidating Trust.

Except as provided herein, Distributions to holders of Allowed Claims shall be made: (i) at the addresses set forth on the respective proofs of Claim filed by such holders; (ii) at the addresses set forth on any written notices of address changes delivered to the Claims Agent after the date of any related proof of Claim; (iii) at the address reflected in the Schedules; or (iv) if not reflected in the Schedules or any Proof of Claim, at the address reflected in Debtor's records as of the Distribution Record Date.

If the Distribution to the holder of any Claim is returned to Debtor or the Liquidating Trustee as undeliverable, no further Distributions shall be made to such holder unless and until Debtor or the Liquidating Trustee, as applicable, are notified in writing of such holder's then current address. The Liquidating Trustee shall retain any undeliverable Distribution(s) until the earlier of (i) such time as a Distribution becomes deliverable and (ii) such undeliverable Distribution becomes an Unclaimed Distribution. Undeliverable Distributions shall revert to the Liquidating Trust. The Liquidating Trustee shall not have an obligation to update or correct the contact information for recipients of undeliverable Distributions.

All Distributions on the DOJ Claim shall be made via electronic transfer pursuant to payment instructions provided by the United States Attorney's Office for the Middle District of Florida.

### G.    Fractional Dollars; De Minimis Distributions

Notwithstanding any other provision of the Plan to the contrary, (a) Debtor and the Liquidating Trust shall not be required to make Distributions or payments of fractions of dollars, and whenever any Distribution of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars ($0.50) being rounded down; and (b) Debtor and the Liquidating Trust shall have no duty to make a Distribution on account of any Allowed Claim (i) if the aggregate amount of all Distributions authorized to be made on such date is less than $25,000, in which case such Distributions shall be deferred to the next Distribution, (ii) if the amount to be distributed to a holder on the particular Distribution date is less than $100.00, unless such Distribution constitutes the final Distribution to such holder, or (iii) if the amount of the final Distribution to such holder is $50.00 or less; *provided, however*, that the Debtor or the Liquidating Trustee, as applicable, may elect in their sole discretion, to make Distributions even if no duty exists to do so.

### H.    Excess Funds

After final Distributions have been made from the Liquidating Trust in accordance with the terms of the Plan and the Liquidating Trust Agreement, if the amount of remaining Cash in the Liquidating Trust is $50,000 or less, the Liquidating Trustee, may donate such amount to charity; *provided* that the charity shall be unrelated to Debtor, the Committee and its members, the Liquidating Trustee, the Liquidating Trust Advisors, and their respective professionals.

### I.    Unclaimed Distributions

Any Cash or other property to be distributed under the Plan shall revert to the Liquidating Trust if it is not claimed by the Beneficiary within three (3) months after the date of such Distribution.  If such Cash or other property is not claimed on or before such date, the Distribution made to such Beneficiary shall be deemed to be reduced to zero and such returned, undeliverable, or unclaimed Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall be returned to the Liquidating Trust.  All Unclaimed Distributions shall revert to the Liquidating Trust and the intended recipient of such Distribution(s) shall be deemed to have waived and released any and all rights to such Distribution(s) and any other Distribution(s) under the Plan.   This provision is not intended to impair the sovereign immunity of any Governmental Unit or limit its right to a Distribution that it is otherwise entitled to under the Plan.

### J.    Set-Off

Except as otherwise provided herein, Debtor or the Liquidating Trustee, as applicable, retains the right to reduce any Claim by way of setoff in accordance with Debtor's books and records without further Order of the Bankruptcy Court.  Rights of setoff and recoupment, if any, held by any Entity or Person are preserved for the purpose of asserting such rights as a defense to any Claims or Causes of Action of Debtor, its Estate, or the Liquidating Trustee, and regardless of whether such Entity or Person is the holder of an Allowed Claim.

### K.    Maximum Recovery and Postpetition Interest

Except as may be expressly provided herein or required under applicable law, interest shall not accrue on any Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date.  No Claim shall be Allowed to the extent it is for postpetition interest or other similar charges, except to the extent permitted for holders of Secured Claims under section 506(b) of the Bankruptcy Code.

Notwithstanding anything to the contrary in the Plan, no holder of an Allowed Claim shall receive, on account of such Allowed Claim, Distributions in excess of the Allowed amount of such Claim.

### L.    Allocation of Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a Distribution under the Plan comprises indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid prepetition interest.

### M.    Prepayment.

Except as otherwise provided herein or in the Liquidating Trust Agreement or the Plan Confirmation Order, Debtor and the Liquidating Trustee, as applicable, shall have the right to prepay, without penalty, all or any portion of an Allowed Claim.

**N.    Claims Paid or Payable by Third Parties**

**i.    Claims Paid by Third Parties**

If a holder of a Claim receives a payment or other satisfaction of its Claim other than through the Debtor and/or the Liquidating Trustee on account of such Claim, such Claim shall be reduced by the amount of such payment or satisfaction without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, and if the Claim was paid or satisfied in full other than through the Debtor and/or the Liquidating Trustee, then such Claim shall be disallowed and any recovery in excess of a single recovery in full shall be paid over to the Liquidating Trustee without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.  To the extent a holder of a Claim receives a distribution on account of such Claim and receives payment or satisfaction from a party that is not the Debtor and/or the Liquidating Trustee on account of such Claim, such holder shall, within fourteen (14) days of receipt thereof, repay or return the Distribution to the Debtor or Liquidating Trustee (as applicable), to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

**ii.  Claims Payable by Third Parties**

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of Debtor's Insurance Policies until the holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policies.  To the extent that one or more of Debtor's insurers agrees to satisfy in full or in part a Claim, then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

**IX.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.    Assumption and Rejection of Executory Contracts and Unexpired Leases**

Debtor has assumed and assigned to Purchaser certain executory contracts and unexpired leases by and through the Sale.  Unless otherwise provided herein, Debtor shall reject any executory contract or unexpired lease not assumed and assigned to Purchaser via the Sale.

**B.    Rejection of Executory Contracts and Unexpired Leases**.

Subject to Section VI.A., the Plan shall constitute a motion to reject all Executory Contracts not previously rejected pursuant to an order of the Bankruptcy Court unless (i) otherwise set forth in the Plan Supplement or (ii) expressly assumed by Debtor under the Plan, and Debtor shall have no further obligation thereunder.  The entry of the Plan Confirmation Order by the Bankruptcy Court shall constitute approval of any such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code and that the rejection thereof is in the best interest of Debtor, its Estate and all parties in interest in the Chapter 11 Case.  The foregoing information shall be included in the notice of entry of the Plan Confirmation Order.

48

Notwithstanding the foregoing, to the extent any Insurance Policies are deemed to be Executory Contracts, (i) Debtor does not seek to reject the Insurance Policies through this general rejection provision and (ii) the Insurance Policies shall be assumed by Debtor pursuant to the Plan. Nothing in the Plan, the Confirmation Order, or the Liquidating Trust Agreement alters, or shall be deemed to alter, the rights and obligations of Debtor (and the Estate) and Debtor's insurers (and third-party claims administrators) under the Insurance Policies or modifies, or shall be deemed to modify, the coverage or benefits provided thereunder or the terms and conditions thereof or diminishes or impairs the enforceability of the Insurance Policies.  All of Debtor's rights and its Estate's rights under any Insurance Policy to which Debtor and/or Debtor's Estate may be beneficiaries shall vest with the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries and all of the beneficiaries of such policies.

### C.    Claims Based on Rejection of Executory Contracts or Unexpired Leases.

Claims arising from the rejection of any Executory Contracts pursuant to the Plan, or the expiration or termination of any Executory Contracts prior to the Effective Date, must be filed with the Bankruptcy Court and served on Debtor no later than thirty (30) days after service of notice of entry of the Plan Confirmation Order by the Bankruptcy Court, which notice shall set forth the deadline to file such Claims.  Any Claims arising from the rejection of an Executory Contract for which proofs of Claim are not timely filed will be forever barred from assertion against Debtor, its Estate, the Liquidating Trust, and their respective successors and assigns, and their respective assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.  Unless otherwise ordered by the Bankruptcy Court, all timely filed Rejection Damages Claims shall be treated as General Unsecured Claims in Class 5 and shall be subject to the provisions of the Plan, Plan Confirmation Order, and Liquidating Truste Agreement.

### X.    PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

#### A.    Allowance of Claims

After the Effective Date, the Liquidating Trustee shall have, and retain any and all rights and defenses Debtor had, immediately before the Effective Date.  No Claim shall be deemed an Allowed Claim unless and until such Claim is expressly Allowed under the Plan or an Order entered in the Chapter 11 Case, when such order becomes a Final Order, or until the Claim Objection Deadline and any extensions thereof have passed without any objection to such Claim.

