**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| In re: | Case No.: 6:25-bk-04156-LVV |
| **THE VILLAGES HEALTH SYSTEM, LLC,**[1] | **Chapter 11** |
| **Debtor.** | |

**DEBTOR'S APPLICATION TO EMPLOY AND RETAIN REALTY EXECUTIVES IN
THE VILLAGES AS A REAL ESTATE BROKER FOR THE DEBTOR
EFFECTIVE AS OF FEBRUARY 27, 2026**

---

**NOTICE OF OPPORTUNITY TO
OBJECT AND REQUEST FOR HEARING**

If you object to the relief requested in this paper you must file a response with the Clerk of Court at 400 W. Washington Street, Suite 5100, Orlando, FL 32801 within 14 days from the date of the attached proof of service, plus an additional three days if this paper was served on any party by U.S. Mail.

If you file and serve a response within the time permitted, the Court will either notify you of a hearing date or the Court will consider the response and grant or deny the relief requested in this paper without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, and the Court may grant or deny the relief requested without further notice or hearing.

**You should read these papers carefully and discuss them with your attorney if you have one. If the paper is an objection to your claim in this bankruptcy case, your claim may be reduced, modified, or eliminated if you do not timely file and serve a response.**

---

The Villages Health System LLC, as debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), hereby files this application (the "Application") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the

---

[1] The address of the Debtor is 600 Sunbelt Road, The Villages, Florida 32159. The last four digits of the Debtor's federal tax identification number is 6436.

"Proposed Order"), (i) authorizing the Debtor to retain and employ Realty Executives in The Villages (the "Broker") as a real estate broker for the Debtor in accordance with the terms and conditions set forth in that certain Exclusive Right of Sale Listing Agreement, dated as of February 27, 2026 (the "Agreement"), a copy of which is attached as **Exhibit 1** to the Proposed Order, (ii) approving the terms of the Broker's employment and retention, including the fee and expense structure set forth in the Agreement, and (iii) granting further relief. In support of this Application, the Debtor submits the declaration of Frances Pierce (the "Pierce Declaration") as **Exhibit B** and states the following in support of this Application:

## Jurisdiction and Venue

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b).  The Debtor confirms its consent to the entry of a final order by the Court.

2.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The bases for the relief requested herein are sections 327(a), 328(a), 330, and 331 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

4.     On July 3, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code—thereby commencing this Chapter 11 Case. The Debtor continues to operate its business and manage its business as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. A committee of creditors holding unsecured claims (the "Committee") was appointed on September 4, 2025 [Doc. No. 206].

2

134562.000004\4928-4314-0969.11

5.      A detailed description of the Debtor and its business, and the facts and circumstances surrounding the Debtor's filing of voluntary petition for relief under chapter 11 of the Bankruptcy Code are set forth in greater detail in the *Declaration of Neil Luria, Chief Restructuring Officer of the Debtor, in Support of Chapter 11 Petition and Various First Day Applications and Motions* ("First Day Declaration") [Doc. No. 3].

6.      The Broker has been selected by the Debtor to market and sell certain real property located at 11368 Laufersky Lane, Oxford, FL 34484 (the "Property") in Sumter County, Florida. The Debtor selected the Broker to perform such services because of Broker's outstanding reputation and expertise in this region. The Debtor believes that retaining the Broker is in the best interests of the Debtor's estate.

7.      The Broker has secured a buyer for the Property for a purchase price of $310,000.00 (the "Price"). The Debtor will file a motion to sell the Property shortly after this Application. The Broker is entitled to a 5% commission payable at closing.

## Relief Requested

8.      By this Application, the Debtor respectfully requests that the Court enter an order, substantially in the form of the Proposed Order attached hereto as **Exhibit A**, authorizing the Debtor to retain and employ the Broker in the Chapter 11 Case, in accordance with the terms of the Agreement.

## Basis for Relief

9.      The Debtor seeks to retain the Broker pursuant to section 327(a) of the Bankruptcy Code, which provides that a debtor, subject to Court approval:

> … may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

3

134562.000004\4928-4314-0969.11

11 U.S.C. § 327(a).

10.     Bankruptcy Rule 2014(a) requires that an application for retention include:

> …specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

11.     For the reasons stated herein, the Debtor believes that Broker's employment and retention are in the best interests of its estate.

12.     To the best of the Debtor's knowledge, except as set forth in the Pierce Declaration, Broker: (a) does not have any connection with, or any interest adverse to, the Debtor, its affiliates or subsidiaries, its creditors or any other party in interest or its attorneys and accountants, the U.S. Trustee or any other person employed in the Office of the same, or any judge in the Bankruptcy Court for the Middle District of Florida or any person employed in the offices of the same; (b) are "disinterested persons" within the meaning of section 101(14) of the Bankruptcy Code; and (c) does not hold or represent any interest adverse to the Debtor or the Debtor's estate.

13.     The Pierce Declaration constitutes a verified statement as required under Rule 2014 of the Federal Rules of Bankruptcy Procedure.

14.     In addition, Debtor seeks approval of the Agreement pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327. . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." Section 328 of the Bankruptcy Code

4

permits the compensation of professionals on more flexible terms that reflect the nature of their services and market conditions.

15. The Debtor seeks to pay the Broker their commission as stated in the Agreement, for services rendered on behalf of the Debtor. Other than as set forth herein and in the Agreement, no arrangement is proposed between the Debtor and Broker for compensation to be paid in this Chapter 11 Case.

16. Broker has agreed to work cooperatively with the Debtor's professionals in order to avoid duplication of services to the Debtor.

**Additional Information Requested by U.S. Trustee Guidelines**

17. The following information is provided in response to the request for additional information set forth in paragraph D.1 of the U.S. Trustee Guidelines:

Question: Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?

Response: The rates set forth in the Agreement are consistent with the rates that Broker charges other comparable chapter 11 clients, and the rate structure provided by Broker is appropriate and is not significantly different from: (a) the rates that Broker charges in other non-bankruptcy representations; or (b) the rates of other comparably skilled professionals for similar engagements.

Question: Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?

Response: No.

Question: If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If your billing rates and material financial terms have changed post-petition, explain the difference and the reasons for the difference.

Response: For the pre-petition period during which Broker provided services for the Debtor, Broker's rates did not change upon the filing of the Chapter

5

11 Case. The rates of Broker's professionals are set forth in the Agreement.

Question:    Has your client approved your prospective budget and staffing plans, and if so, for what budget period?

Response:    The Debtor has not requested a specific staffing plan. The Debtor has approved the fee structure set forth in the Agreement, which will be paid from the proceeds of the sale of the Property.

## Conclusion

WHEREFORE, the Debtor respectfully requests that the Bankruptcy Court enter an order, substantially in the form of the Proposed Order, granting the relief requested in this Application and such other relief as the Bankruptcy Court deems appropriate under the circumstances.