#### B.    No Distributions Pending Allowance

If an objection to a Claim, or a portion thereof, is filed, no Distribution(s) shall be made on account of such Claim, or the applicable portion thereof, unless and until such Disputed Claim becomes an Allowed Claim.

#### C.    Claims Administration

Except as otherwise specifically provided in the Plan, after the Effective Date, the Liquidating Trustee shall have the authority to: (1) file, withdraw, or litigate to judgment objections to Claims; (2) settle, compromise, or otherwise resolve Disputed Claims without any

further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the applicable Claims Register to reflect any settlements, compromises or Final Orders resolving Disputed Claims or the fact that any Claim has been paid or satisfied, or that any Proof of Claim that has been amended or superseded, cancelled or otherwise expunged (including pursuant to the Plan), in each case without any further notice to or action, order, or approval by the Bankruptcy Court; *provided, however,* the Liquidating Trustee may not resolve any objection(s) to Assumed General Unsecured Claim(s) without the prior consent of Purchaser. The Liquidating Trustee shall be primarily responsible for reconciling and objecting to General Unsecured Claims in accordance with the Plan.

### D.      Estimation of Claims

Before or after the Effective Date, Debtor or the Liquidating Trustee, as applicable, may, at any time and for any reason, request that the Bankruptcy Court estimate any Claim that is disputed, contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any such Claims, including during the litigation of any objection to such Claim or during the appeal relating to such objection.

Notwithstanding any provision in the Plan, a Claim that has been expunged from the claims register, but that either is subject to appeal or that otherwise has not yet been resolved by a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that any contingent, unliquidated, or Disputed Claim is estimated, or deemed estimated, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of Distributions), and Debtor or the Liquidating Trustee, as applicable, may elect to pursue a supplemental proceeding to object to any allowance of such Claim.

### E.      Time to File Objections to Claims

Debtor or the Liquidating Trustee, as applicable, to the extent permitted pursuant to the Plan or section 502(a) of the Bankruptcy Code, shall file and serve objections to any Claims no later than the Claims Objection Deadline; *provided, however,* that upon notice and hearing, the Court may extend the Claims Objection Deadline upon a showing that such extension serves the best interests of the Estate or Liquidating Trust, as applicable; *provided* that any motion to extend the Claims Objection Deadline shall be filed on or before the Claims Objection Deadline then in effect. The filing of a motion to extend the Claims Objection Deadline shall be deemed to automatically extend the Claims Objection Deadline until such motion is resolved by Final Order of the Bankruptcy Court.

### F.      Disallowance of Claims

Any Claims held by Persons from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may

not receive any Distributions on account of such Claims until such time as such Causes of Action against that Person have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, from that Person have been turned over or paid to the Liquidating Trustee. If an action to recover any avoidable transfer is commenced prior to the Effective Date, the Claims held by such Persons shall be deemed estimated at zero dollars ($0.00).

### G.    Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as practicable after the date that the order allowing a Disputed Claim becomes a Final Order, the Liquidating Trustee shall provide to the holder of such Claim the Distribution (if any) to which such holder is entitled, without interest, dividends, or accruals to be paid on account of such Claim unless required under applicable law.

## XI.    RELEASES, INJUNCTION AND RELATED PROVISIONS

### A.    Discharge of Debtor

Pursuant to section 1141(d)(3) of the Bankruptcy Code, Debtor shall not be entitled to a discharge.

### B.    Releases by Debtor

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is hereby released by Debtor, its Estate, the Liquidating Trustee, and the Liquidating Trust (as applicable) from any and all Claims, Causes of Action, Avoidance Actions, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever (including any derivative claims, asserted or assertable on behalf of Debtor, its Estate, the Liquidating Trustee, or the Liquidating Trust), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, accrued or unaccrued, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims, asserted or that could be asserted on behalf of Debtor, that Debtor, its Estate, the Liquidating Trustee, or the Liquidating Trust (as applicable), that such Person or its estate, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Equity Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, Debtor (including the management, ownership, or operation thereof), the Estate, Debtor's in- or out-of-court restructuring efforts, Debtor's intercompany transactions, any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between Debtor and any Released Party, the restructuring of any Claim or Equity Interest before or during the Chapter 11 Case, or any restructuring, contract, instrument, document, release, or other**

51

agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Plan Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan Documents and any related agreements, instruments, and other documents, the Chapter 11 Case, the filing of the Chapter 11 Case, the pursuit of confirmation, the pursuit of consummation, the solicitation of votes with respect to the Plan, the administration and implementation of the Plan, including the issuance or distribution of any property pursuant to the Plan, the Plan Documents, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in this subsection do not release (i) any post-Effective Date obligations of any Person or Entity under the Plan, including any such obligations created in connection with the restructuring, or (ii) any Preserved Claims and Causes of Action, including, but not limited to, (a) Insider Claims, (b) D&O Claims, (c) any claims against any person or party (including third party professionals) relating to the DOJ Claims, any D&O Claim, or any Insider Claim, and (d) the Payor Debtor Claims; *provided, however,* that the preceding limitation shall not apply to any Claims, Causes of Action, Avoidance Actions, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever resolved by or through the Developer Settlement (if approved), which shall be entitled to the full scope of releases, waivers, and other rights and protections afforded by this subsection.  Nothing in this subsection shall be deemed to release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be solely the result of such Released Party's gross negligence, fraud or willful misconduct.

Entry of the Plan Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by Debtor set forth in this subsection, which includes by reference each of the related provisions and definitions contained herein, and, furthermore, shall constitute the Bankruptcy Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims and Causes of Action released by such releases; (3) in the best interests of Debtor and the Estate; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to Debtor or the Estate asserting any Claim or Cause of Action released pursuant to such releases.

C.      **Releases by the Releasing Parties**.

As of the Effective Date, each Releasing Party hereby releases Debtor, the Estate, and Released Party from any and all Claims, Causes of Action, Avoidance Actions, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever (including any derivative claims, asserted or assertable on behalf of Debtor, the Estate, the Liquidating Trustee, or the Liquidating Trust), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, accrued or unaccrued, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, that such Releasing Party or its estate, affiliates (excluding the Debtor's affiliates), heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives,

52

consultants, agents, and any other persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Equity Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, Debtor (including the management, ownership, or operation thereof), the Estate, Debtor's in- or out-of-court restructuring efforts, the Debtor's intercompany transactions, any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any security of Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between Debtor and any Released Party, the restructuring of any Claim or Equity Interest before or during the Chapter 11 Case, or any restructuring, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Plan Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan Documents and any related agreements, instruments, and other documents, the Chapter 11 Case, the filing of the Chapter 11 Case, the process and approval of Sale, the pursuit of Plan confirmation, the pursuit of consummation of the Plan, the solicitation of votes with respect to the Plan, the administration and implementation of the Plan, including the issuance or distribution of any property pursuant to the Plan, the Plan Documents, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in this subsection do not release (i) any post-Effective Date obligations of any Person or Entity under the Plan, including any such obligations created in connection with the restructuring, or (ii) any Preserved Claims and Causes of Action, including, but not limited to, (a) Insider Claims; (b) D&O Claims; (c) any claims against any person or party (including third party professionals) relating to the DOJ Claims, any D&O Claim, or any Insider Claim; and (d) the Payor Debtor Claims; *provided, however,* that the preceding limitation shall not apply to any Claims, Causes of Action, Avoidance Actions, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever resolved by or through the Developer Settlement (if approved), which shall be entitled to the full scope of releases, waivers, and other rights and protections afforded by this subsection. Nothing in this subsection shall be deemed to release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be solely the result of such Released Party's gross negligence, fraud or willful misconduct.

Entry of the Plan Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth in this Subsection, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims and Causes of Action released by such releases; (3) in the best interests of Debtor and the Estates; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan and the restructuring; and (7) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to such releases.

**D.      Exculpation.**

**The Exculpated Parties shall neither have nor incur any liability to any Person or Entity, including the Exculpated Parties, for any and all claims, causes of action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances taking place or arising during the Exculpation Timeframe related in any way to the Liquidating Trust Agreement, Chapter 11 Case, the Disclosure Statement, the Plan, or any other Plan Document, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the post-petition debtor-in-possession financing approved by the Bankruptcy Court, or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan, including, without limitation, those that Debtor, Liquidating Trustee, or any holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for or on behalf of any of Debtor or the Estate; *provided, however*, that the foregoing provisions shall have no effect on the liability of any Exculpated Party that solely results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted gross negligence, fraud, a violation of criminal law, or willful misconduct.  Notwithstanding anything provided herein, the foregoing provisions of this subsection shall have no effect on the liability of any Person or Entity that is solely the result of actions or omissions that occurred prior to or after the Exculpation Timeframe or the rights of any Person or Entity to enforce the Plan or other agreements or documents delivered under or in connection with the Plan.**

**E.      Preservation of Causes of Action**

**1.  Vesting of Causes of Action**

Except as otherwise provided in the Plan or the Plan Confirmation Order, in accordance with section 1123(b)(3) of the Bankruptcy Code, any and all Causes of Action and Avoidance Actions that are Liquidating Trust Assets are reserved for, assigned to, and shall become property of the Liquidating Trust, and the Liquidating Trustee shall be vested with any and all rights and standing to commence, prosecute, and resolve such Causes of Action, on the Effective Date; *provided, however*, that any Cause of Action or Avoidance Action settled or otherwise resolved prior to the Effective Date shall not vest in the Liquidating Trust, , except to the extent that the settled or resolved Cause of Action or Avoidance Action includes payments over time, then such payments shall vest in the Liquidating Trust.