*[Rest of page intentionally left blank]*

6

134562.000004\4928-4314-0969.11

**RESPECTFULLY SUBMITTED** this 30th day of April, 2026.

BAKER & HOSTETLER LLP

By: */s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**
FL Bar No.: 0600547
Email: egreen@bakerlaw.com
**Jimmy D. Parrish, Esq.**
FL Bar No.: 0526401
E-mail: jparrish@bakerlaw.com
**Andrew V. Layden, Esq.**
FL Bar No.: 86070
E-mail: alayden@bakerlaw.com
Suite 2300
200 South Orange Avenue
Orlando, Florida 32801-3432
Telephone: (407) 540-7920
Facsimile: (407) 841-0168

*Counsel for the Debtor and Debtor in Possession*

7

**Certificate of Service**

Notice of this Motion has been provided by email, facsimile or mail to: (a) the Office of the United States Trustee for the Middle District of Florida; (b) all secured creditors; (c) the Committee; and (d) all parties requesting notice in this Chapter 11 Case. The method of service for each party will be described more fully in the certificate of service prepared by the Debtor's claims and noticing agent. The Debtor respectfully submits that, based on the circumstances surrounding this Motion and the nature of the relief requested herein, no further notice is required.

By: */s/ Elizabeth A. Green*
**Elizabeth A. Green, Esq.**

2

## EXHIBIT A

## Proposed Order

134562.000004\4928-4314-0969.11

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| **In re:** | **Case No.: 6:25-bk-04156-LVV** |
| **THE VILLAGES HEALTH SYSTEM, LLC,**[1] | **Chapter 11** |
| **Debtor.** | |

**ORDER GRANTING DEBTOR'S APPLICATION TO EMPLOY AND RETAIN
REALTY EXECUTIVES IN THE VILLAGES AS A REAL ESTATE BROKER FOR
THE DEBTOR EFFECTIVE AS OF FEBRUARY 27, 2026**

This case came before the Court without a hearing upon the *Application to Employ and Retain Realty Executives in the Villages as a Real Estate Broker for the Debtor* [Doc. No. _____] (the "Application")[2] of the above-captioned debtor and debtor in possession (the "Debtor"), pursuant to the terms and subject to the conditions of the Exclusive Right of Sale Listing Agreement (the "Agreement"), which is annexed to this Order as **Exhibit 1**, and upon the First Day Declaration and the Pierce Declaration; the Court having found that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; venue is proper in this district pursuant to 28 U.S.C. § 1409, this is a core proceeding pursuant to 28 U.S.C. § 157(b); the Court may enter a final order consistent with Article III of the United States Constitution; the terms and conditions of Broker's employment, as set forth in the Agreement, are reasonable as required by section 328(a) of the Bankruptcy Code; Broker does not represent or hold any interest adverse to the Debtor or to the Debtor's estate with respect to the matter on which Broker is to be employed; Broker is a disinterested person as such term is used in section 327(a) of the Bankruptcy Code; the

---

[1] The address of the Debtor is 600 Sunbelt Road, The Villages, Florida 32159. The last four digits of the Debtor's federal tax identification number is 6436.

[2] Capitalized terms used and not defined herein have the meanings ascribed to them in the Application.

relief requested in the Application is in the best interests of the Debtor's estate, its creditors, and other parties in interest; the Debtor's notice of the Application and opportunity for a hearing on the Application were appropriate and no other notice need be provided; and the Court having reviewed the Application; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED:

1.      The Application is GRANTED.

2.      The Debtor is authorized to retain and employ Broker in the Chapter 11 Case, pursuant to the terms and subject to the conditions set forth in the Agreement attached hereto as **Exhibit 1**. The Debtor and the Broker are authorized to extend the term of the Agreement and make non-material modifications of the Agreement without further order of this Court.

3.      The Agreement is approved pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, and the Debtor is authorized and directed to perform their payment, reimbursement, and other obligations in accordance with the terms and conditions, and at the times specified, in the Agreement and the Pierce Declaration.

4.      The Debtor and the Broker shall not be required to file an application pursuant to sections 330 and 331 of the Bankruptcy Code for any compensation paid to Broker under the Agreement.

5.      The Debtor and Broker are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

134562.000004\4928-4314-0969.11

6. Broker shall use reasonable efforts to avoid any duplication of services provided by any of the Debtor's other retained professionals in the Chapter 11 Case.

7. To the extent that there may be any inconsistency between the terms of the Application, the Pierce Declaration, the Agreement, and this Order, the terms of this Order shall govern.

8. The Debtor is authorized and empowered to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

9. Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice.

10. The relief granted herein shall be binding upon any chapter 11 trustee appointed in this Chapter 11 Case, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of this Chapter 11 Case to a case under chapter 7.

11. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

12. This Bankruptcy Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# # #

*Attorney Elizabeth A. Green is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of the order.*

134562.000004\4928-4314-0969.11

**<u>Exhibit 1</u>**

**Agreement**

134562.000004\4928-4314-0969.11

## Exclusive Right of Sale Listing Agreement

This Exclusive Right of Sale Listing Agreement ("Agreement") is between

_____ **The Villages Health System LLC** _____ ("**Seller**")

and brokerage _____ **Realty Executives In The Villages** _____ ("**Broker**").

1. **Authority to Sell Property: Seller** gives **Broker** the EXCLUSIVE RIGHT TO SELL the real and personal property (collectively "Property") described below, at the price and terms described below, beginning _____ March 2, 2026 _____ and terminating at 11:59 p.m. on _____ June 2, 2026 _____ ("Termination Date"). Upon full execution of a contract for sale and purchase of the Property, all rights and obligations of this Agreement will automatically extend through the date of the actual closing of the sales contract. **Seller** and **Broker** acknowledge that this Agreement does not guarantee a sale. This Property will be offered to any person without regard to race, color, religion, sex, handicap, familial status, national origin, or any other factor protected by federal, state, or local law. **Seller** certifies and represents that she/he/it is legally entitled to convey the Property and all improvements.

2. **Description of Property:**
   (a) **Street Address:** _____ 11368 Laufersky Ln, Oxford, FL  34484 _____

   _____

   Legal Description: LOT 377 OXFORD OAKS PHASE TWO PB 16 PGS 17-17D _____

   _____ ☐ See Attachment _____

   (b) **Personal Property, including appliances:** refrigerator, oven/range, microwave, dishwasher _____

   _____ ☐ See Attachment _____

   (c) **Occupancy:**
   Property ☐ is ☒ is not currently occupied by a tenant. If occupied, the lease term expires _____ .

3. **Price and Terms:** The property is offered for sale on the following terms or on other terms acceptable to **Seller**:
   (a) **Price:** $_____ 339,500 _____
   (b) **Financing Terms:** ☒ Cash ☒ Conventional ☒ VA ☐ FHA ☐ Other (specify) _____
   ☐ **Seller** Financing: **Seller** will hold a purchase money mortgage in the amount of $_____
   with the following terms: _____
   ☐ Assumption of Existing Mortgage: Buyer may assume existing mortgage for $_____ plus
   an assumption fee of $_____. The mortgage is for a term of _____ years beginning in
   _____, at an interest rate of _____% ☐ fixed ☐ variable (describe) _____.
   Lender approval of assumption ☐ is required ☐ is not required ☐ unknown. **Notice to Seller: (1)** You may
   remain liable for an assumed mortgage for a number of years after the Property is sold. Check with your
   lender to determine the extent of your liability. **Seller** will ensure that all mortgage payments and required
   escrow deposits are current at the time of closing and will convey the escrow deposit to the buyer at closing.
   (2) Extensive regulations affect **Seller** financed transactions. It is beyond the scope of a real estate licensee's
   authority to determine whether the terms of your **Seller** financing agreement comply with all applicable laws or
   whether you must be registered and/or licensed as a loan originator before offering **Seller** financing. You are
   advised to consult with a legal or mortgage professional to make this determination.
   (c) **Seller Expenses: Seller** will pay mortgage discount, other closing costs, or concessions not to exceed
   $_____, and any other expenses **Seller** agrees to pay in connection with a transaction.