Except as otherwise proved in the Plan, Plan Confirmation Order or the Liquidating Trust Agreement, after the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute, abandon, settle, or compromise any Causes of Action conveyed to the Liquidating Trust, in its sole discretion and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in any adversary proceeding.

**2.    Preservation of All Causes of Action Not Expressly Settled or Released**

Unless a Cause of Action against any Person or Entity is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including the Plan Confirmation Order), Debtor expressly reserves such Cause of Action, including all Causes of Action to be transferred by Debtor to the Liquidating Trust pursuant to the Plan and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata,* collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Plan Confirmation Order or Effective Date based on the Disclosure Statement, the Plan or the Plan Confirmation Order or any other Final Order (including the Plan Confirmation Order).  In addition, the Liquidating Trust reserves the right to pursue or adopt any claims or causes of action alleged in any lawsuit in which Debtor or the Committee is a defendant or an interested party, against any Person or Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.  Furthermore, in the pursuit of an Avoidance Action, Debtor, the Liquidating Trust, the Liquidating Trustee, and/or their assignees shall certify in writing in any demand, claim, complaint, and other effort to collect on an Avoidance Action to compliance with section 547(b) of the Bankruptcy Code.

The failure of Debtor to list a claim, right, cause of action, suit or proceeding shall not constitute a waiver or release by Debtor of such claim, cause of action, right of action, suit or proceeding.  IT IS THE EXPRESSED INTENTION OF THE PLAN TO PRESERVE RIGHTS, CLAIMS, AND CAUSES OF ACTION OF THE DEBTOR AND THE ESTATE, WHETHER NOW KNOWN OR UNKNOWN, FOR THE BENEFIT OF THE LIQUIDATING TRUST AND THE DEBTOR'S CREDITORS. **No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Causes of Action against them as any indication that the Liquidating Trustee will not pursue any available Causes of Action against them.**

Notwithstanding the foregoing, Debtor has made a good faith effort to identify and disclose all known Causes of Action.  A schedule identifying Debtor's known Causes of Action to be transferred to and retained by the Liquidating Trust shall be attached to the Plan Supplement.

    **F.    Injunction**.

    **From and after the Effective Date and except as otherwise set forth in the Plan or the Plan Confirmation Order, all Persons and Entities are permanently enjoined from commencing or continuing in any manner against Debtor, the Committee or its members, the Released Parties, the Liquidating Trust or the Liquidating Trustee, or their respective predecessors, successors, and assigns, current and former shareholders, affiliates, subsidiaries, principals, employees, agents, officers, directors, managers, consultants, limited partners, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants, in each case in their capacity as such, and their respective assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any claim, demand, liability, obligation, debt, right, cause of action, interest or remedy released or to be released pursuant to the Plan or the Plan Confirmation Order.**

**Except as otherwise specifically provided in the Plan or the Plan Confirmation Order, all Persons who have held, hold, or may hold Claims against or Equity Interests in Debtor and any successors, assigns or representatives of such Person shall be precluded and permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any Claim, action or other proceeding of any kind against any of the assets to be distributed under the Plan, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order with respect to any of the assets to be distributed under the Plan, and (c) creating, perfecting or enforcing any encumbrance of any kind with respect to any of the assets to be distributed under the Plan. Except as otherwise expressly provided for in the Plan, with respect to obligations issued pursuant to the Plan, or to the extent that a permissible right of subrogation is asserted with respect to a timely filed proof of claim, all Persons are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest satisfied and released hereby, from: (i) commencing or continuing in any manner any action or other proceeding of any kind against any of the Liquidating Trust or the Liquidating Trustee, or their successors and assigns, and their assets and properties; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any of the Liquidating Trust or the Liquidating Trustee, their successors and assigns, and their assets and properties; (iii) creating, perfecting, or enforcing any encumbrance of any kind against any of the Liquidating Trust or the Liquidating Trustee, or the property or estate of the Liquidating Trust; (iv) asserting any right of subrogation against any of the Liquidating Trust or the Liquidating Trustee, or against the property or estate of any of the Liquidating Trust; or (v) commencing or continuing in any manner any action or other proceeding of any kind in respect of any claim or equity interest or cause of action released or settled hereunder.**

**Notwithstanding any provision in the Plan or the Plan Confirmation Order to the contrary, nothing contained in the Plan or the Plan Confirmation Order shall (i) extinguish, impact, or release any right of setoff, recoupment, or subrogation of any kind (a) held by any Creditor which is asserted in a timely filed proof of claim or objection to the Plan, or pursuant to section 503(b)(1)(d) of the Bankruptcy Code, or (b) that is or may be asserted as an affirmative defense or other defense to a Cause of Action or Claim asserted by Debtor or the Liquidating Trust against such creditor or vendor; or (ii) affect the applicability of 26 U.S.C. § 7421(a).**

**Notwithstanding any provision in the Plan or the Plan Confirmation Order, the United States is not enjoined or barred by this subsection but shall be bound by the Plan and Plan Confirmation Order as against the Liquidating Trustee and Liquidating Trust with respect to any Claim of the United States that arose prior to the Effective Date.**

G.      **Exclusions from Releases**

Notwithstanding anything contained in Article X of the Plan, except to the extent of the Released Parties, no release or exculpation shall be granted to (i) any current or former officers, managers or directors; (ii) any current or former statutory or non-statutory insiders; (iii) the Prepetition Secured Lender; (iv) any person or entity who is subject to any Liquidating Trust Claims; and (v) any other affiliated person or entity that the Debtor or the Committee may determine have liability to the Debtor (collectively the "Non-Released Parties"); *provided*, for the

56

avoidance of doubt, that subject to approval of the Developer Settlement, the Developer, or any of them, shall not constitute Non-Released Parties.

**H.**      **Exclusions and Limitations on Liability**.

Notwithstanding anything in the Plan to the contrary, no provision of the Plan or the Plan Confirmation Order, including, without limitation, the exculpation provision contained in Article X.D of the Plan, shall (a) modify, release or otherwise limit the liability of any Person or Entity not specifically released or exculpated hereunder, including, without limitation, any Person or Entity that is otherwise liable under theories of vicarious or other derivative liability or that is a non-Debtor third party guarantor of any obligation of the Debtor, or (b) affect the ability of the Internal Revenue Service to pursue any non-Debtor entity to the extent allowed by non-bankruptcy law for any liabilities that are related to any federal income tax liabilities that owed by Debtor or the Estate.

**I.**      **Protections Against Discriminatory Treatment**

To the maximum extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Persons shall not discriminate against Debtor or the Liquidating Trustee, as applicable, or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, Debtor or the Liquidating Trustee, as applicable, or another Person with whom Debtor or the Liquidating Trustee, as applicable, have been associated, solely because Debtor has been a debtor under the Bankruptcy Code, was insolvent before the commencement of or during the Chapter 11 Case, or did not pay a debt that is satisfied or discharged hereunder.

**J.**      **Document Retention**

On and after the Plan Effective Date, Debtor or the Liquidating Trustee, or their designee, as applicable, may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented.

**K.**      **Term of Injunctions or Stays**

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court in effect on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**L.**      **Termination of All Employee and Workers' Compensation Benefits**.

Except as otherwise provided in the Liquidating Trust Agreement, all existing employee benefit plans and workers' compensation benefits not previously expired or terminated by Debtor or assigned by Debtor to Purchaser via the Sale will be deemed terminated on the Effective Date.

## XII.   CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

### A.     Conditions Precedent to the Effective Date of the Plan

The following are conditions precedent to the Effective Date of the Plan that must be satisfied or waived (as provided below):

1.      The Plan Confirmation Order, which shall be in a form acceptable to Debtor, shall have been entered by the Bankruptcy Court, and shall become a Final Order;

2.      The Plan Confirmation Order shall be in full force and effect;

3.      The Liquidating Trust Agreement, in a form and substance acceptable to Debtor, shall have been fully executed and the Liquidating Trust shall have been formed;

4.      The final version of all schedules, documents, and Plan exhibits, including a Plan Supplement, shall have been filed;

5.      All actions, agreements, instruments, or other documents necessary to implement the terms and conditions of the Plan are affected or executed and delivered; and

6.      All Liquidating Trust Assets shall have been transferred to and/or vested in the Liquidating Trust.

Notwithstanding the foregoing, Debtor, with the consent of the Committee, may waive the occurrence of any condition precedent to the Effective Date.  Any such written waiver of a condition precedent set forth in this Article XII may be affected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action, other than proceeding to consummate the Plan.