4. **Broker Obligations: Broker** agrees to make diligent and continued efforts to sell the Property in accordance with this Agreement until a sales contract is pending on the Property. This includes, except when not in **Seller's** best interests, cooperating and communicating with other brokers and making the property available for showings.

5. **Multiple Listing Service:** Placing the Property in a multiple listing service (the "MLS") is beneficial to **Seller** because the Property will be exposed to a large number of potential buyers. As an MLS participant, **Broker** is obligated to enter the Property into the MLS within one (1) business day of marketing the Property to the public (see Paragraph 6(a)) or as necessary to comply with local MLS rule(s). This listing will be published accordingly in the MLS unless **Seller** directs **Broker** otherwise in writing. (See paragraph 6(b)(i)). **Seller** authorizes **Broker** to report to the MLS this listing information and price, terms, and financing information on any resulting sale for use by authorized Board / Association members and MLS participants and subscribers unless **Seller** directs **Broker**

Seller (_NL_) (_____) and Broker/Authorized Associate (_____) (_____) acknowledge receipt of a copy of this page, which is Page 1 of 5.
*The Parties acknowledge this form should not be used to share offers of compensation to buyer brokers or other buyer representatives via any field in the Multiple Listing Service.*
ERS-21tb Rev 10/2025                                                          Licensed to AppFiles © 2025 Florida Realtors®

otherwise in writing. The **Seller** and **Broker** agree to adhere to each local MLS's policies and further agree to execute any applicable forms as necessary.

6. **Broker Authority:** **Seller** authorizes **Broker** to:
   (a) Market the Property to the Public (unless limited in Paragraph 6(b)(i) below):
      (i) Public marketing includes, but is not limited to, flyers, yard signs, digital marketing on public facing websites, brokerage website displays (i.e. IDX or VOW unless marketing options pursuant to local MLS rules apply), email blasts, multi-brokerage listing sharing networks and applications available to the general public.
      (ii) **Public marketing also includes marketing the Property to real estate agents outside Broker's office.**
      (iii) Place appropriate transaction signs on the Property, except if Paragraph 6(b)(i) is checked below.
      (iv) Use **Seller's** name in connection with marketing or advertising the Property.
      ☐ Display the Property on the Internet except the street address.
   (b) Not Publicly Market to the Public/Seller Opt-Out:
      (i.) ☐ **Seller** does not authorize **Broker** to display the Property on the MLS.
      (ii.) **Seller** understands and acknowledges that if **Seller** checks option 6(b)(i), a For Sale sign will not be placed upon the Property and
      (iii.) **Seller** understands and acknowledges that if **Seller** checks option 6(b)(i), **Broker** will be limited to marketing the Property only to agents within **Broker's** office.
      _____/_____ **Initials of Seller**
   (c) Obtain information relating to the present mortgage(s) on the Property.
   (d) Provide objective comparative market analysis information to potential buyers.
   (e) (**Check if applicable**) ☒ Use a lock box system to show and access the Property. A lock box does not ensure the Property's security. **Seller** is advised to secure or remove valuables. **Seller** agrees that the lock box is for **Seller's** benefit and releases **Broker**, persons working through **Broker**, and **Broker's** local Realtor Board / Association from all liability and responsibility in connection with any damage or loss that occurs. ☐ Withhold verbal offers. ☐ Withhold all offers once **Seller** accepts a sales contract for the Property.
   (f) Act as a transaction broker.
   (g) **Virtual Office Websites:** Some real estate brokerages offer real estate brokerage services online. These websites are referred to as Virtual Office Websites ("VOWs"). An automated estimate of market value or reviews and comments about a property may be displayed in conjunction with a property on some VOWs. Anyone who registers on a VOW may gain access to such automated valuations or comments and reviews about any property displayed on a VOW. Unless limited below, a VOW may display automated valuations or comments and reviews about this Property.
      ☒ **Seller** does not authorize an automated estimate of the market value of the listing (or a hyperlink to such estimate) to be displayed in immediate conjunction with the listing of this Property.
      ☒ **Seller** does not authorize third parties to write comments or reviews about the listing of the Property (or display a hyperlink to such comments or reviews) in immediate conjunction with the listing of this Property.

7. **Seller Obligations:** In consideration of **Broker's** obligations, **Seller** agrees to:
   (a) Cooperate with **Broker** in carrying out the purpose of this Agreement, including referring immediately to **Broker** all inquiries regarding the Property's transfer, whether by purchase or any other means of transfer.
   (b) Recognize **Broker** may be subject to additional MLS obligations and potential penalties for failure to comply with them.
   (c) Provide **Broker** with keys to the Property and make the Property available for **Broker** to show during reasonable times.
   (d) Inform **Broker** before leasing, mortgaging, or otherwise encumbering the Property.
   (e) Indemnify **Broker** and hold **Broker** harmless from losses, damages, costs, and expenses of any nature, including attorney's fees, and from liability to any person, that **Broker** incurs because of (1) **Seller's** negligence, representations, misrepresentations, actions, or inactions; (2) the use of a lock box; or (3) the existence of undisclosed material facts about the Property. This clause will survive **Broker's** performance and the transfer of title.
   (f) Perform any act reasonably necessary to comply with FIRPTA (Section 1445 of the Internal Revenue Code).
   (g) Make all legally required disclosures, including all facts that materially affect the Property's value and are not readily observable or known by the buyer. **Seller** certifies and represents that **Seller** knows of no such material facts (local government building code violations, unobservable defects, etc.) other than the following:

_____
   **Seller** will immediately inform **Broker** of any material facts that arise after signing this Agreement.

Seller (_NL_) (\_\_\_\_\_) and Broker/Authorized Associate (\_\_\_\_\_) (\_\_\_\_\_) acknowledge receipt of a copy of this page, which is Page 2 of 5.
*The Parties acknowledge this form should not be used to share offers of compensation to buyer brokers or other buyer representatives via any field in the Multiple Listing Service.*
ERS-21tb Rev 10/2025                                                                          © 2025 Florida Realtors®

**(h)** Consult appropriate professionals for related legal, tax, property condition, environmental, foreign reporting requirements, and other specialized advice.

8. **Compensation: Seller** will compensate **Broker** as specified below if a buyer is procured who is ready, willing, and able to purchase the Property or any interest in the Property on the terms of this Agreement or on any other terms acceptable to **Seller. Seller** will pay **Broker** as follows:

**(a)** _____5_____% of the total purchase price plus $-------------------------------- OR $------------------------------- , no later than the date of closing specified in the sales contract. However, closing is not a prerequisite for **Broker's** fee being earned.

**(b)** ---------------- ($ or %) of the consideration paid for an option, at the time an option is created. If the option is exercised, **Seller** will pay **Broker** the Paragraph 8(a) fee, less the amount **Broker** received under this subparagraph.

**(c)** ---------------- ($ or %) of gross lease value as a leasing fee, on the date **Seller** enters into a lease or agreement to lease, whichever is earlier. This fee is not due if the Property is or becomes the subject of a contract granting an exclusive right to lease the Property.