### B.     Substantial Consummation

On the Effective Date, the Plan shall be deemed substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### C.     Effect of Failure of Conditions

If the consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any claims by Debtor or any other Person, or any Claims or Interests by any holders thereof; (ii) prejudice in any manner the rights of Debtor, any holder of Claims or Interests, or any other Person; or (iii) constitute an admission, acknowledgment, offer or undertaking by Debtor, any holder of Claims or Interests, or any other Person in any respect.

## XIII.   MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

### A.   Modification and Amendments

Subject to the limitations contained in the Plan, Debtor, in consultation with the Committee, reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, and subject to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, to amend or modify the Plan prior to the Effective Date, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code.

### B.   Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan following the solicitation of votes thereon are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation.

### C.   Revocation or Withdrawal of Plan

Debtor reserves the right to revoke or withdraw the Plan, prior to the entry of the Plan Confirmation Order and to file subsequent chapter 11 plans.  If Debtor revokes or withdraws the Plan, or if the Effective Date does not occur within one-hundred and eighty (180) days after entry of the Confirmation Order, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (iii) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, Debtor or any other Entity; (b) prejudice or alter in any manner the rights of Debtor or any other Entity; or (c) constitute an admission of any sort by Debtor or any other Entity.

## XIV.   RETENTION OF JURISDICTION

After the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case and all Persons and Entities with respect to all matters related to the Chapter 11 Case, Debtor, the Estate, the Liquidating Trust, and the Plan as is legally permissible, including, but not limited to, jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Expense Claim and Professional Fee Claim and the resolution of any objections to the allowance or priority of any Claims or Interests;

2. grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3. resolve any matters related to the assumption, assignment or rejection of any Executory Contract to which Debtor is party or with respect to which Debtor may be liable, and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

4. ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and the Liquidating Trust Agreement;

5. hear and determine any motions, adversary proceedings, mediations, contested or litigated matters, applications involving Debtor, and any other matters that may be pending on the Effective Date or instituted by the Liquidating Trust after the Effective Date, including any Liquidating Trust Causes of Action;

6. hear and determine disputes (i) arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, or Liquidating Trust Agreement or (ii) arising out of or related to the issuance of any subpoenas or requests for examination pursuant to Bankruptcy Rule 2004 issued before or after the entry of the Plan Confirmation Order relating to the subject matter of any Causes of Action;

7. enter such orders as may be necessary or appropriate to implement, interpret, enforce or consummate the provisions of the Plan, the Confirmation Order, the Liquidating Trust Agreement and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan, Plan Supplement or the Disclosure Statement;

8. issue and enforce injunctions and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

9. enforce all Orders previously entered by the Bankruptcy Court;

10. resolve any cases, controversies, suits or disputes with respect to the exculpation, injunctions, releases, and other provisions contained in the Plan, and enter such orders as may be necessary or appropriate to implement or enforce all such exculpation, injunction, release and other provisions;

11. enter and implement such orders, as necessary or appropriate, if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

12. resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Plan Confirmation Order, the Liquidating Trust Agreement or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement;

13. enter an order and/or the decree contemplated in Bankruptcy Rule 3022 concluding the Chapter 11 Case; and

14. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code, including any request made under section 505 of the Bankruptcy Code for the expedited determination of any unpaid liability of Debtor for any tax incurred during the administration of the Chapter 11 Case, including any tax liability arising from or relating to the transactions contemplated by the Plan, for tax periods ending after the Petition Date and through the closing of the Chapter 11 Case.

Notwithstanding anything contained herein to the contrary, the Bankruptcy Court shall retain jurisdiction, to the fullest extent permitted by applicable law, to adjudicate Liquidating Trust Causes of Action and to hear and determine disputes concerning Liquidating Trust Causes of Action, including any motions to compromise or settle such Liquidating Trust Causes of Action or disputes relating thereto.  Despite the foregoing, if the Liquidating Trustee chooses to pursue any Liquidating Trust Cause of Action in another court of competent jurisdiction, the Liquidating Trustee will have authority to bring such action.

## XV.    MISCELLANEOUS PROVISIONS

### A.    Immediate Binding Effect

Subject to Article XI of the Plan, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Documents shall be immediately effective and enforceable and deemed binding upon Debtor and the Liquidating Trustee, as applicable, and any and all holders of Claims against and Equity Interests in Debtor (irrespective of whether their Claims or Interests are Allowed or whether they have accepted the Plan), all Persons that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Person acquiring property under the Plan, and any and all non-Debtor counterparties to the Executory Contracts.

### B.    Additional Documents

On or before the Effective Date, Debtor may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### C.    Payment of Statutory Fees

All fees due and payable by the Estate pursuant to section 1930 of Title 28 of the U.S. Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the U.S. Code to the extent applicable ("Quarterly Fees") prior to the Effective Date shall be paid by Debtor on the Effective Date.  After the Effective Date, the Liquidating Trustee shall be responsible for paying Quarterly Fees when due and payable.  Debtor and the Liquidating Trustee, as applicable, shall remain obligated to pay Quarterly Fees to the U.S. Trustee until the earliest of the Chapter 11 Case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Administrative Expense Claim in the Chapter 11 Case, and shall not be treated as providing any release under the Plan.

### D.    Successors and Assigns

The rights, benefits, and obligations of any Person or Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

### E.  Notices

Any pleading, notice, or other document required by the Plan to be served on or delivered to Debtor, the Committee, or Liquidating Trustee shall be sent by first class U.S. mail, postage prepaid to:

| | |
|---|---|
| <u>To Debtor:</u> | The Villages Health System, LLC c/o Neil F. Luria<br>SOLIC Capital Advisors<br>425 W. New England Avenue, Suite 300<br>Winter Park, FL 32789<br>nluria@soliccapital.com<br><br>With a copy to:<br><br>Baker & Hostetler LLP<br>Attn:   Elizabeth A. Green (egreen@bakerlaw.com)<br>          Jimmy D. Parrish (jparrish@bakerlaw.com)<br>          Andrew Layden (alayden@bakerlaw.com)<br>          Michael T. Delaney (mdelaney@bakerlaw.com)<br>          Benjamin R. Taylor (brtaylor@bakerlaw.com)<br>200 South Orange Avenue<br>Suite 2300<br>Orlando, FL  32801-3432 |
| <u>To Committee:</u> | PACK LAW<br>Attn:   Joseph A. Pack (joe@packlaw.com)<br>          Robert Burns (robert@packlaw.com)<br>          Jessey J. Krehl (jessey@packlaw.com)<br>          Lynn Sherman (weltersherman@icloud.com)<br>51 N.E. 24th Street, Suite 108<br>Miami, Florida 33137<br>Telephone: (305) 916-4500 |
| <u>To the Liquidating Trust:</u> | To be provided in Plan Supplement. |

### F.  Entire Agreement

Except as otherwise indicated, the Plan, the Plan Supplement, and other Plan Documents supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on the subjects covered thereby, all of which have become merged and integrated into the Plan and the Confirmation Order; *provided* that such integration shall not supersede, nullify, alter or otherwise affect any order of the Court or any agreements or rights approved or conferred by order of the Court, including, without limitation, any settlement agreements approved by the Court prior to the Effective Date.

### G.  Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan, as applicable, as if set forth in full in the Plan.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the relevant portion of the Plan shall control.

### H.  Non-Severability of Plan Provisions

The provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable, other than as described below. The Confirmation Order shall constitute a judicial determination, and shall provide, that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the consent of Debtor; and (iii) non-severable and mutually dependent.

### I.  Closing of Chapter 11 Case

Debtor shall, promptly after the full administration of the Chapter 11 Case, and with the consent of the Liquidating Trustee, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order necessary to close the Chapter 11 Case.

### J.  Conflicts

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other Order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.  In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

### K.  Rates

The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Plan Effective Date.

## XVI.  RISKS AND OTHER CONSIDERATIONS

### A.  Bankruptcy Considerations.

Although Debtor believes that the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will confirm the Plan as proposed.  Moreover, there can be no assurance that modifications of the Plan will not be required for confirmation or that such modifications would not necessitate the re-solicitation of votes.  In addition, the occurrence of the Effective Date is conditioned on the satisfaction or waiver of the conditions precedent specified herein, and there can be no assurance that such conditions will be satisfied or waived.