**(d)** **Broker's** fee is due in the following circumstances: (1) If any interest in the Property is transferred, whether by sale, lease, exchange, governmental action, bankruptcy, or any other means of transfer, regardless of whether the buyer is secured by **Seller, Broker**, or any other person. (2) If **Seller** refuses or fails to sign an offer at the price and terms stated in this Agreement, defaults on an executed sales contract, or agrees with a buyer to cancel an executed sales contract. (3) If, within __90__ days after Termination Date ("Protection Period"), **Seller** transfers or contracts to transfer the Property or any interest in the Property to any prospects with whom **Seller, Broker**, or any real estate licensee communicated regarding the Property before Termination Date. However, no fee will be due **Broker** if the Property is relisted after Termination Date and sold through another broker.

**(e)** **Retained Deposits:** As consideration for **Broker's** services, **Broker** is entitled to receive ___0___% of all deposits that **Seller** retains as liquidated damages for a buyer's default in a transaction, not to exceed the Paragraph 8(a) fee.

**(f)** Brokerage commissions are not set by law and are fully negotiable.

9. **Notice to Seller Regarding Buyer Brokers:** The buyer's broker, even if compensated by **Seller** or **Broker**, will provide services for the buyer. **Seller** is advised and is aware that **Seller** may, but is not required to, compensate a buyer's broker upon closing. **Seller** may choose to enter into a separate written agreement to pay buyer's broker or may approve **Broker** to pay buyer's broker in accordance with paragraph 10. **Seller** also understands

**(a)** "Buyer's broker" may include this **Broker** if **Broker** also works with buyer on this transaction;

**(b)** If this occurs during the duration of this listing, **Broker** will be entitled to the compensation in paragraph 8 for services performed for **Seller**, as well as the buyer's broker compensation in paragraph 10(a) for services performed for buyer; the **Seller** should therefore take this into consideration when negotiating compensation; and

**(c)** **Broker** may receive separate compensation from buyer for services rendered to buyer by **Broker**.

10. **Compensation to Buyer Brokers: Brokerage commissions are not set by law and are fully negotiable.**
    **Seller** approves the following (check one option; if no option is checked then option (c) is deemed to be selected):

**(a)** ☒ **Seller** authorizes **Broker** to offer compensation to buyer's broker in the amount of: __2.5__% of the purchase price or $----------------------. (This amount will be paid from **Broker** to buyer's broker from the compensation amount agreed to in paragraph 8.) This compensation will be set forth in a separate written agreement between **Broker** and buyer's broker.

**(b)** ☐ **Seller** authorizes **Broker** to offer compensation to buyer's broker from **Seller** in the amount of: _____% of the purchase price or $----------------------. This compensation will be set forth in a separate written agreement between **Seller** and buyer's broker.

**(c)** ☐ No compensation will be offered to buyer's broker.

11. **Brokerage Relationship: Broker** will act as a transaction broker. **Broker** will deal honestly and fairly; will account for all funds; will use skill, care, and diligence in the transaction; will disclose all known facts that materially affect the value of the residential property which are not readily observable to the buyer; will present all offers and counteroffers in a timely manner unless directed otherwise in writing; and will have limited confidentiality with **Seller** unless waived in writing.

12. **Conditional Termination:** At **Seller's** request, **Broker** may agree to conditionally terminate this Agreement. If **Broker** agrees to conditional termination, **Seller** must sign a withdrawal agreement, reimburse **Broker** for all direct expenses incurred in marketing the Property, and pay a cancellation fee of $_____0.00_____ plus

Seller (_NL_) (_____) and Broker/Authorized Associate (_____) (_____) acknowledge receipt of a copy of this page, which is Page 3 of 5.
*The Parties acknowledge this form should not be used to share offers of compensation to buyer brokers or other buyer representatives via any field in the Multiple Listing Service.*
ERS-21tb Rev 10/2025                                                                                    © 2025 Florida Realtors®

applicable sales tax. **Broker** may void the conditional termination, and **Seller** will pay the fee stated in Paragraph 8(a) less the cancellation fee if **Seller** transfers or contracts to transfer the Property or any interest in the Property during the time period from the date of conditional termination to Termination Date and Protection Period, if applicable.

13. **Dispute Resolution:** This Agreement will be construed under Florida law. All controversies, claims, and other matters in question between the parties arising out of or relating to this Agreement or the breach thereof will be settled by first attempting mediation under the rules of the American Arbitration Association or other mediator agreed upon by the parties. If litigation arises out of this Agreement, the prevailing party will be entitled to recover reasonable attorney's fees and costs, unless the parties agree that disputes will be settled by arbitration as follows: **Arbitration:** By initialing in the space provided, **Seller** (_NL_) (____),and **Broker or Authorized Associate** (____) agree that disputes not resolved by mediation will be settled by neutral binding arbitration in the county in which the Property is located in accordance with the rules of the American Arbitration Association or other arbitrator agreed upon by the parties. Each party to any arbitration (or litigation to enforce the arbitration provision of this Agreement or an arbitration award) will pay its own fees, costs, and expenses, including attorney's fees, and will equally split the arbitrator's fees and administrative fees of arbitration.

14. **Miscellaneous:** This Agreement is binding on **Seller's** and **Broker's** heirs, personal representatives, administrators, successors, and assigns. **Broker** may assign this Agreement to another listing office. This Agreement is the entire agreement between **Seller** and **Broker**. No prior or present agreements or representations will be binding on **Seller** or **Broker** unless included in this Agreement. Electronic signatures are acceptable and will be binding. Signatures, initials, and modifications communicated by facsimile will be considered as originals. The term "buyer" as used in this Agreement includes buyers, tenants, exchangors, optionees, and other categories of potential or actual transferees.

15. **Additional Terms:** In the event that the listing agent, Frances Pierce PA, presents an accepted offer the compensation shall be reduced to 3.5%.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Title: Chief Restructuring Officer
By: Neil Luria

**Seller's Signature:** _Neil Luria_ Date: __February 26, 2026__

Home Telephone: _____ Work Telephone: _____ Facsimile: _____

Address: _____

Email Address: _____

**Seller's Signature:** _____ Date: _____

Home Telephone: _____ Work Telephone: _____ Facsimile: _____

Address: _____

Email Address: _____

**Broker or Authorized Sales Associate:** _____ Date: _____

Brokerage Firm Name: _____ Realty Executives In The Villages _____ Telephone: _____

Address: _____ 11714 NE 62nd Ter, Suite 300, The Villages, FL _____

| Copy returned to **Seller** on _____ by ☐ email ☐ facsimile ☐ mail ☐ personal delivery. |
| --- |

Florida REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as REALTOR®. REALTOR® is a registered collective membership mark which may be used only be real estate licensees who are members of the NATIONAL ASSOICATION OF REALTORS® and who subscribe to its Code of Ethics. The copyright laws of United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

Seller (_NL_) (_____) and Broker/Authorized Associate (_____) (_____) acknowledge receipt of a copy of this page, which is Page 5 of 5. *The Parties acknowledge this form should not be used to share offers of compensation to buyer brokers or other buyer representatives via any field in the Multiple Listing Service.*
ERS-21tb Rev 10/2025                                                                                   © 2025 Florida Realtors®

## Seller's Property Disclosure – Residential



**REALTY EXECUTIVES**
In The Villages

**Notice to Licensee and Seller:** Only the Seller should fill out this form.

**Notice to Seller:** Florida law[1] requires a **Seller** of a home to disclose to the **Buyer** all known facts that materially affect the value of the property being sold and that are not readily observable or known by the **Buyer**. This disclosure form is designed to help you comply with the law. However, this disclosure form may not address every significant issue that is unique to the Property. You should think about what you would want to know if you were buying the Property today; and if you need more space for additional information, comments, or explanations, check the Paragraph 12 checkbox and attach an addendum.