63

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. Debtor believes that the classification of Claims and Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because each Class of Claims and Equity Interests encompass Claims or Equity Interests, as applicable, that are substantially similar to the other Claims and Equity Interests in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

While Debtor believes that there are sufficient Liquidating Trust Assets to make Distributions to Liquidating Trust Beneficiaries, there can be no assurance that the Liquidating Trust Assets will be sufficient to pay all administrative expenses of Liquidating Trust or make Distributions to the Liquidating Trust Beneficiaries.

### B.   Settlements Pending Approval.

Although Debtor believes that the DOJ Settlement and Developer Settlement satisfy the requirements for approval under section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the decision to approve a settlement agreement is discretionary and, as a result, there can be no assurance that the Bankruptcy Court will approve the DOJ Settlement and Developer Settlement; however, Debtor does not believe the denial of the DOJ Settlement and/or Developer Settlement will materially affect the Plan or confirmation—rather, the matters addressed by the DOJ Settlement and Developer Settlement will be preserved for resolution by the Liquidating Trust after the Effective Date.

### C.   No Duty to Update Disclosures.

Debtor has no duty to update the information contained in the Plan or this Disclosure Statement as of the date hereof, unless otherwise specified herein, or unless Debtor is required to do so pursuant to an Order of the Bankruptcy Court.  Delivery of the Plan and this Disclosure Statement after the date hereof does not imply that the information contained herein has remained unchanged.

### D.   Alternatives to Confirmation and Consummation of the Plan.

### 1.   Alternate Plan

If the Plan is not confirmed, Debtor or any other party in interest (if, pursuant to section 1121 of the Bankruptcy Code, Debtor has not filed a plan within the time period prescribed under the Bankruptcy Code) could attempt to formulate and propose a different plan.  Such a plan likely would result in additional costs, including, among other things, additional professional fees or potential asserted substantial contribution claims, all of which would likely constitute Administrative Expense Claims (subject to allowance).  Debtor believes that the Plan provides for an orderly and efficient liquidation of Debtor's remaining assets and enables creditors to realize the best return under the circumstances.

## 2.    Chapter 7 Liquidation or Dismissal

If a plan pursuant to Chapter 11 is not confirmed by the Bankruptcy Court, the Chapter 11 Case could be converted to a liquidation case under chapter 7 of the Bankruptcy Code, in which case a trustee would be elected or appointed, pursuant to applicable provisions of chapter 7 of the Bankruptcy Code, to liquidate the assets of Debtor for distribution in accordance with the priorities established by the Bankruptcy Code.  Debtor believes that liquidation under chapter 7 of the Bankruptcy Code of Debtor's remaining assets would result in a substantial reduction in the value to be realized by holders of Claims as compared to Distributions contemplated under the Plan. This is so because a chapter 7 liquidation would require the appointment of a trustee, which would require substantial additional expenses (including the costs associated with the trustee's retention of attorneys and other professionals) and would delay the orderly liquidation of Debtor's Assets, thereby lowering recoveries to such holders of Claims.  Consequently, Debtor believes that confirmation of the Plan will provide a substantially greater return to holders of Claims than would liquidation under chapter 7 of the Bankruptcy Code.  A copy of Debtor's liquidation analysis is attached to the Plan.

### E.    Certain Federal Tax Consequences

**THE FOLLOWING DISCUSSION SUMMARIZES CERTAIN MATERIAL U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE IMPLEMENTATION OF THE PLAN TO  CERTAIN U.S. HOLDERS OF ALLOWED CLAIMS.  THIS SUMMARY DOES NOT ADDRESS THE FEDERAL INCOME TAX CONSEQUENCES TO HOLDERS OF CLAIMS WHO ARE UNIMPAIRED, DEEMED TO HAVE REJECTED THE PLAN IN ACCORDANCE WITH THE PROVISIONS OF SECTION 1126(G) OF THE BANKRUPTCY CODE, OR HOLDERS WHOSE CLAIMS ARE ENTITLED TO PAYMENT IN FULL IN CASH.**

This summary is based on the Tax Code, existing and proposed Treasury Regulations, judicial decisions, and published administrative rules and pronouncements of the IRS as in effect on the date hereof, all of which are subject to change, possibly on a retroactive basis.  Any such change could significantly affect the U.S. federal income tax consequences described below.

Debtor has not requested an opinion of counsel or a ruling from the IRS with respect to any of the tax aspects of the Plan.  This discussion does not address foreign, state, or local tax consequences of the Plan, nor does it purport to address all of the U.S. federal income tax consequences of the Plan to special classes of taxpayers (e.g., small business investment companies, regulated investment companies, real estate investment trusts, banks and certain other financial institutions, insurance companies, controlled foreign corporations, tax-exempt organizations, retirement plans, individual retirement and other tax-deferred accounts, states or their subdivisions or integral parts, other governmental entities, holders that are, or hold Claims through, S corporations, partnerships or other pass-through entities for U.S. federal income tax purposes, holder's of Claims whose functional currency is not the U.S. dollar, dealers in securities or foreign currency, traders that mark-to-market their securities, persons subject to the alternative minimum tax or the "Medicare" tax on unearned income, persons who use the accrual method of accounting and report income on an "applicable financial statement," and persons holding Claims

65

that are part of a straddle, hedging, constructive sale, or conversion transaction).  In addition, this discussion does not address U.S. federal taxes other than income taxes.

For purposes of this discussion, a "U.S. Holder" is a beneficial owner of a Claim or a Beneficiary of the Liquidating Trust that is, for U.S. federal income tax purposes:

1.      an individual citizen or resident of the United States;

2.      a corporation, or other entity taxable as a corporation, created or organized in or under the laws of the United States, any state therein or the District of Columbia;

3.      an estate, the income of which is subject to U.S. federal income taxation regardless of its source; or

4.      a trust if a court within the United States is able to exercise primary supervision over its administration and one or more "United States persons" (as defined in the Tax Code) have the authority to control all substantial decisions of the trust or otherwise if the trust has a valid election in effect under current Treasury regulations to be treated as a United States person.

A "Non-U.S. Holder" is any holder that is not a U.S. Holder or a partnership (or other entity treated as a partnership or other pass-through entity for U.S. federal income tax purposes).

If a partnership (or other entity treated as a partnership or other pass-through entity for U.S. federal income tax purposes) is a holder of a Claim, the tax treatment of a partner (or other beneficial owner) generally will depend upon the status of the partner (or other beneficial owner) and the activities of the partner (or other beneficial owner) and the entity.

The following discussion generally assumes that the Plan will be treated as a plan of liquidation of Debtor for U.S. federal income tax purposes, and that all Distributions to holders of Claims will be taxed accordingly.

**THE SUMMARY CONTAINED IN THIS ARTICLE XVI.D. IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR TAX PLANNING OR FOR ADVICE BASED UPON THE PARTICULAR CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM.  EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS URGED TO CONSULT ITS OWN TAX ADVISORS FOR THE FEDERAL, STATE, LOCAL AND FOREIGN INCOME AND OTHER TAX CONSEQUENCES APPLICABLE TO IT UNDER THE PLAN.**

### 1. Consequences to U.S. Holders of Allowed Claims

Pursuant to the Plan, each U.S. Holder of an Allowed Claim will receive, in full and final satisfaction of its applicable claim, one or more Beneficial Interests in the Liquidating Trust.  As discussed below, each U.S. Holder of an Allowed Claim that receives a Beneficial Interest will be treated for U.S. federal income tax purposes as directly receiving, and as a direct owner of, an undivided interest in the Liquidating Trust Assets consistent with its economic rights in the trust.

66

a. <u>Realization and Recognition of Gain or Loss</u>.  In general, a U.S. Holder of an Allowed Claim will recognize gain or loss with respect to its Allowed Claim in an amount equal to the difference between (i) the sum of the amount of any Cash and the fair market value of its undivided interest in the Liquidating Trust Assets consistent with its economic rights in the trust received in respect of its Claim (other than any consideration attributable to a Claim for accrued but unpaid qualified stated interest) and (ii) the adjusted tax basis of the Claim exchanged therefor. A U.S. Holder's adjusted tax basis in a Claim will be its cost increased by the amount of original issue discount ("OID") and market discount previously taken into account and reduced by the amount of amortizable bond premium previously amortized with respect to the Claim and any cash payments on the Claim other than payments of qualified stated interest.  Pursuant to the Plan, the Liquidating Trustee will in good faith value the assets transferred to the Liquidating Trust, and all parties to the Liquidating Trust (including U.S. Holders of Allowed Claims receiving Beneficial Interests) must consistently use such valuation for all U.S. federal income tax purposes.   To the extent that a portion of the Allowed Claim, as applicable, is allocable to accrued but unpaid qualified stated interest, the U.S. Holder will recognize ordinary interest income, except to the extent previously included in income by a U.S. Holder under its method of accounting.