**Notice to Buyer:** The following representations are made by **Seller** and **not** by any real estate licensee. This disclosure is not a guaranty or warranty of any kind. It is not a substitute for any inspections, warranties, or professional advice you may wish to obtain. It is not a substitute for your own personal judgment and common sense. The following information is based only upon **Seller's** actual knowledge of the Property's condition. **Sellers** can disclose only what they actually know. **Seller** may not know about all material or significant items. You should have an independent, professional home inspection to verify the condition of the Property and determine the cost of repairs, if any. This disclosure is not a contract and is not intended to be a part of any contract for sale and purchase.

**Seller** makes the following disclosure regarding the property described as: _____ 11368 Laufersky Ln, Oxford, FL  34484 _____
_____ (the "Property")

The Property is ☐owner occupied ☐tenant occupied ☐unoccupied (If unoccupied, how long has it been since **Seller** occupied the Property? _____

|  | | Yes | No | Don't Know |
|---|---|---|---|---|
| **1. Structures; Systems; Appliances** | | | | |
| (a) Are the structures including roofs; ceilings; walls; doors; windows; foundation; and pool, hot tub, and spa, if any, structurally sound and free of leaks? | | ☐ | ☐ | ☐ |
| (b) Is seawall, if any, and dockage, if any, structurally sound? | | ☑ | ☐ | ☐ |
| (c) Are existing major appliances and heating, cooling, mechanical, electrical, security, and sprinkler systems, in working condition, i.e., operating in the manner in which the item was designed to operate? | | ☐ | ☐ | ☐ |
| (d) Does the Property have aluminum wiring other than the primary service line? | | ☐ | ☐ | ☐ |
| (e) Are any of the appliances leased? If yes, which ones: _____ | | ☐ | ☐ | ☐ |
| (f) If any answer to questions 1(a) -- 1(c) is no, please explain: _____ | | | | |
| _____ | | | | |
| **2. Termites; Other Wood-Destroying Organisms; Pests** | | | | |
| (a) Are termites; other wood-destroying organisms, including fungi; or pests present on the Property or has the Property had any structural damage by them? | | ☐ | ☐ | ☐ |
| (b) Has the Property been treated for termites; other wood-destroying organisms, including fungi; or pests? | | ☐ | ☐ | ☐ |
| (c) If any answer to questions 2(a) - 2(b) is yes, please explain: _____ | | | | |
| _____ | | | | |
| **3. Water Intrusion; Drainage; Flooding** | | | | |
| (a) Has past or present water intrusion affected the Property? | | ☐ | ☐ | ☐ |
| (b) Have past or present drainage or flooding problems affected the Property? | | ☐ | ☐ | ☐ |
| (c) Is any of the Property located in a special flood hazard area? | | ☐ | ☐ | ☐ |
| (d) Is any of the Property located seaward of the coastal construction control line? | | ☐ | ☐ | ☐ |
| (e) Does your lender require flood insurance? | | ☐ | ☐ | ☐ |
| (f) Do you have an elevation certificate? If yes, please attach a copy. | | ☐ | ☐ | ☐ |
| (g) If any answer to questions 3(a) - 3(d) is yes, please explain: _____ | | | | |
| _____ | | | | |

[1] *Johnson v. Davis*, 480 So.2d 625 (Fla. 1985).

**Seller** (NL) (____) and **Buyer** (____) (____) acknowledge receipt of a copy of this page, which is Page 1 of 4
SPDR-4x    Rev 3/25 Licensed to AppFiles ©2025 Florida REALTORS®

**Seller Never Occupied Property**

|  | Yes | No | Don't Know |
|---|---|---|---|

**4. Plumbing**
(a) What is your drinking water source? ☐public ☐private ☐well ☐other
(b) Have you ever had a problem with the quality, supply, or flow of potable water?   ☐ ☐ ☐
(c) Do you have a water treatment system?   ☐ ☐ ☐
   If yes, is it ☐owned ☐leased?
(d) Do you have a ☐sewer or ☐septic system? If septic system, describe the location
   of each system: _____
(e) Are any septic tanks, drain fields, or wells that are not currently being used located
   on the Property?   ☐ ☐ ☐
(f) Are there or have there been any defects to the water system, septic system, drain
   fields or wells?   ☐ ☐ ☐
(g) Have there been any plumbing leaks since you have owned the Property?   ☐ ☐ ☐
(h) Are any polybutylene pipes on the Property?   ☐ ☐ ☐
(i) If any answer to questions 4(b), 4(c), and 4(e) - 4(h) is yes, please explain:
   _____
   _____

**5. Roof and Roof-Related Items**
(a) To your knowledge, is the roof structurally sound and free of leaks?   ☐ ☐ ☐
(b) The age of the roof is _____ years OR date installed _____
(c) Has the roof ever leaked during your ownership?   ☐ ☐ ☐
(d) To your knowledge, has there been any repair, restoration, replacement
   (indicate full or partial) or other work undertaken on the roof?   ☐ ☐ ☐
   If yes, please explain:_____
(e) Are you aware of any defects to the roof, fascia, soffits, flashings or any other
   component of the roof system?   ☐ ☐ ☐
   If yes, please explain: _____
   _____

**6. Pools; Hot Tubs; Spas**
Note: Florida law requires swimming pools, hot tubs, and spas that received a
certificate of completion on or after October 1, 2000, to have at least one safety
feature as specified by Section 515.27, Florida Statutes.
(a) If the Property has a swimming pool, hot tub, or spa that received a certificate of
   completion on or after October 1, 2000, indicate the existing safety feature(s):
   ☐enclosure that meets the pool barrier requirements ☐approved safety pool
   cover ☐required door and window exit alarms ☐required door locks ☐none
(b) Has an in-ground pool on the Property been demolished and/or filled?   ☐ ☐ ☐

**7. Sinkholes**
Note: When an insurance claim for sinkhole damage has been made by the seller
and paid by the insurer, Section 627.7073(2)(c), Florida Statutes, requires the seller
to disclose to the buyer that a claim was paid and whether or not the full amount paid
was used to repair the sinkhole damage.
(a) Does past or present settling, soil movement, or sinkhole(s) affect the Property or
   adjacent properties?   ☐ ☐ ☐
(b) Has any insurance claim for sinkhole damage been made?   ☐ ☐ ☐
   If yes, was the claim paid? ☐ yes ☐ no If the claim was paid, were all the
   proceeds used to repair the damage? ☐ yes ☐ no
(c) If any answer to questions 7(a) - 7(b) is yes, please explain:
   _____
   _____

Seller (NL) (_____) and Buyer (_____) (_____) acknowledge receipt of a copy of this page, which is Page 2 of 4
SPDR-4x   Rev 3/25                                                           ©2025 Florida REALTORS®

**Seller Never Occupied Property**

|  | Yes | No | Don't Know |
|---|---|---|---|

**8. Homeowners' Association Restrictions; Boundaries; Access Roads**

(a) Is membership in a homeowner's association mandatory or do any covenants, conditions or restrictions (CCRs) affect the Property? (CCRs include deed restrictions, restrictive covenants and declaration of covenants.) ☐ ☐ ☐

**Notice to Buyer:** If yes, you should read the association's official records and/or the CCRs before making an offer to purchase. These documents contain information on significant matters, such as recurring dues or fees; special assessments; capital contributions, penalties; and architectural, building, landscaping, leasing, parking, pet, resale, vehicle and other types of restrictions.