In the event of the subsequent disallowance of any Disputed Claim or the reallocation of undeliverable Distributions, it is possible that a U.S. Holder of a previously Allowed Claim may receive additional Distributions in respect of its Claim.  Accordingly, it is possible that the recognition of any loss realized by a U.S. Holder with respect to an Allowed Claim may be deferred until all Claims are Allowed or Disallowed.  Alternatively, it is possible that a U.S. Holder will have additional gain in respect of any additional Distributions received.

After the Effective Date, a U.S. Holder's share of any collections received on the assets of the Liquidating Trust (other than as a result of the subsequent disallowance of Disputed Claims or the reallocation of undeliverable Distributions) should not be included, for U.S. federal income tax purposes, in the U.S. Holder's amount realized in respect of its Allowed Claim but should be separately treated as amounts realized in respect of such U.S. Holder's ownership interest in the underlying assets of the Liquidating Trust.

Subject to the market discount rules discussed below, if gain or loss is recognized, such gain or loss may be long-term capital gain or loss if the Allowed Claim disposed of is a capital asset in the hands of the U.S. Holder and has been held for more than one year.  The deduction for capital losses is subject to limitations. Each U.S. Holder of an Allowed Claim should consult its tax advisor to determine whether gain or loss recognized by such U.S. Holder will be long-term capital gain or loss and the specific tax effect thereof on such U.S. Holder.  The character of any gain or loss may depend on, among other things, the origin of the U.S. Holder's Allowed Claim, when the U.S. Holder receives payment in respect of such Allowed Claim, whether the U.S. Holder reports income using the accrual or cash method of tax accounting, whether the U.S. Holder acquired its Allowed Claim at a discount, whether the U.S. Holder has taken a bad debt deduction with respect to such Allowed Claim, and/or whether (as intended and herein assumed) the Plan implements the liquidating of the Debtors for U.S. federal income tax purposes.

In general, a U.S. Holder's aggregate tax basis in its undivided interest in the Liquidating Trust Assets will equal the fair market value of such interest at the time of receipt increased by its share of Debtor's liabilities to which such assets remain subject upon transfer to the Liquidating

67

Trust, and a U.S. Holder's holding period generally will begin the day following establishment of the Liquidating Trust.

    b.  <u>Distributions to U.S. Holders in Respect of Accrued Interest</u>.  In general, the gross amount of payments received (whether stock, Cash, or other property) by a U.S. Holder of a debt instrument in satisfaction of accrued qualified stated interest will be taxable to the U.S. Holder as ordinary interest income (if not previously included in the U.S. Holder's gross income under the U.S. Holder's normal method of accounting).  Conversely, a U.S. Holder generally recognizes a deductible loss to the extent any accrued qualified stated interest was previously included in its gross income and is not paid in full.  The amount of payments received by a U.S. Holder may include withholding tax imposed on the payment, if any, at the withholding tax rate applicable to the U.S. Holder. Subject to generally applicable restrictions and conditions, withholding tax paid at the appropriate rate applicable to the U.S. Holder generally will be treated as foreign income tax eligible (i) for credit against a U.S. Holder's U.S. federal income tax liability, or (ii) at the election of such U.S. Holder, for deduction in computing such U.S. Holder's taxable income (provided that the U.S. Holder elects to deduct, rather than credit, all foreign income taxes paid or accrued for the relevant taxable year).  Ordinarily, interest will constitute income from sources without the United States for foreign tax credit purposes.  Such income generally will constitute "passive category income" or, in the case of certain U.S. Holders, "general category income."  The calculation of foreign tax credits and, in the case of a U.S. Holder that elects to deduct foreign taxes, the availability of such deduction, involves the application of rules that depend on a U.S. Holder's particular circumstances.  U.S. Holders should consult their tax advisors regarding the availability of foreign tax credits or deductions in their particular situations.

    Except as otherwise required by law (as reasonably determined by the Debtor or Liquidating Trustee, as applicable), Distributions with respect to an Allowed Claim will be allocated first to the principal portion of such Allowed Claim (as determined for U.S. federal income tax purposes) and, thereafter, to the remaining portion of such Allowed Claim, if any. However, there is no assurance that such allocation would be respected by the IRS for U.S. federal income tax purposes.  U.S. Holders are urged to consult their own tax advisor regarding the allocation of consideration received under the Plan, as well as the deductibility of accrued but unpaid qualified stated interest and the character of any loss claimed with respect to accrued but unpaid qualified stated interest previously included in gross income for U.S. federal income tax purposes.

    c.  <u>Market Discount considerations for U.S. Holders</u>. Under the "market discount" provisions of Sections 1276 through 1278 of the Tax Code, some or all of any gain realized by a U.S. Holder exchanging the debt instruments constituting its Allowed Claim may be treated as ordinary income (instead of capital gain), to the extent of the amount of accrued "market discount" on the debt instruments constituting the exchanged Allowed Claim (unless the U.S. Holder elected to include market discount in income as it accrued).

    In general, a debt instrument is considered to have been acquired with "market discount" if it is acquired other than on original issue and if the U.S. Holder's initial tax basis in the debt instrument is less than (a) the sum of all remaining payments to be made on the debt instrument, excluding qualified stated interest or (b) in the case of a debt instrument issued OID, its adjusted issue price, in each case, by at least a de minimis amount (equal to 0.25% of the sum of all

68

remaining payments to be made on the debt instrument, excluding qualified stated interest, multiplied by the number of remaining whole years to maturity).

2. **U.S. Federal Income Tax Consequences to Non-U.S. Holders of Allowed Claims**

a.      Gain Realized. Subject to the discussion below under "Backup Withholding and Information Reporting", any gain realized by a Non-U.S. Holder on the exchange of its Claim generally will not be subject to U.S. federal income taxation, unless (a) the Non-U.S. Holder is an individual who was present in the United States for a hundred and eighty-three (183) days or more during the taxable year in which the exchange occurs and certain other conditions are met or (b) such gain is effectively connected with the conduct by such Non-U.S. Holder of a trade or business in the United States (and if an income tax treaty applies, such gain is attributable to a permanent establishment maintained by such Non-U.S. Holder in the United States).

If the first exception applies, the Non-U.S. Holder generally will be subject to U.S. federal income tax at a rate of 30% (or at a reduced rate or exemption from tax under an applicable income tax treaty) on the amount by which such Non-U.S. Holder's capital gains allocable to U.S. sources exceed capital losses allocable to U.S. sources during the taxable year of the exchange.  If the second exception applies, the Non-U.S. Holder generally will be subject to U.S. federal income tax with respect to any gain in the same manner as a U.S. Holder. In addition, if such a Non-U.S. Holder is a corporation, it may be subject to a branch profits tax equal to 30% (or at a reduced rate or exemption from tax under an applicable income tax treaty) of its effectively connected earnings and profits for the taxable year, subject to certain adjustments.

U.S. Holders and Non-U.S. Holders should consult their tax advisors regarding the US and USVI tax consequences of receiving consideration in exchange of its Claim, including the potential application of USVI withholding taxes to such payment and any exemption from any such withholding tax that may be available.

3. **Tax Treatment of the Liquidating Trust and U.S. Holders of Beneficial Interests Therein**

a.      Classification of the Liquidating Trust.  The Liquidating Trust is intended to qualify as a "liquidating trust" for U.S. federal income tax purposes (other than in respect of any portion of the Liquidating Trust Assets allocable to, or retained on account of, Disputed Claims, as discussed below).  In general, a liquidating trust is not a separate taxable entity but rather is treated for U.S. federal income tax purposes as a "grantor" trust (i.e., a pass-through entity). The IRS, in Revenue Procedure 94-45, 1994-2 C.B. 684, set forth the general criteria for obtaining an IRS ruling as to the grantor trust status of a liquidating trust under a chapter 11 plan.  The Liquidating Trust will be structured with the intention of complying with such general criteria.