(b) Are there any proposed changes to any of the restrictions? ☐ ☐ ☐

(c) Are any driveways, walls, fences, or other features shared with adjoining landowners? ☐ ☐ ☐

(d) Are there any encroachments on the Property or any encroachments by the Property's improvements on other lands? ☐ ☐ ☐

(e) Are there boundary line disputes or easements affecting the Property? ☐ ☐ ☐

(f) Are you aware of any existing, pending or proposed legal or administrative action affecting homeowner's association common areas (such as clubhouse, pools, tennis courts or other areas)? ☐ ☐ ☐

(g) Have any subsurface rights, as defined by Section 689.29(3)(b), Florida Statutes, been severed from the Property? ☐ ☐ ☐
If yes, is there a right of entry?  ☐ yes  ☑ no

(h) Are access roads ☐private ☐public? If private, describe the terms and conditions of the maintenance agreement: _____

_____

(i) If any answer to questions 8(a) - 8(g) is yes, please explain: _____

_____

**9. Environmental**

(a) Was the Property built before 1978? ☐ ☐ ☐
If yes, please see Lead-Based Paint Disclosure.

(b) Does anything exist on the Property that may be considered an environmental hazard, including but not limited to, lead-based paint; asbestos; mold; urea formaldehyde; radon gas; methamphetamine contamination; defective drywall; fuel, propane, or chemical storage tanks (active or abandoned); or contaminated soil or water? ☐ ☐ ☐

(c) Has there been any damage, clean up, or repair to the Property due to any of the substances or materials listed in subsection (b) above? ☐ ☐ ☐

(d) Are any mangroves, archeological sites, or other environmentally sensitive areas located on the Property? ☐ ☐ ☐

(e) If any answer to questions 9(b) - 9(d) is yes, please explain: _____

_____

**10. Governmental, Claims and Litigation**

(a) Are there any existing, pending or proposed legal or administrative claims affecting the Property? ☐ ☐ ☐

(b) Are you aware of any existing or proposed municipal or county special assessments affecting the Property? ☐ ☐ ☐

(c) Is the Property subject to any Qualifying Improvements assessment per Section 163.081, Florida Statutes? ☐ ☐ ☐

(d) Are you aware of the Property ever having been, or is it currently, subject to litigation or claim, including but not limited to, defective building products, construction defects and/or title problems? ☐ ☐ ☐

(e) Have you ever had any claims filed against your homeowner's insurance policy? ☐ ☐ ☐

**Seller** (_NL_) (____) and **Buyer** (____) (____) acknowledge receipt of a copy of this page, which is Page 3 of 4

©2025 Florida REALTORS®

Seller Never Occupied Property

(f) Are there any zoning violations or nonconforming uses? ☐ ☐ ☐

(g) Are there any zoning restrictions affecting improvements or replacement of the Property? ☐ ☐ ☐

(h) Do any zoning, land use or administrative regulations conflict with the existing use of the Property? ☐ ☐ ☐

(i) Do any restrictions, other than association or flood area requirements, affect improvements or replacement of the Property? ☐ ☐ ☐

(j) Are any improvements located below the base flood elevation? ☐ ☐ ☐

(k) Have any improvements been constructed in violation of applicable local flood guidelines? ☐ ☐ ☐

(l) Have any improvements to the Property, whether by your or by others, been constructed in violation of building codes or without necessary permits? ☐ ☐ ☐

(m) Are there any active permits on the Property that have not been closed by a final inspection? ☐ ☐ ☐

(n) Is there any violation or non-compliance regarding any unrecorded liens; code enforcement violations; or governmental, building, environmental and safety codes, restrictions or requirements? ☐ ☐ ☐

(o) If any answer to questions 10(a) - 10(n) is yes, please explain: _____

_____

(p) Is the Property located in a historic district? ☐ ☐ ☐

(q) Is the Seller aware of any restrictions as a result of being located in a historic district? ☐ ☐ ☐

(r) Are there any active or pending applications or permits with a governing body over the historic district? ☐ ☐ ☐

(s) Are there any violations of the rules applying to properties in a historic district? ☐ ☐ ☐

(t) If the answer to 10(q) – 10(s) is yes, please explain: _____

_____

**11. Foreign Investment in Real Property Tax Act ("FIRPTA")**

(a) Is the Seller subject to FIRPTA withholding per Section 1445 of the Internal Revenue Code? ☐ ☐ ☐

If yes, Buyer and Seller should seek legal and tax advice regarding compliance.

**12. ☐ (If checked) Other Matters; Additional Comments:** The attached addendum contains additional information, explanation, or comments.

**Seller** represents that the information provided on this form and any attachments is accurate and complete to the best of **Seller's** knowledge on the date signed by **Seller**. **Seller** authorizes listing broker to provide this disclosure statement to real estate licensees and prospective buyers of the Property. **Seller** understands and agrees that **Seller** will promptly notify **Buyer** in writing if any information set forth in this disclosure statement becomes inaccurate or incorrect.

Seller: _____Neil Luria_____ / ___The Villages Health System LLC___  Date: __February 26, 2026__
(signature)  By: Neil Luria  (print) Title: Chief Restructuring Officer

Seller: _____ / _____  Date: _____
(signature)  (print)

**Buyer** acknowledges that **Buyer** has read, understands, and has received a copy of this disclosure statement.

Buyer: _____ / _____  Date: _____
(signature)  (print)

Buyer: _____ / _____  Date: _____
(signature)  (print)

Seller (NL)(____) and Buyer (____)(____) acknowledge receipt of a copy of this page, which is Page 4 of 4

SPDR-4x   Rev 3/25

©2025 Florida REALTORS®

Seller Never Occupied Property

## Flood Disclosure



Florida Statute 689.302 requires a seller to complete and provide a flood disclosure to a purchaser of residential real property **at or before** the time the sales contract is executed.

Seller, __**The Villages Health System LLC**_____, provides Buyer the following flood disclosure **at or before** the time the sales contract is executed.

Property address: _____**11368 Laufersky Ln, Oxford, FL  34484**_____

_____.

Seller, please check the applicable boxes in paragraphs (1) through (3) below.

### FLOOD DISCLOSURE

Flood Insurance: Homeowners' insurance policies do not include coverage for damage resulting from floods. Buyer is encouraged to discuss the need to purchase separate flood insurance coverage with Buyer's insurance agent.

(1) Seller ☐ has ☒ has no knowledge of any flooding that has damaged the property during Seller's ownership of the property.

(2) Seller ☐ has ☒ has not filed a claim with an insurance provider relating to flood damage on the property, including, but not limited to, a claim with the National Flood Insurance Program.

(3) Seller ☐ has ☒ has not received assistance for flood damage to the property, including, but not limited to, assistance from the Federal Emergency Management Agency.

(4) For the purposes of this disclosure, the term "flooding" means a general or temporary condition of partial or complete inundation of the property caused by any of the following:

    a. The overflow of inland or tidal waters.

    b. The unusual and rapid accumulation of runoff or surface waters from any established water source, such as a river, stream, or drainage ditch.

    c. Sustained periods of standing water resulting from rainfall.