Pursuant to the Plan, and in conformity with Revenue Procedure 94-45, all parties (including, without limitation, Debtor, the Liquidating Trustee, and U.S. Holders of Beneficial Interests) shall treat the transfer of Liquidating Trust Assets to the Liquidating Trust as (1) a transfer of the Liquidating Trust Assets (subject to any obligations relating to those assets) directly to U.S. Holders of Beneficial Interests (other than to the extent Liquidating Trust Assets are

69

allocable to Disputed Claims), followed by (2) the transfer by such beneficiaries to the Liquidating Trust of Liquidating Trust Assets in exchange for the Beneficial Interests. Accordingly, except in the event of contrary definitive guidance, U.S. Holders of Beneficial Interests shall be treated for U.S. federal income tax purposes as the grantors and owners of their respective share of Liquidating Trust Assets (other than such Liquidating Trust Assets as are allocable to Disputed Claims). While the following discussion assumes that the Liquidating Trust would be so treated for U.S. federal income tax purposes, no ruling will be requested from the IRS concerning the tax status of the Liquidating Trust as a grantor trust. Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the Liquidating Trust as a grantor trust. If the IRS were to challenge successfully such classification, the U.S. federal income tax consequences to the Liquidating Trust and the U.S. Holders of Claims could vary from those discussed herein.

b. <u>General Tax Reporting by the Liquidating Trust and U.S. Holders of Beneficial Interests</u>. For all U.S. federal income tax purposes, all parties must treat the Liquidating Trust as a grantor trust of which the U.S. Holders of Beneficial Interests are the owners and grantors, and treat the U.S. Holders of Beneficial Interests, as the direct owners of an undivided interest in the Liquidating Trust Assets (other than any assets allocable to Disputed Claims), consistent with their economic interests therein. The Liquidating Trustee will file tax returns for the Liquidating Trust treating the Liquidating Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a). The Liquidating Trustee also shall annually send to each U.S. Holder of a Beneficial Interest a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S. federal income tax purposes.

Allocations of taxable income of the Liquidating Trust (other than taxable income allocable to any assets allocable to, or retained on account of, Disputed Claims, if such income is otherwise taxable at the Liquidated Trust) among the U.S. Holders of Beneficial Interests will be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed Distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value, and, if applicable, other than assets allocable to Disputed Claims) to the U.S. Holders of Beneficial Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent Distributions from the Liquidating Trust. Similarly, taxable loss of the Liquidating Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating Distribution of the remaining Liquidating Trust Assets. The tax book value of the Liquidating Trust Assets for purposes of allocating taxable income and loss shall equal their fair market value on the date of the transfer of the Liquidating Trust Assets to the Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the Tax Code, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

As soon as reasonably practicable after the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Liquidating Trust shall make a good faith valuation of the Liquidating Trust Assets. All parties to the Liquidating Trust (including, without limitation, Debtor, the Liquidating Trustee, and U.S. Holders of Beneficial Interests) must consistently use such valuation for all U.S. federal income tax purposes. The valuation will be made available, from time to time, as relevant for tax reporting purposes.

70

Taxable income or loss allocated to U.S. Holders of Beneficial Interests should be treated as income or loss with respect to such holder's undivided interest in the Liquidating Trust Assets, and not as income or loss with respect to its prior Allowed Claim.  The character of any income and the character and ability to use any loss may depend on the particular situation of the U.S. Holders of the Beneficial Interests.

The U.S. federal income tax obligations of a U.S. Holder with respect to its Beneficial Interest are not dependent on the Liquidating Trust distributing any Cash or other proceeds.  Thus, a U.S. Holder may incur a U.S. federal income tax liability with respect to its allocable share of the Liquidating Trust's income even if the Liquidating Trust does not make a concurrent Distribution to the U.S. Holder.  In general, other than in respect of Cash retained on account of Disputed Claims and Distributions resulting from undeliverable Distributions (the subsequent distribution of which still relates to a U.S. Holder's Allowed Claim), a distribution of Cash by the Liquidating Trust will not be separately taxable to the U.S. Holders of Beneficial Interests since the beneficiary is already regarded for U.S. federal income tax purposes as owning the underlying assets (and was taxed at the time the Cash was earned or received by the Liquidating Trust).  U.S. Holders are urged to consult their tax advisors regarding the appropriate U.S. federal income tax treatment of any subsequent distributions of Cash originally retained by the Liquidating Trust on account of Disputed Claims.

The Liquidating Trustee will comply with all applicable governmental withholding requirements.  Thus, in the case of any Holders of Beneficial Interests that are not U.S. Holders, the Liquidating Trustee may be required to withhold up to 30% of the income or proceeds allocable to such persons, depending on the circumstances (including whether the type of income is interest and the source of the income under U.S. federal income tax rules).  However, the taxation of Non-U.S. Holders of Beneficial Interests are complex and Non-U.S. Holders of Beneficial Interests should consult their tax advisors.

c.      Tax Reporting for Assets Allocable to Disputed Claims. Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of an IRS private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee (A) may elect to treat any Liquidating Trust Assets allocable to, or retained on account of, Disputed Claims (i.e., a Disputed Claim Reserve) as a "disputed ownership fund" governed by Treasury Regulations Section 1.468B-9, if applicable, and (B) to the extent permitted by applicable law, will report consistently for state and local income tax purposes.  Accordingly, if a "disputed ownership fund" election is made with respect to a Disputed Claim Reserve, such reserve will be subject to tax annually on a separate entity basis on any net income earned with respect to the Liquidating Trust Assets (including any gain recognized upon the disposition of such assets).  All Distributions from such reserves (which Distributions will be net of the expenses, including taxes, relating to the retention or disposition of such assets) will be treated as received by U.S. Holders in respect of their Claims as if distributed by the Debtor. All parties (including, without limitation, Debtor, the Liquidating Trustee and the U.S. Holders of Beneficial Interests) will be required to report for tax purposes consistently with the foregoing. A Disputed Claim Reserve will be responsible for payment, out of the assets of the Disputed Claim Reserve, of any taxes imposed on the Disputed Claim Reserve or its assets.  In the event, and to the extent, any Cash in the Disputed Claim Reserve is insufficient to pay the portion of any such

71

taxes attributable to the taxable income arising from the assets of such reserve (including any income that may arise upon the distribution of the assets in such reserve), assets of the Disputed Claim Reserve may be sold to pay such taxes.

### 4. FATCA

Under U.S. tax rules known as the Foreign Tax Compliance Act ("FATCA"), "withholdable payments" received by a Non-U.S. Holder will generally be subject to a 30% U.S. withholding tax if the holder is not FATCA compliant, or holds its Claim through a foreign financial institution that is not FATCA compliant. Additionally, although FATCA withholding may also apply to gross proceeds of a disposition of property of a type that can produce U.S.-source interest or dividends, proposed Treasury Regulations suspend withholding on such gross proceeds payments indefinitely. FATCA withholding will apply even if the applicable payment would not otherwise be subject to U.S. federal nonresident withholding tax.

In order to be treated as FATCA compliant, a Non-U.S. Holder must provide certain documentation (usually an IRS Form W-8BEN or W-8BEN-E) containing information about its identity, its FATCA status, and if required, its direct and indirect U.S. owners. These requirements may be modified by the adoption or implementation of an intergovernmental agreement between the United States and another country or by future Treasury Regulations. Documentation that holders provide in order to be treated as FATCA compliant may be reported to the IRS and other tax authorities, including information about a holder's identity, its FATCA status, and if applicable, its direct and indirect U.S. owners. Holders should consult their own tax advisers about how information reporting and the possible imposition of withholding tax under FATCA may apply to transactions contemplated by the Plan.

### 5. Backup Withholding and Information Reporting

Distributions to certain U.S. Holders of Allowed Claims under the Plan generally will be subject to information reporting requirements. In addition, certain U.S. Holders may be subject to backup withholding in respect of such amounts if they do not provide their taxpayer identification numbers to the person from whom they receive payments. Non-U.S. Holders may be required to comply with applicable certification procedures to establish that they are not U.S. Holders in order to avoid the application of such information reporting requirements and backup withholding. The amount of any backup withholding from a payment to a U.S. or Non-U.S. Holder may be allowed as a credit against the Holder's U.S. federal income tax liability and may entitle the Holder to a refund, provided that the required information is timely furnished to the IRS.

In addition, Treasury Regulations generally require disclosure by a U.S. Holder on its U.S. federal income tax return of certain types of transactions in which the taxpayer participated, including, among other types of transactions, certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds. U.S. Holders are urged to consult their tax advisors regarding these Treasury Regulations and whether the transactions contemplated by the Plan would be subject to these Treasury Regulations and require disclosure on the U.S. Holder's tax returns.

73

## XVII. RECOMMENDATIONS AND CONCLUSION

Debtor submits that the Plan and liquidation proposed therein serves the best interests of the Estate and its stakeholders by efficiently and effectively administering the assets of the Estate, and in so doing, maximizing the value of such assets for the benefit of holder of Beneficial Interests.

###

73

EXHIBIT B

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| In re: | Case No.: 6:25-bk-4156-LVV |
| THE VILLAGES HEALTH SYSTEM, LLC,[1] | Chapter 11 |
| Debtor. | |

## INTERIM CASH RECONCILIATION OF
## THE VILLAGES HEALTH SYSTEM, LLC

The Villages Health System, LLC (the "Debtor"), the debtor and debtor in possession in the above-captioned bankruptcy case, submits this Interim Cash Reconciliation (the "Cash Reconciliation") detailing the Debtor's sources and uses of prepetition funds from January 1, 2020 through December 31, 2024 (the "Reporting Period").