The Villages Health System, LLC
By: Neil Luria

Seller: _____*Neil Luria*_____ Title: Chief Restructuring Officer   Date: _____**February 27, 2026**_____

Seller: _____   Date: _____

Copy provided to Buyer on _____ by ☐ email ☐ facsimile ☐ mail ☐ personal delivery.

Licensed to AppFiles © 2025 Florida Association of Realtors®



**REALTY EXECUTIVES**
In The Villages

## Comprehensive Rider to the
## Residential Contract For Sale And Purchase
**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**

**When initialed by all parties,** the parties acknowledge that the disclosure set forth below was provided to Buyer prior to execution of the Florida Realtors/Florida Bar Residential Contract For Sale and Purchase between the parties and the clauses below will be incorporated therein:

_____ **The Villages Health System LLC** _____ (SELLER)

and _____ (BUYER)

concerning the Property described as _____ 11368 Laufersky Ln, Oxford, FL 34484 _____

_____

**Buyer's Initials** _____ _____                **Seller's Initials** ___ _NL_ ___ _____

### B. HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE

**PART A. DISCLOSURE SUMMARY**

**IF THE DISCLOSURE SUMMARY REQUIRED BY SECTION 720.401, FLORIDA STATUTES, HAS NOT BEEN PROVIDED TO THE PROSPECTIVE PURCHASER BEFORE EXECUTING THIS CONTRACT FOR SALE, THIS CONTRACT IS VOIDABLE BY BUYER BY DELIVERING TO SELLER OR SELLER'S AGENT OR REPRESENTATIVE WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS AFTER RECEIPT OF THE DISCLOSURE SUMMARY OR PRIOR TO CLOSING, WHICHEVER OCCURS FIRST. ANY PURPORTED WAIVER OF THIS VOIDABILITY RIGHT HAS NO EFFECT. BUYER'S RIGHT TO VOID THIS CONTRACT SHALL TERMINATE AT CLOSING.**

**BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THIS DISCLOSURE.**

**Disclosure Summary For** _____ Oxford Oaks _____
                                                **(Name of Community)**

1. AS A BUYER OF PROPERTY IN THIS COMMUNITY, YOU WILL BE OBLIGATED TO BE A MEMBER OF A HOMEOWNERS' ASSOCIATION ("ASSOCIATION").
2. THERE HAVE BEEN OR WILL BE RECORDED RESTRICTIVE COVENANTS ("COVENANTS") GOVERNING THE USE AND OCCUPANCY OF PROPERTIES IN THIS COMMUNITY.
3. YOU WILL BE OBLIGATED TO PAY ASSESSMENTS TO THE ASSOCIATION. ASSESSMENTS MAY BE SUBJECT TO PERIODIC CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $_____ 743.00 PER _____ year _____. YOU WILL ALSO BE OBLIGATED TO PAY ANY SPECIAL ASSESSMENTS IMPOSED BY THE ASSOCIATION. SUCH SPECIAL ASSESSMENTS MAY BE SUBJECT TO CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $_____ -------------- PER ----------------.
4. YOU MAY BE OBLIGATED TO PAY SPECIAL ASSESSMENTS TO THE RESPECTIVE MUNICIPALITY, COUNTY, OR SPECIAL DISTRICT. ALL ASSESSMENTS ARE SUBJECT TO PERIODIC CHANGE.
5. YOUR FAILURE TO PAY SPECIAL ASSESSMENTS OR ASSESSMENTS LEVIED BY A MANDATORY HOMEOWNERS' ASSOCIATION COULD RESULT IN A LIEN ON YOUR PROPERTY.
6. THERE MAY BE AN OBLIGATION TO PAY RENT OR LAND USE FEES FOR RECREATIONAL OR OTHER COMMONLY USED FACILITIES AS AN OBLIGATION OF MEMBERSHIP IN THE HOMEOWNERS' ASSOCIATION. IF APPLICABLE, THE CURRENT AMOUNT IS $_____ ---------------- PER --------------------.
7. THE DEVELOPER MAY HAVE THE RIGHT TO AMEND THE RESTRICTIVE COVENANTS WITHOUT THE APPROVAL OF THE ASSOCIATION MEMBERSHIP OR THE APPROVAL OF THE PARCEL OWNERS.
8. THE STATEMENTS CONTAINED IN THIS DISCLOSURE FORM ARE ONLY SUMMARY IN NATURE, AND, AS A PROSPECTIVE PURCHASER, YOU SHOULD REFER TO THE COVENANTS AND THE ASSOCIATION GOVERNING DOCUMENTS BEFORE PURCHASING PROPERTY.
9. THESE DOCUMENTS ARE EITHER MATTERS OF PUBLIC RECORD AND CAN BE OBTAINED FROM THE RECORD OFFICE IN THE COUNTY WHERE THE PROPERTY IS LOCATED, OR ARE NOT RECORDED AND CAN BE OBTAINED FROM THE DEVELOPER.

_____          _____
DATE                                  BUYER

_____          _____
DATE                                  BUYER

**Page 1 of 2   B. HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE**                    **(SEE CONTINUATION)**

CR-7  Rev. 10/21 © 2021 Florida Realtors® and The Florida Bar. All rights reserved. **Licensed to AppFiles**

## B. HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE (CONTINUED)
**PART B.**

The Property is located in a community with a mandatory homeowners' association or an association that may require the payment of assessments, charges, or impose restrictions on the Property ("Association").

1. **APPROVAL:** The Association's approval of Buyer (CHECK ONE): ☐ is ☒ is not required. If Association approval of this transaction or the Buyer is required, this Contract is contingent upon Association approval no later than _____ (if left blank, then 5) days prior to Closing. Within _____ (if left blank, then 5) days after Effective Date, the Seller shall initiate the approval process with Association. Buyer shall pay application and related fees, as applicable, unless otherwise provided for in Association governing documents or agreed to by the parties. Buyer and Seller shall sign and deliver any documents required by the Association, provide for interviews or personal appearances, if required, and use diligent effort to timely obtain Association approval. If approval is not granted within the stated time period above, Buyer may terminate this Contract, and shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

2. **PAYMENT OF FEES, ASSESSMENTS, AND OTHER ASSOCIATION CHARGES:**
   (a) Buyer shall pay any application, initial contribution, and/or membership or other fees charged by Association pursuant to its governing documents or applicable Florida Statutes. If applicable, the current amount(s) is:

   $_____ per _____ for _____ to _____
   $_____ per _____ for _____ to _____
   $_____ per _____ for _____ to _____
   $_____ per _____ for _____ to _____

   (b) If special or other assessments levied by the Association exist as of the Effective Date, or any assessment(s) are levied after the Effective Date and prior to the Closing Date, and are due and payable in full prior to Closing Date, then Seller shall pay all such assessment(s) prior to or at Closing; or, if any such assessment(s) may be paid in installments, then Seller shall pay all installments which are due before Closing Date, prior to or at Closing, and (**CHECK ONE**): ☒ Buyer ☐ Seller (if left blank, then Buyer) shall pay installments due after Closing Date. **If Seller is checked, Seller shall pay the assessment in full prior to or at the time of Closing.**
   (c) Seller shall pay, prior to or at Closing, all fines imposed against the Seller or the Property by the Association which exist as of the Closing Date and any fees the Association charges to provide information about the Property, assessment(s) and fees.