## NOTICE AND DISCLAIMER

The information set forth in this Cash Reconciliation is the result of work performed by the Chief Restructuring Officer and associated support staff at GBH SOLIC Holdco, LLC (the "Professionals") with the assistance of certain personnel employed by the Debtor. In preparing this Cash Reconciliation, the Professionals relied on the Debtor's financial books and records, and the Professionals' analysis is based on those books and records. The Professionals did not audit the Debtor's books and records, and the analysis to date assumes those books and records are accurate. Further, this analysis is ongoing and subject to change and further update in the future. For the avoidance of doubt, the process and analysis underlying this Cash Reconciliation are not intended

---

[1] The address of the Debtor is 600 Sunbelt Road, The Villages, Florida 32159. The last four digits of the Debtor's federal tax identification number is 6436.

009970.007862\4931-2146-6480.2

to be in conformance with Generally Accepted Accounting Principles, Generally Accepted Auditing Standards, or Attest Engagement Standards as defined by the American Institute of Certified Public Accountants. Nothing herein shall be construed as a representation that the Debtor's financial books and records are accurate. This Cash Reconciliation is for informational purposes only, and is subject to and conditioned on the limitations, notices, and disclaimers set forth herein.

For the avoidance of doubt, (i) the information set forth herein is intended to be factual and should not be construed as an opinion or assurance of any person or entity involved in the reconciliation process, (ii) the findings are based in part on the Debtor's books and records, which are assumed to be true for purposes of this Cash Reconciliation and which have not been audited, and (iii) nothing herein shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtor or any other person or entity; (b) an impairment or waiver of any right to dispute any claim by or against any party, their respective assets, or the estate on any grounds; (c) a promise or requirement to honor or pay any claim or interest; (d) an assumption, adoption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code; (e) an implication, admission, finding, or limitation of any type against any person or entity, including but not limited to the Debtor, on any grounds, including with respect to any person or entity's ability to challenge, recharacterize as equity, void, claw back, or seek other relief with respect to any payments or transactions; or (f) a waiver of the Debtor's or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

## CASH RECONCILIATION

The Debtor's Professionals' reconciliation efforts have focused on identifying, analyzing and detailing the receipt, allocation and disbursement of cash and other funds received by the

009970.007862\4931-2146-6480.2

Debtor during the Reporting Period. The Professionals have obtained bank statements and other account information for the Debtor's bank accounts, as well as invoices, receipts, payment confirmations, and additional information relating to the receipt, disbursement or other transfer of funds. The Professionals examined the Debtor's books and records, including selected cash transactions and general ledger entries, and categorized those transactions in the Cash Reconciliation set forth in **Exhibit A.**

Dated: October 10, 2025

**BAKER & HOSTETLER LLP**

*/s/ Andrew V. Layden*
**Elizabeth A. Green, Esq.**
FL Bar No.: 0600547
Email: egreen@bakerlaw.com
**Jimmy D. Parrish, Esq.**
FL Bar No.: 0526401
E-mail: jparrish@bakerlaw.com
**Andrew V. Layden, Esq.**
FL Bar No.: 86070
E-mail: alayden@bakerlaw.com
200 South Orange Avenue
Suite 2300
Orlando, Florida 32801-3432
Telephone: (407) 649-4000
Facsimile: (407) 841-0168

-and-

**Elyssa S. Kates, Esq.**, *admitted pro hac vice*
NY Bar No.: 3937448
E-mail: ekates@bakerlaw.com
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4227
Facsimile: (212) 589-4201

*Counsel for the Debtor and Debtor in Possession*

009970.007862\4931-2146-6480.2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 10, 2025, I electronically filed the foregoing with the Clerk of Court by using the Court's CM/ECF system, which will provide a Notice of Electronic Filing and copy to all parties requesting such notice.

/s/ *Andrew V. Layden*
Andrew V. Layden

009970.007862\4931-2146-6480.2

## Exhibit A

| Month | Total | Total | Total | Total | Total | Cumulative |
|---|---|---|---|---|---|---|
| Year | 2020 | 2021 | 2022 | 2023 | 2024 | 2020 - 2024 |
| | | | | | | |
| **Beginning Bank Balance** | $2,170,175 | $1,856,540 | $2,705,010 | $3,778,254 | $5,950,115 | $2,170,175 |
| | | | | | | |
| **Operating Sources** | | | | | | |
| Receipts from Payors | $40,821,662 | $68,274,654 | $133,534,993 | $157,016,586 | $154,902,076 | $554,549,971 |
| FFS (Fee for Service) | $26,323,414 | $30,752,690 | $28,462,222 | $28,534,092 | $28,558,242 | $142,630,659 |
| Other Revenue | $3,641,436 | $3,454,835 | $2,325,980 | $2,669,811 | $3,109,707 | $15,201,768 |
| | | | | | | |
| **Total Operating Sources** | $70,786,511 | $102,482,179 | $164,323,195 | $188,220,488 | $186,570,025 | $712,382,398 |
| | | | | | | |
| **Operating Uses** | | | | | | |
| Payroll Wages, Tax, Bonus, Benefits to non-affiliated entities | ($45,364,980) | ($48,375,544) | ($53,636,973) | ($77,718,508) | ($84,854,362) | ($309,950,368) |
| Passthrough and Shared Services to Affiliates Related to Payroll Wages, Taxes and Benefits Administered by Affiliated Entities | ($7,103,098) | ($8,733,279) | ($11,493,563) | ($87,445) | $0 | ($27,417,384) |
| Insurance | ($1,042,700) | ($987,900) | ($1,484,101) | ($139,363) | ($635,123) | ($4,289,186) |
| Professional Fees | ($419,924) | ($334,124) | ($1,736,947) | ($5,972,015) | ($10,193,239) | ($18,656,249) |
| Vendors/Expenses to non-affiliated entities | ($16,823,870) | ($16,234,356) | ($18,811,768) | ($20,583,364) | ($24,061,423) | ($96,514,781) |
| Vendors/Expenses to affiliated entities | ($2,344,089) | ($3,101,143) | ($2,280,646) | ($2,637,326) | ($1,928,875) | ($12,292,079) |
| Rent (all paid to affiliated entities) | ($7,797,165) | ($9,211,968) | ($10,763,548) | ($11,318,415) | ($11,758,217) | ($50,849,313) |
| | | | | | | |
| **Total Operating Uses** | ($80,895,826) | ($86,978,312) | ($100,207,546) | ($118,456,436) | ($133,431,239) | ($519,969,359) |
| | | | | | | |
| **Net Operating Cash Flow** | ($10,109,314) | $15,503,867 | $64,115,649 | $69,764,052 | $53,138,785 | $192,413,038 |
| | | | | | | |
| **Non-Operating Net Sources/Uses** | | | | | | |
| Loan Draws From Affiliate | $16,200,000 | $13,300,000 | $11,200,000 | $45,952,060 | $23,000,000 | $109,652,060 |
| Repayment of Principal and Interest to Affiliate | ($6,404,320) | ($27,955,396) | ($74,242,405) | ($68,609,655) | ($55,519,213) | ($232,730,990) |
| Tax Distributions - The Villages Health Holding Company, LLC | $0 | $0 | $0 | ($44,600,743) | ($11,256,567) | ($55,857,310) |
| Tax Distributions - Other Members | $0 | $0 | $0 | ($333,853) | ($8,068,583) | ($8,402,435) |
| Stock Grants / Member Loan Repayments | $0 | $0 | $0 | $0 | ($508,654) | ($508,654) |
| | | | | | | |
| **Total Non-Operating Net Sources/Uses** | $9,795,680 | ($14,655,396) | ($63,042,405) | ($67,592,191) | ($52,353,017) | ($187,847,330) |
| | | | | | | |
| **Total Net Cash Flow** | ($313,635) | $848,470 | $1,073,244 | $2,171,861 | $785,768 | $4,565,709 |
| | | | | | | |
| **Ending Bank Balance** | $1,856,540 | $2,705,010 | $3,778,254 | $5,950,115 | $6,735,883 | $6,735,883 |
| | | | | | | |
| | | | | | | |
| **Loan from Affiliate Roll forward** | | | | | | |
| **Beginning Balance** | $98,837,464 | $115,046,074 | $107,346,074 | $49,846,074 | $30,726,157 | $98,837,464 |
| Loan Draws From Affiliate | $16,200,000 | $13,300,000 | $11,200,000 | $45,952,060 | $23,000,000 | $109,652,060 |
| Repayment of Principal to Affiliate | $0 | ($21,000,000) | ($68,700,000) | ($65,071,977) | ($53,726,157) | ($208,498,134) |
| Other Misc | $8,610 | $0 | $0 | $0 | $0 | $8,610 |
| **Ending Balance** | $115,046,074 | $107,346,074 | $49,846,074 | $30,726,157 | $0 | $0 |