**The Association or Management Company to which assessments, special assessments or rent/land use fees are due and payable, is/are:**

_____ Mosaic Services _____      _____

**Contact Person** _____    **Contact Person** _____
**Phone** _____ (352) 617-7606 _____             **Phone** _____
**Email** _____ info@mosaicsvc.com _____          **Email** _____

**Additional contact information can be found on the Association's website, which is:**
**www.** https://mosaicsvc.com/ _____

**Page 2 of 2   B. HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE**
CR-7  Rev. 10/21  © 2021 Florida Realtors® and The Florida Bar. All rights reserved.

# EXHIBIT B

**Pierce Declaration**

134562.000004\4928-4314-0969.11

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| In re: | Case No.: 6:25-bk-04156-LVV |
| THE VILLAGES HEALTH SYSTEM, LLC,[1] | Chapter 11 |
| Debtor. | |

**DECLARATION OF FRANCES PIERCE IN SUPPORT OF DEBTOR'S APPLICATION TO EMPLOY AND RETAIN REALTY EXECUTIVES IN THE VILLAGES AS A REAL ESTATE BROKER FOR THE DEBTOR EFFECTIVE AS OF FEBRUARY 27, 2026**

I, Frances Pierce, hereby declare under penalty of perjury that, to the best of my knowledge and belief, and after reasonable inquiry, the following is true and correct:

1.  I am a real estate agent at the Realty Executives in The Villages ("Broker") and am duly authorized to execute this Declaration (this "Declaration") on behalf of Broker. I am familiar with the matters set forth herein and, if called as a witness, could and would testify thereto.

2.  I submit this Declaration in support of the application (the "Application")[2] of the above-captioned debtor and debtor in possession in these proceedings (the "Debtor") for an order authorizing the Debtor to retain and employ Broker, pursuant to the terms and subject to the conditions of the Agreement.

3.  To the best of my knowledge, except as set forth herein, Broker and I: (a) do not have any connection with, or any interest adverse to, the Debtor, its creditors, or any other party in interest or their respective attorneys and accountants, the U.S. Trustee, or any other person employed in the Office of the same, or any judge in the Bankruptcy Court for the Middle District

---

[1] The address of the Debtor is 600 Sunbelt Road, The Villages, Florida 32159. The last four digits of the Debtor's federal tax identification number is 6436.

[2] Capitalized terms used in this Declaration and not immediately defined have the meanings given to such terms in the Application.

of Florida, or any person employed in the offices of the same; (b) are "disinterested persons" within the meaning of section 101(14) of the Bankruptcy Code; and (c) do not hold or represent any interest adverse to the Debtor's estate.

**Broker does not Represent or Hold any Adverse Interest
to the Debtor or the Debtor's Estate**

4.     In connection with its retention by the Debtor in this Chapter 11 Case, Broker undertook to determine whether Broker had any conflicts or other relationships that might cause it to hold or represent an interest adverse to the Debtor or the Debtor's estate. Specifically, Broker obtained from the Debtor and/or its representatives the names of individuals and entities that may be parties in interest in this Chapter 11 Case, and such parties are listed on **Schedule 1** attached hereto ("Potential Parties in Interest").

5.     To the best of my knowledge and belief, Broker has not represented any Potential Parties in Interest in connection with matters relating to the Debtor, its estate, assets or businesses and will not represent other entities which are creditors of, or have other relationships to, the Debtor in matters relating to this Chapter 11 Case.

6.     I worked as a sales representative for the Properties of The Villages from February 2013 to April 2014. However, I have not had any affiliation with the Properties of The Villages since February 2014.

7.     As of the Petition Date, the Debtor did not owe Broker for any fees or expenses incurred prior to the Petition Date.

8.     Broker provides services to an array of clients in many different industries. As a result, Broker has represented and may in the future represent, certain Potential Parties-in-Interest in matters unrelated to this Chapter 11 Case. To the best of my knowledge and belief, insofar as I

2

have been able to ascertain after reasonable inquiry, none of these representations are materially adverse to the Debtor's interests.

9.      To the best of my knowledge and belief, neither Broker nor I, nor any other employee of Broker that will work on the Debtor's engagement, has any connection with or holds any interest adverse to the Debtor, its estate or the Potential Parties-in-Interest.

10.      To the best of my knowledge and belief, except as set forth above and subject to the information set forth elsewhere in this Declaration and in the attached schedules, Broker has not been retained to assist any entity or person other than the Debtor on matters relating to, or in direct connection with, this Chapter 11 Case.

11.      I am not related or connected to and, to the best of my knowledge, no other professional of Broker who will work on this engagement is related or connected to, any United States Bankruptcy Judge for this District, any of the District Judges for this District who handle bankruptcy cases or any employee in the Office of the United States Trustee for this District.

12.      Accordingly, except as otherwise set forth herein, insofar as I have been able to determine, none of Broker, I nor any employee of Broker who will work on the engagement holds or represents any interest adverse to the Debtor or its estate, in that Broker, and its professionals and employees who will work on the engagement:

a.  are not creditors, equity security holders or insiders of the Debtor;

b.  were not, within two years before the date of filing of the Debtor's chapter 11 petition, a director, officer or employee of the Debtor; and

c.  do not have an interest materially adverse to the interest of the Debtor's estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or for any other reason.

13.      To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of Broker's retention are discovered or arise, Broker will use

3

reasonable efforts to file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## Professional Compensation

14.    In consideration of the services to be provided by Broker, and as more fully described in the Application, subject to the Court's approval, the Debtor has agreed to pay Broker 5% of the total purchase price of the Property, no later than the date of the closing of such property, subject to certain caveats delineated in the Agreement (the "Fee Structure").

15.    Broker believes that the Fee Structure is reasonable. The Fee Structure appropriately reflects both the nature of the services provided by Broker, and the fee structures typically utilized by similar professionals for comparable engagements. The Fee Structure is consistent with Broker's normal and customary billing practices for cases of this size and complexity. Moreover, the Fee Structure is reasonable in light of: (a) industry practice; (b) market rates charged for comparable services both in and out of the chapter 11 context; (c) Broker's substantial experience; and (d) the nature and scope of work to be performed by Broker.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 30, 2026                                    Respectfully submitted,

*/s/ Frances Pierce*

4

134562.000004\4928-4314-0969.11

## Schedule 1

### Potential Parties in Interest

- The Villages Health System LLC
- Baker & Hostetler, LLP
- Goodwin Procter LLP
- GBH SOLIC Holdco, LLC (f/k/a SOLIC Capital Advisors)
- The Villages of Lake-Sumter, Inc.
- Villages Health Holding Company
- The Villages Operating Company
- Mark G. Morse
- Elliot J. Sussman
- W. Thomas Brooks
- Thomas Menichino
- Anthony Connelly
- Anna Phillips
- PMA Lender, LLC
- UnitedHealthcare Insurance Company and UnitedHealthcare of Florida, Inc.
- CenterWell Senior Primary Care (Vitality) Inc.
- Humana, Inc.
- Dell Financial Services, LLC
- Chief Judge Caryl E. Delano
- Judge Grace E. Robson
- Judge Tiffany Geyer
- Judge Lori V. Vaughan
- Judge Roberta A. Colton
- Judge Catherine Peek McEwen
- Judge Jacob A. Brown
- Judge Jason A. Burgess
- Judge Jerry A. Funk

134562.000004\4928-4314-0969.11